EXHIBIT 12

# Case Resolution Manual
# January 2021[1]

## Introduction

The U.S. Environmental Protection Agency's External Civil Rights Compliance Office, which is located in EPA's Office of General Counsel (OGC), carries out its federally-mandated responsibility to enforce several federal civil rights laws, which together, prohibit discrimination on the basis of race, color, national origin (including limited-English proficiency), disability, sex and age by applicants for and recipients of financial assistance from EPA.[2]  ECRCO's responsibilities include conducting complaint investigations and resolutions; initiating compliance reviews and providing proactive technical assistance; assessing the pre-award  review form (SF-4700-4); and conducting other technical assistance and outreach activities.

As part of its holistic approach to strengthening external civil rights compliance, EPA implemented strategic planning for ECRCO which promotes mission-critical program accountability through measurable goals to: (1) ensure prompt, effective, and efficient complaint docket management; (2) enhance ECRCO's external compliance program through proactive compliance reviews, strategic policy development, and engagement of critical EPA, federal and external partners and stakeholders (*e.g.*, recipients and communities); and (3) strengthen ECRCO's workforce through strategic human capital planning, organizational development and technology, and training to promote a high-performing organization.[3]  For purposes of transparency and to timely and effectively communicate with EPA recipients, complainants and communities, EPA has made its strategic planning efforts publicly available on ECRCO's webpage, along with the ECRCO Civil Rights Compliance Toolkit, this Case Resolution Manual (CRM), and all case letters of finding and resolution agreements, to facilitate a better understanding of EPA's external civil rights program.

In addition, ECRCO has implemented accountability measures for all of its processes, including tracking critical process points that provide guidelines for achieving timely and effective processing of complaints within regulatory timeframes and engaging in informal resolution that occurs promptly and without undue delay. As identified in the Strategic Plan (Goal 1, Benchmark 1), one critical accountability measure to ensure prompt and effective docket management is to have in place this CRM.

Finally, but perhaps most notably, ECRCO is making full use of the resolution tools available to it, as discussed further in Chapter 3 of this CRM, such as the informal resolution of complaints specifically authorized in EPA's nondiscrimination regulation.  EPA's regulation requires that it

---

[1] This document supersedes any prior previously released versions of this document and any previous internal procedures released by ECRCO or former OCR regarding the processing of external civil rights complaints.
[2] Title VI of the Civil Rights Act of 1964, 42 United States Code §§ 2000d to 2000d-7 (Title VI); Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. § 1681 et seq.; Age Discrimination Act of 1975, 42 U.S.C. § 6101 et seq.; Federal Water Pollution Control Act Amendments of 1972, Pub. L. 92-500 § 13, 86 Stat. 903 (codified as amended at 33 U.S.C. § 1251 (1972)); 40 C.F.R. Parts 5 and 7.
[3] https://www.epa.gov/sites/production/files/2017-01/documents/final_strategic_plan_ecrco_january_10_2017.pdf,

seek the cooperation of EPA recipients in securing compliance with the federal civil rights laws and that we attempt to resolve complaints informally whenever possible.

## Case Resolution Manual

This CRM is intended to provide procedural guidance to ECRCO case managers to ensure EPA's prompt, effective, and efficient resolution of civil rights complaints consistent with the civil rights laws and the mission of EPA – to protect human health and the environment.  The CRM is not intended to address substantive civil rights policy or legal standards or processes outside of ECRCO's jurisdiction and responsibility to enforce the federal civil rights laws described above.

To heighten transparency and accountability, ECRCO posted this revised version of the CRM on its website in January  2021, to ensure that the CRM accurately reflects current practices and procedures for investigating and resolving complaints pursuant to federal nondiscrimination laws. This revised version replaces the version posted on ECRCO's website in January 2017. ECRCO envisions that the CRM will continue to be evaluated, updated and revised periodically to ensure that it remains a relevant and effective tool.

EPA Orders 4700[4] and 4701[5] establish a protocol for processing complaints of discrimination that brings program and regional offices throughout the agency into a collaborative process for coordinating and committing the analytical resources, expertise, and technical support needed to address civil rights compliance.  *See* Appendices 1 and 2.  Although ECRCO retains the primary authority and responsibility for carrying out the external civil rights program, the orders clearly emphasize a "One-EPA" commitment with the support of a network of Deputy Civil Rights Officials (DCROs) established under Order 4700, to support the civil rights mission and ensure its success throughout EPA.  The 2013 Title VI Case Management Protocol (Order 4701) directed ECRCO to develop specific procedures, such as this CRM, to improve implementation of the protocol.

The CRM is designed to allow ECRCO to collaborate and consult with the DCROs, through the Regional Counsels (RCs), to determine and tailor the appropriate resolution path for each complaint based on the nature, scope and complexity of the issues presented in each complaint. *See generally*, Chapter 2.  This CRM is consistent with federal best practices, and, through the expert assistance of the DCROs and their RCs, provides ECRCO with procedures, strategies and resources to promptly and effectively evaluate, investigate, and resolve complaints and conduct compliance reviews.

---

[4] *See* Appendix 1; *Deputy Civil Rights Officials*, EPA Order No. 4700 (May 1, 2013).

[5] *See* Appendix 2; *Title VI Case Management Protocol*, EPA Order No. 4701 (May 1, 2013).

# Table of Contents

Case Resolution Manual    i
Table of Contents    1
CHAPTER 1...EVALUATION OF COMPLAINTS    3
Section 1.1    Evaluation of Correspondence...................................................................3
Section 1.2    Acknowledging Receipt of a Complaint....................................................3
Section 1.3    Assign a Case Number and Establish a File ..............................................4
Section 1.4    Case Management.......................................................................................5
Section 1.5    Jurisdictional Review of Complaints.........................................................5
Section 1.6    Request for Clarification ..........................................................................10
Section 1.7    Determine Whether to Reject/Refer the Complaint ....................................10
Section 1.8    Other Factors That May Be Considered Before Accepting a Complaint for
    Investigation ............................................................................................10
Section 1.9    Opening an Investigation..........................................................................12
Section 1.10    Withdrawing a Complaint.........................................................................12
CHAPTER 2...RESOLUTION PATHS FOR COMPLAINTS ACCEPTED FOR INVESTIGATION
    14
Section 2.1    Role of Complainants and Recipients.......................................................17
Section 2.2    Case Planning ..........................................................................................17
Section 2.3    Investigative Plan ....................................................................................18
Section 2.4    Investigatory Evidence.............................................................................18
Section 2.5    Other Factors to Consider After Accepting a Complaint for Investigation ................19
CHAPTER 3...INFORMAL RESOLUTION PROCESS    22
Section 3.1    Informal Resolution Agreement Process...................................................22
Section 3.2    Early Complaint Resolution (ECR) Process..............................................23
Section 3.3    Alternative Dispute Resolution ................................................................24
CHAPTER 4...LEGAL STANDARDS AND THEORIES    26
Section 4.1    Identification of the Applicable Legal Theories ........................................26
Section 4.2    Addressing New Compliance Issues Raised After Opening an Investigation..............27
CHAPTER 5...PRELIMINARY FINDINGS    28
Section 5.1    Preliminary Findings ...............................................................................28
Section 5.2    Voluntary Compliance Agreements .........................................................30
CHAPTER 6...INITIATION OF ENFORCEMENT ACTION    32
CHAPTER 7...MONITORING OF INFORMAL RESOLUTION AGREEMENTS AND
    VOLUNTARY COMPLIANCE AGREEMENTS    33
Section 7.1    Respond to Monitoring Reports and Verify Recipient's Implementation....................33
Section 7.2    Implementation Concerns .........................................................................33
Section 7.3    Modification of IRA or VCA Agreements ................................................34
Section 7.4    Conclusion of Monitoring.........................................................................34
CHAPTER 8...COMPLIANCE REVIEWS    35
Section 8.1    Compliance Reviews ................................................................................35
Section 8.2    Pre-Award Compliance Reviews ..............................................................36
APPENDIX ... …………………………………………………………………37
DEPUTY CIVIL RIGHTS OFFICIALS and TITLE VI CASE MANAGEMENT PROTOCOL
    ORDERS    37
1.    EPA Order 4700 ......................................................................................37
2.    EPA Order 4701 ......................................................................................38
3.    DCRO Roles and Responsibilities.............................................................38
EPA Orders 4700 (DCRO) And 4701 (Title VI Case Management Protocol)........................39

Blank Page

# CHAPTER 1   EVALUATION OF COMPLAINTS

This Chapter sets out ECRCO's procedures when it receives a correspondence from an external source, or has such correspondence referred to it from another EPA office or other federal agency.

### Section 1.1          Evaluation of Correspondence

ECRCO conducts a preliminary review of correspondence to determine whether it constitutes a complaint.  A complaint is a written statement to the agency alleging that the federal civil rights of one or more persons have been violated by a recipient[6] of financial assistance from EPA and requesting that the agency act.  Complainants must also sign or electronically sign the complaint and provide their contact information.  Complaints may be filed by electronic mail, regular mail, fax, or in person.[7]  Anonymous correspondence may be considered as one factor in a decision to initiate a compliance review but will not be sufficient to constitute a complaint.

The following will not be considered a complaint:

- Oral allegations that are not reduced to writing;
- Anonymous correspondence;
- Courtesy copies of correspondence or a complaint filed with or otherwise submitted to another person or other entity;
- Inquiries that seek advice or information but do not seek action or intervention from the agency; or
- Correspondence expressing general concerns about the environment.

### Section 1.2          Acknowledging Receipt of a Complaint

Once ECRCO determines that a correspondence constitutes a complaint, ECRCO will promptly issue a standardized letter to the individual (or group) who filed the complaint as well as to any named entity (potential/alleged recipient) to acknowledge receipt. In the acknowledgement letter to the complainant, ECRCO will include a statement advising the complainant that, if the complaint is accepted for investigation, a copy of the complaint will be shared with the Recipient, consistent with 40 C.F.R. § 7.120(e), and that ECRCO will release the complaint with appropriate redactions consistent with the Freedom of Information Act (FOIA) and the Privacy Act) and will only release identifying information to the extent necessary to comply with 40 C.F.R. Parts 5 and 7. [8]

---

[6] Federal nondiscrimination laws apply to applicants for, and recipients of, EPA financial assistance in the operation of programs or activities receiving such assistance.  *See* 40 C.F.R. § 7.15.  Where applicable, throughout the CRM, the term "recipient" includes *both* applicants for, and recipients of, EPA financial assistance.

[7] U.S. EPA, Office of General Counsel, External Civil Rights Compliance Office, 1200 Pennsylvania Avenue, N.W., Washington, D.C., 20460. Complaints may be faxed to (202) 501-1836 and submitted by email to Title_VI_Complaints@epa.gov.

[8] Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (7)(c) and the Privacy Act of 1974, 5 U.S.C. § 552a.

A copy of the acknowledgement letter and the complaint received will be sent immediately to the appropriate DCRO(s) and the Regional Counsel by email and OGC's Civil Rights & Finance Law Office (CRFLO) by email.  The DCRO, Regional Counsel, and CRFLO will promptly inform ECRCO of any known information, that should be considered in its evaluation of the complaint pursuant to Section 1.8  Additionally, the DCRO and Regional Counsel will identify a point of contact with whom ECRCO can coordinate, consult, and confer about the specific case pursuant to Appendices 1 and 3.

### Section 1.3        Assign a Case Number and Establish a File

Immediately upon receipt of a complaint, ECRCO will assign a case number and establish a case file.  ECRCO's case "opening" date for a complaint investigation is the date ECRCO receives the complaint on a business day, excluding federal holidays, between 8:00AM EST and 5:00PM EST. If a complaint is received over a weekend or on a federal holiday, ECRCO will consider it received on the next business day.  ECRCO's case "opening" date for a compliance review is the date of the letter notifying the recipient that ECRCO will initiate a compliance review.[9]

ECRCO will enter all appropriate case management information into ECRCO's External Compliance Activity Tracking System (EXCATS) including all required documents.[10]  In cases involving multiple separate complaints or allegations pertaining to multiple recipients, the following guidelines will apply in determining how many case numbers should be assigned:

- ECRCO will assign a separate case number to each entity (potential alleged recipient) named in the complaint.  If, during the investigation, ECRCO determines that other entities are involved in the alleged acts of discrimination, ECRCO will open separate complaints and assign a separate case number for each such entity.  The case opening date for those entities is the date of ECRCO's letter notifying those additional entities that they are involved.  *See* Section 1.9.

- Complaints from more than one person or organization against the same entity that contain different allegations are treated as separate cases.

- Multiple complaints sent by one or more than one person that raise substantially identical allegations against the same entity may be treated as one case and assigned one case number.  When ECRCO investigates a complaint, a subsequent complaint that raises substantially identical allegations against the same entity will be reviewed to determine whether to incorporate it into the existing case(s).  If the subsequent complaint raises distinct allegations, ECRCO should assign separate case numbers.

---

[9]A compliance review is an ECRCO-initiated investigation of a particular aspect of an EPA recipient's programs or activities to determine compliance with the civil rights laws enforced by ECRCO.  *See* Chapter 8.
[10]EXCATS is an automated case, activity, and document management system that is being used by ECRCO to track and manage all ECRCO discrimination cases.

- New allegations filed by the same person against the same entity after ECRCO has begun to investigate the original complaint are reviewed on a case-by-case basis to determine whether the allegations should be added to the open case or treated as a new case.

Staff should follow ECRCO's file management protocol to maintain physical and electronic case files once a case file is created.

### Section 1.4        Case Management

After acknowledging receipt of a complaint (*see* Section 1.2), ECRCO staff will utilize case tracking tools, as appropriate, that identify all case processing points from receipt to resolution and aspirational timeframes for completion of each point. (*See* Chapter 2).  The case tracking tools are internal performance measures and part of ECRCO's continuous improvement and accountability measures for achieving prompt, effective, and efficient processing of cases.

### Section 1.5        Jurisdictional Review of Complaints

ECRCO will provide to individuals wishing to file a complaint oral and written information, as appropriate, to assist them in understanding the jurisdictional requirements under the regulation. This includes explaining the nondiscrimination rights covered by the statutes and regulations enforced by ECRCO.  ECRCO will help complainants and recipients understand the administrative procedures and processes associated with ECRCO's complaint processing.  However, ECRCO is a neutral decision-maker and is not an advocate on behalf of complainants or recipients.

When evaluating complaints for acceptance, rejection, or referral to the appropriate agency, EPA's nondiscrimination regulation requires ECRCO to consider the following four jurisdictional requirements:

i.    Whether it is in writing;
ii.   Whether it alleges a discriminatory act(s) that, if true, may violate EPA's nondiscrimination regulation (40 C.F.R. § 7.120), such as an act or policy that subjects a person or class of persons to discriminatory treatment or an act or policy that results in discriminatory impact on a person or class of persons on the basis of race, color, national origin (including limited English proficiency), disability, sex, or age; or for intimidation or retaliation against any individual or group because they have exercised their rights to participate in or opposed actions protected by 40 C.F.R. Parts 5 and 7, or for the purpose of interfering with such rights.  40 C.F.R. § 7.100.
iii.  Whether it identifies an applicant for, or a recipient of, EPA financial assistance as the entity that committed the alleged discriminatory act;[11] and
iv.   Whether it was received by ECRCO within 180 calendar days of the alleged discriminatory act.  40 C.F.R. § 7.120.

---

[11] While the complaint must identify an applicant or a recipient under this requirement, ECRCO will conduct an independent investigation to determine whether the entity identified is a recipient of EPA financial assistance.

5

If a complaint does not meet these jurisdictional requirements, it will be rejected and may be referred to other agencies or offices that may have jurisdiction over the issues and/or entity described in the correspondence, in accordance with Section 1.7.

    (1) <u>Determine that the correspondence is in "writing"</u>

A complaint need not be written in English.  ECRCO will take all necessary steps to ensure that persons who have limited English proficiency can participate meaningfully in its complaint process.  Similarly, ECRCO will take all necessary steps to ensure that persons with disabilities can effectively participate in the complaint process.

    (2) <u>Determine subject matter jurisdiction</u>

ECRCO must have jurisdiction over the subject matter of the complaint.  For ECRCO to establish subject matter jurisdiction, the complaint must allege, or ECRCO must be able to infer from the facts given, an allegation of (1) discrimination based on race, color, national origin (including limited English proficiency), sex, disability or age, or (2) retaliation for the purpose of interfering with any right or privilege secured by the civil rights laws enforced by ECRCO, or as a result of making a complaint, testifying, or participating in any manner in an ECRCO proceeding.  *See* 40 C.F.R. §§ 5.300 – 5.550, 40 C.F.R. §§ 7.30-7.75, 40 C.F.R. §§ 7.100 – 7.180; and 28 C.F.R. § 35.134.  If ECRCO lacks subject matter jurisdiction over any of the issues raised in the correspondence, it will not proceed further regarding those issues and will reject the issues and/or complaint in accordance with Section 1.7.

ECRCO has jurisdiction pursuant to the following statutory and regulatory authorities:

- Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.*, 40 C.F.R. Part 7.

Under Title VI, ECRCO has jurisdiction to investigate complaints alleging discrimination by applicants and recipients based on race, color, or national origin, including limited English proficiency.  For employment complaints, ECRCO follows procedures consistent with the employment coordinating regulations at 28 C.F.R. Part 42 and 29 C.F.R. Part 1691.[12]

- Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. §§ 1681 *et seq.*, 40 C.F.R. Part 5.

Under Title IX, ECRCO has jurisdiction to investigate complaints alleging discrimination on the basis of sex in any education program or activity receiving financial assistance from the EPA.  For

---

[12]With respect to alleged discrimination in employment. ECRCO's jurisdiction is limited to alleged discrimination in employment on the basis of sex in any program or activity subject to Section 13, or on the basis of race, color, or national origin in any program or activity whose purpose is to create employment; or, by means of employment discrimination, deny intended beneficiaries the benefits of EPA financial assistance, or subject the beneficiaries to prohibited discrimination. 40 C.F.R. § 7.35(a)(6).  Complaints solely alleging employment discrimination against an individual on the basis of race, color, national origin, sex or religion shall be processed under 28 C.F.R. Part 42 and 29 C.F.R. Part 1691.

employment complaints in general, ECRCO follows procedures consistent with the employment coordinating regulations at 28 C.F.R. Part 42 and 29 C.F.R. Part 1691.

- Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, 40 C.F.R. Part 7.

Under Section 504, ECRCO has jurisdiction to investigate complaints alleging discrimination on the basis of disability in a program or activity receiving financial assistance from the EPA.  For employment complaints, ECRCO follows procedures consistent with the employment coordination regulations at 28 C.F.R. Part 37 and 29 C.F.R. Part 1640.

- Age Discrimination Act of 1975, 42 U.S.C. §§ 6101 *et seq.*, 40 C.F.R. Part 7, Subpart F.

Under the Age Discrimination Act, ECRCO has jurisdiction to investigate complaints alleging discrimination based on age in a program or activity receiving financial assistance from the EPA. Accepted complaints of this nature are subject to mandatory referral for mediation to the Federal Mediation and Conciliation Service (FMCS) before investigation.  However, complaints of employment discrimination based on age against an individual by recipients of Federal financial assistance are subject to the Age Discrimination in Employment Act of 1967 and should be filed administratively with the Equal Employment Opportunity Commission.  40 C.F.R. § 7.120(a).  For age complaints, ECRCO adheres to the responsibilities of federal agencies with respect to the Age Discrimination Act.  *See* 45 C.F.R. Part 90.

- Federal Water Pollution Control Act Amendments of 1972, Pub. L. 92-500 § 13, 86 Stat. 903 (codified as amended at 33 U.S.C. § 1251 *et seq.* (1972)), 40 C.F.R. Part 7.

Under Section 13 of the Federal Water Pollution Control Act Amendments, ECRCO has jurisdiction to investigate complaints alleging discrimination based on sex involving a program or activity receiving financial assistance under the Clean Water Act.

(3) Determine personal jurisdiction

ECRCO must also have jurisdiction over the entity or potential recipient, including sub-recipients, alleged to have committed the discriminatory act.  Under the statutes listed above, ECRCO has jurisdiction over entities that receive financial assistance from EPA.  Determining whether an entity is a recipient of EPA financial assistance may require more complex analysis including, for example, examining the flow-through of federal funds.  Under these circumstances, ECRCO will work with CRFLO and the DCRO(s) and RC(s) to make an informed determination about whether a particular entity satisfies the criteria. When a complaint is filed against an entity that does not receive financial assistance from EPA, ECRCO will not proceed further and will reject or refer the complaint in accordance with Section 1.7.

(4) Determine whether the allegations are timely

7

ECRCO will accept as timely those allegations that have been filed within 180 calendar days of the date of the last act of alleged discrimination.[13]  If a case does not satisfy this condition, is not a continuing policy or practice as defined below, and/or is not granted a waiver, it will be rejected under Section 1.7.

(a)  Continuing Policy or Practice

ECRCO may investigate acts that are outside of the 180-day time period when a complainant alleges facts that indicate a continuing discriminatory policy or practice.  However, correspondence claiming continuing violations must do more than allege that an individual or a group is subjected to a continuing violation.  The complainant must allege facts that are sufficient to indicate either a series of related acts of which one occurred within the 180-day filing period or a systematic policy or practice that operated within the 180-day period.[14]  Notably, a continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.[15]

In evaluating the correspondence's allegations, and where appropriate through clarification from the complainant, ECRCO will determine whether an allegation is timely filed based on whether there is evidence of a continuing violation.  ECRCO must be able to identify an act that occurred within 180 calendar days of filing the correspondence or the existence of a continuing systematic policy or practice of discrimination that operated within the 180-day period.  If a complaint alleges the maintenance of a discriminatory policy by a recipient, the complainant need not identify individuals who were discriminated against within the filing period, the alleged maintenance of the policy is sufficient to consider the complaint to be timely for investigative purposes.

(b)  Determine whether a waiver should be granted

If an allegation[16] is not filed in a timely manner, ECRCO will independently assess the record to determine whether a waiver is appropriate and/or notify the complainant of the opportunity to

---

[13] *United Air Lines, Inc. v Evans*, 431 U.S. 553, 557 (1977). *See also Del. State College v. Ricks*, 449 U.S. 250, 258 (1980) (holding that the proper focus for statute of limitations periods is upon the time of the discriminatory act, not upon the time that the consequences of the act became most painful, that is, the denial of tenure was the discriminatory act and not the termination of employment which was the natural consequence of that act)*; Franks v. Ross*, 313 F.3d 184, 195-196 (4th Cir 2002) (finding that the statute of limitations did not begin to run until the landfill permit was issued because there was no "obvious factual contingency that put construction seriously in doubt.") (citation omitted); *Rozar v. Mullis*, 85 F.3d 556, 561-562 (11th Cir. 1996) (citations omitted) (determining in the environmental permitting context that the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent, so the time period was triggered when the county vote selecting a landfill site occurred and was known as evidenced by one plaintiff voicing protest prior to that vote).

[14] *See generally Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 100, 107 (2002).

[15] *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180 (4th Cir. 1999).

[16] Although the manual refers to "complaints" and "complaint allegations," ECRCO makes a determination as to each individual allegation separately in a complaint.  For example, in a single complaint, ECRCO may decide that it is appropriate to proceed to investigation on one or more allegations while dismissing or closing another allegation.  The complainant will be informed of ECRCO's decision with respect to each allegation.

8

request a waiver.  ECRCO may grant a waiver of the 180-day filing requirement for various reasons, such as:

- The complainant could not reasonably be expected to know the act was discriminatory within the 180-day period, and the complaint was filed within 60 calendar days after the complainant became aware of the alleged discrimination.  (Note that lack of previous awareness of ECRCO or the civil rights laws enforced by ECRCO is not a basis for a waiver.)

- The complainant was unable to file a complaint because of a medical incapacitation or other incapacitating circumstances during the 180-day period, and the allegation was filed within 60 calendar days after the period of incapacitation ended.

- The complainant filed a complaint alleging the same discriminatory act within the 180-day period with a federal, state, or local civil rights enforcement agency, and then the complainant filed a complaint with ECRCO within 60 calendar days from the date on which the other agency issued a decision reflecting completion of its investigation.  We will evaluate the complaint to determine whether there is an unresolved civil rights issue appropriately within ECRCO's jurisdiction.

- The complainant files a complaint with ECRCO within 60 calendar days from the date of issuance of a decision by a state or federal court about the complainant's discrimination allegations that was not a decision on the merits or settlement of the discrimination allegations.  (Dismissal with prejudice is considered a decision on the merits.)

- The complainant filed, within the 180-day period, an internal grievance with the recipient of financial assistance, or a due process hearing, alleging the same discriminatory conduct that is the subject of the ECRCO complaint, and the complaint is filed no later than 60 calendar days after the internal grievance or due process hearing is concluded.

When a waiver is not requested and not independently granted by ECRCO based on the record, or when a waiver is requested but not granted, the allegation and/or complaint will be rejected in accordance with Section 1.7.

(5) Additional considerations for evaluating correspondence

If ECRCO receives a complaint that articulates allegations or concerns about low-income communities, ECRCO will communicate to the complainant that, even if the allegation were true, it would not violate one of the federal nondiscrimination laws enforced by ECRCO because income level is not a protected class under these laws.  ECRCO will also engage the Office of Environmental Justice and the appropriate DCROs and RCs.  Further, ECRCO does not investigate alleged noncompliance with Executive Order 12898, Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations, 59 Fed. Reg. 7629 (Feb. 16, 1994), which is generally applicable only to Federal agencies and is intended only to improve the internal management of the executive branch.  This Executive Order is not intended to, nor does it, create any right, benefit, or trust responsibility, substantive or procedural, enforceable at law or equity by

a party against the United States, its agencies, its officers, or any person.  More information about EO 12898, may be found at EPA's Office of Environmental Justice's website at https://www.epa.gov/laws-regulations/summary-executive-order-12898-federal-actions-address-environmental-justice.

### Section 1.6        Request for Clarification

ECRCO may contact the complainant by phone or in writing (by letter or via electronic mail) to identify specific problems with the complaint and provide appropriate assistance by explaining the information necessary for ECRCO to open an investigation of the complaint allegation.  In particular, ECRCO may prepare and issue a Request(s) for Clarification (RFC). The RFC will include, at a minimum, (1) a clear description of the additional information being requested of the complainant(s), and (2) specific timeframes for complainant's response to the RFC.  Generally, ECRCO will ask the complainant to provide this additional information to ECRCO within 10 calendar days of ECRCO's written RFC and advise the complainant that the complaint allegation may be rejected if the information is not received by that date.  When a complainant fails to provide the requested information within 10 calendar days of the ECRCO's written RFC and there is insufficient information in the record to evaluate jurisdiction, ECRCO may reject the complaint.

### Section 1.7        Determine Whether to Reject/Refer the Complaint

If a correspondence/complaint lacks the necessary elements described in Section 1.5 and/or the regulation at 40 C.F.R. § 7.120, ECRCO will prepare a draft rejection or in some cases, rejection and referral letter.  The draft rejection letter will be shared with the appropriate DCRO and Regional Counsel for prompt input or information that could inform ECRCO's decision regarding the disposition of the correspondence/complaint.

When a complaint allegation is rejected, ECRCO will issue a rejection letter to the complainant and potential recipient explaining the reason for rejecting the allegation.  ECRCO's closure of the complaint may also include a referral of the complaint to another office or agency which may have jurisdiction to address the allegations raised in the complaint.  ECRCO will provide complainant with a copy of the referral letter and contact information for the agency to which the complaint has been referred.

### Section 1.8        Other Factors That May Be Considered Before Accepting a Complaint for Investigation

In general, ECRCO will accept, reject, or refer a complaint after considering the four jurisdictional factors described in the regulation.  *See* Section 1.5, 40 C.F.R. § 7.120.  However, if ECRCO obtains information from the DCRO and Regional Counsel, the complainant, the identified recipient, or other credible sources leading ECRCO to conclude that an investigation is unjustified for prudential reasons, ECRCO may reject a complaint allegation in accordance with Section 1.7.

Such prudential factors include but are not limited to:

- The allegation lacks sufficient detail (*i.e.*, who, what, where, when, how) for ECRCO to infer that discrimination or retaliation may have occurred or is occurring.

- The allegation, on its face or as clarified in the evaluation process, is not sufficiently grounded in fact for ECRCO to infer that discrimination or retaliation may have occurred or is occurring.[17]

- The allegation is not ripe for review because it is speculative in nature and/or anticipates future events that may or may not unfold as outlined in the complaint, so a meaningful review of the allegation cannot be conducted at the time ECRCO receives the complaint.[18]

- The allegations are moot because ECRCO obtains credible information indicating that the allegations raised by the complaint have been resolved and there are no systemic allegations.  In such a case, ECRCO will confirm that the information is credible and that the allegations have been resolved.  If ECRCO determines that there are no current allegations appropriate for further resolution, the complaint will be rejected.

- The same complaint allegations have been filed, are currently pending, and/or are already resolved with the EPA, or another Federal, State or local agency, or through a recipient's internal grievance procedures, including due process proceedings, and ECRCO anticipates that the agency will provide the complainant with a comparable resolution process.  If filed with another Federal, State or local agency, or through a recipient's internal grievance procedure, the complainant should be advised that she or he may re-file within 60 calendar days of the completion of the other agency's action if the other agency's action does not resolve complainant's civil rights allegations or provide complainant with a comparable resolution process.[19]

- The same civil rights allegations have been filed by the complainant against the same recipient in state or federal court individually or through a class action.  A complaint may be re-filed with ECRCO within 60 calendar days following termination of the court proceeding if there has been no decision on the merits or settlement of the complaint civil rights allegations. (Dismissal with prejudice is considered a decision on the merits.)

If ECRCO determines that these or other prudential factors support rejecting a complaint, it will draft a rejection letter in accordance with Section 1.7.  The draft rejection letter will be shared with

---

[17] This provision applies where the complaint allegation (including any additional information provided by the complainant) does not provide sufficient information to raise the allegation above the level of speculation or where the available information appears to contradict the allegation.  The complaint must provide more than conclusions of alleged violations of the laws enforced by ECRCO.

[18] This type of allegation is rejected without prejudice. The complainant may re-file within 180 days of a subsequent act or event that raises an allegation of discrimination.

[19] ECRCO may refer a complaint to another Federal agency if the other agency has been identified in the complaint, or through clarification with complainant, as the lead agency to investigate the allegations, or if ECRCO determines through its jurisdictional review process (*see* Sections 1.5 through 1.7) that another agency has the expertise to address the complaint allegations.

the appropriate DCRO(s) for prompt input or information that could inform ECRCO's decision. In certain circumstances, ECRCO may refer the complaint to other federal agencies for their review, if ECRCO determines those agencies may have jurisdiction related to the concerns raised in the complaint.

### Section 1.9          Opening an Investigation

Before issuing a letter accepting an issue or a complaint for investigation, ECRCO will share a draft acceptance letter with the appropriate DCRO(s) for input. ECRCO will evaluate the complaint allegations and determine the scope of the investigation in light of any relevant information received.[20]  An investigation will be opened at the time that ECRCO issues letters of acceptance to the complainant and the recipient that contain, at a minimum, the following information:

(1) ECRCO's jurisdiction with applicable regulatory citations;
(2) A clear statement of the issue(s) to be investigated;
(3) A statement that ECRCO is a neutral fact-finder;
(4) A statement that ECRCO is providing a copy of the complaint to the recipient and the recipient will be provided an "opportunity to make a written submission responding to, rebutting, or denying the allegations raised in the complaint." (*See* 40 C.F.R. § 7.120(d)(1)(ii-iii).
(5) Information about ECRCO's Early Complaint Resolution process, if appropriate. (*See* Section 3.2);
(6) Information about ECRCO's Alternative Dispute Resolution process, if appropriate. (*See* (*See* Section 3.3);
(7) A reference to the regulation at 40 C.F.R. § 7.120(d)(2) requiring ECRCO to resolve complaints informally whenever possible and information about the informal resolution agreement process as a potential path for resolution of the issues;
(8) Information that if the informal resolution agreement process fails to result in an Informal Resolution Agreement, that ECRCO will resume its investigation process and issue preliminary findings within 180 calendar days of the start of the investigation – excluding any days spent in the informal resolution agreement process. (*See* 40 C.F.R. § 7.115);
(9) Include a statement on prohibition of retaliation and intimidation; and
10) Contact information of the ECRCO staff person who will serve as the complainant's and the recipient's primary contact during the investigation and resolution of the complaint.

### Section 1.10          Withdrawing a Complaint

A complainant may withdraw a complaint at any time before or after ECRCO has accepted a complaint for investigation.  However, where the complainant has alleged systemic violations,

---

[20] In addition, it is ECRCO's current practice, during the course of any investigation, to review a recipient's policies and procedures regarding its foundational nondiscrimination program, including the procedural safeguards required by EPA's non-discrimination regulation, as well as recommended policies and procedures to ensure meaningful access to the recipient's  programs and activities for persons with disabilities and persons with limited-English proficiency.

ECRCO may determine that it will continue the investigation notwithstanding the complainant's withdrawal of the complaint.[21]  If ECRCO determines not to continue the investigation, ECRCO will issue a closure letter to the complainant and recipient indicating the complaint has been withdrawn and that no further action will be taken by ECRCO on the complaint. The withdrawal will generally be a closure without prejudice to the complainant's ability to refile the complaint with ECRCO at a later time, subject to the four jurisdictional requirements.  *See* Section 1.5.

---

[21] ECRCO may, based on its strategic priorities and other neutral criteria, pursue a matter even if a complainant chooses to withdraw a complaint, if there is sufficient evidence and means of gathering evidence from individuals impacted by the alleged discriminatory act of an EPA recipient.  For example, where the complainant has alleged systemic violations, ECRCO may determine that it will continue the investigation notwithstanding the complainant's withdrawal of the complaint.  Moreover, where ECRCO has obtained sufficient evidence to support a finding of a violation with regard to any allegation(s), ECRCO will not close the allegation(s), but will proceed in accordance with the appropriate provisions set forth in Chapter 5.

# CHAPTER 2    RESOLUTION PATHS FOR COMPLAINTS ACCEPTED FOR INVESTIGATION

The resolution of open complaints is the responsibility of ECRCO.  However, collaboration and consultation with the DCROs, through the Regional Counsels, representing their respective regions, programs and offices, will ensure the prompt, effective, and efficient resolution of cases. To that goal, this Chapter stresses the importance of case planning and outlines the various resolution paths available to ECRCO for accepted cases which are discussed more specifically in the Chapters that follow.  *See* Chapters 3 through 5.

Once ECRCO accepts a complaint for investigation, the complaint resolution process is governed by the provisions of EPA's nondiscrimination regulation at 40 C.F.R. § 7.115(c)(1),[22] which provides that within 180 calendar days of accepting a complaint for investigation, ECRCO will issue "preliminary findings."  Preliminary findings may range from and include preliminary findings of fact to preliminary findings of law, including a finding of insufficient evidence, on one or more issues under investigation.

Correspondingly, however, ECRCO is required by regulation to attempt to resolve complaints informally whenever possible.[23]  When a complaint cannot be resolved informally, either through informal resolution agreement between ECRCO and the recipient or alternative dispute resolution (ADR)[24] between the complainant and the recipient with the use of a mediator, then ECRCO will resume processing the complaint in accordance with the procedures established by paragraphs (c) through (e) of 40 C.F.R. § 7.115.[25]

Thus, the 180-day investigation time period in 40 C.F.R. § 7.115(c)(1) begins once a complaint is accepted for investigation.  However, the time period is tolled:

- when the complainant and recipient agree to pursue ADR pursuant to 40 C.F.R. § 7.120; or
- when the recipient agrees to engage in informal resolution agreement discussions with EPA under 40 C.F.R. § 7.120(d)(2)(i).

ECRCO will issue letters to recipients and complainants notifying them when informal resolution discussions have commenced under 40 C.F.R. § 7.120 (for ADR or informal resolution agreement), and if those discussions do not result in resolution, EPA will follow the procedures in

---

[22] In relevant part, section 7.115 provides:  (1) Within 180 calendar days from the start of the compliance review or complaint investigation, the [ECRCO] will notify the recipient in writing by certified mail, return receipt requested, of: (i) Preliminary findings; (ii) Recommendations, if any, for achieving voluntary compliance; and (iii) Recipient's right to engage in voluntary compliance negotiations where appropriate.  40 C.F.R. §7.115(c)(1) (emphasis added).
[23] 40 C.F.R. § 7.120(d)(2)(i) ("[ECRCO] shall attempt to resolve complaints informally whenever possible.").
[24] *See* 40 C.F.R. § 7.120.
[25] Section 7.115 (d) through (e) explain the formal determination of noncompliance, the voluntary compliance time limits, and the form of voluntary compliance agreements.  40 C.F.R. § 7.115 (d)–(e).

§ 7.115(c)(i).  During informal resolution, ECRCO, through internal accountability measures it has implemented, will ensure that the informal resolution process occurs promptly and without undue delay.

If the complaint reverts to the investigation process in 40 C.F.R. § 7.115(c), ECRCO will issue letters to recipients and complainants notifying them that the informal resolution agreement or ADR negotiations have failed and that ECRCO is required to issue preliminary findings within 180 days of the start of the investigation.  This period will exclude any time spent during informal resolution agreement and/or ADR negotiations.[26]

A "preliminary finding of noncompliance" is one potential outcome of preliminary findings.  40 C.F.R. § 7.115(c)(2).  In addition, "preliminary findings" can include findings of law and/or findings of fact, including findings of insufficient evidence.  Also, while 40 C.F.R. § 7.115(c)(1) requires that ECRCO notify a recipient of preliminary findings, it does not require that preliminary findings be issued for all issues under investigation.  ECRCO may issue *some* preliminary findings, which will satisfy the requirement in 40 C.F.R. § 7.115(c)(1) and continue its investigation of additional issues beyond 180 days so long as any delay is not unreasonable. See the following chart depicting the ECRCO's resolution path process.

---

[26] *See* 40 C.F.R. § 7.115(c)(1)(i).

# RESOLUTION PATHS FOR CASES ACCEPTED FOR INVESTIGATION

**A. ALTERNATIVE DISPUTE RESOLUTION AGREEMENT** (180-DAY REQUIREMENT IS TOLLED UNTIL ADR NEGOTIATIONS FAIL)

**1. Complaint is accepted for investigation by ECRCO; 7.115(c)(1) requires Preliminary Findings to be issued within 180 days.**

**B. INFORMAL RESOLUTION AGREEMENT** (180 DAY REQUIREMENT IS TOLLED UNTIL IRA NEGOTIATIONS FAIL

**A1. Parties jointly choose to engage in ADR negotiations (see 7.120). This process occurs between Recipient and Complainant, with assistance from a formal mediator. ECRCO will issue Notice to Recipient and Complainant of agreement to engage in ADR.**

**2. Conversations occur with Recipient and Complainant – ECRCO explains the process, clarifies issues, and receives feedback. ECRCO offers Informal Resolution Agreement Process to Recipient or ADR Settlement Agreement Process to Recipient and Complainant at this stage.**

**B1. Recipient confirms participation in Informal Resolution Agreement process to resolve the Complaint, under 7.120(d)(2)(i). ECRCO will issue Notice to Recipient and Complainant. ECRCO will seek input from Complainant regarding resolution issues.**

**A2. ADR negotiations result in an ADR Settlement Agreement between Recipient and Complainant.**

**C. INVESTIGATIVE PROCESS** (180-DAY REQUIREMENT)

**B2. ECRCO and Recipient negotiate a Draft Informal Resolution Agreement. ECRCO will update Complainant regarding the status of the process.**

**C1. Investigative Process continues if Informal Resolution Agreement or ADR Settlement Agreement is not reached.**

**B3. ECRCO will reach a Final Informal Resolution Agreement that addresses the issues and resolves the Complaint.**

**A3. If ADR negotiations fail, and the parties cannot reach an ADR Settlement Agreement, the Complaint Investigative Process will resume; 7.115(c)(1)'s requirement for Preliminary Findings to be made after 180 days is re-instituted. ECRCO will issue Notice to Recipient and Complainant.**

**C2. ECRCO is required to notify Recipient in writing of preliminary findings within 180 days of accepting the Complaint for investigation. The 180-day period excludes any time spent in failed IRA or ADR negotiations. ECRCO will also notify Complainant of any preliminary findings.**

**B4. If an Informal Resolution Agreement cannot be reached, the Complaint Investigative Process will resume; 7.115(c)(1)'s requirement that Preliminary Findings be made after 180 days is re-instituted. ECRCO will issue Notice to Recipient and Complainant.**

### Section 2.1     Role of Complainants and Recipients

A complainant who files a complaint with ECRCO is not like a plaintiff in court who has the burden of proving his or her case before a judge or jury.  Rather a complainant's role is to report what s/he believes is an act violating federal nondiscrimination laws by an entity receiving EPA's financial assistance.  ECRCO is not in an adjudicatory role, ruling on a disputed issue or claim between parties.  Instead, ECRCO investigates potential discrimination by its recipient, and generally either resolves the discrimination issues through voluntary informal resolution or issues preliminary findings.

Although EPA's nondiscrimination regulation does not prescribe a role for the complainant once a complaint is filed, one of the EPA's goals is to promote appropriate involvement by both complainants and recipients in the complaint investigation and informal resolution processes. EPA's policy paper on the *Role of Complainants and Recipients in the Title VI Complaints and Resolution Process*, issued May 4, 2015, clarifies EPA's approaches to providing appropriate involvement of complainants and recipients in the investigation process.[27]  Also, ECRCO has implemented internal procedures for its investigation and informal resolution processes that provide for check-ins with both recipients and complainants to ensure transparency, efficiency, and effectiveness through appropriate sharing of information and status updates.

### Section 2.2     Case Planning

Case planning should begin as early as possible and will be conducted throughout the duration of every case to ensure high quality decisions, prompt investigation and informal resolution processes and efficient use of ECRCO's resources.  Case Managers should begin to draft an Investigative Plan (*see* Section 2.3) consistent with ECRCO's case tracking tools and accountability measures. ECRCO will share with appropriate DCROs and RCs a draft Investigative Plan, draft requests for information pursuant to Section 2.4, or requests for internal analytical or technical review (*e.g.* of air modeling data) as early as possible to solicit relevant input and ensure prompt, effective, and efficient case processing.

The scope of ECRCO's investigation and informal resolution activities, as reflected in the Investigative Plan, will depend upon the issues accepted for investigation and applicable legal standards, as well as consideration of EPA's nondiscrimination regulation, which provides that ECRCO shall seek the cooperation of recipients in securing compliance with its nondiscrimination regulation[28] and shall attempt to resolve complaints informally whenever possible.[29]  Accordingly, ECRCO will contact the recipient within 10 days of accepting a complaint for investigation to discuss the case processing procedures and the informal resolution agreement process as a potential path for resolution of the issue(s) accepted for investigation. ECRCO will seek to confirm recipient's agreement to participate in informal resolution agreement negotiations, consistent with

---

[27] *See* EPA, *Roles of Complainants and Recipients in the Title VI Complaints and Resolution Process* (May 4, 2015), https://www.epa.gov/sites/production/files/2017-02/documents/roles-of-complainants-and-recipients-issue_final.pdf.
[28] *See* 40 C.F.R. § 7.105.
[29] 40 C.F.R. § 7.120(d)(2)(i).

internal accountability measures. If the issue(s) cannot be resolved informally, ECRCO shall follow the procedures established by paragraphs (c) through (e) of 40 C.F.R. § 7.115. (*See* Chapter 4).

### Section 2.3    Investigative Plan

Complaint investigations and resolutions should be preceded by planning, and the approach should be developed based on the nature and complexity of the issues involved.  All Investigative Plans should set out the specific issues to be resolved and, if appropriate, the expected internal milestones to guide the case management team.  The extensiveness of an IP depends on the complexity of the issues involved.  The basic Investigative Plan will help the case management team focus on the principle issues to be explored during the investigation, as well as the sources of evidence needed and available to resolve them.  The Investigative Plan will also discuss the factual evidence needed and obtained from recipients and complainants and identify the following:

(1) Jurisdictional information;
(2) Identification of discrimination bases and issues;
(3) Identification of the applicable legal theories;
(4) Preliminary conclusions drawn from the analysis of the data or other evidence already gathered;
(5) Evaluation of whether the case is appropriate for Informal Resolution. After acceptance of a complaint, and at any point during the investigation, ECRCO and the recipient may seek to informally resolve complaints of discrimination, early on through Early Complaint Resolution process, (ECR), when appropriate, through an Informal Resolution Agreement between EPA and recipient, or Alternative Dispute Resolution (ADR) process, (*see* Chapter 3).
(6) Description of the documentary, testimonial, and statistical evidence required to complete the investigation, including interviews, and the best sources and means of obtaining each type of evidence;
(7) Anticipated sequence of case activities, including onsite visits if needed;
(8) Anticipated timeframes for obtaining and analyzing evidence (if appropriate);
(9) Analysis of recipient's responses and any additional evidence required to validate;
(10) A determination whether additional information is needed from a recipient and whether ECRCO will issue Request(s) for Information pursuant to Section 2.4 in consultation with the appropriate DCRO(s) and RC(s).
(11) Evaluation and documentation of any significant issues that should be brought to the Recipient's attention as soon as possible.

ECRCO will also seek the appropriate DCROs' and RC's input, engagement and assistance in the process to ensure prompt, effective, and efficient case resolution.  Generally, the Investigative Plan is an internal ECRCO case planning tool that is not intended to be released to the public.

### Section 2.4    Investigatory Evidence

When investigating civil rights compliance issues, the case manager will collect all necessary information and evidence in order to determine compliance with the nondiscrimination laws. The

evidence may be gathered orally (consistent with the IP, *see* Section 2.3) or in writing upon a formal request or informal request.

(1) Request for Information (RFI)

A Request for Information (RFI) is an important step in ECRCO's complaint resolution processes. ECRCO may issue a RFI to recipients, complainants or both to obtain information and evidence relevant to the issues accepted for investigation; to fill in information gaps during a complaint investigation; identify sources of documentary and other evidence; and determine appropriate matters for an informal resolution agreement.  While ECRCO will generally issue RFI's soon after accepting a complaint for investigation, it can also do so at any stage of the investigation or informal resolution agreement processes, depending on the facts and circumstances of a particular complaint.  An RFI will include, at a minimum, (1) a clear description of the additional information being requested of the recipient(s)/complainant(s) considering the issues under investigation, and (2) specific timeframes for recipient's/complainant's response to the RFI.

(2) Access to Information

A recipient is required to (1) give ECRCO access during normal business hours to its books, records, accounts and other sources of information, including its facilities, as may be pertinent to ascertain compliance with EPA's nondiscrimination regulation; (2) make compliance information available to the public upon request; and (3) assist in obtaining other required information that is in the possession of other agencies, institutions, or persons not under the recipient's control.  If such party refuses to release that information, the recipient shall inform ECRCO and explain its efforts to obtain the information.  40 C.F.R. § 7.85(f).

(3) Denial of Access to Information

Where the recipient has refused to provide ECRCO access orally or in writing, in person, over the telephone or through use of other media, ECRCO will attempt to ascertain the exact basis for the recipient's refusal and explain ECRCO's authority to obtain the information.  Where attempts to gain access have failed, ECRCO will collaborate with the appropriate DCRO(s) and RC(s) to develop and issue letter of preliminary findings of noncompliance.  *See* Section 5.1(3) and 40 C.F.R. § 7.115(c)(1).  ECRCO should then follow the procedures outlined in Chapter 5 and Chapter 6.

### Section 2.5    Other Factors to Consider After Accepting a Complaint for Investigation

If, after accepting a complaint for investigation, ECRCO obtains information from DCROs, complainant, recipient, or other credible sources leading ECRCO to conclude that an investigation is unjustified for prudential reasons, ECRCO may "administratively close" the complaint.  ECRCO retains its discretion to continue or close any investigation to ensure that the EPA complies with its

obligations under the nondiscrimination statutes.  Factors that may support the administrative closure of a complaint after opening an investigation include:

- The issues, as clarified during the investigation process, fail to state a violation of one of the laws ECRCO enforces.

- The issues as clarified during the investigation process lack sufficient detail (*i.e.*, who, what, where, when, how) for ECRCO to infer that discrimination or retaliation may have occurred or is occurring.

- The issues, as clarified during the investigation process, are not sufficiently grounded in fact for ECRCO to infer that discrimination or retaliation may have occurred or is occurring.

- The issues are not ripe for review because it is speculative in nature and/or anticipates future events that may or may not unfold as outlined in the complaint, so a meaningful review of the issues cannot be conducted at the time ECRCO receives the complaint.[30]

- The issues are moot because ECRCO obtains credible information indicating that the issues raised by the complaint have been resolved and there are no systemic issues.  In such a case, ECRCO will confirm that the information is credible and that the issues have been resolved. If ECRCO determines that there are no current issues appropriate for further resolution, the complaint will be administratively closed.

- The same complaint issues have been filed with another Federal, State, or local agency, or through a recipient's internal grievance procedures, including due process proceedings, and ECRCO anticipates that the other agency will provide the complainant with a comparable resolution process.  The complainant should be advised that she or he may re-file within 60 days of the completion of the other agency's action.

- The same civil rights issues have been filed by the complainant against the same recipient with state or federal court individually or through a class action.  A complaint may be re-filed with ECRCO within 60 calendar days following termination of the court proceeding if there has been no decision on the merits or settlement of the complaint civil rights issues. (Dismissal with prejudice is considered a decision on the merits.)

- The complaint issues are foreclosed by legally binding decisions of state or federal courts, adjudication decisions of the EPA, or by Department of Justice's or EPA's policy determinations regarding agency enforcement of nondiscrimination statutes.

---

[30] This type of issue is considered to be administratively closed without prejudice.  The complainant may re-file within 180 calendar days of a subsequent act or event that raises an allegation of discrimination.

20

- The complaint issues would be better resolved through a compliance review (*see* Chapter 8) or ECRCO has recently addressed or is currently addressing the same issues involving the same recipient in a compliance review or an ECRCO complaint.

- The complainant withdraws the complaint after ECRCO has opened it for investigation (*See* Section 1.10); however, where the complainant has alleged systemic violations, ECRCO may determine that it will continue the investigation notwithstanding the complainant's withdrawal of the complaint.  Moreover, where ECRCO has obtained sufficient evidence to support a finding of a violation regarding any issue(s), ECRCO will not close the issue(s), but will proceed in accordance with the appropriate provisions set forth in Chapter 5.

- ECRCO determines that its ability to complete the investigation is substantially impaired by the complainant's loss of contact, death, or refusal to provide information that is reasonably accessible to the complainant and is necessary for investigation of the complaint.  Generally, this factor does not apply where the investigation raises systemic issues that warrant continuing the investigation.  ECRCO will include documentation in the case file of its efforts to contact the complainant by phone, in writing, or via electronic mail to request the necessary information and of the complainant's failure to provide information.

- ECRCO determines that another office or agency for investigation is a more appropriate forum for the issues to be reviewed.  *See* Section 1.7 and Section 1.8 footnote 17 regarding referral to another office or agency.

21

# CHAPTER 3   INFORMAL RESOLUTION PROCESS

ECRCO is required by regulation to resolve complaints informally whenever possible.[31]  This Chapter discusses the steps involved in resolving a complaint through the informal resolution process.  The informal resolution process includes the Informal Resolution Agreement (IRA) process; the Early Complaint Resolution (ECR) process; and Alternative Dispute Resolution (ADR) process.

This chapter also discusses the transition of an investigation from the process under 40 C.F.R. § 7.115(c)(1), which requires the issuance of preliminary findings within 180 days, to ECRCO's informal resolution process.[32]  Finally, this Chapter will discuss ECRCO's procedures if the Informal Resolution Process is not successful.  ECRCO will ensure that the informal resolution process is conducted consistent with applicable legal, policy, and procedural guidelines and that it appropriately resolves the issues accepted for investigation.

### Section 3.1          Informal Resolution Agreement Process

After ECRCO accepts a complaint for investigation, at any point during the complaint investigation, ECRCO and the recipient may seek to informally resolve a complaint through an IRA.  Initially, ECRCO will generally contact the recipient within 10 days of the date ECRCO issues the letter accepting the complaint for investigation.  In doing so, ECRCO will provide the recipient with information about ECRCO's complaint process and offer and discuss the informal resolution agreement process with the recipient as a potential path for resolving the issues which ECRCO has accepted for investigation.  ECRCO will seek to obtain an agreement to engage in IRA negotiation as soon as possible and consistent with the case tracking tools and accountability measures.

If the recipient agrees to engage in the informal resolution agreement process, whether after ECRCO's initial offer or at another appropriate time during the investigation process, ECRCO will suspend its complaint investigation and will issue letters to the recipient and the complainant notifying them when informal resolution agreement discussions have commenced.  At that point, the 180-day time period for issuing preliminary findings under the complaint investigation process is tolled.[33]  When a complaint is in the IRA process, ECRCO, through case tracking tools and accountability measures it has implemented, will ensure that the IRA process occurs promptly and without undue delay.

During the IRA process, ECRCO will prepare a draft IRA and provide it to the recipient for review and consideration, which may lead to further negotiations toward a final IRA.  In preparing a draft IRA for the recipient ECRCO will generally seek input from the complainant regarding potential

---

[31] 40 C.F.R. § 7.120(d)(2)(i).

[32] *See* 40 C.F.R. § 7.120(d)(2)(1).

[33] *See* 40 C.F.R. §7.115(c)(1) (stating in relevant part that within 180 calendar days from the start of the complaint investigation, ECRCO will notify the recipient in writing of preliminary findings).

complaint resolution issues[34] to prepare for discussions with the recipient.  Once an IRA is finalized and signed by ECRCO and the recipient, ECRCO will then issue letters to the recipient and complainant resolving the complaint and monitor the final IRA in accordance with Chapter 7.

ECRCO will monitor the implementation of the IRA until the recipient has fulfilled the terms of the Agreement.  *See* Chapter 7.  If a recipient fulfills the terms of the Agreement, ECRCO will close its monitoring of the case and close the complaint file in accordance with Section 7.4.  If a recipient fails to fulfill the terms of the Agreement, ECRCO may reopen the investigation.

If the IRA process fails, ECRCO will notify the recipient and the complainant that ECRCO has resumed its complaint investigation and will issue preliminary findings within 180 calendar days of the start of the investigation – excluding any days spent in the IRA process.

### Section 3.2          Early Complaint Resolution (ECR) Process

The Early Complaint Resolution process facilitates the resolution of accepted complaints by providing an early opportunity for the recipient and complainant to resolve the complaint issues informally with a mutually acceptable agreement.  ECR involves informal facilitation by ECRCO and is appropriate for use in addressing specific and discrete issues that involve individual remedies.  ECRCO will consider whether a complaint is appropriate for ECR and shall offer this method of resolution to the recipient and complainant as soon as possible after ECRCO has accepted a complaint for investigation.  The ECR process must be completed within 180 days. If the process fails, ECRCO may resume the investigation to issue preliminary findings within 180 days or obtain an agreement with the recipient to engage in the Informal Resolution Agreement process.

Questions to ask in considering whether ECR is appropriate:

1. Are there specific/discrete issues that involve individual remedies (*i.e.* not affecting a class of persons)?
2. Can those individual specific/discrete issues be addressed in full through ECR without affecting ECRCO's ability to investigate or resolve the other issues raised in the complaint?
3. If yes to both questions, ECR may be appropriate.

ECRCO's role is to serve as an impartial, confidential facilitator[35] between the recipient and complainant during the ECR process.  ECRCO will inform the parties of ECR procedures and will assist them in understanding the pertinent legal standards and possible remedies for the complaint.

---

[34] *See generally* EPA, *Roles of Complainants and Recipients in the Title VI Complaints and Resolution Process* (May 4, 2015), https://www.epa.gov/sites/production/files/2017-02/documents/roles-of-complainants-and-recipients-issue_final.pdf.

[35] The *content of ECR proceedings* is confidential and may not be disclosed outside of the ECR process, the fact that *the recipient and complainant have agreed to engage in the ECR process* is not confidential and may be disclosed publicly by EPA.

To initiate the ECR process, recipients and complainant(s) must either sign or verbally agree to an Agreement to Participate and a Confidentiality Agreement.[36]  Once the ECR process has begun, the recipient and complainant must participate in discussions in good faith, consider offers with an open mind, and work constructively toward a mutually acceptable resolution.  ECRCO will designate staff to facilitate an agreement between the recipient and the complainant and will, where appropriate, assist to reduce the resolution to writing.  Where a verbal agreement to engage in ECR is obtained, ECRCO will send a letter or email to the parties confirming their willingness to engage in the process.  ECRCO may request DCRO assistance, through the Regional Counsels, in facilitating conversations between the parties and ECRCO will consult the appropriate DCRO(s) for input during the ECR process.

To the extent possible, staff assigned to conduct ECR of a complaint shall not be staff assigned to the investigation of that complaint should resolution not be reached through the ECR process.  To maintain confidentiality of the ECR process, any notes taken during ECR by the facilitator and/or any records or other documents offered by either party to the facilitator during ECR will be kept in a separate file and will not be shared with the staff member(s) assigned to investigate the complaint.

At the conclusion of ECR, ECRCO will retain a copy of the ECR Agreement that has been signed by the recipient and the complainant.  Once an agreement is signed, the recipient and complainant must implement the agreement in good faith.  ECRCO will issue a closure letter reflecting the resolution of the complaint, or specific complaint issues, by agreement of the recipient and complainant.  A copy of the ECR Agreement will be attached to the closure letter.  Any outstanding complaint issues not resolved through ECR will be resolved through the complaint investigation and resolution process.  *See* Chapters 2, 4, and 5.

ECRCO will not sign, approve, endorse or monitor the ECR Agreement.  If the complainant believes that the agreement has been breached, the complainant may request within 60 days of the alleged breach that ECRCO review the alleged breach. Once ECRCO has reviewed the alleged breach, ECRCO may open a new complaint to address an alleged act of discrimination.

### Section 3.3        Alternative Dispute Resolution

ECRCO's Alternative Dispute Resolution (ADR) process involves the formal mediation of the complaint issues accepted for investigation between the recipient and the complainant using a professionally trained mediator.  ECRCO considers the ADR process to be a viable option for recipients and complainants to address some, if not all, of the discrimination issues in a complaint.  ECRCO has discretion to determine, on a case by case basis, whether to offer ADR as a possible resolution path.  Based on specific facts and circumstances in each complaint, ECRCO may offer the recipient and the complainant an opportunity to engage in the ADR process.  ECRCO will seek

---

[36] Subject to the applicable federal laws such as the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

the appropriate DCRO's engagement and assistance, through the Regional Counsels, in the ADR process to ensure prompt, effective, and efficient complaint resolution.

The decision to engage in the ADR process is completely voluntary for both the recipient and the complainant. ADR participants can withdraw from the process at any time without penalty if they determine that ADR cannot meet their interests and achieve a satisfactory outcome.

If the recipient and complainant agree to engage in ADR (that is, pursuant to the ADR process, they advise the Conflict Prevention and Resolution Center (CPRC), located in EPA OGC, that they are willing to participate in ADR), ECRCO will suspend its complaint investigation and will issue letters to the recipient and the complainant notifying them when the ADR process has commenced. At that point, the 180-day time period for issuing preliminary findings under the complaint investigation process is tolled.[37] When a complaint is in the ADR process, ECRCO will request periodic procedural updates from CPRC to ensure that the ADR process occurs promptly and without undue delay.

As part of the ADR process, the recipient and complainant must agree upon the selection of a mediator. If the recipient and the complainant have not agreed upon a mediator within 90 calendar days of the ADR offer, ECRCO may withdraw the offer and resume its investigation. If this occurs, ECRCO will notify the recipient and the complainant that ECRCO has resumed its complaint investigation and will issue preliminary findings within 180 days of the start of the investigation – excluding any days spent in the ADR process.

Once the recipient and the complainant agree on a mediator, ECRCO will provide appropriate background materials to the mediator, so that the mediator is familiar with the original complaint as well as the applicable federal nondiscrimination laws, EPA's nondiscrimination regulation, and any applicable policy or guidance. If the ADR participants reach a mutually acceptable agreement to resolve the complaint, CPRC will share the proposed ADR Agreement with ECRCO. Once ECRCO determines the terms reasonably address the issues accepted for investigation, ECRCO will communicate its determination to CPRC to facilitate the recipient's and complainant's signing and finalization of the ADR Agreement.[38]

Once notified by CPRC that the ADR Agreement has been finalized, ECRCO will promptly issue a letter notifying the complainant and recipient that the ADR Agreement serves to resolve the complaint fully and that ECRCO will close the complaint as of the date of the letter. ECRCO will not monitor the implementation of the ADR Agreement. If the complainant alleges a breach of the agreement, the complainant must notify ECRCO of the alleged breach within 60 calendar days of the date the complainant obtains information that an alleged breach occurred. Once the

---

[37] *See* 40 C.F.R. §7.115(c)(1)(i) (stating in relevant part that within 180 calendar days from the start of the complaint investigation, ECRCO will notify the recipient in writing of preliminary findings).

[38] ECRCO will ensure that one of the terms articulated by the mediator is that the complainant and recipient acknowledge that the finalization of the ADR Agreement will result in the full resolution of the complaint and that ECRCO will issue a letter closing the complaint in light of the ADR Agreement.

complainant informs ECRCO of an alleged breach, ECRCO may open a new complaint to address an alleged act of discrimination.

If the ADR process fails, ECRCO will notify the recipient and the complainant that ECRCO has resumed its complaint investigation and will issue preliminary findings within 180 days of the start of the investigation – excluding any days spent in the ADR process.

While the *content of ADR proceedings* is confidential and may not be disclosed outside of the ADR process, the fact that *the recipient and complainant have agreed to engage in the ADR process* is not confidential and may be disclosed publicly by EPA.

# CHAPTER 4   LEGAL STANDARDS AND THEORIES

The investigation and resolution of open complaints is primarily the responsibility of ECRCO. However, collaboration and consultation with the DCROs and Regional Counsels, representing their respective regions, programs and offices, will ensure the prompt, effective, and efficient resolution of cases.  During the course of an investigation, an ECRCO case manager facilitates interviews, gathers information, evaluates facts, and analyzes data through applicable legal theories.  Using the Investigative Plan (IP), case managers will memorialize the organization, development, and analysis of information (*see* Section 2.3).  The analysis of the information and issues in the IP will be guided by ECRCO's Toolkit, which highlights the application of the federal nondiscrimination laws and the legal standards used in investigating and resolving external nondiscrimination complaints at the EPA (*see* Section 4.1).  This Chapter discusses the application of legal theories to evidence obtained through an investigation process.

<u>**Section 4.1**</u>          <u>**Identification of the Applicable Legal Theories**</u>

Part of effective case planning includes the identification of all legal theories that would be applicable to the issues identified for investigation.  The Investigative Plan should establish a factual record sufficient to determine whether discrimination has occurred under any applicable legal theory.  In general, there are three types of legal claims: (a) Disparate/Different Treatment, (b) Disparate Impact/Effects, and (c) Retaliation.

(1) <u>Disparate/Different Treatment</u>

Federal nondiscrimination laws prohibit recipients from intentionally discriminating in their programs and activities based on race, color, national origin, disability, age, or sex.  This is also referred to as disparate treatment.  A claim of intentional discrimination alleges that a recipient intentionally treated individuals differently or otherwise knowingly caused them harm because of their race, color, national origin, disability, age or sex.  Disparate treatment cases can involve either "individual" or "class" discrimination (or both).  *See* U.S. EPA's External Civil Rights Compliance Office Compliance Toolkit ("Toolkit"), Chapter 1, at p.3 (Jan. 18, 2017), https://www.epa.gov/sites/production/files/2017-01/documents/toolkit-chapter1-transmittal_letter-faqs.pdf.

(2) <u>Disparate Impact Discriminatory Effects</u>

Another method for analyzing a federal civil rights violation is known as disparate impact or discriminatory effects.  As noted previously, EPA and other federal agencies are authorized to enact regulations to achieve the law's objectives in prohibiting discrimination.  For example, EPA regulations state:  A recipient shall not use criteria or methods of administering its program or activity which have the effect of subjecting individuals to discrimination.  40 C.F.R. § 7.35(b).  In a disparate impact case, EPA must determine whether the recipient uses a facially neutral policy or practice that has a sufficiently adverse (harmful) and disproportionate effect based on race, color, national origin, or other prohibited discriminatory basis.  To establish an adverse disparate impact, EPA must: (1) identify the specific policy or practice at issue; (2) establish adversity/harm; (3) establish disparity; and (4) establish causation.  *See* Toolkit, at 8, https://www.epa.gov/sites/production/files/2017-01/documents/toolkit-chapter1-transmittal_letter-faqs.pdf.  This is referred to as a prima facie case of disparate impact discrimination.

(1) Retaliation

A complainant may bring a retaliation claim under the nondiscrimination statutes or under EPA's nondiscrimination regulation that prohibit retaliation.  For example, EPA's nondiscrimination regulations provide that "[n]o recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual or group for the purpose of interfering with any right or privilege guaranteed by [this regulation,] or because the individual has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subpart, or has opposed any practice made unlawful by this regulation."  *See* 40 C.F.R. § 7.100.

### Section 4.2        Addressing New Compliance Issues Raised After Opening an Investigation

When during the course of the investigation of a complaint, ECRCO identifies new compliance issues that were not raised in the complaint or identified by ECRCO as issues accepted for investigation, ECRCO may follow up on those issues and address them within the resolution of the original complaint through: the resolution letter; informal resolution agreement; and Voluntary Compliance Agreement; or it may inform the parties of the new issues under investigation and provide technical assistance to resolve those.  ECRCO may also consider the new compliance issues for a possible compliance review, or any other action in its enforcement discretion.  In consultation with the appropriate DCRO(s) and RC(s), ECRCO will inform the recipient of any additional compliance issues and ECRCO's intent to pursue those issues.  Additionally, if ECRCO identifies non-civil rights issues relating to compliance with an environmental law(s), ECRCO will inform the relevant DCRO(s), RC(s), and EPA office.

# CHAPTER 5   PRELIMINARY FINDINGS

EPA's nondiscrimination regulation requires that ECRCO notify the recipient of: 1) preliminary findings within 180 days of the start of the investigation,[39] – excluding any time spent in any failed informal resolution agreement process and/or ADR process; 2) recommendations, if any, for achieving voluntary compliance; and 3) the recipient's right to engage in voluntary compliance negotiations where appropriate.[40]   However, the regulation does not require that preliminary findings be issued for all issues under investigation.  EPA may issue *some* preliminary findings, which will satisfy the requirement in § 7.115(c)(1) and continue its investigation of additional issues beyond 180 days so long as delay is not unreasonable.  Therefore, preliminary findings may range from and include preliminary findings of fact to preliminary findings of law, including a finding of insufficient evidence, on one or more issues under investigation.

### Section 5.1   Preliminary Findings

(1) Generally

ECRCO may issue preliminary findings to a recipient at any point during ECRCO's investigation. However, ECRCO is required to notify recipients of preliminary findings of fact and/or law within 180 calendar days of the acceptance of the complaint, excluding any time spent in any failed informal resolution agreement process and/or ADR process. Preliminary findings can be issued for all or some of the issues accepted for investigation.

During the investigation process, ECRCO establishes a factual record and analyzes the issues accepted for investigation through the applicable legal standards (*see* Section 4.1).  After this evaluation, ECRCO may bring to the recipient's attention certain factual and/or legal determinations through a preliminary finding letter.  For example, if ECRCO's investigation has confirmed specific and important disputed facts, ECRCO may wish to issue preliminary findings of fact. ECRCO may also bring to the recipient's attention potential issues of noncompliance with the nondiscrimination laws enforced by ECRCO through a preliminary findings letter. For example, if ECRCO's investigation at any point reveals that a recipient failed to provide language assistance services at a public hearing to persons with limited-English proficiency where nondiscrimination laws indicate that such services may be required, ECRCO may issue preliminary findings to the recipient detailing this information and requesting to have immediate discussions with the recipient about the failure to provide those services.

(2) Preliminary Findings of Insufficient Evidence

ECRCO may find insufficient evidence to show that an alleged discriminatory act has occurred or is occuring that may violate the federal nondiscrimination statutes and EPA's implementing nondiscrimination regulation.[41]   When ECRCO determines that the preponderance of the evidence

---

[39] *See* 40 C.F.R. § 7.115(c)(1)(i).
[40] 40 C.F.R. § 7.115(c)–(e).
[41] *See* 40 C.F.R. § 7.115(c)(1)(i).

does not support a finding of noncompliance, ECRCO will prepare a letter dismissing the complaint based on a finding of insufficient evidence.  A dismissal letter for a finding of insufficient evidence must include:

- A statement of issue(s) in the case;
- A statement of ECRCO's jurisdictional authority, including recipient status and the statutory basis for the investigation;
- A description of any attempts to informally resolve the complaint;
- A statement of the findings of fact for each, issue(s) supported by any necessary explanation or analysis of the evidence on which the findings are based;
- Conclusions for each issue that reference the relevant facts, the applicable regulation(s), and the appropriate legal standards;
- Notice that the letter of findings is not intended and should not be construed to cover any other issue regarding the recipient's compliance and that the recipient has a continuing responsibility to comply with the federal civil rights laws;
- Notice that letter is not a formal statement of ECRCO policy and should not be relied upon, cited, or construed as such; and
- Notice that with the findings, the complaint is closed as of the date of the letter.

(3) <u>Preliminary Findings of Non-Compliance</u>

When ECRCO determines that the preponderance of the evidence supports a conclusion that the recipient failed to comply with federal nondiscrimination laws, ECRCO will prepare a letter of preliminary finding(s) of noncompliance and may include a proposed Voluntary Compliance Agreement (VCA).  *See* Section 5.2 below.  ECRCO will also notify the EPA Award Official and the Assistant Attorney General for Civil Rights of the preliminary findings of noncompliance.  *See* 40 C.F.R. § 7.115(c)(2).

A preliminary finding of noncompliance letter must include:

- A statement of issue(s) in the case;
- A statement of ECRCO's jurisdictional authority, including recipient status and the statutory basis for the investigation;
- A description of any attempts to informally resolve the complaint;
- A statement of the findings of fact for each, issue(s) supported by any necessary explanation or analysis of the evidence on which the findings are based;
- Conclusions for each issue that reference the relevant facts, the applicable regulation(s), and the appropriate legal standards;
- ECRCO's recommendations for achieving Voluntary Compliance, where appropriate;
- A statement of the recipient's rights to engage in voluntary compliance negotiations, where appropriate (*see* <u>40 C.F.R. § 7.115(c)(1)(iii)</u>).
- A statement of the Recipient's right to submit a response to ECRCO's finding within 50 calendar days, pursuant to <u>40 C.F.R. § 7.115(d)</u>;

- A statement that limits the scope of the decision to (1) the particular applicant or recipient and (2) the particular program, activity, or part of the applicant/recipient, in which the discrimination was found;
- Notice that the letter of findings is not intended and should not be construed to cover any other issue regarding the recipient's compliance and that the recipient has a continuing responsibility to comply with the federal civil rights laws; and
- Notice that letter is not a formal statement of ECRCO policy and should not be relied upon, cited, or construed as such.

(4) Final Letter of Non-Compliance

After receiving the letter of preliminary finding of noncompliance, the recipient will have 50 calendar days to agree to a VCA or submit a written response sufficient to demonstrate that the findings are incorrect, or that compliance may be achieved through steps other than those recommended by ECRCO.  *See* 40 C.F.R. § 7.115(d).  During the 50-day time period, ECRCO will contact and attempt to secure a VCA with the recipient.  If the recipient does not take one of these actions within 50 calendar days after receiving the preliminary notice, ECRCO shall send within 14 calendar days a formal written Final Letter of Non-Compliance to the recipient notifying the recipient of the finding, the action proposed to be taken and the opportunity for an evidentiary hearing.  *See* 40 C.F.R. §7.130(b)(1).  At the same time, ECRCO shall send copies of the Final Letter of Non-Compliance to the DCRO, the Award Official, and Department of Justice's Assistant Attorney General.  *See* 40 C.F.R. §§ 7.115(d) and 7.130(b)(1).  A draft VCA will accompany the Final Letter of Non-Compliance.  The recipient will have 10 calendar days from receipt of the final determination of noncompliance in which to agree to come into voluntary compliance.  *See* 40 C.F.R. § 7.115(e).

### Section 5.2   Voluntary Compliance Agreements

A VCA to address a finding of non-compliance must include actions or steps that, when implemented, will remedy both the individual discrimination at issue as well as any systemic discrimination.

Voluntary Compliance Agreements:

- Must be signed by a person with authority to legally bind the recipient and the Director of ECRCO, *see* 40 C.F.R. § 7.115(f);
- Must be in writing; and
- Must include:
  - Specific act(s) or step(s) the recipient will take to resolve its noncompliance;
  - Dates for implementing each act(s) or step(s);
  - Dates for submission of reports and documentation;
  - Where appropriate, language requiring submission of documents and/or other information or actions for ECRCO's review and approval, and timeframes for their submission;
  - Timeframes requiring the recipient to implement what ECRCO has approved, and language requiring documentation verifying implementation.

The recipient understands that ECRCO will not close the monitoring of the VCA until such time that ECRCO determines that the recipient has fulfilled the terms of the VCA.  If the recipient fails to meet the 10-calendar day deadline (*see* Section 5.1(4)), ECRCO will issue a Notice of Impending Enforcement Action.  *See* Chapter 6.

31

# CHAPTER 6   INITIATION OF ENFORCEMENT ACTION

If the recipient fails to meet the 10-calendar day deadline to come into voluntary compliance after the issuance of a Final Letter of Non-Compliance (*see* Chapter 5), ECRCO will issue a **Notice of Impending Enforcement Action** as outlined in this Chapter.

When ECRCO issues a Notice of Impending Enforcement Action to a recipient, it will include notice to the recipient that EPA will: (1) initiate administrative proceedings to terminate, or refuse to grant or continue financial assistance to the recipient; or (2) use any other means authorized by law, including referring the matter to the Department of Justice (DOJ). (*See* 40 C.F.R. § 7.130). The letter will state the uncorrected violation, the action proposed to be taken, and the opportunity for an evidentiary hearing before an EPA Administrative Law Judge.  *See* 40 C.F.R. § 7.130(b)(1). Where appropriate, if ECRCO determines that it will refer the uncorrected violation to DOJ, ECRCO will issue a letter to the recipient identifying the uncorrected violation and that the case is being referred to DOJ.  Alternatively, the ECRCO may also use any other means authorized by law to obtain compliance.  *See* 40 C.F.R. § 7.130.

# CHAPTER 7   MONITORING OF INFORMAL RESOLUTION AGREEMENTS AND VOLUNTARY COMPLIANCE AGREEMENTS

Effective case resolution monitoring is essential to ensuring compliance with civil rights laws. ECRCO will closely monitor the recipient's implementation of the Informal Resolution Agreement (IRA) or Voluntary Compliance Agreement (VCA) to ensure that the commitments made are implemented.  Case managers will use monitoring tracking tools to identify all commitments and activities to ensure recipient's compliance with the Agreement within agreed upon timeframes. ECRCO will not cease monitoring an IRA or VCA until such time that ECRCO determines that the recipient has fulfilled the terms of the IRA or VCA.

### Section 7.1          Respond to Monitoring Reports and Verify Recipient's Implementation

ECRCO will promptly acknowledge receipt of interim and final monitoring reports.[42]  ECRCO will evaluate the reports and issue an appropriate response (*e.g.* that ECRCO determines actions taken are sufficient or insufficient under the IRA or VCA).  ECRCO must obtain sufficient information to determine whether the commitments made by the recipient have been implemented consistent with the terms of the IRA or VCA.  ECRCO may verify implementation of the commitments by reviewing reports, required documentation, and/or other information submitted by recipients; interviewing the recipients, complainants, and/or other knowledgeable persons; and/or conducting site visit(s).  ECRCO may publicize site visits in order to obtain information from the public concerning the recipient's implementation of the commitments under the IRA or VCA.  ECRCO will also seek the appropriate DCROs' engagement and assistance in the process to verify recipient's implementation.

### Section 7.2          Implementation Concerns

ECRCO will promptly provide notice to the recipient of any deficiencies with respect to implementation of terms of the IRA or VCA, will request appropriate action to address such deficiencies, and will offer appropriate technical assistance to address the deficiencies.  When ECRCO has determined that a recipient has failed to comply with the IRA or VCA commitments for reasons that do not justify modification of the IRA or VCA, ECRCO will take prompt action to address the deficiencies.  Failure or refusal to implement an IRA commitment, may result in ECRCO's re-opening the complaint investigation and/or issuing a preliminary finding as appropriate.  Failure or refusal to implement a VCA commitment will result in ECRCO taking the appropriate action under Section 5.1(4) (final letter of noncompliance) and/or Chapter 6.

---

[42] Monitoring reports consist of information received from a recipient as required by and pursuant to the terms of an Informal Resolution Agreement or the Voluntary Compliance Agreement.

### Section 7.3        Modification of IRA or VCA Agreements

(1) Changed Circumstances Affecting Agreements

ECRCO may agree to modify or terminate an IRA or VCA when it learns that circumstances have arisen that substantially change, fully resolve, or render moot some or all the issues that were addressed by the IRA or VCA.  ECRCO will consult appropriate DCROs in the process to verify the changed circumstance.

(2) New Issues or Concerns That Arise During Monitoring

ECRCO may address a new issue(s) or concern(s) identified for the first time during monitoring by providing technical assistance or considering the issue(s) as a factor(s) to initiate a compliance review.  *(See* Chapter 8).

(3) Approval of Modifications

ECRCO must approve modifications to the IRA or VCA Agreement (*e.g.*, requests to change the substance of any provision in the Agreement, requests for extension of time to submit a report or to complete a required action).  Requests for modification must be documented in the case file. Approved modifications must be set forth in writing and, where appropriate, appended to the original Agreement.  The complainant will be notified in writing of approved modification(s) to the substance of the Agreement and, where appropriate, to extension(s) of the timeframe within which to complete a required act(s).

### Section 7.4        Conclusion of Monitoring

ECRCO will conclude the monitoring of an IRA or VCA when it determines that the recipient has implemented the terms of the IRA or VCA, including any subsequent approved modifications to the Agreement.  ECRCO may also seek the appropriate DCROs' engagement and assistance in verifying implementation.  Prior to concluding the monitoring of the IRA or VCA commitments, ECRCO will contact the complainant to inform them that all commitments have been completed and it intends to close the monitoring.  The recipient and the complainant will be promptly notified in writing that the monitoring of the IRA or VCA has been completed and that the complaint is closed as of the date of the letter.

# CHAPTER 8   COMPLIANCE REVIEWS

All federal agencies are required to maintain an effective program of "post-approval" or award compliance reviews. *See* 28 C.F.R. § 42.407(c).  A compliance review is an ECRCO-initiated investigation of a particular aspect of an EPA recipient's programs or activities to determine compliance with the civil rights laws enforced by ECRCO.  ECRCO's Strategic Plan has prioritized the enhancement of an external compliance program through proactive compliance.  In addition to the regulations implementing nondiscrimination statutes (*see* Section 1.5) that require ECRCO to investigate complaints that are filed with the agency, the regulations specify that ECRCO may periodically conduct compliance reviews to assess the practices of recipients to determine whether they comply with nondiscrimination statutes and regulations.  *See* 40 C.F.R. §§ 7.110, 7.115;  5.605.

**Section 8.1**         **Compliance Reviews**

After selecting a recipient for review, ECRCO will inform the recipient of the nature of and schedule for review and its opportunity to make a written submission responding to, rebutting, or denying the issues raised in the review.  *See* 40 C.F.R. § 7.115(b).  The "initiation date" for the purposes of post-award compliance reviews is the date of the letter notifying the recipient of the compliance review.  These compliance reviews may include information and data requests.  They may also include on-site reviews when ECRCO has reason to believe that discrimination may be occurring in those programs or activities.  *See* 40 C.F.R. § 7.115(a).  Case managers will use the investigation and resolution paths and procedures identified throughout the CRM for compliance reviews, as appropriate.  If the recipient agrees to engage in the informal resolution agreement process, whether after ECRCO's initial offer or at another appropriate time during the investigation process, ECRCO will suspend its compliance review and will issue a letter to the recipient notifying it when informal resolution agreement discussions have commenced.  At that point, the 180-day time period for the compliance review process is tolled.[43]

EPA's nondiscrimination regulation affords ECRCO discretion to determine the substantive issues for investigation and the number and frequency of the investigations.  To address issues of strategic significance in civil rights areas, ECRCO will identify, plan, and implement a docket of proactive activities, including compliance reviews in consultation with the appropriate DCRO(s) and RC(s).  In selecting specific recipients for proactive reviews and activities, ECRCO will consider a number of factors, including statistical data, prior complaints, reports by other EPA offices, information shared by other federal agencies, and other specific and reliable information from communities and/or sources, which further ECRCO's strategic goals.  ECRCO's objective will be to engage early and often with recipients of EPA financial assistance to collaboratively identify resolution approaches to compliance issues.

---

[43] *See* 40 C.F.R. §7.115(c)(1) (stating in relevant part that within 180 calendar days from the start of the complaint investigation, ECRCO will notify the recipient in writing of preliminary findings).

35

ECRCO may also choose to proactively address compliance issues identified during the course of investigation of a complaint. For example, through the resolution of pending complaints, ECRCO has identified an area of strategic significance that significantly impacts EPA financial assistance recipients' ability to comply with their obligations under federal civil rights laws, including Title VI. Specifically, ECRCO has identified the lack of foundational nondiscrimination programs including procedural safeguards required by EPA's regulation, as well as policies and procedures to ensure meaningful access to recipients' programs and activities for persons with disabilities and limited-English proficiency.

Considering this, ECRCO's proactive efforts now include the routine integration of procedural safeguard and access requirements into the resolution of all pending complaints, as appropriate. Although these initiatives are not labeled as "compliance reviews," ECRCO considers that they accomplish the same proactive goal as do compliance reviews: to address issues of strategic significance in civil rights areas and provide an efficient and effective vehicle to deliver important compliance information and assistance to states and other recipients.

### Section 8.2        Pre-Award Compliance Reviews

When conducting pre-award compliance reviews within EPA's financial assistance application processing period, ECRCO will review the information submitted by applicants for EPA financial assistance through EPA Form 4700-4 (EPA Form 4700-4) and any other information that ECRCO determines is necessary for pre-award review. *See* 40 C.F.R. §§ 7.80, 7.110. ECRCO will review applicants'/recipients' responses to the questions in Form 4700-4 to determine whether the responses are complete and whether they are consistent with the EPA nondiscrimination regulation requirements. Where appropriate, ECRCO will provide technical assistance to applicants/recipients to address questions or concerns related to their Form 4700-4 responses.

36

**APPENDIX**

# DEPUTY CIVIL RIGHTS OFFICIALS and TITLE VI CASE MANAGEMENT PROTOCOL ORDERS

In a 2012 report entitled, "Developing a Model Civil Rights Program for the Environmental Protection Agency," the EPA Civil Rights Executive Committee outlined recommendations for strengthening civil rights, equal employment opportunities, and diversity in the workplace. To that end, the Committee also recommended the creation of the Deputy Civil Rights Officials (DCROs) – a cadre of senior level officials in EPA's regional offices and national programs who would assure accountability for civil rights compliance across the agency. As a result, the EPA issued EPA Orders 4700 ("Deputy Civil Rights Officials") and 4701 ("Title VI Case Management Protocol") in 2013. Together, these orders formally established a protocol for processing, investigating, and resolving complaints under Title VI of the Civil Rights Act of 1964 and other non-discrimination laws enforced by ECRCO ("Title VI Protocol"). The Title VI Protocol brings headquarters and regional program offices into a collaborative process for coordinating and committing analytical resources, expertise and technical support needed to investigate and resolve complaints, where necessary.

The DCROs are a critical resource in support of EPA's civil rights program. This CRM contemplates ECRCO going above and beyond to establish a new standard of excellence. This new standard includes the DCROs who serve as civil rights champions throughout the EPA, and who provide prompt programmatic, regulatory, analytical, scientific, and technical expertise and support in addition to their vast network of critical stakeholder contacts at a regional level and in specific program areas. By maximizing the use of the EPA's preexisting, in-house expertise, the EPA relies less on developing redundant competencies in ECRCO or using costly contracts to fill gaps in ECRCO's technical and scientific expertise to effectively investigate and resolve environmental civil rights cases consistent with the agency's commitment to sound science and civil rights law.

Robust internal collaboration will ensure a constructive feedback loop between ECRCO and the DCRO network - where knowledge and expertise are mutually shared, and grows along institutional pathways, and where civil rights is championed throughout the agency. The active feedback loop between ECRCO and the DCROs at key stages of the case investigation and resolution process furthers the promptness, efficiency, and effectiveness of case resolution.

### 1.  EPA Order 4700

This order establishes the position of DCROs within each EPA regional and program office to serve as that office's primary point of accountability for assisting ECRCO with promptly, effectively, and efficiently meeting the EPA's civil rights responsibilities and goals. DCROs will, consistent with applicable laws, provide executive support in furthering the EPA's commitment to creating a model civil rights program. It does not relieve other agency officials, including career and appointed officials, line managers and other staff, of their responsibilities with respect to civil rights.

37

## 2.  **EPA Order 4701**

The purpose of the EPA Order 4701 is to provide cross-agency support for resolving complaints filed under Title VI of the Civil Rights Act of 1964 and other nondiscrimination statutes applicable to recipients of EPA's financial assistance, and to ensure that EPA resources are supportive of the civil rights mission.  It provides that the ECRCO director will oversee and manage the Title VI Protocol to bring together the necessary parties to promptly investigate, adjudicate, or resolve civil rights complaints through a case management team made up of the necessary technical, legal, and policy experts from appropriate offices based on the facts of the civil rights issue, as determined by the ECRCO director.

## 3.  **DCRO Roles and Responsibilities**

This active feedback loop between ECRCO and DCROs includes:

- Immediate notification to appropriate DCRO(s) by ECRCO regarding receipt of complaints;
- Immediate identification by DCROs of a point-of-contact to whom and from whom ECRCO can provide and obtain any information relevant to specific cases;
- Inclusion of DCROs by ECRCO at key stages of case processing to seek input, as well as specific case briefings, and general or issue-specific civil rights trainings;
- Timely inclusion of DCROs and/or their identified point of contact in ECRCO's case-related meetings, as appropriate;
- Immediate notification to ECRCO by DCROs regarding specific programmatic, policy, regulatory, technical or scientific information relevant to specific cases;
- Timely sharing of information gathered by DCROs through engagement with external stakeholders, for example, pertinent/material information suggesting that a civil rights complaint may be filed;
- Timely sharing of information by DCROs regarding local context or facts that could affect a pending case, such as, for example, relevant information gathered by the Office of Environmental Justice that could facilitate comprehensive EPA action in line with the "One EPA" commitment; and
- Similarly, ECRCO recognizes that as part of DCRO's general engagement responsibilities, DCROs may be reviewing and, where appropriate, addressing the concerns of the affected communities outside of the ECRCO civil rights enforcement process as an important complement to further the agency's efforts to make a prompt and visible difference in communities.

**EPA Orders 4700 (DCRO) And 4701 (Title VI Case Management Protocol)**


EPA Order 4700,
DCROs


EPA Order 4701
Title VI Case Manage

(1) <u>EPA Order 4700 (Deputy Civil Rights Officials)</u>



**Identification Number: 4700**
**Approval Date:       05/01/2013**

## Deputy Civil Rights Officials

### I.    <u>Purpose</u>

This order establishes the position of deputy civil rights official within each regional office and assistant administrator's office to serve as that office's primary point of accountability for assisting the Office of Civil Rights with  effectively meeting the U. S. Environmental Protection Agency's civil rights responsibilities and goals. DCROs will, consistent with applicable laws, provide executive support in furthering the EPA's commitment to creating a workplace free of unlawful discrimination and implementing measures to prevent or remedy discrimination by recipients of agency financial assistance. This order establishes the procedures for designating DCROs and outlines the role of DCROs. No statement in this order relieves other agency officials, including career and appointed officials, line managers and other staff, of their responsibilities with respect to civil rights.

### II.   <u>Authority</u>

The authority to establish the position of the DCRO derives from the Administrator's authority to organize the work of the agency under 40 C.F.R. §§1.5(a), 1.23, Section 3 of Reorganization Plan No. 3, and Order 1110.2. The Administrator specifically authorized the establishment of DCROs in a decision memorandum produced by the EPA Executive Committee on Civil Rights and signed by the Administrator on April 13, 2012.

### III.  <u>Background</u>

In March 2011, Administrator Lisa P. Jackson appointed the Civil Rights Executive Committee, chaired by Deputy Administrator Bob Perciasepe, to recommend actions necessary for building a model civil rights program at the agency. After extensive review of the program, the Civil Rights Executive Committee submitted a final report, *Developing a Model Civil Rights Program for the Environmental Protection Agency,* to the Administrator outlining the agency's commitment to strengthening civil rights, equal employment opportunities, diversity in the workplace and revitalizing the agency's implementation of external civil rights laws. The Administrator approved the report and recommendations on April 13, 2012. The Executive Committee highlighted the importance of engaging management from across the agency to successfully implement a model civil rights program, recognizing that the agency's civil rights program cannot solely be the

responsibility of one office or program, but instead must reflect "One EPA" principles. To that end, the Executive Committee identified two recommendations for which formal orders were appropriate: to establish DCROs and to establish a Title VI Case Management Protocol. The Title VI Case Management Protocol is the subject of Order 4701.

The establishment of DCROs through this order advances the agency towards a model civil rights program wherein senior managers across the agency have an explicit role in, and share responsibility for, implementation of the agency's civil rights program and policies. This order does not, however, delegate any authorities that are formally delegated or assigned to the director of the Office of Civil Rights. The director serves as the principal advisor to the Administrator with respect to the agency-wide equal employment opportunity program, affirmative employment programs, and external nondiscrimination program. As such, the director is tasked with providing sound and timely policy advice to the Administrator and other senior management officials on a wide range of issues including but not limited to Titles VI and VII of the Civil Rights Act of 1964, as amended; Title IX of the Education Act Amendments of 1973; Sections 501-504 of the Rehabilitation Act of 1973, as amended; Executive Order 11478; and a number of U.S. Equal Employment Opportunity Commission management directives. Nothing contained in this order changes or supersedes the director's authorities.

## IV.    Mission

DCROs in each program office and region will be accountable for implementing civil rights programs within their respective organizations and will provide senior level involvement in the development of national strategies and policies pertaining to civil rights. As part of their ongoing responsibilities, DCROs will assure the participation of their organization in agency civil rights programs and initiatives including implementation of the Title VI Case Management Protocol established under Order 4701.

## V.    Meeting Requirements and Calendar

The OCR director may call meetings of the DCROs as appropriate, to be determined in consultation with DCROs. DCRO meetings should be held in conjunction with other senior management meetings, such as executive management council meetings. A subset of DCROs or their designees may be called upon by the director to participate in meetings called pursuant to order 4701. Based on their role in ensuring senior leadership accountability in civil rights, DCROs also may be called upon to participate in other agency meetings involving issues or initiatives related to civil rights.

## VI.    Appointment

Within 30 calendar days of the issuance of this order each assistant administrator and regional administrator, the General Counsel, the chief financial officer and the chief of staff shall notify the OCR director of the selection of a DCRO for his/her respective organization. Within 60 calendar days of the issuance of this order, the AA or RA shall by

41

memorandum to the director confirm the appointment of a DCRO for their organization and shall confirm that the role of the DCRO as outlined in section IX of this order has been incorporated into the incumbent's position description. The role of the DCRO shall remain in the position description permanently; however, the AA/RA may, in consultation with the director, change the designation to another official within the organization and make necessary adjustments to position descriptions. Model language for DCRO performance agreements will be developed by the OCR director and brought before the agency's Executive Resources Board by the fourth quarter of FY 2013. The DCRO must have broad management authority to carry out civil rights programs and activities consistent with agency policy and directives within their organization and must be a member of the career senior executive service.

**VII.**   **Alternate Deputy Civil Rights Official**

When necessary, an alternate DCRO (ADCRO), who also must be a member of the career SES, may be appointed by the AA or RA to perform the DCRO role when, for example, the DCRO is recused from a matter or absent. If an ADCRO performs DCRO duties for an on-going or extended period, the official's position description should be amended to include the DCRO role as outlined in Section IX.

**VIII.**   **Persons Acting in a DCRO Position**

Whenever a person is acting in a position that is designated as a DCRO whether by position, re-delegation or appointment, that person assumes the DCRO role. The DCRO designation resides in the position and therefore the role of DCRO is assumed by the incumbent of that position, even on an acting basis.

**IX.**   **Role of the Deputy Civil Rights Officials**

DCROs have broad oversight authority within their respective office or region for implementation of the civil rights program consistent with agency policy and directives, recognizing that offices or regions may need different staffing profiles for some functions. For example, Equal Employment Opportunity counselors are needed in every region, but at headquarters EEO counselors report to OCR rather than individual program offices. DCROs will identify and/or request adequate funding and resources for civil rights work and ensure their organizations have well-functioning policies, processes and management controls for:

1. Assuring that appropriate staff and expertise are available for their organizations to carry out an effective civil rights program including EEO counselors, alternate dispute resolution staff, special emphasis program managers and EEO officers.

2. Developing and implementing the Equal Employment Opportunity Commission's Management Directive 715 Action Plans for their offices and regions that promote

42

equal employment opportunity in a manner consistent with the agency's MD 715 Report, promote diversity and inclusion, and address other issues as required. Ensuring that the goals and objectives are communicated to subordinate management officials.

3. Timely reporting of information for various civil rights and diversity related reports and data-calls including the Equal Employment Opportunity Commission's Management Directive 715.

4. Training civil rights staff consistent with EEOC or OCR policy, and meeting agency-wide mandatory requirements for training managers and employees within their office or region *e.g.* Civil Rights EEO Training and the Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002.

5. Promoting equal employment opportunity and assuring their organization carries out other responsibilities under the agency's civil rights program.

6. Incorporating appropriate EEO and civil rights language into performance agreements as required for managers and as necessary for certain other positions.

7. Facilitating informal EEO complaint resolution in conformance with Delegation 1-39, assuring the broad integration of well-functioning alternate dispute resolution approaches across the agency civil rights and employee relations activities and promoting the use of pre-complaint processes as a means of resolving EEO matters.

8. Effectively participating in and or leading activities including investigations for the purposes of implementing Order 4701, Title VI Case Management Protocol.

9. Effectively participating in the agency's implementation of external civil rights policies for financial assistance monitoring, compliance, grant reviews and other external civil rights laws activities consistent with the Order 4701.

## X.    **Coordination of EPA Civil Rights and Diversity Policies and Strategies**

DCROs will constitute a network of senior officials to provide advice and guidance to the director and other agency senior managers on the development of agency-wide civil rights policies and strategies. In addition, while DCROs have formal responsibilities associated with the agency's civil rights programs, the network also may provide informal advice and guidance to the agency's diversity and inclusion activities/initiatives. OCR and the Office of Diversity, Outreach, and Collaboration, are expected to work in close cooperation to advance their respective missions, and to assure efficient use of resources.

## XI.    **References**

1. Developing a Model Civil Rights Program for the Environmental Protection Agency

2.  Administrator's Approval of Final Report Memorandum
3.  Deputy Administrator's Implementation Memorandum

(2) EPA Order 4701 (Title VI Case Management Protocol)



**Identification Number:**   **4701**
**Approval Date:**                **05/01/2013**

## Title VI Case Management Protocol

**I.      Purpose**

This order formally establishes the Title VI Case Management Protocol for processing, investigating and resolving complaints under Title VI of the Civil Rights Act of 1964 and other nondiscrimination statutes applicable to recipients of the U. S. Environmental Protection Agency assistance[44]. The EPA expects this protocol will improve the agency's ability to review and act on Title VI complaints in a timely way. The Title VI Protocol will bring offices and regions throughout the agency into a consensus-oriented process for coordinating and committing analytical resources, expertise and technical support needed to investigate and reach decisions on Title VI complaints. The Title VI Protocol creates a system to assure clear accountability among agency program offices and regions for conducting investigations and, producing analyses, and it establishes a framework for sustaining high-level attention necessary for timely decision-making. The Office of Civil Rights is expected to establish procedures to improve implementation of this protocol in consultation with Deputy Civil Rights Officials and offices and regions.

**II.     Authority**

The authority to establish the Title VI Protocol derives from the Administrator's authority to organize the work of the agency under 40 C.F.R. §§ 1.5(a), 1.23, and 7.25, Section 3 of Reorganization Plan No. 3 and EPA Order 1110.2. The Administrator authorized the establishment of the Title VI Protocol in a decision memorandum produced by the agency's Civil Rights Executive Committee and signed by the Administrator on April 13, 2012.

---

[44] While this Order refers to "Title VI," it includes all recipient nondiscrimination requirements found in 40 C.F.R. Parts 5 and 7.

45

III.    **Background**

In March 2011, Administrator Lisa P. Jackson appointed the Civil Rights Executive
Committee, chaired by Deputy Administrator Bob Perciasepe, to recommend actions
necessary for building a model civil rights program at the agency. After extensive review of
the program, the Civil Rights Executive Committee submitted the final report, *Developing
a Model Civil Rights Program for the Environmental Protection Agency*, to the
Administrator outlining the agency's commitment to strengthening civil rights, equal
employment opportunities, diversity in the workplace and revitalizing the agency's
implementation of Title VI. The Administrator approved the report and recommendations
on April 13, 2012. The Executive Committee highlighted the importance of engaging
management from across the agency to successfully implement a model civil rights
program, recognizing that the agency's civil rights program cannot solely be the
responsibility of one office or program, but instead must reflect "One EPA" principles. To
that end, the Executive Committee identified two recommendations for which formal
orders were appropriate: to establish the Title VI Protocol and to establish Deputy Civil
Rights Officials. The establishment of DCROs is the subject of Order 4700.

The establishment of the Title VI Protocol order advances the agency towards a model civil
rights program wherein senior managers across the agency have an explicit role in, and
share responsibility for, implementation of the agency's civil rights program and policies.
This order does not however, delegate any authorities that are formally delegated or
assigned to the OCR director. The OCR director serves as the principal advisor to the
Administrator with respect to the agency wide equal employment opportunity programs
and affirmative employment programs and external nondiscrimination program. As such,
the director is tasked with providing sound and timely policy advice to the Administrator
and other senior management officials on a wide range of issues including but not limited
to Titles VI and VII of the Civil Rights Act of 1964, as amended; Title IX of the Education
Act Amendments of 1973; Sections 501504 of the Rehabilitation Act of 1973, as amended;
Executive Order 11478; and a number of U.S. Equal Employment Opportunity
Commission Management Directives. Nothing contained in this order changes or
supersedes the director's authorities.

IV.    **Title VI Network**

The OCR director will coordinate a network of technical, legal, and policy experts and
practitioners from appropriate offices and regions throughout the agency that can serve to
answer questions, provide advice and review draft policies and decisions for Title VI
issues. The network will meet as appropriate, as determined by the director.

V.    **Title VI Case Management Protocol**

The OCR director will oversee and manage the Title VI Protocol to bring together the
necessary parties to investigate, adjudicate or resolve Title VI complaints. All agency
participants engaged in the Title VI Protocol will strive for consensus, seek agreement on

draft decisions and consult with the case management team on recommended final actions. The director will develop standard operating procedures in consultation with offices and regions that include recommended timeframes, goals, milestones and informal resolution processes for the elements listed below. Additionally, OCR will develop as needed appropriate guidance, templates and training to facilitate the effective, and efficient implementation of the provisions of this order. The Title VI Protocol consists of the following elements, at a minimum:

1. OCR will process complaints that are filed with or referred to the agency including: entering the complaint into OCR's Title VI tracking system; creating all necessary official files; preparing and sending appropriate external notification letters pursuant to 40 C.F.R. § 7.120(c) and providing copies of the complaint to the appropriate offices and regions.

2. For filed or referred complaints, OCR will conduct jurisdictional reviews pursuant to 40 C.F.R. § 7.120 after soliciting input and views from other agency offices and regions on whether to refer, reject, or accept a complaint. If ECRCO does not accept the complaint, the remaining elements of this protocol do not apply.

3. If ECRCO accepts the complaint, OCR will lead the development of a Preliminary Case Management Plan in partnership with offices and regions. This plan will propose specific responsibilities for appropriate agency offices and regions, as well as specific time frames for completion of tasks. The Preliminary Case Management Plan will be reviewed by a panel convened as specified at element 4 below.

4. The OCR director will designate a panel to review the Preliminary Case Management Plan and, to the extent possible, reach agreement on organizational roles in case management, investigation, and proposed action. The panel typically will include DCROs or, on a case-by-case basis, other senior officials from organizations with relevant expertise for a particular case or specialized legal, policy or technical expertise in Title VI. In considering the roles of offices and regions in the investigation and decision-making process, the panel will take into account existing expertise and experience, as well as any previous involvement in the case that may adversely affect an appearance of neutrality.

5. Informed by the panel discussion, the OCR director will identify a lead office or region for case management and investigation. The director can assume the lead role in case management and investigation when necessary, for example, to assure the neutrality of an investigation. OCR will remain actively engaged in case management, investigation, and decision-making whether or not the lead office.

6. The lead office or region and OCR will finalize the Case Management Plan and obtain final concurrence from other offices or regions represented on the panel.

47

7. If at any point the panel cannot reach consensus on roles and responsibilities, or on a final Case Management Plan and the milestones included therein, the OCR director will propose resolution of disputed issues. The OCR director will then notify all members of the panel of the proposed resolution and shall provide an opportunity for any member of the panel to request a meeting with the Deputy Administrator to address disputed issues. All members of the panel must be provided an opportunity to attend a meeting with the Deputy Administrator scheduled for the purposes of addressing disputed issues in accordance with this paragraph. The director's proposed resolution becomes final if the Deputy Administrator declines to consider the disputed issues, or declines to direct changes to the director's proposed resolution.

8. As specified in the final Case Management Plan, case teams are led by the office or region, or by OCR, with established governing rules and formal work role definitions. Prior to the start of any investigation, team members will receive briefings on decision criteria, current legal, and policy matters in the Title VI context from OCR and other experts. The briefings will include up-to-date information on decision criteria, guidance, policies, rules and relevant legal and policy precedents.

9. The lead office or region in consultation with OCR (and *vice versa*, if OCR leads the case management team) will lead the investigation and informal resolution efforts, including consulting with an agency dispute resolution specialist in the use of alternative dispute resolution, and complete the investigation(s). The OCR director must approve any informal resolution before it becomes final.

10. The lead office or region in consultation with an EPA dispute resolution specialist will support the use of alternative dispute resolution by complaints and recipients to address issues raised in the complaint.

11. An office or region, when selected to lead the case team, will in writing recommend to OCR final action on a case. OCR, when selected to lead the case team, will in writing provide to offices/regions an opportunity to review and comment on proposed final action on a case.

12. The OCR director is authorized to issue final agency decisions on Title VI cases, but may allow another official to represent the agency on decisions or agreements other than a decision to dismiss a complaint.

**VI.** **References**

1. Developing a Model Civil Rights Program for the U.S. Environmental Protection Agency
2. Administrator's Approval of Final Report Memorandum
3. Deputy Administrator's Implementation Memorandum