# EXHIBIT 13



**State of Louisiana**
DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
P.O. BOX 94005
BATON ROUGE
70804-9005

Jeff Landry
Attorney General

December 9, 2022

*Via Electronic Mail*

Melissa Hoffer
Principal Deputy General Counsel, U.S. E.P.A.
1200 Pennsylvania Avenue, NW
Washington, DC 20460
Hoffer.Melissa@epa.gov

      Re:    Memorialization of Telephone Conference
                EPA Complaint Nos. 01R-22-R6, 02R-22-R6, and 04R-22-R6

Ms. Hoffer:

      I write to memorialize aspects of our November 16, 2022, telephone conference. Our November 16 call started at approximated 1:30 p.m. Central Time, and continued until approximately 2:30 p.m. Central Time. Representatives of USEPA, LDEQ, LDH, and LADOJ were on the call.

**Background and General Process**

      EPA recounted that on October 12, 2022, it issued a letter of concern regarding LDEQ and LDH. EPA elaborated that as part of the external civil rights complaint process, it reached out to LDH and LDEQ regarding complaints, and both LDH and LDEQ expressed interest in informal resolution. EPA has not concluded its investigation, and has not reached final conclusions of fact or law. Based on facts discovered thus far, the letter of concern presents significant concerns that LDH's and LDEQ's actions or non-actions impact black residents in specific parishes.

      EPA explained that Informal resolution typically results in specific commitments that are designed to resolve concerns identified up to the date of resolution. EPA continues to monitor a case until it determines the commitments have been fully implemented. EPA then sends a resolution letter and ceases monitoring. If the commitments are not satisfied, EPA may reopen its investigation.

**Impact of *CARE* Litigation.**

      With regard to deadlines, EPA explained that it was applying the judgment in the *CARE* litigation in the Northern District of California to EPA's letter of concern. EPA acknowledged that its letter of concern covers two distinct complaints—one related to St. John Parish and one related

to St. James Parish—and the *CARE* judgment does not apply to the St. James Parish complaint. EPA explained it believes resolving the two complaints together is the most efficient way to proceed because EPA views them as involving "similar" factual patterns. EPA subsequently retreated on that point and acknowledged "the factual issues are different" but urged that "some commonality" suggested a combined resolution.

Both LDEQ and LADOJ emphasized that they were not parties to the *CARE* litigation, there is no legal reason why they should be bound by that litigation, and that Louisiana is deeply troubled by private litigants being permitted to exercise control over EPA's negotiations with a State. Louisiana was particularly troubled given its understanding that once it enters negotiations with EPA, any otherwise applicable time limits are suspended so as to facilitate those negotiations.[1]

**<u>Lack of Specific Allegations</u>**

LADOJ inquired as to "exactly" what EPA believes LDEQ and LDH are doing wrong, and explained that EPA's letter of concern does not identify specific actions. LADOJ asked that EPA specifically identify any provisions in Louisiana law, any actions, or any inactions that EPA believes conflict with Title VI, and that EPA provide supporting legal analysis.

LADOJ noted that EPA has approved LDEQ's programs in the past, and LADOJ does not understand what is different now. LADOJ explained that both LDEQ and EPA have long-been applying the same rules, and inquired what specifically has changed. EPA responded that it was only able to lay out the elements of disparate impact under Title VI, and the evidence identified in its letter of concern. EPA then stated that it did not "want to use this call to get into the substance of our negotiations."

LADOJ elaborated that EPA's letter purports to indict LDH and LDEQ for decades – if not centuries – of conduct. LADOJ reiterated that EPA needs to identify what, exactly, it believes Louisiana agencies are doing wrong; what specific federal law or regulations are being violated; and what exact remedies does EPA seek.

EPA responded by merely reiterating the elements of a disparate impact claim, and demurred until the parties have a settlement negotiation. EPA then stated "[t]his is not an environmental engagement per se," and "[c]ompliance with environmental laws is not a shield to Title VI."

---

[1] *CAlifornians for Renewable Energy v. U.S.E.P.A.*, No. 4:15-cv-3292 (N.D. Cal.). That case involved specific claims from specific complainants regarding events in Alabama, California, New Mexico, Michigan, and Texas. Louisiana has grave doubt vis-à-vis the district court's unappealed order granting nationwide prospective injunctive relief in connection with future complaints to EPA.

**EPA's Public Actions**

LDEQ noted that it was LDEQ's understanding from its initial contact with EPA that this matter would be negotiated under EPA's case negotiation manual, with a draft IRA, but LDEQ was later told EPA was issuing a public letter. LDEQ inquired as to why—in deviation from the normal process—a public letter was issued. LADOJ explained that EPA's publicizing the issue did not help vis-à-vis good faith negotiations with Louisiana agencies, particularly given the private complainants' litigation against the State of Louisiana. The publicity appeared to be solely for the benefit of the private litigants. Indeed, LADOJ noted that the private litigants' objective is for no permits to issue, and EPA's public letter merely served to further that objective.

**Role of LADOJ**

EPA inquired about the role of LADOJ. LADOJ explained that some of the issues raised by EPA have implications broader than specific agencies. LADOJ has the right to intervene and be involved in any matter where the State has an interest at stake. EPA agreed, and it asked LADOJ to identify email addresses for appropriate contacts.[2]

\* \* \* \* \*

Please promptly let me know if this letter does not accurately reflect our call.

So as to facilitate a more fulsome discussion, we ask that EPA promptly circulate topics for discussion on our upcoming call. We specifically ask that EPA address (1) its specific objections or concerns with Louisiana's procedures, etc., as alluded to in EPA's letter of concern, and (2) its position regarding impact of the *CARE* litigation.

Very truly yours,

Joseph Scott St. John
Deputy Solicitor General

---

[2] LADOJ identifies the following contacts and email addresses:

Liz Murrill (murrille@ag.louisiana.gov)
Scott St. John (stjohnj@ag.louisiana.gov)
Angelique Freel (freela@ag.louisiana.gov)
Ryan Seidemann (seidemannr@ag.louisiana.gov)
Ryan Montegut (montegutr@ag.louisiana.gov)

3