# EXHIBIT 18

## St. John, Joseph

| | |
|---|---|
| **From:** | Dorka, Lilian (she/her/hers) <Dorka.Lilian@epa.gov> |
| **Sent:** | Wednesday, April 26, 2023 9:28 PM |
| **To:** | Courtney Burdette |
| **Cc:** | Payne, James (Jim); Scott, Ronald; Seidemann, Ryan; Isales, Daniel; Khan, Zahra; Hoang, Anhthu; O'Lone, Mary; Rhodes, Julia (she/her/hers); McGuire, James; Payne, James (Jim); Stephen Russo; McKinney, Cheryl; Moncrieffe, Marcia; Bates, Warren; Montegut, Ryan; David McCay; Neal Elliott; Murrill, Elizabeth; Bliss Higgins; St. John, Joseph; Tim.Hardy@bswllp.com; Jones, Jasimiel; Celena Cage; Andrews, Suzanne; jill.clark@la.gov; Brungard, Morgan; Freel, Angelique; John B. King; Carroll Devillier; Danielle L. Borel; Schoellkopf, Lynde (she/her/hers); Moncrieffe, Marcia; McGuire, James |
| **Subject:** | RE: Request for Information to LDEQ for EPA Complaint Nos. 01R-22 R6, 0 and 04R-22-R6 |
| **Attachments:** | RFI LDEQ_02R-22-R6  2023.04.26 FINAL.pdf |

*CAUTION:  This email originated outside of Louisiana Department of Justice.  Do not click links or open attachments unless you recognize the sender and know the content is safe.*

Hello Courtney,

As I previously mentioned, EPA is continuing its work on these cases on two tracks to ensure these cases are resolved by July 13, 2023. That is, we are continuing to work productively with the LA agencies to negotiate Informal Resolution Agreements while at the same time continuing our fact-finding to ensure we have gathered all appropriate information and are in a position to issue preliminary findings in the event we are unable to reach IRAs. To that latter point, attached, please find a Request for Information for LDEQ.

Please let us know if you have any questions. I will not be in the office over the next couple of days, but please feel free to reach out to Mary O'Lone or Dan Isales if you have any questions or concerns.  Thanks very much for your assistance.

Regards,

Lilian
Lilian Sotolongo Dorka
Deputy Assistant Administrator for External Civil Rights
Office of Environmental Justice and External Civil Rights
U.S. Environmental Protection Agency
202-564-9649 - Office
202-695-9888 – Cell
Pronouns: she/her/ella
Hablo español
The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.



**UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY**

WASHINGTON, D C. 20460

Office of Environmental Justice and External Civil Rights

April 26, 2023

**In Reply Refer to:**
EPA Complaint Nos. 01R-22-R6 and 04R-22-R6

Roger Gingles, Secretary
Louisiana Department of Environmental Quality
602 North Fifth Street
Baton Rouge, LA  70802
officesec@la.gov

**Re: Request for Information**

Dear Secretary Gingles:

On April 6, 2022, EPA accepted for investigation two complaints alleging violations of Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. *§§* 2000d et seq., (Title VI) and EPA's nondiscrimination regulation, at 40 C.F.R. Part 7.  EPA accepted for investigation EPA Complaint No. 01R-22-R6 (*LDEQ and the Denka Facility*) filed by Earthjustice and Lawyers' Committee for Civil Rights Under Law on behalf of Concerned Citizens of St. John and Sierra Club against the Louisiana Department of Environmental Quality (LDEQ) and EPA Complaint No. 04R-22-R6 (*LDEQ and the Industrial Corridor and the Formosa Facility*) filed by Tulane Environmental Law Clinic on behalf of Stop the Wallace Grain Terminal, Inclusive Louisiana, RISE St. James, and the Louisiana Bucket Brigade LDEQ.

With respect to LDEQ, EPA accepted the following issues for investigation:

1.  Whether LDEQ uses criteria or methods of administering its air pollution control program that have the intent and/or effect of subjecting persons to discrimination on the basis of race in violation of Title VI of the Civil Rights Act of 1964 and EPA's implementing regulation at 40 C.F.R. Part 7 §§7.30 and 7.35, including, but not limited and with respect to:

    a.  LDEQ's acts or failures to undertake certain actions related to the Denka facility in connection with its air pollutant emissions, and the predominantly Black residents of St. John the Baptist Parish; and

    b.  LDEQ's decision to reaffirm issuance of 14 new air permits for the Formosa facility, and the predominantly Black residents of St. James Parish.

Secretary Gingles

    2.   Whether LDEQ has and is implementing the procedural safeguards required under 40 C.F.R. Parts 5 and 7 that all recipients of federal assistance must have in place to comply with their general nondiscrimination obligations, including specific policies and procedures to ensure meaningful access to LDEQ services, programs, and activities, for individuals with limited English proficiency (LEP) and individuals with disabilities, and whether LDEQ has a public participation policy and process that is consistent with Title VI and the other federal civil rights laws, and EPA's implementing regulation at 40 C.F.R. Parts 5 and 7.[1]

As was explained in our April 6, 2022, letter, EPA's nondiscrimination regulation provides that OECRC shall attempt to resolve complaints informally whenever possible. *See* 40 C.F.R. § 7.120(d)(2).  EPA and LDEQ are actively engaged in Informal Resolution Agreement (IRA) discussions. Pursuant to an agreement reached on March 10, 2023, between EPA, LDEQ, and the Complainants, EPA must resolve 01R-22-R6 by July 11, 2023 (through a fully executed IRA or the issuance of Preliminary Findings). While EPA appreciates LDEQ's engagement in the IRA process and is encouraged by the progress of the negotiations to date, we have not yet reached an IRA. Therefore, as EPA has previously conveyed to LDEQ, EPA must continue its fact finding on a parallel track with the IRA process to ensure that EPA has gathered all appropriate information and is in a position to resolve the complaint through the issuance of Preliminary Findings, should EPA and LDEQ not be able to reach an IRA by the agreed upon date.

Pursuant to its authority under 40 C.F.R. §§ 7.115 and 7.120, OECRC requests LDEQ to produce the information and documents outlined in the enclosed Request for Information (Enclosure 1) within **thirty (30) calendar days** of receipt of this letter.  EPA is in receipt of LDEQ's responses to the Complaints and accompanying Attachments dated June 3, 2022, and June 20, 2022. To the extent LDEQ provided documents responsive to EPA's Request for Information, simply reference the document(s) in LDEQ's response to the Request for Information.[2] Please provide any other information that LDEQ would like EPA to consider while investigating the issues in this complaint.

After reviewing the information LDEQ provides in response to this request, EPA may request additional

---

[1] *See* Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000(d) *et seq*.; Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; *Lau v. Nichols*, 414 U.S. 563, 568-69 (1974) (finding that the government properly required language services to be provided under a recipient's Title VI obligations not to discriminate based on national origin); 40 C.F.R. § 7.30, 7.35.  *See also* U.S. EPA, Guidance to Environmental Protection Agency Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons. 69 FR 35602 (June 25, 2004) (available at https://www.epa.gov/sites/production/files/2020-02/documents/title_vi_lep_guidance_for_epa_recipients_2004.06.25.pdf); U.S. EPA, Title VI Public Involvement Guidance for EPA Assistance Recipients Administering Environmental Permitting Programs, 71 FR 14207 (March 21, 2006) (available at https://www.epa.gov/sites/production/files/2020-02/documents/title_vi_public_involvement_guidance_for_epa_recipients_2006.03.21.pdf); U.S. EPA, Procedural Safeguards Checklist for Recipients, at https://www.epa.gov/sites/production/files/2020-02/documents/procedural_safeguards_checklist_for_recipients_2020.01.pdf (rev. Jan. 2020) (which provides a more detailed explanation of nondiscrimination obligations and best practices); U.S. EPA, Disability Nondiscrimination Plan Sample, at https://www.epa.gov/sites/production/files/2020-02/documents/disability_nondiscrimination_plan_sample_for_recipients_2020.01.pdf. (2017).

[2] *See* Enclosure 2, Instruction No. 11.

Secretary Gingles
information and/or documents, so please preserve all electronic communications and other documents

that may be relevant to the investigation. Please provide the name and telephone number of the individual who compiled the information in response to this Request for Information, and the name and telephone number of the individual to whom EPA should direct any future questions.

If you have questions about this letter, please feel free to contact me at (202) 564-9649, by email at Dorka.Lilian@epa.gov; Mary O'Lone at (202) 564-4992, by email at Olone.mary@epa.gov; or Daniel Isales (410) 305-3016, by email at Isales.daniel@epa.gov.

Sincerely,

*Lilian S. Dorka*

Lilian Sotolongo Dorka
Deputy Assistant Administrator for External Civil Rights
Office of Environmental Justice and External Civil Rights

Enclosures (2)

cc:     Courtney Burdette
        Executive Counsel – Legal Affairs
        Louisiana Department of Environmental Quality

        Ariadne Goerke
        Deputy Associate General Counsel
        Civil Rights & Finance Law Office
        U.S. EPA

        Stacey Dwyer
        Deputy Regional Administrator
        Deputy Civil Rights Official
        U.S. EPA Region 6

        James McGuire
        Regional Counsel
        U.S. EPA Region 6

3

Secretary Gingles

**Enclosure 1**
**EPA File No. 07R-22-R4**
**Request for Information: Mississippi Department of Environmental Quality (MDEQ)**

Please produce the following information using the instructions included as Enclosure 2. A response must be sent to the EPA within **thirty (30) calendar days** of LDEQ's receipt of this request for information letter.

1) All LDEQ regulations, policies, processes, procedures, practices (including best practices), guidance, and training and other informational materials provided to LDEQ staff, permit applicants, or the public regarding the evaluation of the effects of chloroprene and ethylene oxide (EtO) emissions and related constituent, co-pollutants or break down pollutants for any facility seeking Title V air permits and/or synthetic minor air permits.

2) A list of instances where LDEQ evaluated the effects of chloroprene emissions and related constituent, co-pollutants or break down pollutants on communities surrounding the Denka Performance Elastomer LLC (Denka) facility in Reserve, Louisiana, and any other facility emitting chloroprene in Louisiana. The list should include:

   a) the name of the facility;
   b) the address including the Parish the facility is located or was proposed to be located;
   c) the LDEQ AI number and link to EDMS entry for the facility
   d) a copy of the evaluation;
   e) the date the evaluation was completed;
   f) whether and how it was made available to the public or permit applicants; and
   g) a short description of any actions LDEQ took as a result of these evaluations or whether LDEQ decided to not take action and a short description of the reason for that decision.

3) A list of the instances where LDEQ evaluated the effects of EtO emissions and related constituent, co-pollutants or break down pollutants on communities surrounding facilities emitting EtO. The list should include:

   a) the name of the facility;
   b) the address including the Parish the facility is located or was proposed to be located; and
   c) the LDEQ AI number and link to EDMS entry for the facility;
   d) the date the evaluation was completed;
   e) a copy of the evaluation;
   f) whether and how it was made available to the public or permit applicants; and
   g) a short description that of any actions LDEQ took as a result of these evaluations or whether LDEQ decided to not take action and a short description of the reason for that decision.

4) All LDEQ regulations, policies, processes, procedures, practices (including best practices), guidance, and training and other informational materials provided to LDEQ staff, the public, or permit

4

Secretary Gingles

applicants regarding the determination of administrative completeness of Title V or synthetic minor permit applications including the criteria used to determine whether a permit application is administratively complete; which LDEQ officials have authority to make administrative completeness determinations; and what documentation of the determination must be retained.

5) A list of all the Title V and synthetic minor permits actions where LDEQ determined that the application was not administratively complete. The list should include:

   a) the name of the facility;
   b) the Parish where the facility is or was proposed to be located;
   c) the LDEQ AI number;
   d) a short description of why it was not administratively complete, and a link to the EDMS document and the page number where the discussion memorializing LDEQ's analysis and decision begins.

6) All LDEQ regulations, policies, processes, procedures, practices (including best practices), guidance, and training and other informational materials provided to LDEQ staff, the public, or permit applicants regarding the deadline(s) or benchmarks dates by which to process air permit action requests and the process for determining whether it is appropriate to delay the processing of the requests, including the criteria used to determine whether a delay/administrative continuance of the permit is appropriate; which LDEQ officials are authorized to approve delays; and what documentation of the decision to delay must be retained.

7) A list of the administratively complete initial Title V and synthetic minor permit applications and administratively complete applications for major modifications to Title V and synthetic minor permits for which LDEQ did not make a decision on the application within the Federal statutory timeframe 18 months. The list should include:

   a) the name of the facility;
   b) the Parish the facility is in or was proposed to be located;
   c) the LDEQ AI number;
   d) the LDEQ official who authorized the delay; and
   e) a short description of the reasons why LDEQ decided to delay or not delay the permit action.

8) All LDEQ regulations, policies, processes, procedures, practices (including best practices), guidance, and training and other informational materials provided to LDEQ staff, permit applicants, and the public regarding the analysis of the environmental and/or environmental justice impacts pursuant to state public trust constitutional provisions as interpreted in *Save Ourselves, Inc. v. La. Env't Control Comm'n,* 452 So.2d 1152, 1157 (La. 1984) (*Save Ourselves*).

9) All LDEQ regulations, policies, processes, procedures, practices (including best practices), guidance, and training and other informational materials provided to LDEQ staff, permit applicants, and the public regarding the identification and evaluation of potential adverse disparate impacts based on

Secretary Gingles
> race, color, or national origin from initial Title V or synthetic minor permits, as well as modifications and renewals of those permits.

10) A list of all the initial Title V and synthetic minor permits and major modifications to Title V and synthetic minor permits issued by LDEQ. The list should include:

   a)   the name of the facility;
   b)   the Parish where the facility is located;
   c)   the LDEQ AI number;
   d)   whether LDEQ conducted an analysis of the environmental and/or environmental justice impacts pursuant to state constitutional provisions and *Save Ourselves* and:
       i)   if yes:
           (1) a short description of any LDEQ actions taken as a result of the analysis (*e.g.,* additional permit conditions, permit denial);
           (2) a link to the EDMS document and the page number where the discussion memorializing LDEQ's analysis and decision begins;
       ii)  if not, a short description of the reasons why that analysis was not conducted;

   e)   whether an analysis of potential adverse disparate impacts based on race, color, or national origin was conducted:
       i)   if yes:
           (1) a short description of any LDEQ actions taken as a result of the analysis (*e.g.,* additional permit conditions, permit denial);
           (2) a link to the EDMS document and the page number where the discussion memorializing LDEQ's analysis and decision begins;
       ii)  if not, a short description of the reason(s) why that analysis was not conducted;

   f)   whether concerns about potential harms from the permit action were raised during the public comment period:
       i)   if yes,
           (1) a link to the EDMS document that memorializes the comment and LDEQ's response;
           (2) a short description any LDEQ actions taken as a result of the analysis (*e.g.,* additional permit conditions, permit denial) and a link to the EDMS document and the page number where the discussion memorializing LDEQ's analysis and decision begins;

   g)   whether concerns about potential discriminatory effects from the permit action were raised during the public comment period:
           (1) if yes, a short description any LDEQ actions taken as a result of the analysis (*e.g.,* additional permit conditions, permit denial); and
           (2) a link to the EDMS document and the page number where the discussion memorializing LDEQ's analysis and decision begins;

Secretary Gingles

11) A list of all instances where LDEQ staff considered Parish Health Reports or other materials or information created by the Louisiana Department of Health (LDH) in the permit writing/approval process for Title V and synthetic minor air permits. The list should include:

    a) the name of the facility;
    b) the Parish the facility is in or was proposed to be located;
    c) the LDEQ AI number;
    d) a link to the EDMS document that memorializes the analysis or evaluation of the information provided by LDH and the page number in the document where the discussion begins; and
    e) a short description of any actions LDEQ took because of information provided by LDH and why those actions were taken.

12) A list of all instances where LDEQ denied an initial Title V and synthetic minor permits or major modifications to or renewals of those permits. The list should include:

    a) the name of the facility;
    b) the Parish the facility is in or was proposed to be located;
    c) the LDEQ AI number;
    d) whether concerns regarding discriminatory impacts from the permit action were raised;
    e) a short description of the reason for the denial and a link to the EDMS document that memorializes the decision and the page number in the document where the discussion begins;
    f) the final outcome of the permit (*e.g.,* the permit was approved following modifications by the permit applicant); and
    g) a link to the EDMS document that memorializes the decision(s) and their reasoning and the page number in the document where the discussion begins.

13) All LDEQ regulations, policies, processes, procedures, practices (including best practices), guidance, and training and other informational materials provided to LDEQ staff, the public, or permit applicants regarding the process for reopening a permit including when and how requests for reopening a permit decision can be made; the criteria used to decide whether to grant a request to reopen; and the identity of LDEQ officials who make the decisions of whether to reopen and whether to make changes to the permit.

14) A list of all instances where LDEQ has considered the reopening of an air permit response to a request. The list should include:

    a) the name of the facility;
    b) the Parish in which the facility is located or was proposed;
    c) the LDEQ AI number;
    d) the date of the request;
    e) the reason given for the request;
    f) the identity of the LDEQ official who made or will make the decision of whether LDEQ would consider the request or dismiss it;

7

Secretary Gingles

    g)  the identity of the LDEQ official who, if the permit was reopened, made or will make the final decision regarding whether any changes to the permit;

    h)  a short description of any changes to the permit and the reasons for those changes;

    i)  if no changes were made, a short description of the reason for that decision; and

    j)  a link to the EDMS document that memorializes the decision(s) and their reasoning and the page number in the document where the discussion begins.

15) A list of all instances where LDEQ has reopened an air permit in the absence of a request to reopen. The list should include:

    a)  the name of the facility;

    b)  the Parish in which the facility is located or was proposed;

    c)  the LDEQ AI number;

    d)  the identity of the LDEQ official who made the decision of whether to reopen the permit;

    e)  a short description of the reason(s) for reopening;

    f)  a short description of any changes to the permit, and if no changes were made, a short description of the reason for that decision;

    g)  the identity of the LDEQ official made the decision regarding any changes to the permit; and

    h)  a link to the EDMS document that memorializes the decision and its reasoning and the page number in the document where the discussion begins.

16) Please identify the LDEQ official who exercises the delegated authority to approve Title V air permits and synthetic minor air permits.

17) All LDEQ regulations, policies, processes, procedures, practices (including best practices), guidance, and materials used to train LDEQ staff related to odor complaints filed with LDEQ including the:

    a)  intake and docketing of the complaints;

    b)  identifying deadlines or date benchmarks for resolving the complaints;

    c)  investigating the complaints;

    d)  addressing or remedying the complaints; and

    e)  communicating information about LDEQ response action or reason for LDEQ inaction to complainants and/or the impacted community(ies).

18) A list of all instances where LDEQ received odor complaints. The list should include:

    a)  how LDEQ received notice of the odor issue;

    b)  the date(s) LDEQ received notice of the odor issue;

    c)  if a facility was identified by the complaint, the name and LDEQ AI number of the facility;

    d)  the community and the Parish where the presence of the odor was reported;

    e)  a short description of LDEQ's response to the odor complaint including whether, why, when, and how LDEQ:

Secretary Gingles
      i) investigated the odor complaint;
      ii) the measures LDEQ implemented itself or required a facility to implement to address odors found; and
      iii) provided updates to the complainant(s) or affected communities on LDEQ activities regarding the odor complaint(s).

19) All LDEQ regulations, policies, processes, procedures, practices (including best practices), guidance, and materials used to train LDEQ staff related to complaints from residents regarding impacts from facility operation other than odors (*e.g.,* lights, noise, particulate matter, property damage such as corrosion) filed with LDEQ including the:

    a) intake and docketing of the complaints;
    b) identifying deadlines or date benchmarks for resolving the complaints;
    c) investigating the complaints;
    d) addressing or remedying the complaints; and
    e) communicating information about LDEQ response action or reason for LDEQ inaction to complainants and/or the impacted community(ies).

20) A list of all instances where LDEQ received complaints regarding impacts from facility operation other than odors. The list should include:

    a) how LDEQ received notice of the issue;
    b) the date(s) LDEQ received notice of the issue;
    c) if a facility was identified by the complaint, the name and LDEQ AI number of the facility;
    d) the community and the Parish where the presence of the issue as reported;
    e) a short description of LDEQ's response to the complaint including whether, why, when, and how LDEQ
        i) investigated the complaint;
        ii) the measures LDEQ implemented itself or required a facility to implement to address issues found; and
        iii) provided updates to the complainant(s) or affected communities on LDEQ activities regarding the complaint(s).

21) All LDEQ regulations, policies, processes, procedures, practices (including best practices), guidance, and materials used to train LDEQ staff about whether and where to deploy LDEQ's Mobile Air Monitoring Laboratories (MAMLs) and how data gathered by the MAML is used.

22) A list of each time LDEQ considered deploying its MAMLs. The list should include:

    a) the location, including the Parish where LDEQ considered deploying the MAMLs;
    b) the dates deployment was under consideration by LDEQ;
    c) whether LDEQ deployed or did not deploy the MAML;
    d) a short description of:

Secretary Gingles
- i) the reason MAML deployment was under consideration (*e.g.,* resident requests, complaints);
- ii) why it was or was not deployed;
- iii) what pollutants it monitored and why;
- iv) what pollutants it did not monitor and why;
- v) how long did the MAML operate and why; and
- vi) whether and how LDEQ used the data gathered by the MAML.

23) All LDEQ regulations, policies, processes, procedures, practices (including best practices), guidance, and materials used to train LDEQ staff related to LDEQ's decisions about whether and where to deploy/implement its Temporary Located Community Ambient Air Monitor Program (TLC), including the criteria for selection of communities for participation in this program.

24) A list of each time LDEQ considered deploying/implementing its TLC Ambient Air Monitors. The list should include:

  a) the location, including the Parish, where LDEQ considered deploying/implementing its TLC Ambient Air Monitors;
  b) the dates when LDEQ was considering whether to deploy/implement the TLC Ambient Air Monitors in each community;
  c) whether LDEQ considers the community as an "underserved community" as referenced on its TLC Ambient Air Monitor Program s webpage[3];
  d) whether LDEQ did or did not deploy/implement the TLC Ambient Air Monitors;
  e) a short description of:
    - i) the reason use of the TLC Ambient Air Monitors was under consideration;
    - ii) the reason the TLC Ambient Air Monitors were or were not used;
    - iii) what pollutants were monitored and why;
    - iv) what pollutants were not monitored that the TLC Ambient Air Monitors had the capability to monitor and why;
    - v) how long the monitors were in place and why; and
    - vi) whether and how the data gathered by the TLC Ambient Air Monitors was used by LDEQ.

25) All LDEQ regulations, policies, processes, procedures, criteria, practices (including best practices), guidance, and materials used to train LDEQ staff, related to LDEQ's updating of existing Louisiana Toxic Air Pollutant Ambient Air Standards (TAP AASs) or listing of new TAP AASs.

26) A list of all the instances since the creation of the first set of TAP AAS where LDEQ updated an existing TAP AAS or added a new TAP AAS. The list should include:

  a) each TAP AAS that was updated or added;
  b) the date the TAP AAS was updated or added; and
  c) a short description of the reason/basis for the update or addition.

---

[3] https://deq.louisiana.gov/page/tlc-air-monitoring

Secretary Gingles

27) In its response to Complaint 04R-22-R6, LDEQ stated that it "has an internal environmental equity work group that meets regularly to discuss environmental justice and equity-related matters . . . which serves as "resource to identify potential concerns and provide feedback and recommendations to the LDEQ Secretary."[4] Please provide the following information related to the environmental equity group:

   a) identify the LDEQ officials who currently constitute the LDEQ internal environmental equity work group;
   b) any charter or description of the purpose or charge to the LDEQ internal environmental equity work group;
   c) from January 1, 2018 until the date of this response,
      i) a list of the dates LDEQ's internal environmental equity work group has met; and
      ii) any minutes, emails, or other documents that memorialize the LDEQ internal environmental equity work group's discussions of environmental justice and equity-related potential concerns, and feedback given and/or recommendations made about environmental justice and equity-related matters; from 2018 until the date of this response;
   d) from January 1, 2013 until the date of this response:
      i) identify the LDEQ officials who participated on the LDEQ internal environmental equity work group and the dates of their participation; and
      ii) any reports prepared by or accomplishments of the LDEQ internal environmental equity work group.

28) LDEQ also stated in its response to Complaint 04R-22-R6 that it "believes its environmental justice best practices are adequate, are based on years of independent study, . . . "[5]  Please provide all:

   a) LDEQ policies, processes, procedures, practices, guidance, and materials used to train LDEQ staff related to LDEQ's environmental justice best practices; and
   b) documents LDEQ consulted and/or relied upon during its years of independent study to develop its environmental justice best practices.

29)  Describe and provide all policies and practices related to promoting consistency in the implementation of the LDEQ regulations, policies, processes, procedures, practices (including best practices), and guidance identified in response to the RFIs above.

---

[4] LDEQ Response to Administrative Complaint No. 04R-22-R6 dated June 20, 2022, p. 10.
[5] Id.

11

Secretary Gingles

## Enclosure 2

## INFORMATION REQUEST

### INSTRUCTIONS

For the purpose of this Request for Information, "Document" is any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

1. LDEQ must answer each request separately, fully, and in writing, even if such a response is a statement reflecting that no responsive information or documents exist.

2. Please restate the request in full before setting forth LDEQ's answer or listing corresponding documents.

3. For requests 4, 6, 8, 9, 13, 16, 17, 19, 23, 24, and 29 above, EPA requests that LDEQ produce responsive information and responsive documents in effect from January 1, 2018, to the date of the response to this request. For each responsive document produced indicate the date the item was created, issued, and/or in effect and provide a short explanation of whether and how it was made available to each of the following:  LDEQ staff, the permit applicant, the public.

4. For requests 5, 7, 10- 12, 14, 15, 18, and 20 above, EPA requests LDEQ produce responsive information from January 1, 2018, to the date of the response to this request in the following Parishes: Ascension, Caddo, Calcasieu, Lafourche, LaSalle, St. James, St. John the Baptist, and Vermillion.

5. For requests 21 and 22 above, EPA requests LDEQ produce responsive information and documents from January 1, 2019, to the date of the response to this request. For each document produced in response to request 21 indicate the date the item was created, issued, and/or in effect and provide a short explanation of whether and how it was made available to each of the following:  LDEQ staff, the permit applicant, the public.

6. For requests 1- 3 and 25-28 above, EPA requests LDEQ produce all responsive information.

7. If the responsive documents are available on the internet, LDEQ may provide links rather than submitting an electronic or hard copy.

8. LDEQ may provide responsive documents electronically or in hard copy. However, electronic submissions are preferred. Should LDEQ choose to produce .pdf electronic documents, do not create separate .pdf files for each page of a single document. Provide all materials in unredacted format.

12

Secretary Gingles

9.  LDEQ should organize and label each responsive document to correspond to the particular numbered request in this letter.

10. If a document is responsive to more than one question, this must be so indicated and only one copy of the document needs to be provided.

11. If the responsive documents were previously produced to EPA *in this matter*, LDEQ may identify the document, date, and method of production, and indicate how the referenced document is responsive to a specific question. No additional copies of the document are required.

12. Identify each person whom LDEQ relied on or consulted with in preparing its responses to each question of this information request. Provide the individuals' names, titles, job duties and duration of employment with LDEQ. If they are not an employee of LDEQ, identify their employer and provide their names, title, job duties and duration of employment with their employer. For each person identified provide the individual's last known business addresses, last known telephone numbers (work, home and mobile), and email addresses.

13. "Identify" when used in reference to a person means provide the same facts requested in Instruction #12 above for persons relied on or consulted in preparing responses.

14. "Describe" when used in reference to a document means the type of document (*e.g.*, letter, memorandum, training materials, chart), a brief description of the nature of the information in the document, its author, its date, and the identity of all recipients.

15. For each document consulted, examined, or referred to in the preparation of LDEQ's responses to these RFIs or that contains information responsive to a RFI, provide a true and correct copy of each such document if not already being produced in response to another specific question.

16. If requested information or documents are not known or are not available to LDEQ at the time of LDEQ's response to this information request, but later becomes known or available to LDEQ, please supplement response to the EPA within **fifteen (15) calendar days** of discovery of the responsive information. Moreover, should LDEQ find at any time after submission of response that any portion is or becomes false, incomplete or misrepresents the facts, LDEQ must provide the EPA with a corrected response as soon as possible.

17.  Where prompted to explain its response, LDEQ should make a good faith and reasonable effort to provide a full and detailed statement explaining the basis for its response.