# EXHIBIT 34

# EPA General Terms and Conditions
# Effective October 1, 2018

**1.  Introduction**

(a)  The recipient and any sub-recipient must comply with the applicable EPA general terms and conditions outlined  below. These terms and conditions are in addition to the assurances and certifications made as part of the award  and terms, conditions or restrictions reflected on the official assistance award document. Recipients **must** review their official award document for additional administrative and programmatic requirements. Failure to comply  with the general terms and conditions outlined below and those directly reflected on the official assistance award document may result in enforcement actions as outlined in 2 CFR 200.338 and 200.339.

(b)  If the EPA General Terms and Conditions have been revised, EPA will update the terms and conditions when it provides additional funding (incremental or supplemental) prior to the end of the period of performance of this agreement. The recipient must comply with the revised terms and conditions after the effective date of the EPA action that leads to the revision.  Revised terms and conditions do not apply to the recipient's expenditures of EPA funds or activities the recipient carries out prior to the effective date of the EPA action.  EPA will inform the recipient of revised terms and conditions in the action adding additional funds.

**2.   Uniform Administrative Requirements, Cost Principles and Audit Requirements for Federal Awards**  This award is subject to the requirements of the Uniform Administrative Requirements, Cost Principles and Audit  Requirements for Federal Awards; Title 2 CFR, Parts 200 and 1500. 2 CFR 1500.1, Adoption of 2 CFR 200,  states Environmental Protection Agency adopts the Office of Management and Budget (OMB) guidance Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards to Non-Federal  Entities (subparts A through F of 2 CFR 200), as supplemented by 2 CFR Part 1500, as the Environmental Protection Agency (EPA) policies and procedures for financial assistance administration. 2 CFR Part 1500 satisfies the requirements of 2 CFR 200.110(a) and gives regulatory effect to the OMB guidance as supplemented by 2 CFR Part 1500. This award is also subject to applicable requirements contained in EPA programmatic regulations located in 40 CFR Chapter 1 Subchapter B.

**2.1. Implementing Procurement Standards.** Per 2 CFR 200.110, there is a three-year grace period available to non-Federal entities for implementation of the procurement standards in 2 CFR 200.317  through 200.326.  As detailed in the 2015 OMB Compliance Supplement and OMB's July 2017 Frequently Asked Questions, non-Federal entities  choosing to delay implementation will need to specify in their documented policies and procedures that  they continue to comply with 40 CFR Part 30 or 31, as applicable, for three additional fiscal years which  begins after December 26, 2014.

**2.2. Effective Date and Incremental or Supplemental Funding.** Consistent with the OMB Frequently  Asked Questions at https://cfo.gov/cofar on Effective Date and Incremental Funding, any new funding  through an amendment (supplemental or incremental) on or after December 26, 2014, and any unobligated  balances (defined at 200.98) remaining on the award at the time of the amendment, will be subject to the requirements of the Uniform Administrative Requirements, Cost Principles and Audit Requirements (2  CFR 200 and 1500).

# Financial Information

3.  **Reimbursement Limitation**
    EPA's financial obligations to the recipient are limited by the amount of federal funding awarded to date as   reflected on the award document. If the recipient incurs costs in anticipation of receiving additional funds from   EPA, it does so at its own risk. See 2 CFR 1500.8

4.  **Automated Standard Application Payments (ASAP) and Proper Payment Draw Down**

    **Electronic Payments.**  Recipients must be enrolled or enroll in the Automated Standard Application for Payments (ASAP) system to receive payments under EPA financial assistance agreements unless:

    - EPA grants a recipient specific exception or the assistance program has received a waiver from this requirement;
    - The recipient is exempt from this requirement under 31 CFR 208.4; or,
    - The recipient is a fellowship recipient pursuant to 40 CFR Part 46.

    EPA will not make payments to recipients until the ASAP enrollment requirement is met unless the recipients fall under one of the above categories. Recipients may request exceptions using the procedures below but only EPA programs may obtain waivers.
    To enroll in ASAP, complete the ASAP Initiate Enrollment form located at:
    http://www2.epa.gov/financial/forms and email it to LVFC-grants@epa.gov or mail it to:

    USEPA LVFC
    4220 S. Maryland Pkwy Bldg. C, Suite 503
    Las Vegas, NV 89119

    Under this payment mechanism, the recipient initiates an electronic payment request online via ASAP, which is approved or rejected based on the amount of available funds authorized by EPA in the recipient's ASAP account. Approved payments are credited to the account at the financial institution of the recipient organization set up by the recipient during the ASAP enrollment process. Additional information concerning ASAP and enrollment can be obtained by contacting the EPA Las Vegas Finance Center (LVFC), at 702-798-2485, or by visiting:
    https://www.fiscal.treasury.gov/fsservices/gov/pmt/asap/asap_home.htm.

    EPA will grant exceptions to the ASAP enrollment requirement only in situations in which the recipient demonstrates to EPA that receiving payment via ASAP places an undue administrative or financial management burden on the recipient or EPA determines that granting the waiver is in the public interest.  Recipients may request an exception to the requirement by following the procedures specified in RAIN-2018-G06.

    **Proper Payment Drawdown (for recipients other than states)**

    a.  As required by 2 CFR 200.305(b), the recipient must draw funds from ASAP only for the minimum amounts needed for actual and immediate cash requirements to pay employees, contractors, subrecipients or to satisfy other obligations for allowable costs under this assistance agreement. The timing and amounts of the drawdowns must be as close as administratively feasible to actual disbursements of EPA funds.  Disbursement within 5 business days of drawdown will comply with this requirement and the recipient agrees to meet this standard when performing this award.

    b.  Recipients may not retain more than 5% of the amount drawn down, or $1,000 whichever is less, 5 business days after drawdown to materially comply with the standard. Any EPA funds subject to this paragraph that remain undisbursed after 5 business days must be fully disbursed within 15 business days of draw down or be returned to EPA.

c.  If the recipient draws down EPA funds in excess of that allowed by paragraph b., the recipient must contact LVFC-grants@epa.gov for instructions on whether to return the funds to EPA.  Recipients must comply with the requirements at 2 CFR 200.305(b)(8) and (9) regarding depositing advances of Federal funds in interest bearing accounts.

d. Information on how to repay EPA via check is available at  https://www.epa.gov/financial/makepayment. Instructions on how to return funds to EPA electronically via ASAP are available at www.fms.treas.gov/asap.

e.  Failure on the part of the recipient to materially comply with this condition may, in addition to EPA recovery of the un-disbursed portions of the drawn down funds, lead to changing the payment method from advance payment to a reimbursable basis.  EPA may also take other remedies for noncompliance under 2 CFR 200.207 and/or 200.338.

f. If the recipient believes that there are extraordinary circumstances that prevent it from complying with the 5-business day disbursement requirement throughout the performance period of this agreement, recipients may request an exception to the requirement by following the procedures specified in RAIN-2018-G06. EPA will grant exceptions to the 5-business day disbursement requirement only if the recipient demonstrates that compliance places an undue administrative or financial management burden or EPA determines that granting the exception is in the public interest.

## Selected Items of Cost

5. **Consultant Cap**

   EPA participation in the salary rate (excluding overhead) paid to individual consultants retained by recipients or  by a recipient's contractors or subcontractors shall be limited to the maximum daily rate for a Level IV of the  Executive Schedule, available at: https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/, to be adjusted annually. This limit applies to consultation services of designated individuals with specialized skills who are paid at a daily or hourly rate. This rate does not include transportation and subsistence costs for travel performed (the recipient will pay these in accordance with their normal travel reimbursement practices).

   Subagreements with firms for services which are awarded using the procurement requirements in Subpart D of 2 CFR 200 are not affected by this limitation unless the terms of the contract provide the recipient with responsibility for the selection, direction and control of the individuals who will be providing services under the contract at an hourly or daily rate of compensation. See 2 CFR 1500.9.

6. **Establishing and Managing Subawards**

   If the recipient chooses to pass funds from this assistance agreement to other entities, the recipient must comply  with applicable provisions of 2 CFR Part 200 and the EPA Subaward Policy, which may be found at:  https://epa.gov/grants/epa-subaward-policy.

   As a pass-through entity, the recipient agrees to:

   6.1. Be responsible for selecting subrecipients and as appropriate conducting subaward competitions using a  system for properly differentiating between subrecipients and procurement contractors under the standards at 2  CFR 200.330 and EPA's supplemental guidance in Appendix A of the EPA Subaward Policy.

   a. For-profit organizations and individual consultants, in almost all cases, are not eligible

subrecipients under  EPA financial assistance programs and the pass-through entity must obtain prior written approval from EPA's  Award Official for subawards to these entities unless the EPA-approved budget and work plan for this  agreement contain a precise description of such subawards.

**b.** Stipends and travel assistance for trainees (including interns) and similar individuals who are not are not  employees of the pass-through entity must be classified as participant support costs rather than subawards as   required by 2 CFR 200.75 and 2 CFR 200.92.

**6.2.** Establish and follow a system that ensures all subaward agreements are in writing and contain all of the   elements required by 2 CFR 200.331(a). EPA has developed a template for subaward agreements that is available  in Appendix D of the EPA Subaward Policy.

**6.3.** Prior to making subawards, ensure that each subrecipient has a "unique entity identifier." This identifier is  required for registering in the System for Award Management (SAM) and by 2 CFR Part 25 and 2 CFR  200.331(a)(1). The unique entity identifier currently is the subrecipient's Data Universal Numbering System  (DUNS) number. Information regarding obtaining a DUNS number and registering in SAM is available in the  General Condition of the pass-through entity's agreement with EPA entitled **"Central Contractor Registration/System for Award Management and Universal Identifier Requirements"** T&C of the pass-through entity's agreement with the EPA.

**6.4.** Ensure that subrecipients are aware that they are subject to the same requirements as those that apply to the  pass-through entity's EPA award as required by 2 CFR 200.331(a)(2). These requirements include, among others:

**a.** Title VI of the Civil Rights Act and other Federal statutes and regulations prohibiting discrimination in   Federal financial assistance programs, as applicable.

**b.** Reporting Subawards and Executive Compensation under Federal Funding Accountability and Transparency Act (FFATA) set forth in the General Condition pass-through entity's agreement with EPA  entitled **"Reporting Subawards and Executive Compensation."**

**c.** Limitations on individual consultant fees as set forth in 2 CFR 1500.9 and the General Condition of the  pass-through entity's agreement with EPA entitled **"Consultant Fee Cap."**

**d.** EPA's prohibition on paying management fees as set forth in General Condition of the pass-through  entity's agreement with EPA entitled "**Management Fees**."

**e.** The Procurement Standards in 2 CFR Part 200 including those requiring competition when the subrecipient  acquires goods and services from contractors (including consultants). EPA provides general information on other statutes, regulations and Executive Orders on the Grants internet  site at www.epa.gov/grants. Many Federal requirements are agreement or program specific and EPA encourages pass-through entities to review the terms of their assistance agreement carefully and consult with  their EPA Project Officer for advice if necessary.

**6.5.** Establish and follow a system for evaluating subrecipient risks of noncompliance with Federal statutes,  regulations and the terms and conditions of the subaward as required by 2 CFR 200.331(b) and document the  evaluation. Risk factors may include:
**a.** Prior experience with same or similar subawards;
**b.** Results of previous audits;
**c.** Whether new or substantially changed personnel or systems, and;
**d.** Extent and results of Federal awarding agency or the pass-through entity's monitoring.

**6.6.** Establish and follow a process for deciding whether to impose additional requirements on subrecipients based on risk factors as required by 2 CFR 200.331(c). Examples of additional requirements authorized by 2 CFR 200.207 include:

    **a.** Requiring payments as reimbursements rather than advance payments;

    **b.** Withholding authority to proceed to the next phase until receipt of evidence of acceptable performance   within a given period of performance;

    **c.** Requiring additional, more detailed financial reports;

    **d.** Requiring additional project monitoring;

    **e.** Requiring the non-Federal entity to obtain technical or management assistance, and

    **f.** Establishing additional prior approvals.

**6.7.** Establish and follow a system for monitoring subrecipient performance that includes the elements required by 2 CFR 200.331(d) and report the results of the monitoring in performance reports as provided in the reporting terms and conditions of this agreement.

**6.8.** Establish and maintain an accounting system which ensures compliance with the $25,000 limitation at 2 CFR 200.68 on including subaward costs in Modified Total Direct Cost for the purposes of distributing indirect costs.

**6.9.** Work with EPA's Project Officer to obtain the written consent of EPA's Office of International and Tribal Affairs (OITA), prior to awarding a subaward to a foreign or international organization, or a subaward to be performed in a foreign country even if that subaward is described in a proposed scope of work.

**6.10.** Obtain written approval from EPA's Award Official for any subawards that are not described in the approved work plan in accordance with 2 CFR Part 200.308.

**6.11.** Obtain the written approval of EPA's Award Official prior to awarding a subaward to an individual if the EPA-approved scope of work does not include a description of subawards to individuals.

**6.12.** Establish and follow written procedures under 2 CFR 200.302(b)(7) for determining that subaward costs are  allowable in accordance with 2 CFR Part 200, Subpart E and the terms and conditions of this award. These procedures may provide for allowability determinations on a pre-award basis, through ongoing monitoring of costs  that subrecipients incur, or a combination of both approaches provided the pass-through entity documents its determinations.

**6.13.** Establish and maintain a system under 2 CFR 200.331(d)(3) and 2 CFR 200.521(c) for issuing management  decisions for audits of subrecipients that relate to Federal awards. However, the recipient remains accountable to EPA for ensuring that unallowable subaward costs initially paid by EPA are reimbursed or mitigated through offset with allowable costs whether the recipient recovers those costs from the subrecipient or not.

**6.14.** As provided in 2 CFR 200.332, pass-through entities must obtain EPA approval to make fixed amount  subawards. EPA is restricting the use of fixed amount subawards to a limited number of situations that are authorized in official EPA pilot projects. Recipients should consult with their EPA Project Officer regarding the status of these pilot projects.

By accepting this award, the recipient is certifying that it either has systems in place to comply with the requirements described in Items 7.1 through 7.14 above or will refrain from making subawards until the systems are designed and implemented.

**7.  Management Fees**

Management fees or similar charges in excess of the direct costs and approved indirect rates are <u>not</u> allowable. The term "management fees or similar charges" refers to expenses added to the direct costs in order to accumulate and reserve funds for ongoing business expenses; unforeseen liabilities; or for other similar costs which are not  allowable under this assistance agreement. Management fees or similar charges may not be used to improve or  expand the project funded under this agreement, except to the extent authorized as a direct cost of carrying out the scope of work.

8. **Federal Employee Costs**
The recipient understands that none of the funds for this project (including funds contributed by the recipient as cost sharing) may be used to pay for the travel of Federal employees or for other costs associated with Federal participation in this project unless a Federal agency will be providing services to the recipient as authorized by a Federal statute.

9. **Foreign Travel**
   **EPA policy requires that all foreign travel must be approved by its Office of International and Tribal Affairs.** The recipient agrees to obtain prior EPA approval before using funds available under this agreement for international travel unless the trip(s) are already described in the EPA approved budget for this agreement.  Foreign travel includes trips to Mexico and Canada but does not include trips to Puerto Rico, the U.S. Territories or possessions.  Recipients that request post-award approval to travel frequently to Mexico and Canada by motor vehicle (e.g. for sampling or meetings) may describe their proposed travel in general terms in their request for EPA approval.  Requests for prior approval must be submitted to the Project Officer for this agreement.

10. **The Fly America Act and Foreign Travel**
The recipient understands that all foreign travel **funded under this assistance agreement** must comply with the Fly America Act.  All travel must be on U.S. air carriers certified under 49 U.S.C. Section 40118, to the extent that service by such carriers is available even if foreign air carrier costs are less than the American air carrier.

# Reporting and Additional Post-Award Requirements

11. **Central Contractor Registration/System for Award Management and Universal Identifier  Requirements**

    11.1.  **Requirement for System for Award Management ([SAM](#))** Unless exempted from this requirement  under 2 CFR 25.110, the recipient must maintain the currency of the organization's information in SAM  until the submittal of the final financial report required under this award or receipt of the final payment, whichever is later. This requires that the recipient reviews and updates the information at least annually after the initial registration, and more frequently if required by changes in the information or another award term.

    11.2.  **Requirement for Data Universal Numbering System (DUNS) numbers.** If the recipient is authorized  to make subawards under this award, the recipient:
    a.  Must notify potential subrecipients that no entity (definition paragraph 12.3 of this award term) may  receive a subaward unless the entity has provided its DUNS number.
    b.   May not make a subaward to an entity unless the entity has provided its DUNS number.

    11.3.   **Definitions**.  For the purposes of this award term:
    a.  **System for Award Management (SAM)** means the Federal repository into which an entity must  provide information required for the conduct of business as a recipient. Additional information  about registration procedures may be found at the System for

Award Management (SAM) Internet  site: https://www.sam.gov.

**b.**   **Data Universal Numbering System (DUNS) number** means the nine-digit number established  and assigned by Dun and Bradstreet, Inc. (D&B) to uniquely identify business entities. A DUNS  number may be obtained from D&B by telephone (currently 866-705-5711) or the Internet  (currently at http://fedgov.dnb.com/webform)

**c.**   **Entity**, as it is used in this award term, means all of the following, as defined at 2 CFR part 25,  subpart C:

   **11.3.c.1.**   A Governmental organization, which is a State, local government, or Indian tribe;

   **11.3.c.2.**   A foreign public entity;

   **11.3.c.3.**   A domestic or foreign nonprofit organization;

   **11.3.c.4.**   A domestic or foreign for-profit organization; and

   **11.3.c.5.**   A Federal agency, but only as a subrecipient under an award or subaward to a non- Federal entity.

**d.**   **Subaward:**

   **11.3.d.1.**   This term means a legal instrument to provide support for the performance of any portion  of the substantive project or program for which the recipient received this award and that the  recipient awards to an eligible subrecipient.

   **11.3.d.2.**   The term does not include procurement of property and services needed to carry out the   project or program (for further explanation, see 2 CFR 200 Subpart D).

   **11.3.d.3.**   A subaward may be provided through any legal agreement, including an agreement that  the recipient considers a contract.

**e.**   **Subrecipient** means an entity that:

   **11.3.e.1.**   Receives a subaward from the recipient under this award; and

   **11.3.e.2.**   Is accountable to the recipient for the use of the Federal funds provided by the subaward.

## 12.  Reporting Subawards and Executive Compensation

### 12.1.  Reporting of first-tier subawards.

**a.**   **Applicability.** Unless the recipient is exempt as provided in paragraph 12.4. of this award term, the recipient must report each action that obligates $25,000 or more in Federal funds that does not include Recovery  funds (as defined in section 1512(a)(2) of the American Recovery and  Reinvestment Act of 2009, Pub. L. 111-5) for a subaward to an entity (see definitions in paragraph 10.5 of this award term).

**b.**   **Where and when to report.**  (1) The recipient must report each obligating action described in  paragraph 10.1.1 of this award term to www.fsrs.gov. (2) For subaward information, report no later  than the end of the month following the month in which the obligation was made. (For example, if  the obligation was made on any date during the month of November of a given year, the obligation must be reported by no later than December 31 of that year.)

**c.**   **What to report.** The recipient must report the information about each obligating action as  described in the submission instructions available at: http://www.fsrs.gov.

### 12.2.  Reporting Total Compensation of Recipient Executives.

**a.**   **Applicability and what to report.** The recipient must report total compensation for each of their  five most highly compensated executives for the preceding completed fiscal year, if:

   **12.2.a.1.**   the total Federal funding authorized to date under this award is $25,000 or more;

   **12.2.a.2.**   in the preceding fiscal year, the recipient received:(i.) 80 percent or more of their annual  gross revenues from Federal procurement contracts (and subcontracts) and Federal financial  assistance subject to the Transparency Act, as defined at 2 CFR

170.320 (and subawards); (ii.)  and $25,000,000 or more in annual gross revenues from Federal procurement contracts (and  subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); and

**12.2.a.3.**    The public does not have access to information about the compensation of the executives  through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of  1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To  determine if the public has access to the compensation information, see the U.S. Security and  Exchange Commission total compensation filings at:  http://www.sec.gov/answers/execomp.htm.)

**b.**    **Where and when to report.** The recipient must report executive total compensation described in  paragraph 12.2.a of this award term: (i.) As part of the registration Central System for Award  Management profile available at www.sam.gov. (ii.) By the end of the month following the month  in which this award is made, and annually thereafter.

**12.3. Reporting of Total Compensation of Subrecipient Executives.**

**a.**    **Applicability and what to report.** Unless exempt as provided in paragraph 12.4. of this award  term, for each first-tier subrecipient under this award, the recipient shall report the names and total  compensation of each of the subrecipient's five most highly compensated executives for the  subrecipient's preceding completed fiscal year, if:

**12.3.a.1.**    in the subrecipient's preceding fiscal year, the subrecipient received: (i.) 80 percent or  more of its annual gross revenues from Federal procurement contracts (and subcontracts) and  Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and  subawards); and (ii.) $25,000,000 or more in annual gross revenues from Federal procurement  contracts (and subcontracts), and Federal financial assistance subject to the Transparency Act  (and subawards); and

**12.3.a.2.**    The public does not have access to information about the compensation of the executives  through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of  1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986.  (To determine if the public has access to the compensation information, see the U.S. Security and  Exchange Commission total compensation filings at:  http://www.sec.gov/answers/execomp.htm.)

**b.**    **Where and when to report.** The recipient must report subrecipient executive total compensation  described in paragraph 12.3.a. of this award term:

**12.3.b.1.**    To the recipient.

**12.3.b.2.**    By the end of the month following the month during which the recipient makes the  subaward.  For example, if a subaward is obligated on any date during the month of October  of a given year (i.e., between October 1 and 31), the recipient must report any required  compensation information of the subrecipient by November 30 of that year.

**12.4. Exemptions**

**a.**    If, in the previous tax year, the recipient had gross income, from all sources, under $300,000,  the  recipient is exempt from the requirements to report:

**12.4.a.1.**    subawards, and the total compensation of the five most highly compensated executives of  any subrecipient.

**12.5. Definitions.** For purposes of this award term:

**a.**    **Entity** means all of the following, as defined in 2 CFR Part 25: (i.) A Governmental organization,   which is a State, local government, or Indian tribe; (ii.) A foreign public entity; (iii.) A domestic or  foreign nonprofit organization; (iv.) A domestic or foreign for-profit organization; (v.) A Federal  agency, but only as a subrecipient under an award or subaward to a non-Federal entity.

      **b.**     **Executive** means officers, managing partners, or any other employees in management positions.

      **c.**     **Subaward:**

         **12.5.c.1.**    This term means a legal instrument to provide support for the performance of any portion  of the substantive project or program for which you received this award and that the recipient  award to an eligible subrecipient.

         **12.5.c.2.**    The term does not include procurement of property and services needed to carry out the  project or program (for further explanation, see 2 CFR 200 Subpart D).

         **12.5.c.3.**    A subaward may be provided through any legal agreement, including an agreement that  the recipient or a subrecipient considers a contract.

      **d.**     **Subrecipient** means an entity that:

         **12.5.d.1.**    Receives a subaward from the recipient under this award; and

         **12.5.d.2.**    Is accountable to the recipient for the use of the Federal funds provided by the subaward.

      **e.**     **Total compensation** means the cash and noncash dollar value earned by the executive during the  recipient's or subrecipient's preceding fiscal year and includes the following (for more information  see 17 CFR 229.402(c)(2)):

         **12.5.e.1.**    Salary and bonus.

         **12.5.e.2.**    Awards of stock, stock options and stock appreciation rights. Use the dollar amount  recognized for financial statement reporting purposes with respect to the fiscal year in  accordance with the Statement of Financial Accounting Standards No. 123 (Revised 2004)  (FAS 123R), Shared Based Payments.

         **12.5.e.3.**    Earnings for services under non-equity incentive plans. This does not include group life,  health, hospitalization or medical reimbursement plans that do not discriminate in favor of  executives, and are available generally to all salaried employees.

         **12.5.e.4.**    Change in pension value. This is the change in present value of defined benefit and  actuarial pension plans.

         **12.5.e.5.**    Above-market earnings on deferred compensation which is not tax-qualified.

         **12.5.e.6.**    Other compensation, if the aggregate value of all such other compensation (e.g.  severance, termination payments, value of life insurance paid on behalf of the employee,  perquisites or property) for the executive exceeds $10,000.

## 13. Recipient Integrity and Performance Matters - Reporting of Matters Related to Recipient Integrity and  Performance

### 13.1. General Reporting Requirement

If the total value of your currently active grants, cooperative agreements, and procurement contracts from all  Federal awarding agencies exceeds $10,000,000 for any period of time during the period of performance of  this Federal award, then you as the recipient during that period of time must maintain the currency of  information reported to the System for Award Management (SAM) that is made available in the designated  integrity and performance system (currently the Federal Awardee Performance and Integrity Information System (FAPIIS)) about civil, criminal, or administrative proceedings described in paragraph 2 of this award  term and condition. This is a statutory requirement under section 872 of Public Law 110-417, as amended (41 U.S.C. 2313). As required by section 3010 of Public Law 111-212, all information posted in the designated  integrity and performance system on or after April 15, 2011, except past performance reviews required for  Federal procurement contracts, will be publicly available.

### 13.2. Proceedings About Which You Must Report

Submit the information required about each proceeding that:

      **a.**     Is in connection with the award or performance of a grant, cooperative agreement, or procurement  contract from the Federal Government;

      **b.**     Reached its final disposition during the most recent five-year period; and

      **c.**     Is one of the following:

**13.2.c.1.** A criminal proceeding that resulted in a conviction, as defined in paragraph 5 of this award term and condition;

**13.2.c.2.** A civil proceeding that resulted in a finding of fault and liability and payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more;

**13.2.c.3.** An administrative proceeding, as defined in paragraph 5. of this award term and condition, that resulted in a finding of fault and liability and your payment of either a monetary fine or penalty of $5,000 or more or reimbursement, restitution, or damages in excess of $100,000; or

**13.2.c.4.** Any other criminal, civil, or administrative proceeding if:

**13.2.c.4.1.** It could have led to an outcome described in paragraph 13.2.c.1, 13.2.c.2, or 13.2.c.3 of this award term and condition;

**13.2.c.4.2.** It had a different disposition arrived at by consent or compromise with an acknowledgment of fault on your part; and

**13.2.c.4.3.** The requirement in this award term and condition to disclose information about the proceeding does not conflict with applicable laws and regulations.

**13.3. Reporting Procedures**

Enter in the SAM Entity Management area the information that SAM requires about each proceeding described in paragraph 2 of this award term and condition. You do not need to submit the information a second time under assistance awards that you received if you already provided the information through SAM because you were required to do so under Federal procurement contracts that you were awarded.

**13.4. Reporting Frequency**

During any period of time when you are subject to the requirement in paragraph 11.1 of this award term and condition, you must report proceedings information through SAM for the most recent five year period, either to report new information about any proceeding(s) that you have not reported previously or affirm that there is no new information to report. Recipients that have Federal contract, grant, and cooperative agreement awards with a cumulative total value greater than $10,000,000 must disclose semiannually any information about the criminal, civil, and administrative proceedings.

**13.5. Definitions**

For purposes of this award term and condition:

**a.** Administrative proceeding means a non-judicial process that is adjudicatory in nature in order to make a determination of fault or liability (*e.g.,* Securities and Exchange Commission Administrative proceedings, Civilian Board of Contract Appeals proceedings, and Armed Services Board of Contract Appeals proceedings). This includes proceedings at the Federal and State level but only in connection with performance of a Federal contract or grant. It does not include audits, site visits, corrective plans, or inspection of deliverables.

**b.** Conviction, for purposes of this award term and condition, means a judgment or conviction of a criminal offense by any court of competent jurisdiction, whether entered upon a verdict or a plea, and includes a conviction entered upon a plea of nolo contendere.

**c.** Total value of currently active grants, cooperative agreements, and procurement contracts includes—

**13.5.c.1.** Only the Federal share of the funding under any Federal award with a recipient cost share or match; and

**13.5.c.2.** The value of all expected funding increments under a Federal award and options, even if not yet exercised.

## 14. Federal Financial Reporting (FFR)

Pursuant to 2 CFR 200.327 and 200.343, EPA recipients must submit the Federal Financial Report (SF-425) at least annually and no more frequently than quarterly. EPA's standard reporting frequency is annual unless an EPA Region has included an additional term and condition specifying greater reporting frequency within this award document. EPA recipients must submit the SF-425 no later than

30 days after the end of each specified reporting  period for quarterly and semi-annual reports, and 90 calendar days for annual and final reports. Extension of reporting due dates may be approved by EPA upon request of the recipient. The FFR form is available on the internet at: http://www2.epa.gov/financial/forms. All FFRs must be submitted to the Las Vegas Finance Center (LVFC) via email LVFC-grants@epa.gov or mail it to:

USEPA LVFC
4220 S. Maryland Pkwy Bldg. C, Suite 503
Las Vegas, NV 89119

The LVFC will make adjustments, as necessary, to obligated funds after reviewing and accepting a final Federal Financial Report. Recipients will be notified and instructed by EPA if they must complete any additional forms for the closeout of the assistance agreement.

**15. Indirect Cost Rate Agreements**
This term and condition implements EPA's Indirect Cost Policy for Recipients of EPA Assistance Agreements (IDC Policy) and applies to all EPA assistance agreements unless there are statutory or regulatory limits on IDCs.

In order for the assistance agreement recipient to use EPA funding for indirect costs, the IDC category of the recipient's assistance agreement award budget must include an amount for IDCs and at least one of the following must apply:

- With the exception of "exempt" agencies and Institutions of Higher Education as noted below, all recipients must have one of the following current (not expired) IDC rates, including IDC rates that have been extended by the cognizant agency:
  - Provisional;
  - Final;
  - Fixed rate with carry-forward;
  - Predetermined;
  - 10% *de minimis* rate authorized by 2 CFR 200.414(f)
  - EPA-approved use of one of the following on an exception basis for EPA agreements:
    - 10% *de minimis* as detailed in section 6.3 of the IDC Policy; or
    - Expired fixed rate with carry-forward as detailed in section 6.4.a. of the IDC Policy.
- "Exempt" state or local governmental departments or agencies are agencies that receive up to and including $35,000,000 in Federal funding per the department or agency's fiscal year, and must have an IDC rate proposal developed in accordance with 2 CFR 200 Appendix VII, with documentation maintained and available for audit.
- Institutions of Higher Education must use the IDC rate in place at the time of award for the life of the assistance agreement (unless the rate was provisional at time of award, in which case the rate will change once it becomes final). As provided by 2 CFR Part 200, Appendix III(C)(7), the term "life of the assistance agreement", means each competitive segment of the project. Additional information is available in the regulation.

IDCs incurred during any period of the assistance agreement that are not covered by the provisions above are not allowable costs, and must not be drawn down by the recipient. Recipients may budget for IDCs pending approval of their IDC rate by the cognizant Federal agency or an exception granted by EPA under section 6.3 or 6.4 of the IDC Policy.  However, recipients may not draw down IDCs until their rate is approved or EPA grants an exception.

This term and condition does not govern indirect rates for subrecipients or recipient procurement

contractors under EPA assistance agreements. Pass-through entities are required to comply with 2 CFR 200.331(a)(4) when establishing indirect cost rates for subawards.

See the Indirect Cost Guidance for Recipients of EPA Assistance Agreements for additional information.

**16. Audit Requirements**

In accordance with 2 CFR 200.501(a), the recipient hereby agrees to obtain a single audit from an independent  auditor, if their organization expends $750,000 or more in total Federal funds in their fiscal year beginning on or  after December 26, 2014.

The recipient must submit the form SF-SAC and a Single Audit Report Package within 9 months of the end of the  recipient's fiscal year or 30 days after receiving the report from an independent auditor. The SF-SAC and a Single Audit Report Package MUST be submitted using the Federal Audit Clearinghouse's Internet Data Entry System available at:
https://harvester.census.gov/facides/(S(3wauez2yufokbe3engv0dtek))/account/login.aspx.
For  complete information on how to accomplish the single audit submissions, you will need to visit the Federal Audit Clearinghouse Web site: https://harvester.census.gov/facweb/Default.aspx.

**17. Closeout Requirements**

Reports required for closeout of the assistance agreement must be submitted in accordance with this agreement.  Submission requirements and frequently asked questions can also be found at:
http://www2.epa.gov/grants/frequently-asked-questions-about-closeout-information.

**18. Suspension and Debarment**

Recipient shall fully comply with Subpart C of 2 C.F.R. Part 180 entitled, "Responsibilities of Participants Regarding Transactions Doing Business With Other Persons," as implemented and supplemented by 2 C.F.R. Part 1532. Recipient is responsible for ensuring that any lower tier covered transaction, as described in Subpart B of 2 C.F.R. Part 180, entitled "Covered Transactions," and 2 C.F.R. § 1532.220, includes a term or condition requiring compliance with 2 C.F.R. Part 180, Subpart C. Recipient is responsible for further requiring the inclusion of a similar term and condition in any subsequent lower tier covered transactions. Recipient acknowledges that failing to disclose the information required under 2 C.F.R. § 180.335 to the EPA office that is entering into the transaction with the recipient may result in the delay or negation of this assistance agreement, or pursuance of administrative remedies, including suspension and debarment. Recipients may access the System for Award Management (SAM) exclusion list at https://www.sam.gov to determine whether an entity or individual is presently excluded or disqualified.

**19. Representation by Corporations Regarding Delinquent Tax Liability or a Felony Conviction under any Federal Law.** This award is subject to the provisions contained in an appropriations act(s) which prohibits the Federal Government from entering into a contract, memorandum of understanding, or cooperative agreement with, make a grant to, or provide a loan or loan guarantee to any corporation having a delinquent Federal tax liability or a felony conviction under any Federal law, unless the agency has considered suspension or debarment of the corporation and has made a determination that this further action is not necessary to protect the interests of the Government. A "corporation" is a legal entity that is separate and distinct from the entities that own, manage, or control it. It is organized and incorporated under the jurisdictional authority of a governmental body, such as a State or the District of Columbia. A corporation may be a for-profit or non-profit organization.

As required by the appropriations act(s) prohibitions, the Government will not enter into a contract, memorandum of understanding, or cooperative agreement with, make a grant to, or provide a loan or loan guarantee with any corporation that — (1) Has any unpaid Federal tax liability that has been assessed, for which all judicial and administrative remedies have been exhausted or have lapsed, and that is not being paid in a timely manner pursuant to an agreement with the authority responsible for collecting the tax

liability, where the awarding agency is aware of the unpaid tax liability, unless an agency has considered suspension or debarment of the corporation and made a determination that suspension or debarment is not necessary to protect the interests of the Government; or (2) Was convicted of a felony criminal violation under any Federal law within the preceding 24 months, where the awarding agency is aware of the conviction, unless an agency has considered suspension or debarment of the corporation and made a determination that this action is not necessary to protect the interests of the Government.

By accepting this award, the recipient represents that it is not a corporation that has any unpaid Federal tax liability that has been assessed, for which all judicial and administrative remedies have been exhausted or have lapsed, and that is not being paid in a timely manner pursuant to an agreement with the authority responsible for collecting the tax liability; and it is not a corporation that was convicted of a felony criminal violation under a Federal law within the preceding 24 months.

Alternatively, by accepting this award, the recipient represents that it disclosed unpaid Federal tax liability information and/or Federal felony conviction information to the EPA. The Recipient may accept this award if the EPA Suspension and Debarment Official has considered suspension or debarment of the corporation based on a tax liabilities and/or Federal felony convictions and determined that suspension or debarment is not necessary to protect the Government's interests.

If the recipient fails to comply with this term and condition, EPA will annul this agreement and may recover any funds the recipient has expended in violation of the appropriations act(s) prohibition(s). The EPA may also pursue other administrative remedies as outlined in 2 CFR 200.338, and may also pursue suspension and debarment.

## 20. Disclosing Conflict of Interests

### 20.1. For awards to Non-federal entities and individuals (other than states and fellowship recipients under 40 CFR Part 46).

As required by 2 CFR 200.112, EPA has established a policy (COI Policy) for disclosure of  conflicts of interest (COI) that may affect EPA financial assistance awards. EPA's COI Policy is  posted at http://www2.epa.gov/grants/epas-financial-assistance-conflict-interest-policy. The  posted version of EPA's COI Policy is applicable to new funding (initial awards, supplemental  and incremental funding) awarded on or after October 1, 2015. This COI term and condition  supersedes prior COI terms and conditions for this award based on either EPA's May 22, 2015 Revised Interim COI Policy or December 26, 2014 Interim COI Policy.

For competitive awards, recipients must disclose any competition related COI described in section 4.0(a) of the COI Policy that are discovered after award to the EPA Grants Specialist listed on the  Assistance Agreement/Amendment within 30 calendar days of discovery of the COI. The Grants Specialist will respond to any such disclosure within 30 calendar days.

EPA's COI Policy requires that recipients have systems in place to address, resolve and disclose  to EPA COIs described in sections 4.0(b), (c) and/or (d) of the COI Policy that affect any contract  or subaward regardless of amount funded under this award.  The recipient's COI Point of Contact for the award must disclose any COI to the EPA Grants Specialist listed on the Assistance Agreement/Amendment within 30 calendar days of the discovery of the potential COI and their approach for resolving the COI.

EPA's COI Policy requires that subrecipients have systems in place to address, resolve and  disclose COI's described in section 4.0(b)(c) and (d) of the COI Policy regardless of the amount  of the transaction.  Recipients who are pass-through entities as defined at 2 CFR 200.74 must  require that subrecipients being considered for or receiving subawards

disclose COI to the pass-through entities in a manner that, at a minimum, is in accordance with sections 5.0(d) and 7.0(c) of EPA's COI Policy.  Pass-through entities must disclose the subrecipient COI along with the  approach for resolving the COI to the EPA Grants Specialist listed on the Assistance Agreement/Amendment within 30 calendar days of receiving notification of the COI by the  subrecipient.

EPA only requires that recipients and subrecipients disclose COI's that are discovered under their systems for addressing and resolving COI. If recipients or subrecipients do not discover a COI, they do not need to advise EPA or the pass-through entity of the absence of a COI.

Upon notice from the recipient of a potential COI and the approach for resolving it, the Agency will then make a determination regarding the effectiveness of these measures within 30 days of  receipt of the recipient's notice unless a longer period is necessary due to the complexity of the matter. Recipients may not request payment from EPA for costs for transactions subject to the  COI pending notification of EPA's determination.  Failure to disclose a COI may result in cost disallowances.

Disclosure of a potential COI will not necessarily result in EPA disallowing costs, with the exception of procurement contracts that the Agency determines violate 2 CFR 200.318(c)(1) or (2), provided the recipient notifies EPA of measures the recipient or subrecipient has taken to eliminate, neutralize or mitigate the conflict of interest when making the disclosure.

### 20.2. For awards to states including state universities that are state agencies or instrumentalities

As required by 2 CFR 200.112, EPA has established a policy (COI Policy) for disclosure of conflicts of  interest (COI) that may affect EPA financial assistance awards. EPA's COI Policy is posted at: http://www2.epa.gov/grants/epas-financial-assistance-conflict-interest-policy. The posted version of EPA's COI Policy is applicable to new funding (initial awards, supplemental, incremental funding) awarded on or after October 1, 2015. This COI term and condition supersedes prior COI terms and conditions for this  award based on either EPA's May 22, 2015 Revised Interim COI Policy or December 26, 2014 Interim COI Policy.

For competitive awards, recipients must disclose any competition related COI described in section 4.0(a) of the COI Policy that are discovered after award to the EPA Grants Specialist listed on the Assistance Agreement/Amendment within 30 calendar days of discovery of the COI.  The Grants Specialist will respond to any such disclosure within 30 calendar days.

States including state universities that are state agencies and instrumentalities receiving funding from EPA are only required to disclose subrecipient COI as a pass-through entity as defined by 2 CFR 200.74. Any other COI are subject to state laws, regulations and policies. EPA's COI Policy requires that subrecipients  have systems in place to address, resolve and disclose COIs described in section 4.0(b)(c) and (d) of the COI Policy that arise after EPA made the award regardless of the amount of the transaction.  States who are pass-through entities as defined at 2 CFR 200.74 must require that subrecipients being considered for or receiving subawards disclose COI to the state in a manner that, as a minimum, in accordance with section s 5.0(d) and 7.0(c) of EPA's COI Policy. States must disclose the subrecipient COI along with the approach for  resolving the COI to the EPA Grants Specialist listed on the Assistance Agreement/Amendment within 30 calendar days of receiving notification of the COI by the subrecipient.

EPA only requires that subrecipients disclose COI's to state pass-through entities that are discovered under their systems for addressing, resolving, and disclosing COI. If subrecipients do not discover a COI, they do not need to advise state pass-through entities of the absence of a COI.

Upon receiving notice of a potential COI and the approach for resolving it, the Agency will make a determination regarding the effectiveness of these measures within 30 days of receipt of the state's notice of a subrecipient COI unless a longer period is necessary due to the complexity of the matter. States may not request payment from EPA for costs for transactions subject to the COI pending notification of EPA's determination.  A subrecipient's failure to disclose a COI to the state and EPA may result in cost  disallowances.

Disclosure of a potential subrecipient COI  will not necessarily result in EPA disallowing costs, with the exception of procurement contracts that the Agency determines violate 2 CFR 200.318(c)(1) or (2), provided the subrecipient has taken measures that EPA and the state agree eliminate, neutralize or mitigate the conflict of interest.


**21. Transfer of Funds**

**Applicable to all assistance agreements other than Continuing Environmental Program Grants subject to 40 CFR 35.114 and 40 CFR 35.514 when the amount of the award exceeds the 2 CFR 200.88 Simplified Acquisition Threshold.**
(1) As provided at 2 CFR 200.308(e), recipient must obtain prior approval from EPA's Grants Management Officer if the cumulative amount of funding transfers among direct budget categories or programs, functions and activities exceeds 10% of the total budget.  Recipients must submit requests for prior approval to the Grant Specialist and Grants Management Officer for this agreement.
(2) Recipients must notify EPA's Grant Specialist and Project Officer of cumulative funding transfers among direct budget categories or programs, functions and activities that do not exceed 10% of the total budget for the agreement.  Recipients must also notify EPA when transferring funds from direct budget categories to the indirect cost category or from the indirect cost category to the direct cost category.  Prior approval by EPA's Grant Management Officer is required if the transfer involves any of the items listed in 2 CFR 200.407 that EPA did not previously approve at time of award or in response to a previous post-award request by the recipient.

**Applicable to Continuing Environmental Program Grants subject to 40 CFR 35.114 and 40 CFR 35.514. when the amount of the award exceeds the 2 CFR 200.88 Simplified Acquisition Threshold.**
Recipients of continuing environmental program grants subject to 40 CFR 35.114 and 40 CFR 35.514 must notify EPA of funding transfers among direct budget categories, programs, functions and activities or transfers that change amounts budgeted for indirect costs, but prior EPA approval is not required unless the transfer results in significant changes to work plan commitments. Recipients must obtain prior written approval if the transfer involves any of the items listed in 2 CFR 200.407 that EPA did not previously approve at time of award, in response to a previous post-award request by the recipient, or is subject to an EPA waiver of prior approval under 40 CFR 35.114(d) or 40 CFR 35.514(d).


# Programmatic General Terms and Conditions

**22. Sufficient Progress**
EPA will measure sufficient progress by examining the performance required under the workplan in conjunction with the milestone schedule, the time remaining for performance within the project period and/or the availability of funds necessary to complete the project. EPA may terminate the assistance agreement for failure to ensure reasonable completion of the project within the project period.

23. **Copyrighted Material and Data**
In accordance with 2 CFR 200.315, EPA has the right to reproduce, publish, use and authorize others to reproduce, publish and use copyrighted works or other data developed under this assistance agreement for Federal purposes.

Examples of a Federal purpose include but are not limited to: (1) Use by EPA and other Federal employees for official Government purposes; (2) Use by Federal contractors performing specific tasks for the Government; (3)  Publication in EPA documents provided the document does not disclose trade secrets (e.g. software codes) and the work is properly attributed to the recipient through citation or otherwise; (4) Reproduction of documents for  inclusion in Federal depositories; (5) Use by State, tribal and local governments that carry out delegated Federal environmental programs as "co-regulators" or act as official partners with EPA to carry out a national environmental program within their jurisdiction and; (6) Limited use by other grantees to carry out Federal grants provided the use is consistent with the terms of EPA's authorization to the other grantee to use the copyrighted works or other data.

Under Item 6, the grantee acknowledges that EPA may authorize another grantee(s) to use the copyrighted works  or other data developed under this grant as a result of:
- the selection of another grantee by EPA to perform a project that will involve the use of the copyrighted  works or other data or;
- termination or expiration of this agreement.

In addition, EPA may authorize another grantee to use copyrighted works or other data developed with Agency funds provided under this grant to perform another grant when such use promotes efficient and effective use of Federal grant funds.

24. **Patents and Inventions**
Rights to inventions made under this assistance agreement are subject to federal patent and licensing regulations, which are codified at Title 37 CFR Part 401 and Title 35 USC Sections 200-212.

Pursuant to the Bayh-Dole Act (set forth in 35 USC 200-212), EPA retains the right to a worldwide, nonexclusive, nontransferable, irrevocable, paid-up license to practice the invention owned by the assistance agreement holder, as defined in the Act. To streamline the invention reporting process and to facilitate compliance with the Bayh-Dole Act, the recipient must utilize the Interagency Edison extramural invention reporting system at http://iEdison.gov. Annual utilization reports must be submitted through the system. The recipient is required to notify the Project Officer identified on the award document when an invention report, patent report, or utilization report is filed at http://iEdison.gov. EPA elects not to require the recipient to provide a report prior to the close-out of a funding agreement listing all subject inventions or stating that there were none.

In accordance with Executive Order 12591, as amended, government owned and operated laboratories can enter into cooperative research and development agreements with other federal laboratories, state and local  governments, universities, and the private sector, and license, assign, or waive rights to intellectual property "developed by the laboratory either under such cooperative research or development agreements and from within individual laboratories."

25. **Acknowledgement Requirements for Non-ORD Assistance Agreements**
The recipient agrees that any reports, documents, publications or other materials developed for public distribution supported by this assistance agreement shall contain the following statement:

 "This project has been funded wholly or in part by the United States Environmental Protection Agency under assistance agreement (number) to (recipient). The contents of this document do not necessarily reflect the views and policies of the Environmental Protection Agency, nor does the EPA endorse trade names or recommend the use of commercial products mentioned in this document."

Recipients of EPA Office of Research Development (ORD) research awards must follow the acknowledgement requirements outlined in the research T&Cs available at: http://www.nsf.gov/awards/managing/rtc.jsp. A Federal-wide workgroup is currently updating the Federal-Wide Research Terms and Conditions Overlay to the Uniform Administrative Requirements, Cost Principles and Audit Requirements for Federal Awards and when completed  recipients of EPA ORD research must abide by the research T&Cs.

## 26. Electronic and Information Technology Accessibility

Recipients are subject to the program accessibility provisions of Section 504 of the Rehabilitation Act, codified in 40 CFR Part 7, which includes an obligation to provide individuals with disabilities reasonable accommodations  and an equal and effective opportunity to benefit from or participate in a program, including those offered through electronic and information technology ("EIT"). In compliance with Section 504, EIT systems or products funded by this award must be designed to meet the diverse needs of users (e.g., U.S. public, recipient personnel) without barriers or diminished function or quality. Systems shall include usability features or functions that accommodate the needs of persons with disabilities, including those who use assistive technology. At this time, the EPA will consider a recipient's websites, interactive tools, and other EIT as being in compliance with Section 504 if such technologies meet standards established under Section 508 of the Rehabilitation Act, codified at 36 CFR Part  1194. While Section 508 does not apply directly to grant recipients, we encourage recipients to follow either the 508 guidelines or other comparable guidelines that concern accessibility to EIT for individuals with disabilities.

Recipients may wish to consult the latest Section 508 guidelines issued by the U.S. Access Board or W3C's Web  Content Accessibility Guidelines (WCAG) 2.0 (see http://www.access-board.gov/sec508/guide/index.htm).

## 27. Human Subjects

Human subjects research is any activity that meets the regulatory definitions of both research AND human subject. *Research* is a systematic investigation, including research development, testing and evaluation, designed   to develop or contribute to generalizable knowledge. *Human subject* means a living individual about whom an  investigator (whether professional or student) conducting research obtains (1) data through intervention or interaction with the individual, or (2) identifiable private information. [40 CFR 26.102 (d)(f)]

No research involving human subjects will be conducted under this agreement without prior written approval of  the EPA to proceed with that research.  If engaged in human subjects research as part of this agreement, the recipient agrees to comply with all applicable provisions of EPA Regulation 40 CFR 26 (Protection of Human  Subjects).  This includes, at Subpart A, the Basic Federal Policy for the Protection of Human Research Subjects, also known as the Common Rule.  It also includes, at Subparts B, C, and D, prohibitions and additional protections for children, nursing women, pregnant women, and fetuses in research conducted or supported by EPA.

The recipient further agrees to comply with EPA's procedures for oversight of the recipient's compliance with 40 CFR 26, as given in EPA Order 1000.17 Change A1 (Policy and Procedures on Protection of Human Research  Subjects in EPA Conducted or Supported Research).  As per this order, no human subject may be involved in any research conducted under this assistance agreement, including recruitment, until the research has been approved or determined to be exempt by the EPA Human Subjects Research Review Official (HSRRO) after review of the approval or exemption determination of the Institutional Review Board(s) (IRB(s)) with jurisdiction over the research under 40 CFR 26.

For HSRRO approval, the recipient must forward to the Project Officer: (1) copies of all documents upon which the IRB(s) with jurisdiction based their approval(s) or exemption determination(s), (2) copies of the IRB approval or exemption determination letter(s), (3) copy of the IRB-approved consent forms and

subject recruitment materials, if applicable, and (4) copies of all supplementary IRB correspondence.

Following the initial approvals indicated above, the recipient must, as part of the annual report(s), provide evidence of continuing review and approval of the research by the IRB(s) with jurisdiction, as required by 40 CFR 26.109(e). Materials submitted to the IRB(s) for their continuing review and approval are to be provided to the Project Officer upon IRB approval. During the course of the research, investigators must promptly report any  unanticipated problems involving risk to subjects or others according to requirements set forth by the IRB.  In addition, any event that is significant enough to result in the removal of the subject from the study should also be reported to the Project Officer, even if the event is not reportable to the IRB of record.

**28. Animal Subjects**

The recipient agrees to comply with the Animal Welfare Act of 1966 (P.L. 89-544), as amended, 7 USC 2131-2156.  Recipient also agrees to abide by the "U.S. Government Principles for the Utilization and Care of Vertebrate Animals used in Testing, Research, and Training."  (Federal Register 50(97): 20864-20865. May 20,1985).  The nine principles can be viewed at http://grants.nih.gov/grants/olaw/references/phspol.htm#USGovPrinciples. For additional information about the Principles, the recipient should consult the *Guide for Care and Use of Laboratory Animals*, prepared by the Institute of Laboratory Animal Resources, National Research Council and can be accessed at: http://www.nap.edu/readingroom/books/labrats/.

**29. Light Refreshments and/or Meals**

**APPLICABLE TO ALL AGREEMENTS EXCEPT STATE CONTINUING ENVIRONMENTAL PROGRAMS (AS DESCRIBED BELOW):**
Unless the event(s) and all of its components are described in the approved workplan, the recipient agrees to obtain prior approval from EPA for the use of grant funds for light refreshments and/or meals served at meetings, conferences, training workshops and outreach activities (events). The recipient must send requests for approval to the EPA Project Officer and include:
(1) An estimated budget and description for the light refreshments, meals, and/or beverages to be served at the event(s);
(2) A description of the purpose, agenda, location, length and timing for the event; and,
(3) An estimated number of participants in the event and a description of their roles.

Costs for light refreshments and meals for recipient staff meetings and similar day-to-day activities are not allowable under EPA assistance agreements.

Recipients may address questions about whether costs for light refreshments, and meals for events may be allowable to the recipient's EPA Project Officer; however, the Agency Award Official or Grant Management Officer will make final determinations on allowability. Agency policy prohibits the use of EPA funds for receptions, banquets and similar activities that take place after normal business hours unless the recipient has provided a justification that has been expressly approved by EPA's Award Official or Grants Management Officer.

EPA funding for meals, light refreshments, and space rental may not be used for any portion of an event where alcohol is served, purchased, or otherwise available as part of the event or meeting, even if EPA funds are not used to purchase the alcohol.

Note: U.S. General Services Administration regulations define light refreshments for morning, afternoon or evening breaks to include, but not be limited to, coffee, tea, milk, juice, soft drinks, donuts, bagels, fruit, pretzels, cookies, chips, or muffins. (41 CFR 301-74.7)

**FOR STATE CONTINUING ENVIRONMENTAL PROGRAM GRANT RECIPIENTS EXCLUDING STATE UNIVERSITIES:**

If the state maintains systems capable of complying with federal grant regulations at 2 CFR 200.432 and 200.438, EPA has waived the prior approval requirements for the use of EPA funds for light refreshments and/or meals served at meetings, conferences, and training, as described above. The state may follow its own procedures without requesting prior approval from EPA. However, notwithstanding state policies, EPA funds may not be used for (1) evening receptions, or (2) other evening events (with the exception of working meetings). Examples of working meetings include those evening events in which small groups discuss technical subjects on the basis of a structured agenda or there are presentations being conducted by experts.  EPA funds for meals, light refreshments, and space rental may not be used for any portion of an event (including evening working meetings) where alcohol is served, purchased, or otherwise available as part of the event or meeting, even if EPA funds are not used to purchase the alcohol.

By accepting this award, the state is certifying that it has systems in place (including internal controls) to comply with the requirements described above.

## 30.  Tangible Personal Property

**30.1 Reporting** Pursuant to 2 CFR 200.312 and 200.314, property reports, if applicable, are required for Federally-owned property in the custody of a non-Federal entity upon completion of the Federal award or  when the property is no longer needed. Additionally, upon termination or completion of the project,  residual unused supplies with a total aggregate fair market value exceeding $5,000 not needed for any  other Federally-sponsored programs or projects must be reported. For Superfund awards under Subpart O, refer to 40 CFR 35.6340 and 35.6660 for property reporting requirements. Recipients should utilize the  Tangible Personal Property Report form series (SF-428) to report tangible personal property.

**30.2 Disposition**

**30.2.1   Most Recipients.** Consistent with 2 CFR 200.313, unless instructed otherwise on the official award document, this award term, or at closeout, the recipient may keep the equipment and continue to use it on the  project originally funded through this assistance agreement or on other federally funded projects whether or not the project or program continues to be supported by Federal funds.

**30.2.2   State Agencies.** Per 2 CFR 200.313(b), state agencies may manage and dispose of equipment acquired under this assistance agreement in accordance with state laws and procedures.

**30.2.3   Superfund Recipients.** Equipment purchased under Superfund projects is subject to specific disposal options in accordance with 40 CFR Part 35.6345.

## 31.  Dual Use Research of Concern (DURC)

The recipient agrees to conduct all life science research[*] in compliance with *EPA's Order on the Policy and Procedures for Managing Dual Use Research of Concern* (EPA DURC Order) and *United States Government Policy for Institutional Oversight of Life Sciences Dual Use Research of Concern (iDURC Policy).* If the recipient is an institution within the United States that receives funding through this agreement, or from any other source, the recipient agrees to comply with the iDURC Policy if they conduct or sponsor research involving any of the agents or toxins identified in Section 6.2.1 of the iDURC Policy. If the institution is outside the United States and receives funding through this agreement to conduct or sponsor research involving any of those same agents or toxins, the recipient agrees to comply with the iDURC Policy. The recipient agrees to provide any additional information that may be requested by EPA regarding DURC and iDURC. The recipient agrees to immediately notify the EPA Project Officer should the project use or introduce use of any of the agents or toxins identified in the iDURC Policy.  The recipient's Institution/Organization must also comply with USG iDURC policy and EPA DURC Order and will inform the appropriate government agency if funded by such agency of research with the agents or toxins identified in Section 6.2.1 of the iDURC Policy. If privately funded the recipient agrees to notify the National Institutes of Health at DURC@od.nih.gov.

\* "*Life Sciences Research,*" for purposes of the EPA DURC Order, and based on the definition of research in 40 CFR §26.102(d), is a systematic investigation designed to develop or contribute to generalizable knowledge involving living organisms (e.g., microbes, human beings, animals, and plants) and their products. EPA does not consider the following activities to be research: routine product testing, quality control, mapping, collection of general-purpose statistics, routine monitoring and evaluation of an operational program, observational studies, and the training of scientific and technical personnel. [Note: This is consistent with Office of Management and Budget Circular A-11.]

## 32. Research Misconduct

In accordance with 2 CFR 200.328, the recipient agrees to notify the EPA Project Officer in writing about research misconduct involving research activities that are supported in whole or in part with EPA funds under this project. EPA defines research misconduct as fabrication, falsification, or plagiarism in proposing, performing, or reviewing research, or in reporting research results [65 FR 76262. I], or ordering, advising or suggesting that subordinates engage in research misconduct. The recipient agrees to:

(1) Immediately notify the EPA Project Officer who will then inform the EPA Office of Inspector General (OIG) if, at any time, an allegation of research misconduct falls into one of the categories listed below:
A. Public health or safety is at risk.
B. Agency resources or interests are threatened.
C. Circumstances where research activities should be suspended.
D. There is a reasonable indication of possible violations of civil or criminal law.
E. Federal action is required to protect the interests of those involved in the investigation.
F. The research entity believes that the inquiry or investigation may be made public prematurely so that appropriate steps can be taken to safeguard evidence and protect the rights of those involved.
  G. Circumstances where the research community or public should be informed. [65 FR 76263.III]

(2) Report other allegations to the OIG when they have conducted an inquiry and determined that there is sufficient evidence to proceed with an investigation. [65 FR 76263. III]

## 33. Scientific Integrity Terms and Conditions

The recipient agrees to comply with EPA's Scientific Integrity Policy when conducting, supervising, and communicating science and when using or applying the results of science. For purposes of this award condition scientific activities include, but are not limited to, computer modelling, economic analysis, field sampling, laboratory experimentation, demonstrating new technology, statistical analysis, and writing a review article on a scientific issue. The recipient agrees to:

### 33.1 Scientific Products

33.1.1  Produce scientific products of the highest quality, rigor, and objectivity, by adhering to applicable EPA information quality guidelines, quality policy, and peer review policy.

33.1.2  Prohibit all recipient employees, contractors, and program participants, including scientists, managers, and other recipient leadership, from suppressing, altering, or otherwise impeding the timely release of scientific findings or conclusions.

33.1.3  Adhere to EPA's Peer Review Handbook, 4th Edition, for the peer review of scientific and technical work products generated through EPA grants or cooperative agreements which, by definition, are not primarily for EPA's direct use or benefit.

### 33.2 Scientific Findings

33.2.1  Require that reviews regarding the content of a scientific product that are conducted by the project manager and other recipient managers and the broader management chain be based only on scientific quality considerations, e.g., the methods used are clear and appropriate, the presentation of results and conclusions is impartial.

**33.2.2**   Ensure scientific findings are generated and disseminated in a timely and transparent manner, including scientific research performed by employees, contractors, and program participants, who assist with developing or applying the results of scientific activities.

**33.2.3**   Include, when communicating scientific findings, an explication of underlying assumptions, accurate contextualization of uncertainties, and a description of the probabilities associated with both optimistic and pessimistic projections, if applicable.

**33.2.4**   Document the use of independent validation of scientific methods.

**33.2.5**   Document any independent review of the recipient's scientific facilities and testing activities, as occurs with accreditation by a nationally or internationally recognized sanctioning body.

**33.2.6**   Make scientific information available online in open formats in a timely manner, including access to data and non-proprietary models.

**33.3 Scientific Misconduct**

**33.3.1**   Prohibit intimidation or coercion of scientists to alter scientific data, findings, or professional opinions or non-scientific influence of scientific advisory boards. In addition, recipient employees, contractors, and program participants, including scientists, managers, and other leadership, shall not knowingly misrepresent, exaggerate, or downplay areas of scientific uncertainty.

**33.3.2**   Prohibit retaliation or other punitive actions toward recipient employees who uncover or report allegations of scientific and research misconduct, or who express a differing scientific opinion. Employees who have allegedly engaged in scientific or research misconduct shall be afforded the due process protections provided by law, regulation, and applicable collective bargaining agreements, prior to any action. Recipients shall ensure that all employees and contractors of the recipient shall be familiar with these protections and avoid the appearance of retaliatory actions.

**33.3.3**   Require all recipient employees, contractors, and program participants to act honestly and refrain from acts of research misconduct, including publication or reporting, as described in EPA's Policy and Procedures for Addressing Research Misconduct, Section 9.C. Research misconduct does not include honest error or differences of opinion. While EPA retains the ultimate oversight authority for EPA-supported research, grant recipients conducting research bear primary responsibility for prevention and detection of research misconduct and for the inquiry, investigation, and adjudication of research misconduct alleged to have occurred in association with their own institution.

**33.3.4**   Take the actions required on the part of the recipient described in EPA's Policy and Procedures for Addressing Research Misconduct, Sections 6 through 9, when research misconduct is suspected or found.

**33.4 Additional Resources**

For more information about the Scientific Integrity Policy, an introductory video can be accessed at: https://youtu.be/FQJCy8BXXq8. A training video is available at: https://youtu.be/Zc0T7fooot8.

# Public Policy Requirements

**34. Civil Rights Obligations**

This term and condition incorporates by reference the signed assurance provided by the recipient's authorized  representative on: 1) EPA Form 4700-4, "Preaward Compliance Review Report for All Applicants and Recipients  Requesting EPA Financial Assistance"; and 2) Standard Form 424B or

Standard Form 424D, as applicable.

These assurances and this term and condition obligate the recipient to comply fully with applicable civil rights statutes and implementing EPA regulations.

a.  **Statutory Requirements**
   i.     In carrying out this agreement, the recipient must comply with:
       1.  Title VI of the Civil Rights Act of 1964, which prohibits discrimination based on race, color, and national origin, including limited English proficiency (LEP), by entities receiving Federal financial assistance.
       2.  Section 504 of the Rehabilitation Act of 1973, which prohibits discrimination against persons with disabilities by entities receiving Federal financial assistance; and
       3.  The Age Discrimination Act of 1975, which prohibits age discrimination by entities receiving Federal financial assistance.
   ii.    If the recipient is an education program or activity (e.g., school, college or university) or if the recipient is conducting an education program or activity under this agreement, it must also comply with:
       1.  Title IX of the Education Amendments of 1972, which prohibits discrimination on the basis of sex in education programs and activities operated by entities receiving Federal financial assistance. For further information about your compliance obligations regarding Title IX, see 40 CFR Part 5 and https://www.justice.gov/crt/title-ix
   iii.   If this agreement is funded with financial assistance under the Clean Water Act (CWA), the recipient must also comply with:
       1.  Section 13 of the Federal Water Pollution Control Act Amendments of 1972, which prohibits discrimination on the basis of sex in CWA-funded programs or activities.

b.  **Regulatory Requirements**
   i.     The recipient agrees to comply with all applicable EPA civil rights regulations, including:
       1.  For Title IX obligations, 40 C.F.R. Part 5; and
       2.  For Title VI, Section 504, Age Discrimination Act, and Section 13 obligations, 40 CFR Part 7.
       3.  As noted on the EPA Form 4700-4 signed by the recipient's authorized representative, these regulations establish specific requirements including maintaining compliance information, establishing grievance procedures, designating a Civil Rights Coordinator and providing notices of non-discrimination.

c.  **TITLE VI – LEP, Public Participation and Affirmative Compliance Obligation**
   i.     As a recipient of EPA financial assistance, you are required by Title VI of the Civil Rights Act to provide meaningful access to LEP individuals. In implementing that requirement, the recipient agrees to use as a guide the Office of Civil Rights (OCR) document entitled "Guidance to Environmental Protection Agency Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons." The guidance can be found at: https://www.federalregister.gov/documents/2004/06/25/04-14464/guidance-to-environmental-protection-agency-financial-assistance-recipients-regarding-title-vi
   ii.    If the recipient is administering permitting programs under this agreement, the recipient agrees to use as a guide OCR's Title VI Public Involvement Guidance for EPA Assistance Recipients Administering Environmental Permitting Programs. The Guidance can be found at http://edocket.access.gpo.gov/2006/pdf/06-2691.pdf.
   iii.   In accepting this assistance agreement, the recipient acknowledges it has an affirmative obligation to implement effective Title VI compliance programs and ensure that its actions do not involve discriminatory treatment and do not have discriminatory effects

even when facially neutral.  The recipient must be prepared to demonstrate to EPA that such compliance programs exist and are being implemented or to otherwise demonstrate  how it is meeting its Title VI obligations.

**35. Drug-Free Workplace**

The recipient organization of this EPA assistance agreement must make an ongoing, good faith effort to maintain a drug-free workplace pursuant to the specific requirements set forth in Title 2 CFR Part 1536 Subpart B. Additionally, in accordance with these regulations, the recipient organization must identify all known workplaces under its federal awards, and keep this information on file during the performance of the award.

Those recipients who are individuals must comply with the drug-free provisions set forth in Title 2 CFR Part 1536 Subpart C.

The consequences for violating this condition are detailed under Title 2 CFR Part 1536 Subpart E. Recipients can access the Code of Federal Regulations (CFR) Title 2 Part 1536 at www.ecfr.gov/.

**36. Hotel-Motel Fire Safety**

Pursuant to 15 USC 2225a, the recipient agrees to ensure that all space for conferences, meetings, conventions or  training seminars funded in whole or in part with federal funds complies with the protection and control guidelines of the Hotel and Motel Fire Safety Act (PL 101-391, as amended). Recipients may search the Hotel-Motel National Master List at https://apps.usfa.fema.gov/hotel/ to see if a property is in compliance, or to find other information about the Act.

**37. Lobbying Restrictions (Updated 11/19/18)**

**This assistance agreement is subject to lobbying restrictions as described below.**

**a)  Applicable to all assistance agreements:**

i)  The chief executive officer of this recipient agency shall ensure that no grant funds  awarded under this assistance agreement are used to engage in lobbying of the Federal Government or in litigation against the U.S. unless authorized under existing law. The recipient shall abide by the Cost Principles available at 2 CFR 200 which generally  prohibits the use of federal grant funds for litigation against the U.S. or for lobbying or other political activities.

ii)  The recipient agrees to comply with Title 40 CFR Part 34, New Restrictions on  Lobbying. The recipient shall include the language of this provision in award documents for all subawards exceeding $100,000 and require that subrecipients submit certification and disclosure forms accordingly.

iii)  In accordance with the Byrd Anti-Lobbying Amendment, any recipient who makes a prohibited expenditure under Title 40 CFR Part 34 or fails to file the required  certification or lobbying forms shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such expenditure.

iv)  Contracts awarded by a recipient shall contain, when applicable, the anti-lobbying provision as stipulated in the Appendix II to Part 200—Contract Provisions for Non-Federal Entity Contracts Under Federal Awards.

v)  By accepting this award, the recipient affirms that it is not  a nonprofit organization described in Section 501(c)(4) of the Internal Revenue Code of  1986 as required by Section 18 of the

Lobbying Disclosure Act; or that it is a nonprofit organization described in Section 501(c)(4) of the Code but does not and will not engage in lobbying activities as defined in Section 3 of the Lobbying Disclosure Act. Nonprofit organizations exempt from taxation under section 501(c)(4) of the Internal Revenue Code that engage in lobbying activities are ineligible for EPA subawards.

**b) Applicable to assistance agreements when the amount of the award is over $100,000:**

i) By accepting this award, the recipient certifies, to the best of its knowledge and belief, that:

(1) No Federal appropriated funds have been or will be paid, by or on behalf of the recipient, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, or any employee of a Member of Congress in connection with this Federal grant or cooperative agreement, the recipient shall complete and submit the linked Standard Form -- LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The recipient shall require that the language of this certification be included in the award documents for all subawards exceeding $100,000 at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

ii) This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by Section 1352, Title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each failure.

## 38. Recycled Paper
When directed to provide paper documents, the recipient agrees to use recycled paper and double-sided printing  for all reports which are prepared as a part of this agreement and delivered to EPA. This requirement does not  apply to reports prepared on forms supplied by EPA.

## 39. Resource Conservation and Recovery Act
Consistent with goals of section 6002 of RCRA (42 U.S.C. 6962), State and local institutions of higher education, hospitals and non-profit organization recipients agree to give preference in procurement programs to the purchase of specific products containing recycled materials, as identified in 40 CFR Part 247.

Consistent with section 6002 of RCRA (42 U.S.C. 6962) and 2 CFR 200.322, State agencies or agencies of a  political subdivision of a State and its contractors are required to purchase certain items made from recycled materials, as identified in 40 CFR Part 247, when the purchase price exceeds $10,000 during the course of a fiscal year or where the quantity of such items acquired in the course of the preceding fiscal year was $10,000 or more. Pursuant to 40 CFR 247.2 (d), the recipient may decide not to procure such items if they are not reasonably available in a reasonable period of time; fail to meet reasonable

performance standards; or are only available at an unreasonable price.

**40. Trafficking in Persons**

    **a.**    **Provisions applicable to a recipient that is a private entity.**

        i.  The recipient, the recipient's employees, subrecipients under this award, and subrecipients' employees may not—

            1.  Engage in severe forms of trafficking in persons during the period of time that the award is in effect;

            2.  Procure a commercial sex act during the period of time that the award is in effect;  or

            3.  Use forced labor in the performance of the award or subawards under the award.

        ii.  We as the Federal awarding agency may unilaterally terminate this award, without penalty, if the recipient or a subrecipient that is a private entity—

            1.  Is determined to have violated a prohibition in paragraph a of this award term; or

            2.  Has an employee who is determined by the agency official authorized to terminate the award to have violated a prohibition in paragraph a of this award  term through conduct that is either—

                a.  Associated with performance under this award; or

                b.  Imputed to the recipient or subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR part 180, ''OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement),'' as implemented by our Agency at 2 CFR 1532.

    **b.**    **Provision applicable to a recipient other than a private entity.** EPA may unilaterally terminate this award, without penalty, if a subrecipient that is a private entity—

        i.  Is determined to have violated an applicable prohibition in paragraph a. of this award term; or

        ii.  Has an employee who is determined by the agency official authorized to terminate the award to have violated an applicable prohibition in paragraph a of this award term through conduct that is either—

            1.  Associated with performance under this award; or

            2.  Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR part 180, ''OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement),'' as implemented by EPA at 2 CFR 1532

    **c.**    **Provisions applicable to any recipient.**

        i.  The recipient must inform the EPA immediately of any information received from any source alleging a violation of a prohibition in paragraph a of this award term.

        ii.  Our right to terminate unilaterally that is described in paragraph a and b:

            1.  Implements section 106(g) of the Trafficking Victims Protection Act of 2000 (TVPA), as amended (22 U.S.C. 7104(g)), and

            2.  Is in addition to all other remedies for noncompliance that are available to us under this award.

        iii.  The recipient must include the requirements of paragraph a of this award term in any subaward made to a private entity.

    **d.**    **Definitions.** For purposes of this award term:

        i.  ''Employee'' means either:

            1.  An individual employed by you or a subrecipient who is engaged in the

    performance of the project or program under this award; or

    2. Another person engaged in the performance of the project or program under this award and not compensated by you including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing or matching requirements.

  ii. ''Forced labor'' means labor obtained by any of the following methods: the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.

  iii. ''Private entity'':

    1. Means any entity other than a State, local government, Indian tribe, or foreign public entity, as those terms are defined in 2 CFR 175.25.

    2. Includes:

      a. A nonprofit organization, including any nonprofit institution of higher education, hospital, or tribal organization other than one included in the definition of Indian tribe at 2 CFR 175.25(b).

      b. A for-profit organization.

  iv. ''Severe forms of trafficking in persons,'' ''commercial sex act,'' and ''coercion'' have the meanings given at section 103 of the TVPA, as amended (22 U.S.C. 7102).