# EXHIBIT 35

**JOHN BEL EDWARDS**
GOVERNOR

**CHUCK CARR BROWN, PH.D.**
SECRETARY

## State of Louisiana
### DEPARTMENT OF ENVIRONMENTAL QUALITY
### OFFICE OF THE SECRETARY

JAN 06 2017

CERTIFIED MAIL (7016 0910 0000 2672 7156)
RETURNED RECEIPT REQUESTED

DENKA PERFORMANCE ELASTOMER LLC
c/o CT Corporation System
Agent for Service of Process
3867 Plaza Tower Drive
Baton Rouge, LA 70816

RE: **ADMINISTRATIVE ORDER ON CONSENT**
**ENFORCEMENT TRACKING NO. AE-AOC-17-00011**
**AGENCY INTEREST NO. 199310**

Dear Sir/Madam:

Pursuant to the Louisiana Environmental Quality Act (La. R.S. 30:2001, *et seq.*), the attached **ADMINISTRATIVE ORDER ON CONSENT** is hereby served on **DENKA PERFORMANCE ELASTOMER LLC (RESPONDENT)**.

Any questions concerning this action should be directed to Lourdes Iturralde at (225) 219-3710.

Sincerely,

Chuck Carr Brown, Ph.D.
Secretary
Louisiana Department of Environmental Quality

LMI/CCB/ccb
Alt ID No. 2580-00063
Attachment

cc: Mr. Jorge Lavastida
   Executive Officer & Plant Manager
   Denka Performance Elastomer LLC
   560 Louisiana Highway 44
   LaPlace, LA 70068

STATE OF LOUISIANA
DEPARTMENT OF ENVIRONMENTAL QUALITY

OFFICE OF THE SECRETARY

| | |
|---|---|
| IN THE MATTER OF | * |
| | * |
| DENKA PERFORMANCE | * |
| ELASTOMER LLC | * |
| | * ENFORCEMENT TRACKING NO. |
| ST. JOHN THE BAPTIST PARISH | * AE-AOC-17-00011 |
| ALT ID NO. 2580-00063 | * |
| | *li |
| | * |
| | * AGENCY INTEREST NO. |
| | * |
| PROCEEDINGS UNDER THE LOUISIANA | * 199310 |
| ENVIRONMENTAL QUALITY ACT, | * |
| La. R.S. 30:2001, ET SEQ. | * |

## ADMINISTRATIVE ORDER ON CONSENT

The following **ADMINISTRATIVE ORDER ON CONSENT** (AOC) is issued this day to **DENKA PERFORMANCE ELASTOMER LLC (RESPONDENT)** by the Louisiana Department of Environmental Quality (the Department), under the authority granted by the Louisiana Environmental Quality Act (the Act), La. R.S. 30:2001, *et seq.*, and particularly by La. R.S. 30:2011(D)(6) and (D)(14). The Respondent consents to the requirements set forth below.

### FINDINGS OF FACT

I.

From November 1, 2015 to the present, Respondent has operated the Pontchartrain Works Facility located in St. John the Baptist Parish, Louisiana (the Facility).

II.

E.I. DuPont de Nemours and Company (DuPont) owns the tracts of land upon which the Facility is located. Pursuant to a Ground Lease with an effective date of November 1, 2015,



Respondent leases the tracts of land upon which the Facility is located from DuPont.

III.

The Facility currently operates under Air Permit No. 3000-V5, issued September 9, 2014 (Chloroprene Unit); Air Permit No. 2249-V8, issued on June 15, 2015 (Neoprene Unit); and Air Permit No. 206-V3, issued June 18, 2015 (HCl Recovery Unit).

IV.

On December 17, 2015, the Environmental Protection Agency (EPA) published the 2011 National Air Toxics Assessment (2011 NATA). As a result of the 2011 NATA, Respondent has voluntarily agreed to install certain chloroprene emission controls at the Facility as set forth herein, and has voluntarily entered into this ADMINISTRATIVE ORDER ON CONSENT (AOC).

V.

Respondent has agreed to take the actions listed in this Order as measures that are intended to reduce chloroprene emissions from the Facility. These measures include the installation of certain chloroprene emission controls at the Facility, as set forth herein. The measures described in the Order section below are designed to reduce actual chloroprene emissions at the Facility by 85%. Reference to actual chloroprene emissions reductions in this order shall mean a reduction in actual emissions from baseline emissions reported by the Respondent in its 2015 emissions inventory (reflecting 2014 emissions). The Respondent shall continue to evaluate measures to further reduce chloroprene emissions during the effective time period of this AOC.

**ADMINISTRATIVE ORDER**

Based on the foregoing, the Department **hereby orders**, and the Respondent hereby **agrees** as follows:

2

I.

A.  Respondent shall install and operate a brine condenser on the Poly Kettles Vent (Emission Point ID 1700-3) in series with the existing chilled water condenser. This project shall be completed by the end of the 1st calendar quarter of 2017. Upon completion and operation, this project shall achieve a reduction of actual emissions of chloroprene by approximately 47 - 50 percent of chloroprene emissions from this emission point, excepting startup, shutdown, and malfunction emissions from the brine condenser.

B.  Respondent shall install and operate a vacuum pump and brine condenser on the CD Refining Column (Emission Point ID 1700-20 and 1700-20-A). This project shall be completed by the end of the 2nd calendar quarter of 2017. Upon completion and operation, this project shall achieve a reduction of actual emissions of chloroprene by approximately 95 percent of chloroprene emissions from this emission point, excepting startup, shutdown and malfunction emissions from the brine condenser.

C.  Respondent shall route the following emissions sources for combustion in the HCl Unit to achieve approximately 99 percent reduction in actual chloroprene emissions, excepting startup, shutdown, and malfunction emissions from the HCl unit. Respondent shall install the closed vent system and route the streams identified below to the HCl Unit by the end of the 3rd calendar quarter of 2017.

   1) The following chloroprene emission sources, as identified in Permit No. 2249-V8 and Permit No. 206-V3, shall be routed to the HCl Unit:

   - 1110-2 Refining Jets Vent System
   - 1110-4 CD Vent Condenser
   - 1110-3 Isom Reactor Vent System
   - 1140-20 Aqueous Storage Vent Condenser

- 1110-4B Catalyst Sludge Receiver.
- 7000-17 HCl Feed Tanks Vent
- 2-74 Waste Storage Tanks' Condenser

D. Respondent shall install and operate it thereafter, a Regenerative Thermal Oxidizer (RTO) by the end of the 4th calendar quarter of 2017. The RTO shall achieve at least a 98 percent DRE, excepting startup, shutdown and malfunction emissions from the RTO.

1) The following chloroprene emission sources, as identified in Permit No. 2249-V8, shall be controlled by routing them for combustion to the RTO:

- 1700-27 East Hot Dryer Exhaust
- 1700-28 West Hot Dryer Exhaust
- 1700-13A Poly Kettles Manholes/Strainers (3,4 & 5) Common Vent
- 1700-13 Poly Kettles Manholes/Strainers (1 & 2) Common Vent
- 1700-1 No. 7, 8, 10, 13, 14 Emulsion Storage Tanks Manhole & Exhaust Blower
- 1700-5A No. 6 Emulsion Storage Tank Manhole
- 1700-2 Strippers Condenser Vent
- 1700-21A 2 MM lb Tank
- 1700-5 Unstripped Emulsion Storage Tanks
- 1700-51 Inhibitor Mix Tank
- 1700-56 No. 6, 7, 8, 10, 13 & 14 Unstripped Storage Tanks Depressure Vent
- 1700-63 1712 Building common vent header system
- 1700-3 Poly Kettles Vent Condenser
- 1700-20 CD Refining Column Jet
- 1700-20A CD Refining Column Jet (Spare), and
- 1700-90 Refined CD Systems Common Vent

2) Within one hundred twenty (120) days of installation, Respondent shall conduct performance tests to demonstrate the 98 percent DRE, using a performance test plan to be approved by the Department. Respondent shall submit a proposed plan to the Department for the performance test by no later than 30 days prior to the test.

3) This subparagraph D shall be superseded and shall be of no further force should Respondent and the EPA enter into a court approved, federal Consent Decree requiring the installation, operation, testing, and permitting of an RTO at the Facility.

E. By August 1, 2017, Respondent shall submit a final plan to reduce actual chloroprene emissions from the 1700-66 Poly Building Wall Fans and 4-95 Stripper Wastewater and Associated Aeration tank(s) by at least 50%.

F. For each project, Respondent shall submit monthly progress report on or before the fifteenth day of each month after this AOC is issued. Each monthly progress report shall include a brief summary of the status of the projects required by this AOC and issues that may affect the installation schedule. Submission of these reports shall continue until such time as these emission reduction efforts are installed and are operating.

G. Respondent shall submit semi-annual reports on June 30, 2017, and December 30, 2017, on the efforts to evaluate further chloroprene emissions reductions at the facility in addition to those emission reductions required by this Order during its effective time period.

H. Respondent shall continue to conduct ambient air quality monitoring until six (6) months after the startup of the RTO, pursuant to the monitoring plan approved by the Department on June 28, 2016 and at the West Bank monitoring site in Edgard, Louisiana, or pursuant to any subsequent monitoring plan submitted by the Respondent and approved by the Department.

II.

A. The deadlines described in Paragraph I may be extended by any time delays occasioned by Force Majeure. "Force Majeure," for purposes of this AOC, is defined as any event arising from causes beyond the reasonable control of Respondent, of any entity controlled by Respondent, or of Respondent's contractors, that delays or prevents the performance of any obligation under this AOC despite Respondent's best commercially reasonable efforts, as agreed upon by the Department and Respondent, to fulfill the obligation. The requirement that Respondent exercise best commercially reasonable efforts, as agreed upon by the Department and Respondent, to fulfill the obligation includes using best commercially reasonable efforts to anticipate any potential force majeure event and best commercially reasonable efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. Force Majeure does not include Respondent's financial inability to perform any obligation under this AOC.

B. If any event occurs or has occurred that will delay the performance of any obligation under this AOC, whether or not caused by a force majeure event, Respondent shall provide notice orally or by electronic or facsimile transmission to the LDEQ, within three (3) working days of when Respondent first knew that the event might cause a delay. Within fourteen (14) days thereafter, Respondent shall provide in writing to the LDEQ an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; and Respondent's rationale for attributing such delay to a force majeure event if it intends to assert such a claim. Respondent shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Respondent from asserting any claim of force majeure for that event for the period of time of such failure to comply,

and for any additional delay caused by such failure. Respondent shall be deemed to know of any circumstance of which Respondent, any entity controlled by Respondent, or Respondents' contractors knew or should have known.

### III.

Respondent shall in good faith seek all necessary permits and agency consents to construct and operate the emission control measures set forth in Paragraph I (including but not limited to all necessary permits from the Department, the EPA, the Corps of Engineers, or similar authority). However, the failure of any administrative agency to provide a decision on necessary permits or consents in advance of any deadline set by this Order, despite Respondent's submission of a timely and administratively complete application, shall extend the applicable deadlines in this Order by any time delays occasioned by such failure of agencies to provide a decision on necessary consents or permits. Further, any time delays occasioned by any suspension of any necessary consents or permits resulting from any administrative or judicial proceedings brought by third parties shall extend the applicable deadlines occasioned by the administrative and/or judicial proceeding.

### IV.

The Department and Respondent may, by written mutual agreement, modify the emission control measures and schedules required under Paragraph I.

### V.

To the extent required by law, further proceedings relating to this **ADMINISTRATIVE ORDER ON CONSENT** will be governed by the Louisiana Environmental Quality Act, La. R.S. 30:2001, *et seq.*, and the Administrative Procedure Act, La. R.S. 49.950, *et seq.*

### VI.

This **ADMINISTRATIVE ORDER ON CONSENT (AOC)** may be executed in counterparts, each of which may be executed by one or more of the signatory parties hereto.

Signature pages may be detached from the counterparts and attached to one or more copies of this Agreement to form multiple legally effective documents. Facsimile signatures shall be sufficient in lieu of original signatures.

## VII.

The Department reserves the right to seek compliance with its rules and regulations in any manner allowed by law, and nothing herein shall be construed to preclude the right to seek compliance. The Department reserves all legal and equitable remedies and authorities to seek emission reductions in addition to those specified in this AOC.

## VIII.

In any subsequent administrative or judicial proceeding initiated by the Department or the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facility, Respondent shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estopped, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the Department or the United States in the subsequent proceeding were or should have been addressed in this AOC.

## IX.

This AOC is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Respondent is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits, and Respondent's compliance with this AOC shall be no defense to any action commenced pursuant to any such laws, regulations, or permits. The Department does not, by its consent to the entry of this AOC, warrant or aver in any manner that Respondent's compliance with any aspect of this AOC will result in compliance with provisions of the

Louisiana Environmental Quality Act or the Clean Air Act, 42 U.S.C. § 7401, *et seq.*, or with any other provision of federal, State, or local laws, regulations, or permits.

X.

This AOC does not limit or affect the rights of Respondent against any third parties, not party to this AOC, nor does it limit the rights of third parties, including, but not limited to the United States, not party to this AOC, against Respondent, except as otherwise provided by law.

XI.

Nothing contained herein and no actions taken by Respondent with regard to this **ADMINISTRATIVE ORDER ON CONSENT** shall constitute an admission by Respondent to any fact, claim, liability, or defense.

XII.

Nothing contained herein and no actions taken by Respondent with regard to this **ADMINISTRATIVE ORDER ON CONSENT** shall constitute an admission by Respondent as to the correctness of or Respondent's agreement with the 2011 NATA or the Integrated Risk Information System (IRIS) inhalation unit risk estimate set out in EPA's IRIS 2010 Toxicological Review of Chloroprene.

XIII.

This **AOC** shall remain in force and effect until such time as the operating permit(s) has been modified and/or issued to incorporate the emission reduction measures in this AOC and the air quality monitoring of Paragraph I.H is complete.

**THE RESPONDENT SHALL FURTHER BE ON NOTICE THAT:**

This **ADMINISTRATIVE ORDER ON CONSENT** shall be final and effective upon signature by an authorized representative of the Department and signature by the authorized representative of the Respondent.

Baton Rouge, Louisiana, this 6th day of JAn., 2017.

*[signature: ChCB]*

Chuck Carr Brown, Ph.D.
Secretary
Louisiana Department of Environmental Quality

**DENKA PERFORMANCE ELASTOMER LLC**

By: Nao Kawamura          Date: 1-6-2017

Name: *[signature]*

Title: Executive Officer and Vice President, Administration

10