# EXHIBIT 36

BILLING CODE: 4410-13

DEPARTMENT OF JUSTICE

Amendment of Title VI Regulations

28 CFR Part 42

CRT Docket No. 140; AG Order No.

RIN 1190-NYD

**AGENCY:** Civil Rights Division, Department of Justice.

**ACTION:** Final Rule.

**SUMMARY**: The Department of Justice amends its regulations implementing Title VI of the Civil Rights Act of 1964 ("Title VI") to align with the conduct Congress intended to prohibit when enacting Title VI and to address concerns the Supreme Court raised in *Alexander v. Sandoval*, 532 U.S. 275 (2001).

**DATES:** This final rule is effective on [INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER.]

**FOR FURTHER INFORMATION CONTACT**: [Name], [Title], Civil Rights Division, at 202–[XXX] [XXXX]

**SUPPLEMENTARY INFORMATION**:

**I. Discussion**

**A. Statutory and Regulatory History**

Title VI of the Civil Rights Act of 1964, as amended, prohibits intentional discrimination on the basis of race, color, and national origin in all programs or activities that receive Federal financial assistance. 42 U.S.C. 2000d. Title VI also directs federal departments and agencies that extend federal financial assistance to "effectuate the provisions of" Title VI "by issuing rules, regulations, or orders of general applicability." 42 U.S.C. 2000d-1. Pursuant to Executive Order 12250, 28 CFR pt. 41, app. A, the Department of Justice acts as the lead federal agency responsible for defining the nature and scope of Title VI's prohibition of discrimination based on race, color, and national origin in programs and activities receiving Federal financial assistance. As part of this responsibility, Executive Order 12250 provides that the Attorney General must approve other agencies' federal regulations implementing Title VI. The Department's own Title VI implementing regulations are codified at 28 CFR 42.101 42.112. The Department originally issued its implementing regulations in 1966. In 1973, the Department substantively amended its regulatory description of prohibited discrimination. In 2003, the Department added language regarding "program or activity" to reflect Congress's amendment of Title VI through the Civil Rights Restoration Act of 1987. Thus, beyond the required updating of "program or activity" language pursuant the Civil Rights Restoration Act, the Department has not substantively updated its Title VI regulations since 1973—almost 50 years ago.

The Department's implementing regulation describing the prohibited conduct considered to be discriminatory, 28 CFR 42.104, currently includes prohibitions dealing with conduct that has an unintentional disparate impact.

**B. Relevant Supreme Court Decisions**

In 1978, five years after the Department had last substantively amended its Title VI regulations, the Supreme Court found that Congress intended Title VI to prohibit "only those racial classifications that would violate the Equal Protection Clause" if committed by a government actor. *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 287 (1978) (Powell, J., announcing judgment); *id.* at 325, 328, 352 (Brennan, J., joined by White, Marshall, and Blackmun, JJ., concurring in part). Just prior to this *Bakke* holding regarding Title VI, the Supreme Court held that the Equal Protection Clause requires proof of intentional discrimination, and that discriminatory effect or disparate impact alone does not constitute a violation.

1

2

*Washington v. Davis*, 426 U.S. 229, 242 (1976) (finding Equal Protection Clause requires discriminatory intent, compared to Title VII's statutorily enacted disparate impact standard in employment); *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."); *Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256, 272 (1979) ("[E]ven if a neutral law has a disproportionately adverse effect upon a racial minority, it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose."). Taken together, these Supreme Court cases established that Title VI's statutory prohibition extends only to intentional discrimination.

In 2001, the Supreme Court reaffirmed that Title VI's statutory prohibition extends only to intentional discrimination in *Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001). In the *Sandoval* case, the Supreme Court held that private plaintiffs could not bring a Title VI action to enforce the Department's implementing regulation prohibiting unintentional discriminatory effects or disparate impact because the statutory provisions of Title VI prohibited only intentional discrimination. While the Supreme Court in *Sandoval* assumed, without deciding, that the Department's disparate impact regulation was valid, the Court wrote that the regulation is in "considerable tension" with the Supreme Court's Title VI precedents, and the regulation does not "authoritatively" construe Title VI because the disparate impact regulation "forbids conduct"—unintentional discrimination—that Title VI "permits." *Sandoval*, 532 U.S. at 281-82, 284-85.

### C. Post *Sandoval* Enforcement Uncertainty

The Supreme Court's *Sandoval* decision has led to a divergence between Title VI enforcement by private plaintiffs and federal departments and agencies. Private plaintiffs can enforce only Title VI's statutory prohibition on intentional discrimination. Federal departments and agencies, however, can enforce not only the statutory prohibition on intentional discrimination but also their much broader disparate impact regulations. The *Sandoval* decision has also sparked considerable uncertainty as to the validity of the disparate impact regulations that nearly every federal department and agency have promulgated.

### D. Issues with Current Justice Department Regulations and the Modifications this Rule Makes

The current regulations' extension of prohibited conduct to unintentional disparate impact expands the prohibition to a vastly broader scope of conduct than the intentionally discriminatory conduct that the statute itself prohibits. This rule's regulatory changes address the concerns regarding the statutory authority supporting the scope of these regulations that the Supreme Court questioned in *Sandoval*, harmonize the implementing regulations' scope with the conduct that Congress actually intended Title VI to prohibit, promote consistent enforcement among private plaintiffs and federal departments and agencies, as well as provide much needed clarity to the courts and federal funding recipients and beneficiaries.

## II. Changes

As described below, the Department amends the following provisions in its Title VI implementing regulation that explain the particular types of "Discrimination prohibited," located at 28 CFR 42.104.

### A. Table Summarizing Changes

The table below indicates the exact wording changes. For each section indicated in the left column, the text shown in in the middle column is removed and the text shown in the right column is added:

| SECTION | REMOVE | ADD |
|---|---|---|
| 42.104(b)(2) | Full text of paragraph: "(2) A recipient . . . or national origin." | "[Removed]" |

| | | |
|---|---|---|
| 42.104(b)(3) | "or effect" from both places | |
| 42.104(b)(6)(i) | "(i)" from "42.104(b)(6)(i)" | |
| 42.104(b)(6)(ii) | Full text of paragraph: "(ii) Even in . . . or national origin." | |
| 42.104(c)(1) | "(1)" from "(c) Employment practice. (1) Whenever a primary objective of the . . . ." | |
| 42.104(c)(2) | Full text of paragraph: "(2) In regard to . . of beneficiaries." | |

B. **Section-by-Section Analysis**

on 42.104(b)(2)

Section 42.104(b)(2) is the regulation's general prohibition of unintentional disparate impact. This paragraph expands prohibited conduct from purposeful discrimination to federal funding recipients who "utilize criteria or methods of administration which have the effect of subjecting individuals to discrimination." Because this paragraph's only purpose is to extend the prohibition to unintentional disparate impact, this rule deletes this paragraph and thus amends the Department's Title VI implementing regulations to conform more closely to the scope of coverage that Congress intended in enacting Title VI. The rule replaces paragraph (b)(2) with a placeholder to maintain the numbering accuracy of previous citations and other references to other parts of this section.

Section 42.104(b)(3)

Section 42.104(b)(3) deals with a federal funding recipient's or applicant's selection of sites or locations of facilities. The paragraph provides that a funding recipient may not make selections with the "purpose or effect" of discriminating, or "with the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of" Title VI or the Department's implementing regulations. The paragraph's two "or effect" references extend its scope to unintentional disparate impact, and this rule deletes both "or effect" references to

conform paragraph (b)(3) more closely to the scope of coverage that Congress intended in enacting Title VI.

Section 42.104(b)(6)

Section 42.104(b)(6) deals with "affirmative action." Paragraph (b)(6)(ii) authorizes affirmative action in programs even in the absence of prior discrimination, and consequently authorizes intentional racial classifications, racial preferences, and other race based actions without the supporting compelling interest and narrow tailoring that the Equal Protection Cla requires. As explained above, Congress intended Title VI to prohibit and permit the same conduct as the Equal Protection Clause. The rule deletes paragraph (b)(6)(ii) to remove its authorization of conduct incompatible with Equal Protection. This rule makes no change to the current text of paragraph (b)(6)(i), except for a technical edit to reflect the removal of paragraph (b)(6)(ii).

Section 42.104(c)

Section 42.104(c) deals with prohibited discriminatory employment practices. Paragraph (c)(1) prohibits intentionally discriminatory employment practices when a primary objective of the Federal financial assistance is to provide employment. Paragraph (c)(2) extends the prohibition to employment practices of the recipient even when the financial assistance "does not have providing employment as a primary objective" if discrimination in the non funded "employment practices tends, on the ground of race, color, or national origin, to exclude persons from participation in, to deny them the benefits of or to subject them to discrimination under the program receiving Federal financial assistance." This paragraph's prohibition is not limited to intentional discrimination, but rather extends to prohibiting conduct that "tends" to have a discriminatory effect on a program without the primary objective of providing employment. Moreover, paragraph (c)(2)'s extension to employment practices where the federal funding's

5

6

primary objective is not to provide employment also conflicts with Congress's statutory limitation on Title VI's reach in 42 U.S.C. 2000d 3. Section 2000d 3 states that "[n]othing contained in [Title VI] shall be construed to authorize action under [Title VI] by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment." *Id.*; *see also Johnson v. Transp. Agency, Santa Clara Cnty.*, 480 U.S. 616, 628 n.6 (1987) (citing statutory limitation and noting Congressional intent that Title VI not "impinge" on Title VII, which prohibits discriminatory employment practices). The rule deletes paragraph (c)(2) to amend the regulation to more closely adhere to the scope of conduct Congress intended Title VI to prohibit. This rule makes no change to the current text of paragraph (c)(1), except for a technical edit to reflect the removal of paragraph (c)(2).

### III. Regulatory Certifications

*Administrative Procedure Act*

The Department issues this final rule without prior public notice and comment pursuant to the Administrative Procedure Act's exception for rules "relating to agency management or personnel or to public property, loans, grants, benefits, or contracts." 5 U.S.C. 553(a)(2). Title VI concerns non discrimination conditions to receiving Federal financial assistance, and more particularly to receiving Federal "[g]rants and loans," "property," "personnel" and "[a]ny Federal agreement, arrangement, or other contract which has as one of its purposes the provision of assistance." 28 CFR 42.102(c); *see also* 28 CFR 42.105 (requiring funding recipient sign contractual assurance of compliance with Title VI). Therefore, this final rule falls into the exception. *Cf. Education Programs or Activities Receiving or Benefitting From Federal Financial Assistance*, 82 FR 46655 01 (Oct. 6, 2017) (invoking exception to amend Title IX regulations to "promote consistency in the enforcement of Title IX for [Department of Agriculture] financial assistance recipients"); *Preserving Community and Neighborhood Choice*, 85 FR 47899-01 (Aug. 7, 2020) (invoking exception to repeal Housing and Urban Development rule regarding federal grantees and Fair Housing Act, 42 U.S.C. 3601 *et seq.*); *Participation by Minority Business Enterprise in Department of Transportation Programs*, 53 FR 18285-02 (May 23, 1988) (invoking exception to expand coverage of Department of Transportation regulation regarding Federal Aviation Administration's airport financial assistance program); *Nondiscrimination on the Basis of Handicap in Federally Assisted Programs Suspension of Guidelines With Respect to Mass Transportation*, 46 FR 40687-01 (Aug. 11, 1981) (invoking exception to suspend Department of Justice guidelines regarding prohibiting disability discrimination, pursuant to Rehabilitation Act of 1973, 29 U.S.C. 794, in transportation programs and activities receiving Federal financial assistance).

*Executive Orders 12866 and 13563 Regulatory Review*

This regulation has been drafted and reviewed in accordance with Executive Order 12866, *"Regulatory Planning and Review"* section 1(b), Principles of Regulation, and in accordance with Executive Order 13563, *"Improving Regulation and Regulatory Review"* section 1(b), General Principles of Regulation, which supplements and explicitly reaffirms the principles of Executive Order 12866. These Executive Orders direct agencies to assess all costs and benefits of available regulatory alternatives and, if regulation is necessary, to select regulatory approaches that maximize net benefits. Executive Order 13563 emphasizes the importance of quantifying both costs and benefits, of reducing costs, of harmonizing rules, and of promoting flexibility. Executive Order 13563 also recognizes that some benefits and costs are difficult to quantify and provides that, where appropriate and permitted by law, agencies may consider and discuss qualitatively values that are difficult or impossible to quantify.

As explained in the preamble, the regulatory modifications this rule makes are necessary to address concerns regarding the authority supporting the scope of the Department's Title VI regulation that the Supreme Court raised in *Sandoval*, harmonize the implementing regulation's scope with the scope of the conduct that Congress intended Title VI to prohibit, promote consistency in enforcement among private plaintiffs and federal departments and agencies, as well as provide much needed clarity to the courts and federal funding recipients and beneficiaries regarding the proper scope of prohibited conduct. In essence, this rule merely conforms the Department's regulation to existing statutory law, as interpreted by the Supreme Court.

Data limitations make the costs and benefits of the rule itself difficult to quantify. While not representing the monetary impact of the rule, more generally the Department of Justice issued approximately 19,000 separate awards totaling approximately $21 billion over the past four years. In FY 2020 alone, the Department issued approximately 7,000 separate awards totaling approximately $6 billion. The Department's Title VI related active investigations and compliance reviews regarding these funds and their recipients totaled just over 200 for FY2016 through FY2020. The Department does not track which of its investigations and compliance reviews involve issues solely related to potential unintentional disparate impact. For enforcement actions that relate to both unintentional disparate impact and intentional discrimination, the Department does not track and cannot reliably quantify the particular costs attributable to the varying disparate impact portions of these enforcement actions. That disparate impact is sometimes a factor that may be considered in determining whether discrimination was intentional further impedes monetizing costs and benefits. Therefore, overall the cost effect on the Department is difficult to quantify, but the deregulatory action should decrease the Department's Title VI enforcement costs. Similarly, the Department is unable to quantify how

funding recipients will respond to the regulatory changes, but the deregulatory action should result in greater flexibility and less compliance cost for recipients.

The Department recognizes that a funding recipient may receive federal funds from sources additional to the Department. The Department envisions that this rule will cause other federal departments and agencies to consider similarly revising their Title VI regulations. Regardless, the Department does not envision that this rule will appreciably increase administrative or compliance costs for funding recipients who must also adhere to the regulations of another department or agency. The deregulation the Department makes here does not create any new funding recipient obligations. Moreover, recipients who receive funds for the same program or activity from more than one federal entity already must enter into separate contractual assurances with each federal funding entity, *see, e.g.*, 28 CFR 42.105 (requiring contractual assurance); these contractual assurances already impose varying requirements that each federal funding source deems necessary. Funding recipients would continue to be held to the most stringent contractual assurance and regulation.

Based on the analysis of the practical qualitative costs and benefits noted above, the Department believes that this rule is consistent with the principles of Executive Orders 12866 and 13563, including the requirements that, to the extent permitted by law, the Department adopt a regulation only upon a reasoned determination that its benefits justify its costs and choose a regulatory approach that maximizes net benefits.

The Department has determined that this rule is a "significant regulatory action" under Executive Order 12866, section 3(f), and accordingly the Office of Management and Budget has reviewed this rule.

***Executive Order 13771—Reducing Regulation and Controlling Regulatory Costs***

This amendment implements Executive Order 13771, entitled *Reducing Regulation and Controlling Regulatory Costs,* which directs federal agencies to identify and eliminate or streamline regulations that are wasteful, inefficient, or unnecessary. By revising the Department's current Title VI regulations — which extend prohibited conduct to unintentional disparate impact, thus expanding the prohibition to a vastly broader scope of conduct than the intentionally discriminatory conduct that the statute itself prohibits — this rule eliminates unnecessary regulation. Accordingly, the Department expects this rule relieving the disparate impact restriction to be a deregulatory action pursuant to Executive Order 13771.

*Executive Order 13132—Federalism*

This rule will not have a substantial direct effect on the relationship between the national government and the states, on distribution of power and responsibilities among the various levels of government or on states' policymaking discretion. States that participate in Department's Title VI funding do so voluntarily and, as a condition of receiving the Federal funds, agree to comply with the relevant statutory requirements. The rule does not subject states or any other Federal funding recipients to new obligations. The rule amends and clarifies existing regulations that are required by statute pursuant to Title VI. Therefore, in accordance with Section 6 of Executive Order 13132, the Department has determined that these amendments do not have sufficient federalism implications to warrant the preparation of a federalism summary impact statement.

*Executive Order 12988—Civil Justice Reform*

This rule meets the applicable standards set forth in §§ 3(a) and (b)(2) of Executive Order 12988.

*Regulatory Flexibility Act*

The Department, in accordance with the Regulatory Flexibility Act, 5 U.S.C. 605(b), has reviewed these regulations and certifies that the rule's changes will not have a significant economic impact on a substantial number of small entities, in large part because these regulation changes do not impose any new substantive obligations on Federal funding recipients. The rule amends and clarifies existing regulations that are required by statute pursuant to Title VI. The rule merely harmonizes the scope of the regulations to conform with the scope of the Title VI statute, which does not prohibit unintentional disparate impact. All Federal funding recipients have been bound by the existing regulatory standards that remain in place after this rule since their promulgation.

*Unfunded Mandates Reform Act of 1995*

The Unfunded Mandates Reform Act of 1995 (UMRA), 15 U.S.C. 1532, requires agencies to prepare several analytic statements before proposing any rule that may result in annual expenditures of $100 million by State, local, Indian tribal governments or the private sector. Section 4(2) of the UMRA, however, excludes from the Act's coverage any proposed or final Federal regulation that "establishes or enforces any statutory rights that prohibit discrimination on the basis of race, color, religion, sex, national origin, age, handicap, or disability." Accordingly, this rulemaking is not subject to the provisions of the UMRA.

*Congressional Review Act*

This rule is not a major rule as defined by the Congressional Review Act, 5 U.S.C. 804. This rule will not result in an annual effect on the economy of $100 million or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based companies to compete with foreign based companies in domestic and export markets. The rule merely narrows the scope of the regulations to conform to the scope of the Title VI statute, which does not

prohibit unintentional disparate impact. The rule does not impose any new obligations on any recipients of Federal funding, and all recipients have been bound by the remaining regulatory standards of liability since their promulgation.

*Paperwork Reduction Act*

This rule will not impose additional reporting or recordkeeping requirements under the Paperwork Reduction Act of 1995, 44 U.S.C. 3501 *et seq.*

**List of Subjects for 28 CFR Part 42**

Administrative practice and procedure, Civil rights, Equal employment opportunity, Grant programs.

Accordingly, for the reasons stated in the preamble, and by the authority vested in me as Attorney General by law, part 42 of title 28 of the Code of Federal Regulations, is amended as follows:

**PART 42   NONDISCRIMINATION; EQUAL EMPLOYMENT OPPORTUNITY; POLICIES AND PROCEDURES**

**Subpart C   Nondiscrimination in Federally Assisted Programs   Implementation of Title VI of the Civil Rights Act of 1964**[1]

1. The authority citation for subpart C is revised to read as follows:

**Authority**: 42 U.S.C. 2000d 2000d-7; E.O. 12250, 45 FR 72995, 3 CFR, 1980 Comp., p. 298.

2. Section 42.104 is amended by revising paragraphs (b)(2), (b)(3), (b)(6), and (c), to read as follows:

**§ 42.104 Discrimination prohibited.**

---

[1] *See also* 28 CFR 50.3. Guidelines for enforcement of Title VI, Civil Rights Act.

13

* * * * *

(b) * * *

* * * * *

(2) [Removed].

(3) In determining the site or location of facilities, a recipient or applicant may not make selections with the purpose of excluding individuals from, denying them the benefits of, or subjecting them to discrimination under any program to which this subpart applies, on the ground of race, color, or national origin; or with the purpose of defeating or substantially impairing the accomplishment of the objectives of the Act or this subpart.

* * * * *

(6) In administering a program regarding which the recipient has previously discriminated against persons on the ground of race, color, or national origin, the recipient must take affirmative action to overcome the effects of prior discrimination

(c) Employment practices. Whenever a primary objective of the Federal financial assistance to a program to which this subpart applies, is to provide employment, a recipient of such assistance may not (directly or through contractual or other arrangements) subject any individual to discrimination on the ground of race, color, or national origin in its employment practices under such program (including recruitment or recruitment advertising, employment, layoff, or termination, upgrading, demotion, or transfer, rates of pay or other forms of compensation, and use of facilities). That prohibition also applies to programs as to which a primary objective of the Federal financial assistance is (i) to assist individuals, through employment, to meet expenses incident to the commencement or continuation of their education or training, or (ii) to provide work experience which contributes to the education or training of the individuals involved. The requirements applicable to construction employment under any

14

such program shall be those specified in or pursuant to part III of Executive Order 11246 or any

Executive Order which supersedes it.

\*   \*   \*   \*   \*

_____                    _____
Date                                   William P. Barr
                                       Attorney General

15