# EXHIBIT 38

DRAFT                    DELIBERATIVE/PRIVILEGED                    [Type here]



### UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
WASHINGTON, D.C. 20460

Office of Environmental Justice and External Civil Rights
Office of External Civil Rights Compliance

**INFORMAL RESOLUTION AGREEMENT**
between the
**LOUISIANA DEPARTMENT OF HEALTH**
and the
**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**EPA COMPLAINT NO. 02R-22-R6**

## I.  PURPOSE AND JURISDICTION

A. Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d to 2000d-7 (Title VI) and other federal nondiscrimination laws, and United States Environmental Protection Agency's (EPA) implementing regulations at 40 C.F.R. Parts 5 and 7 prohibit discrimination on the basis of race, color, national origin, disability, sex, age, and intimidation or retaliation in the programs, services, and activities of applicants for or recipients of federal financial assistance.[1]

B. The Louisiana Department of Health (LDH) receives federal financial assistance from the EPA and, therefore, must ensure nondiscrimination in its programs or activities pursuant to federal nondiscrimination laws and EPA's implementing regulations.

C. On January 20, 2022, EPA received Complaint No. 02R-22-R6, which alleged discrimination by LDH based on race.  In response to the complaint, on April 6, 2022, EPA accepted for investigation the following issues:

1. Whether LDH subjects Black residents of St. John the Baptist Parish, including students at the Fifth Ward Elementary School, to discrimination on the basis of race in violation of Title VI of the Civil Rights Act of 1964 and EPA's implementing regulation at 40 C.F.R. §§ 7.30 and 7.35, including by allegedly failing in its duty to provide Parish residents with necessary information about health threats, and to make necessary recommendations to all relevant government agencies and affected communities regarding

---

[1] Title VI of the Civil Rights Act of 1964, 42 United States Code §§ 2000d to 2000d-7 (Title VI); Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; Title IX of the Education Act Amendments of 1972, as amended, 20 U.S.C. §§ 1681 et seq.; Age Discrimination Act of 1975, 42 U.S.C. §§ 6101 et seq.; Federal Water Pollution Control Act Amendments of 1972, Pub. L. 92-500 § 13, 86 Stat. 903 (codified as amended at 33 U.S.C. § 1251 (1972)); 40 C.F.R. Parts 5 and 7.

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

measures to reduce and prevent exposure to hazardous air pollutant emissions from the Denka facility and other nearby sources of pollution.

2. Whether LDH has and is implementing the procedural safeguards required under 40 C.F.R. Parts 5 and 7 that recipients of federal assistance must have in place to comply with their general nondiscrimination obligations, including specific policies and procedures to ensure meaningful access to LDH services, programs and activities for individuals with limited-English proficiency and individuals with disabilities, and whether LDH has a public participation policy and process that is consistent with Title VI and the other federal civil rights laws, and EPA's implementing regulation at 40 C.F.R. Parts 5 and 7.

D. During the course of EPA's investigation into Complaint No. 02R-22-R6, LDH agreed to engage in the voluntary Informal Resolution Agreement (Agreement) process in order to resolve the complaint.

E. This Agreement is entered into by LDH and EPA.

F. This Agreement is entered into pursuant to the authority granted to EPA under the federal non-discrimination laws, including Title VI of the Civil Rights Act of 1964, and the EPA's implementing regulation found at 40 C.F.R. Parts 5 and 7, and resolves Complaint No. 02R-22-R6 and additional concerns identified by EPA.

G. This Agreement is entered into voluntarily by LDH and does not constitute an admission by LDH of a violation of, or a finding of compliance or noncompliance by the EPA with, Title VI or 40 C.F.R. Parts 5 and 7.

H. [Factual Background]

> **Commented [OM1]: LDH:** The agreement may contain factual background as needed. We will discuss those EPA proposes to include as well as those LDH may propose to include.

II. **Commitments Regarding LDH's Methods of Administration (Issue 1)**

A. Process to Identify and Address Potential Adverse Disparate Health and Non-Health Effects from LDH Actions or Inactions Related to Health and Environmental Exposures

1. **INITIAL SCREENING**

When LDH identifies and/or evaluates potential causes of adverse health effects from environmental exposures and decides whether/when to make recommendations, and/or provide health information to the public (including the recommendation not to act or decision not to provide health information to the public), to prevent and reduce exposure, including its work to promote a better public understanding of the health effects of that exposure LDH agrees to conduct an Initial Screening Process, which:

> **Commented [KZ2]: For LDH:** What types of recommendations does LDH make? When and in what instances? How does LDH determine when it will provide health information to the public?

2

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

  a. Characterizes the community potentially exposed by an adverse disparate health effect arising from a LDH action or inaction, by identifying populations vulnerable to impacts of pollution (for example, considering age, disabilities, health status, access to critical services such as food, transportation, health services, etc.,); populations identifiable on the basis of race, color or national origin including limited English proficient populations; and already existing environmental burdens;

  b. Ensures that public involvement efforts will be tailored to the demographics and needs of the community;

  c. Compares the demographics, vulnerabilities, and environmental burdens of the affected area with those of an appropriate region (*e.g.,* county, city) and/or state as a whole. This comparison may be conducted using a screening tool (*e.g.* CDC/ATSDR's EJI, EJ Screen);

  d. Evaluates readily available additional information about potential impacts; and

  e. Seeks input from the impacted community about the potential adverse impacts and potential mitigation measures.

2. **ADDITIONAL ANALYSIS AND EVALUATION**

If the initial analysis in Section II.A.1 above indicates LDH's action or inaction could cause or contribute to adverse disparate impacts on the basis of race, color or national origin, LDH will conduct additional analysis, as needed, to evaluate:

  a. Any potential adversity/harm (this can examine not only the burdens and harms resulting from each individual policy, decision or action or inaction, and borne disproportionately on the basis of race, but also on the total or cumulative burdens including exposures throughout a person's lifetime borne disproportionately by a community, especially in light of the characteristics of that community[2]);

> **Commented [KZ3]: For LDH:** Does LDH have any standard policies or procedures that guide LDH's decisions to take actions, target specific communities, target certain environmental health issues, etc.?

---

[2] EPA's Office of Research and Development defines cumulative impacts as "the totality of exposures to combinations of chemical and non-chemical stressors and their effects on health, well-being, and quality of life outcomes. Cumulative impacts include contemporary exposures to multiple stressors as well as exposures throughout a person's lifetime. They are influenced by the distribution of stressors and encompass both direct and indirect effects to people through impacts on resources and the environment. Cumulative impacts can be considered in the context of individuals, geographically defined communities, or definable population groups. Cumulative impacts characterize the potential state of vulnerability or resilience of a community." U.S. EPA, Cumulative Impacts Research: Recommendations for EPA's Office of Research and Development. *U.S. Environmental Protection Agency,* Washington, D.C., EPA/600/R-22/014a, 2022. p. 4,

3

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

    b.  Whether the adversity/harm identified in 2.a. above is borne disproportionately by individuals on the basis of race, color or national origin; and,

    c.  Whether there is a causal connection between the LDH action or inaction and the adversity/harm identified in 2.a. above (that are "sufficiently substantial to raise an inference of causation"[3]).

**Methodology for Additional Analysis and Evaluation**

    d.  LDH will develop a methodology to conduct additional analysis and evaluation described in Section II.A.2. above. Information relevant to the additional analysis and evaluation may include but is not limited to:

        i.  Anticipated health or non-health effects on potentially impacted populations, taking into account all potential pathways of exposure to the air pollutants of concern (*e.g.*, inhalation, ingestion of contaminated soil, drinking water contamination) and including, the affected population's proximity to environmental exposures affecting environmental quality, quality of life (*e.g.*, other permitted facilities noise, odor, lights), safety (e.g., industrial truck traffic), and economic impacts;

        ii.  Existing burdens, which may include:
            a.  a range of activities that impact quality of life (*e.g.*, odor, noise, lights), safety (*e.g.*, industrial truck traffic), and/or
            b.  community exposure or vulnerability from multiple sources of pollution including:
                i.  Sources permitted by EPA, LDEQ or local governments;
                ii.  Other regulated sources – such as those subject to federal or state requirements for reporting of waste generation or emissions (*e.g.*, Toxics Release Inventory reporters, Resource Conservation and Recovery Act hazardous waste generator sites);
                iii.  Regulated but usually unpermitted sources, including fugitive emissions and nonpoint

---

https://www.epa.gov/system/files/documents/2022-09/Cumulative%20Impacts%20Research%20Final%20Report_FINAL-EPA%20600-R-22-014a.pdf.
[3] *Smith v. Xerox Corp.*, 196 F.3d 358, 364 (2nd Cir. 1999), citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994-995 (1988), *NAACP v. Town of East Haven*, 70 F.3d 219, 225 (2nd Cir. 1995).

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

                    sources (*e.g.,* some paint stripping or metal
                    finishing operations, mobile sources, sources of
                    surface water runoff); and
        iv.  Unregulated sources (*e.g.,* household lead paint,
             highways, railroads);

c. Public health data on health conditions with significant
environmental determinants *(e.g.,* asthma, heart disease,
lead poisoning, low birth weight);

d. Other indicators of population vulnerability including
social determinants of health;[4]

> **Commented [KZ4]:** For LDH: Such as, for example, CDC, ATSDR, and HHS resources, etc.

e. Location of sensitive populations or places near
proposed or existing facilities, including:
    i.  Schools,
    ii.  Hospitals,
    iii.  Day care centers (*e.g.,* children, elders),
    iv.  Culturally significant resources (*e.g.,*
        cemeteries, places of worship);

f. Residence locations affected by proposed or existing
facilities, including identifying public housing,
jails/prisons, communal living facilities (*e.g.,* assisted
living, nursing home);

g. Factors that may increase community member exposure
or vulnerability as compared to other populations (*e.g.,*
cultural practices, subsistence fishing, hunting, foraging
information);

h. Compliance information on facilities in the area (*e.g.,*
EPA's Enforcement and Compliance History Online
(ECHO)[5]);

i. Community supplied information such as complaints
submitted through, for example:
    i.  LDH's civil rights grievance procedure,
    ii.  LDH's health complaint system,
    iii.  EPA's ECHO;

> **Commented [KZ5]:** For LDH: HSSComplaints@la.gov

j. Drinking and surface water quality;

k. Census data (*e.g.,* race, national origin, limited English
proficiency, population density);

l. Information relevant to assessment of disparities,
including appropriate comparison populations will
depend on the action and the facts involved;
    i.  Relevant comparison populations may be those
        who live within a reference area in LDH's
        jurisdiction (*e.g.,* the state, an area of

---

[4] https://health.gov/healthypeople/objectives-and-data/social-determinants-
health#:~:text=Social%20determinants%20of%20health%20(SDOH,of-life%20outcomes%20and%20risks.
[5] https://echo.epa.gov/

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

          responsibility for a branch office), within a
          political jurisdiction (*e.g.,* town, county, state),
          or an area defined by environmental criteria
          such as an airshed.

   ii.  The legally relevant "population base" for a
       statistical measure of adverse disparate impact is
       generally all persons affected or who could
       possibly be affected by a particular LDH action
       or inaction;

  iii.  disparities by comparing the demographic
       characteristics of the population potentially
       adversely affected by the LDH action or
       inaction to an appropriate comparison
       population;

 m. Information about the adversely affected population,
    including the proportion of persons in the protected
    class who are adversely affected by LDH's action or
    inaction and the proportion of persons not in the
    protected class who are adversely affected.[6]

### Analysis of Substantial Legitimate Justification and Less Discriminatory Alternatives

e.  Once LDH has completed the additional analysis above, if LDH
    determines that LDH's actions or inactions likely[7] causes or
    contributes an adverse disparate impact, LDH will determine:

   i.  Whether the policy or practice (*e.g.,* action or inaction) in
      question has a substantial legitimate justification that is
      "necessary to meet a goal that is legitimate, important, and
      integral to [its] institutional mission."

   ii.  Whether the justification is demonstrably related to its mission.

f.  If LDH determines that there is a substantial legitimate justification,
    LDH will determine:

   i.  Whether there are less discriminatory alternatives, and

---

[6] In analyzing disparity under Title VI, EPA looks at whether a disproportionate share of the adversity/harm discussed above is borne by individuals based on their race, color, or national origin. Disparity is a fact-specific inquiry that involves identifying an appropriate measure.

[7] "EPA utilizes the 'preponderance of the evidence' (more likely than not) standard in its investigations to determine whether or not a recipient has violated federal civil rights laws." EPA Civil Compliance Toolkit Chapter 1 at https://www.epa.gov/sites/default/files/2017-01/documents/toolkit-chapter1-transmittal_letter-faqs.pdf

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

    ii.  Whether any mitigation measures implemented can reduce or eliminate the adverse disparate impacts and demonstrate there are no less discriminatory alternatives.[8]

  g.  When identifying and evaluating potential mitigation measures and less discriminatory alternatives, LDH will:
    i.  Identify and exercise all available legal authority under:
      a.  Public health and environmental laws and regulations that mitigate or avoid creating identified disparate impacts.
      b.  other laws (*e.g.,* state civil rights laws, state environmental justice laws) to mitigate or avoid creating identified disparate impacts.
    ii.  Seek public comment on appropriate mitigation measures/less discriminatory alternatives, and consider the input when developing a plan for assessment or action, including, but not limited to, health studies, consultations, surveillance monitoring;
    iii.  Potential mitigation measures to address disparate impacts might include:

**Commented [KZ6]: For LDH:** We recommend that you begin looking at your authorities and areas of discretion early on in this process.

**Commented [KZ7]: For LDH:** This has been left blank so that we can discuss/develop appropriate language with LDH relative to the "actions" identified in A 1 and 2 above.

  h.  If LDH exercises all legal authority and implementation of mitigation measures/less discriminatory alternatives such as those described above and they do not adequately mitigate disparate impacts, then LDH should evaluate whether compliance with Title VI can only be achieved by taking an alternative action, for example[9]:
    i.  [PLACEHOLDER]

  3.  **OBTAINING PUBLIC COMMENT ON TITLE VI ANALYSIS**

    LDH will obtain public comment on its Final LDH's Title VI Framework Analysis, LDH will:

---

[8] A less discriminatory alternative is a comparably effective practice that causes less of a disparate impact than the challenged practice. Mitigation measures that would lessen or eliminate the demonstrated adverse disparate impacts, could be part of a less discriminatory alternative; however, alternatives may also include practices or policies of a different manner or other actions that ameliorate the adverse disparate impact.

[9] Failure to exercise all available discretion to substantially reduce or eliminate the disparate impacts, including denial of the permit, if necessary, may leave LDH vulnerable to a finding of discrimination if the exercise of available discretion would have resulted in a comparably effective alternative that would result in less adverse impact.

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

    a. issue a public notice that it is undertaking a Title VI analysis; and
    b. provide meaningful public comment opportunities, including holding a public meeting in the affected community on its Title VI analysis (*e.g.,* potential adverse impacts, potential mitigation measures) and addressing those public comments prior to issuing a final decision.

4. **POST ACTIONS**

   After LDH completes its action it will:

1. Establishing a point of contact within LDH for the community;

2. Providing an explanation of findings, recommendations, etc.

3. Monitoring of all mitigation measures implemented . . .

4. Providing periodic public updates.

5. **DUE DATES FOR SECTION II – PROCESS FOR TITLE VI ANALYSIS**

    a. Within 90 days of the date of this agreement, LDH will submit to EPA for review and approval the draft process for Title VI analysis in the as outlined in Section III.A-D above (Process).
    b. Within 30 days of EPA approval of the draft Process, LDH will publish the draft Process for public comment.
    c. Within 60 days of end of the public comment period LDH will submit to EPA a copy of all public comments received and the LDH draft response to public comments.
    d. Within 30 days EPA will provide any comments to the draft response to comments.
    e. Within 30 days of receipt of EPA comments, LDH will submit to EPA its final draft of the Process for approval.
    f. Within 30 days of approval by EPA, LDH will publish the final Process.

6. **EVALUATION OF IMPLEMENTATION**

   Annually for five years after this Agreement, LDH shall submit to EPA and publish on its website an evaluation of the results of the implementation of the Process.

**Commented [KZ8]: For LDH:** This section is a placeholder.  We can discuss specific steps after we finalize earlier sections of this document.

8

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

B. **Cumulative Impact Analyses**

C. **Community Meetings**

Within 45 days from the effective date of this Agreement, LDH will collaborate with LDEQ to host at least one community meeting, to be held virtually and in person, to discuss the commitments made by LDH in this Agreement in each of the communities below:

> a. Reserve, Louisiana[10] (the community impacted by the Denka Performance Elastomer LLC (Denka) facility in St. John the Baptist Parish); and
> b. in other communities within the Industrial Corridor as appropriate.

1. LDH will provide the public and EPA at least 15 days advance written notice of the date, location, and time of the public meeting.

2. LDH will ensure that the selection of the meeting locations, dates, and times will consider the availability and schedules of public transportation and consideration of residents' work hours; and ensure that the location(s), dates, and times will allow for meaningful participation/involvement by individuals with limited English proficiency (LEP) and individuals with disabilities. EPA is available to provide technical assistance to LDH to ensure the meetings are meaningfully accessible to all residents.

3. If LDH plans to communicate any information related to risk from exposures to air toxics at the meetings held pursuant to Paragraph II. A. 1., LDH will employ EPA's SALT Framework: A Process Framework to Guide Risk Communication discussed in Paragraph II. G. 2.

D. **Scientific Integrity and Risk Communication**

1. <u>**SCIENTIFIC INTEGRITY**</u>

> a. Within 30 days of the effective date of this Agreement, LDH will appoint a Scientific Integrity Official to champion scientific integrity throughout LDH. The Scientific Integrity Official will chair a standing committee of Deputy Scientific Integrity Officials representing each LDH Program Office and Region. These officials will be senior-level employees and will provide oversight for the implementation of the Scientific Integrity Policy at LDH, act as liaisons for their respective

**Commented [KZ9]: LDH:** EPA is willing to provide technical assistance as well as professional facilitation for these meetings.

9

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

Programs and/or Regions and are available to address any questions or concerns regarding this policy and its implementation.

b.  Within 150 days of the effective date of this Agreement, LDH will submit a draft Scientific Integrity Policy to EPA to demonstrate that LDH will require that the decision-making process is supported and driven by best available science. EPA recommends that LDH model its Scientific Integrity Policy on EPA's Scientific Integrity Policy found at https://www.epa.gov/sites/default/files/2014-02/documents/scientific_integrity_policy_2012.pdf.  EPA will review the draft Policy in accordance with Paragraph IV.C. of this Agreement.

c.  LDH will issue its Scientific Integrity Policy within 20 days of final approval by EPA in accordance with Paragraph IV.C. of this Agreement. The Policy will apply to all LDH employees, including scientists, managers, and political appointees, who will follow this policy when engaging in, supervising, managing, or influencing scientific activities; communicating information in an official capacity about LDH scientific activities; and utilizing scientific information in making LDH policy or management decisions relevant to science and health. In addition, all contractors, grantees, collaborators, and student volunteers who engage in scientific activities are expected to uphold the standards established by LDH Scientific Integrity policy.

d.  Within 90 days of EPA approval of LDH's Scientific Integrity Policy, LDH will train all employees involved in the activities described in Paragraph 3 above on its Scientific Integrity Policy and all plans, policies and procedures created to implement the policy. Within 20 days of completion of the initial training in this Paragraph, LDH will provide EPA a copy of any training materials, a list of staff who received the training, and the dates the training was provided.

e.  Within 30 days of the initial training implemented pursuant to Paragraph 4 above, LDH will submit to EPA for review a draft plan for ensuring that such training is also a routine part of the on-boarding process for new employees and is given regularly as refresher training to all employees and relevant contractors. EPA will review the draft training in accordance with Paragraph IV.C. of this Agreement. LDH will forward a final copy of the training plan to EPA and implement the above plan.

2.  **RISK COMMUNICATION**

a.  Within 60 days of the effective date of this Agreement, LDH will adopt EPA's SALT Framework: A Process Framework to Guide Risk Communication (https://www.epa.gov/risk-communication/salt-

10

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

framework) and will provide confirmation of the adoption of the
framework to EPA.

b. Within 60 days of the adoption of the SALT Framework LDH will
ensure all its staff and relevant contractors have training on LDH's
SALT Framework policies, practices, and procedures. Within 20 days
of the training, LDH will provide EPA with a copy of any training
materials, a list of staff who received the training, and the dates the
training was provided. EPA is available to provide this training.

c. Within 30 days of the initial training implemented pursuant to
Paragraph ii above, LDH will forward to EPA for review a draft plan
for ensuring that such training is also a routine part of the on-boarding
process for new employees and is given regularly as refresher training
to all employees and relevant contractors.

E. **Cumulative Impact Analyses**
   1. LDH will participate in a Cumulative Impacts Assessment Working Group
      that will provide assistance (e.g., sharing applicable health data/information)
      and oversight of a cumulative impacts assessment conducted by the Louisiana
      Department of Environmental Quality (LDEQ) pursuant to the EPA-LDEQ
      Informal Resolution Agreement for Case Nos. 01R-22-R6 and 04R-22-R6.

F. **Health Consultation Evaluating Cancer Risk to School Children, Residents,**
   **and Workers Near the Denka facility**
   1. By [X Date] LDH agrees to complete a new Health Consultation that
      evaluates the public health implications of exposure to all chemicals emitted
      by the Denka facility, specifically evaluating health risks for those who live,
      work, and go to school in the areas impacted by facility emissions. In
      conducting this Health Consultation, LDH will include, at a minimum, do the
      following:
      a. LDH will conduct its Health Consultation in accordance with the
         specifications outlined in the Agency for Toxic Substances and
         Disease Registry (ATSDR) 2022 Public Health Assessment Guidance
         Manual;
      b. LDH will evaluate past, present, and potential future exposures,
         considering relevant ambient air monitoring data collected by EPA,
         Denka, and any other party;
      c. LDH's Health Consultation will include but not be limited to a health
         outcome data evaluation that compares incidences of various cancers
         among residents within a 0 to 1-mile radius of the facility and within a
         0 to 2-mile radius of the facility to incidences of the same cancers in
         St. John the Baptist Parish as a whole. This evaluation will supplement
         the census tract evaluations included in the Louisiana Tumor
         Registry's annual reports;

**Commented [KZ10]: For LDH:** We have removed the former provisions for Health Monitoring and School Surveillance as we believe it is adequately encompassed within this commitment.

11

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

    d. LDH's Health Consultation will include but not be limited to a health outcome data evaluation of respiratory, gastro-intestinal, cardiovascular, dermatological, and auto-immune disorders in school children, residents, and workers within a 0 to 5-mile radius of the facility and adjacent census tracts. LDH will collect data from sources, including but not limited to, all local school nurses, Emergency Department data (ER), the Louisiana Hospital Inpatient Discharge Database (LHIDD), evaluation of Community Health Assessments of all local hospitals, and from its Syndromic Surveillance System.

    e. LDH will request that ATSDR review and certify the Health Consultation, and LDH will make it available for public comment prior to finalization; and

    f. LDH will make the Health Consultation publicly available on its website and will deliver the Health Consultation directly to the St. John the Baptist Parish School Board, St. John the Baptist Parish Council, LDEQ, and will make local residents and stakeholders aware of its release.

  G. **LDH Epidemiological Study**

    1. LDH will seek grant funding for a new epidemiological study that evaluates cancer incidence in individuals who have attended or worked at the Fifth Ward Elementary School. LDH will seek funding in coordination with the Louisiana Tumor Registry and seek approval from the Institutional Review Board.

    2. In the event that LDH receives grant funding for the epidemiological study, LDH will evaluate various cancer incidence in individuals who have previously attended or worked at the Fifth Ward Elementary School and compare that incidence to a control population with similar demographics, socioeconomic status, health status, and air pollution exposures. The control population will not, however, have air pollution that includes known chloroprene or ethelyne oxide (EtO) exposures.

**III.**   **Commitments Regarding LDH's Procedural Safeguards (Issue 2)**

LDH agrees to the following commitments:

  A. <u>Notice of Non-Discrimination under the Federal Non-Discrimination Laws</u>[11]

    1. LDH will post a notice of non-Discrimination (Notice) on LDH's website homepage, in all LDH's offices and facilities, and in future general publications that are distributed to the public (*e.g.,* public outreach materials, such as brochures, notices, fact sheets or other information on rights and services; applications or forms to participate in or access LDH programs,

---

[11] 40 C.F.R. §7.95

12

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

processes or activities). LDH will ensure that its Notice is accessible to
individuals with limited-English proficiency (LEP) and individuals with
disabilities, including ensuring that the Notice as posted on its Website
Homepage is accessible to persons who are blind or have low vision.

2. The Notice will contain, at a minimum, the following recommended text:

   a. LDH does not discriminate on the basis of race, color, national origin
(including limited English proficiency), disability, age, or sex in
administration of its programs or activities.

   b. For LDH programs that are covered by 40 C.F.R. Parts 5 and 7, the
notice shall also contain text that LDH does not intimidate or retaliate
against any individual or group because they have exercised their rights
to participate in or oppose actions protected/prohibited by 40 C.F.R.
Parts 5 and 7, or for the purpose of interfering with such rights.

   c. [Insert name and title of non-discrimination coordinator] is responsible for
coordination of compliance efforts and receipt of inquiries concerning
non-discrimination requirements implemented by 40 C.F.R. Parts 5 and 7
(Non-Discrimination in Programs or Activities Receiving Federal
Assistance from the Environmental Protection Agency), including Title VI
of the Civil Rights Act of 1964, as amended; Section 504 of the
Rehabilitation Act of 1973; the Age Discrimination Act of 1975; Title IX
of the Education Amendments of 1972; and Section 13 of the Federal
Water Pollution Control Act Amendments of 1972 (hereinafter referred to
collectively as the federal non-discrimination laws).

   d. If you have any questions about this notice or any of LDH's non-
discrimination programs, policies or procedures, you may contact:

      (Name)
      (Position)
      (Organization/Department)
      (Address)
      (Phone Number)
      (Email)

      If you believe that you have been discriminated against with respect to an
LDH program or activity, you may contact the [insert title of non-
discrimination coordinator] identified above or visit our website at [insert
Recipient website address] to learn how and where to file a complaint of
discrimination.

2. Within 30 days after the effective date of this Agreement, LDH will
submit to the EPA for review a draft copy of its Notice of Non-
Discrimination that is consistent with 40 C.F.R. Parts 5 and 7. EPA's
review of the draft Notice of Non-Discrimination will be in accordance
with Paragraph IV.C. of this Agreement.  Following final approval by

13

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

    EPA, LDH will prominently publish in print and on its website the
    Notice of Non-Discrimination.

3. If the identity of the Non-Discrimination Coordinator changes, then
   LDH will promptly update materials as appropriate.

B. <u>Grievance Procedures to Process Discrimination Complaints filed under the Federal
   Non-Discrimination Laws</u>[12]

1. LDH will post Grievance Procedures to promptly and fairly process and
   resolve discrimination complaints filed under federal nondiscrimination
   statutes and, where applicable, the EPA's implementing regulations at 40
   C.F.R. Parts 5 and 7 on LDH's website homepage(s), in all LDH's offices and
   facilities, and in its general publications as appropriate that are distributed to
   the public. LDH will ensure that its Grievance Procedures are accessible to
   individuals with LEP and individuals with disabilities, including ensuring that
   the Grievance Procedures posted on LDH's Website Homepage is accessible
   to individuals who are blind or have low vision.

2. The Grievance Procedures will:

   a. Clearly identify the Non-Discrimination Coordinator, including name
      and contact information;

   b. Explain the role of the Non-Discrimination Coordinator relative to the
      coordination and oversight of the Grievance Procedures;

   c. State who may file a complaint under the Grievance Procedures and
      describe the appropriate bases for filing a complaint;

   d. Describe the processes available for filing complaints;

   e. State that the preponderance of the evidence standard will be applied
      during the analysis of the complaint;

   f. Contain assurances that intimidation and retaliation are prohibited and
      that claims of intimidation and retaliation will be handled promptly and
      fairly pursuant to your Grievance Procedures in the same manner as other
      claims of discrimination;

   g. Assure the prompt and fair resolution of complaints which allege
      violations of federal non-discrimination laws;

   h. State that written notice will be promptly provided about the outcome of
      the investigation, including whether discrimination is found and the
      description of the investigation process.

   i. Be reviewed on an annual basis (for both in-print and online
      materials), and revised as necessary, to ensure prompt and fair
      resolution of discrimination complaints.

---

[12] 40 C.F.R. §7.90

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

   3. Within 120 days after the effective date of this Agreement, LDH will submit to EPA for review a draft copy of its Grievance Procedures. EPA will review the draft Grievance Procedures in accordance with Paragraph IV.C. of this Agreement. Within 30 days of EPA's review, LDH will review and incorporate comments and LDH will prominently publish in print and on its website the final Grievance Procedures in print and on its website.

C. <u>Designation of Non-Discrimination Coordinator</u>[13]

   1. LDH will designate at least one Non-Discrimination Coordinator to ensure compliance with the federal non-discrimination laws, who will:

     a. Provide information to individuals internally and externally that LDH does not discriminate on the basis of race, color, national origin, disability, age, or sex in the administration of LDH's programs or activities, and, where applicable, the EPA's implementing regulations at 40 C.F.R. Parts 5 and 7;

     b. Provide information to individuals both internally and externally that LDH does not intimidate or retaliate against any individual or group because they have exercised their rights to participate in or oppose actions protected/prohibited by 40 C.F.R. Parts 5 and 7, or for the purpose of interfering with such rights;

     c. Provide notice of LDH's grievance processes and the ability to file a discrimination complaint;

     d. Establish a mechanism (e.g., an investigation manual) for implementation of LDH's Grievance Procedures to ensure that all discrimination complaints filed with LDH under federal non-discrimination laws and the EPA implementing regulations 40 C.F.R. Parts 5 and 7 are processed promptly and fairly. One element of any policy and procedure or mechanism must include providing meaningful access for individuals with limited English proficiency and individuals with disabilities to LDH's programs and activities;

     e. Track all complaints filed with LDH under federal nondiscrimination laws, in order to identify any patterns or systemic problems;

     f. Conduct semiannual reviews/analysis of all complaints filed with LDH under the federal non-discrimination laws, identified in 40 CFR Parts 5 and 7 to identify and address any patterns, systematic problems or any trends identified;

     g. Ensure that training is provided for LDH staff in the processes available to resolve complaints filed with LDH under federal non-discrimination laws;

---

[13] 40 C.F.R. §7.85(g)

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

   h.   Ensure that appropriate training is provided for LDH staff and all
relevant contractors on LDH's non-discrimination policies and
procedures, as well as the nature of LDH's obligation to comply with
federal nondiscrimination laws;

   i.   Ensure that complainants are updated on the progress of their
complaints filed with LDH under federal non-discrimination laws and
are promptly informed as to any determinations LDH has made;

   j.   Undertake periodic evaluations (at least once per year) of the efficacy of
LDH's efforts to provide services, aids, benefits, and participation in
any of LDH's programs or activities without regard to race, color,
national origin, disability, age, sex or prior exercise of rights or
opposition to actions protected under federal non-discrimination laws;
and

   k.   Coordinate with the LDH's designated Point of Contact for completion
of the Preaward Compliance Review Report for All Applicants and
Recipients Requesting EPA Financial Assistance (Form 4700-4) to
ensure that an accurate Form is submitted with applications for EPA
assistance.

> **Commented [KZ11]: For LDH:** Note addition regarding the "Pre-Award" Process.

2.   The Non-Discrimination Coordinator will not have other responsibilities that
create a conflict of interest (*e.g.,* serving as LDH's Non-Discrimination
Coordinator as well as its legal advisor or representative on civil rights
issues).

3.   Within 90 days after the effective date of this Agreement, LDH will identify
at least one individual who will serve as Non-Discrimination Coordinator(s)
consistent with the regulatory requirements of 40 C.F.R. §5.135, §7.85(g),
and §7.95(a).

4.   Within 90 days of appointment of a Non-Discrimination Coordinator, LDH
will forward to EPA proof that the responsibilities have been included in the
incumbent's statement of duties and that the incumbent has accepted the
duties.

D.   <u>Public Participation</u>

1.   LDH understands that meaningful public participation consists of informing,
consulting, and working with potentially affected communities at various
stages of the environmental decision-making process to address their
questions and concerns. Therefore, LDH will:

   a.   Ensure that its public involvement process is available to all persons
regardless of race, color, national origin, disability, age, sex, or prior
exercise of rights protected, or opposition to actions prohibited, by 40
C.F.R. Parts 5 and 7 and the federal non-discrimination laws;

16

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

    b.  Ensure that the factors used to determine the appropriate time, place, location, duration, and security at public meetings are developed and applied in a non-discriminatory manner;

    c.  Develop, publicize, and implement written public participation procedures (consistent with the federal civil rights laws and the *Title VI Public Involvement Guidance for EPA Assistance Recipients Administering Environmental Permitting Programs (Recipient Guidance)*[14]), that include implementation of the following steps for effective public participation that is accessible to all persons regardless of race, color, national origin (including LEP), disability, age, and sex each time LDH engages in a public participation or public involvement process:

        i.  Develop a description of the relevant/affected community based on the action being considered (including demographics, history, background, and whether it is a community with environmental justice concerns, for example/such as, percentage of the service area that includes persons of color and their representation, has less than a high school education, has members of households who speak a language other than English and/or speak English less than very well, has a history of filing complaints, has an inability to access traditional communication channels or the internet);

        ii.  Provide a contact list for relevant staff members on LDH's website, including phone numbers and email addresses, to allow the public to communicate via phone or internet;

        iii.  Develop a list of past and present community concerns during the last three years (including any complaints filed under the federal nondiscrimination laws), and actions undertaken in response to such concerns;

        iv.  Develop and implement a detailed plan of action (including outreach activities) LDH will take to address concerns raised by the public;

        v.  Develop and implement a contingency plan for unexpected events that may impact public meetings or other public participation avenues;

---

[14] 71 Fed. Reg. 14207 (March 21, 2006), available at https://www.epa.gov/sites/default/files/2020-02/documents/title_vi_public_involvement_guidance_for_epa_recipients_2006.03.21.pdf

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

    vi.   Identify location(s) where public meetings will be held (considering the availability and schedules of public transportation), and ensure that the location(s) will allow for meaningful participation/involvement by individuals with LEP and individuals with disabilities;

    vii.   Develop and maintain a list of contact names for obtaining reasonable accommodations at no cost for individuals with disabilities and language assistance services for limited-English proficient persons, including translation of documents and/or interpreters for meetings;

    viii.   Develop and maintain a list of appropriate local media contacts (based on the cultural and linguistic needs of the community).

   d.   LDH will, during times of national, state, or local emergency, ensure that any public meetings occurring virtually are held in such a manner as to ensure the meaningful participation/involvement of individuals with limited English proficiency and individuals with disabilities. LDH may seek technical assistance from EPA about how it may achieve this outcome.

   e.   LDH will ensure that a Public Participation Plan is developed and prominently highlighted on the LDH website, which will explain how residents can participate in LDH's programs, activities, and services. LDH will also solicit and consider public input into development of the Public Participation Plan. This plan will also be posted in other publicly accessible locations such as local public libraries, and LDH will ensure that it incorporates the following elements:

    i.   A description of how LDH will meaningfully engage the public prior to and during LDH programs, activities, and services (*e.g.* how the public can request to participate during LDH public engagement opportunities such as public hearings, townhalls, etc., including criteria on how these events are determined);

    ii.   A description of what methods LDH will implement to ensure the public can access publicly available information and documents regarding LDH programs, activities, and services, which includes providing clear instructions for public users on how and where to access LDH's electronic and hardcopy documents and information.

2.   The Non-Discrimination Coordinator(s) will ensure that appropriate LDH staff and all relevant contractors receive training in best practices related to

18

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

public involvement in all processes undertaken by LDH that include public engagement.

3. LDH will provide a mechanism for residents to access relevant hard copy information in a centralized public location near to a proposed LDH activity (*e.g.* proposed health report or study) in addition to providing the public with access to internet and digitally provided information relating to that activity;

4. LDH will provide a mechanism for obtaining public feedback and answering inquiries about any information regarding a LDH activity or public health issue;

    a. Within 120 days of the effective date of this Agreement, LDH will prepare a draft copy of its Public Participation Plan(s). LDH will submit its draft Public Participation Plan(s), including a translated Public Participation Plan(s) in all appropriate languages, for public comment for thirty days. After the public comment period ends, LDH will review comments and finalize the Public Participation Plan(s) within 30 days and submit it to EPA for review in accordance with Paragraph IV.C. of this Agreement. Within 30 days of EPA's review, LDH will review and incorporate comments and will publish the final Public Participation Plan(s), translated in all appropriate languages, on its website and in print.

    b. Within one year after the effective date of this Agreement, the Non-Discrimination Coordinator(s) will coordinate and host at least one regional panel for each of the following parishes: St. John the Baptist Parish, St. James Parish, Ascension Parish, East Baton Rouge Parish, West Baton Rouge Parish, Iberville Parish, and St. Charles Parish. These panels will include representatives from communities affected by environmental and human health risks, and possibly a facilitator, to gather information from affected community members, including any expressions of community concerns, experiences, engagement needs and requests. LDH will prominently advertise requests for participation on these regional panels to interested community members and will publish a summary of the discussions, including recommendations for actions.

E. <u>LDH Plan to Ensure Meaningful Access to Programs and Activities for Persons with Limited English Proficiency (LEP)</u> [15]

---

[15] *See* Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000(d) (prohibiting discrimination on the basis of national origin,) *Lau v Nichols 414 U.S. 563, 568-69* (1974) (finding that the government properly required language services to be provided under a recipient's Title VI obligations not to discriminate based on national origin.) On June 25, 2004, EPA issued Guidance to Environmental Protection Agency Financial Assistance Recipients

19

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

1.  LDH will conduct an appropriate analysis as described in EPA's LEP
    Guidance, to identify the appropriate language groups and determine what
    language services or mix of language services LDH needs to provide (e.g.,
    interpreters and translators), to ensure that individuals with limited-English
    proficiency can meaningfully participate in LDH's programs and activities.

2.  LDH will develop, publicize, and implement a written Language Access Plan
    to ensure meaningful access to all LDH services, programs and activities for
    individuals with LEP, at no cost to those individuals. LDH shall also solicit
    and consider public input into development of the Language Access Plan.
    LDH will:

    a.  Translate vital documents[16] of general interest into prominent languages
        for individuals with LEP who are served or likely to be encountered by
        LDH's programs and activities;

    b.  Translate vital documents of individual interest to a particular
        individual with LEP or group individuals with LEP (e.g., an
        individual or group of individuals with LEP wishing to file a
        grievance or complaint);

    c.  Provide for simultaneous oral interpretation of live proceedings
        (e.g., town hall meetings and public hearings) in prominent
        languages, and the ability for individuals with LEP to participate in
        those proceedings to the same extent as persons with English
        proficiency can participate; and

    d.  Provide for simultaneous interpretation of proceedings, meetings, etc.,
        for an individual LEP person(s) participating in LDH programs or
        activities (e.g., an individual with LEP wishing to provide comments
        during a hearing).

3.  Within 120 days of the effective date of this Agreement, LDH will prepare a
    draft copy of its Language Access Plan. LDH will then submit its draft

---

Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient
Persons (LEP Recipient Guidance). The LEP Recipient Guidance clarifies recipients' existing legal obligations to
provide meaningful access to limited English proficient persons in all programs and activities that receive federal
financial assistance from EPA. The LEP Recipient Guidance also provides a description of the factors recipients
should consider in fulfilling their responsibilities to persons with limited-English proficiency to ensure meaningful
access to recipients' programs and activities and the criteria EPA uses to evaluate whether recipients are in
compliance with Title VI and the Title VI implementing regulation. LEP Recipient Guidance, 69 FR 35602, 35606-
35607 (June 25, 2004), at https://www.govinfo.gov/content/pkg/FR-2004-06-25/pdf/04-14464.pdf; 40 C.F.R. §
7.35(a) (prohibiting discrimination on the basis of national origin in the programs or activities of a recipient of EPA
assistance).

[16] Whether or not a document (or the information it disseminates or solicits) is "vital" may depend on the importance
of the program, information, encounter or service involved, and the consequence to individual(s) with the LEP if the
information in question is not provided accurately or in a timely manner. (See EPA's LEP Recipient Guidance).

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

Language Access Plan, including a translated Language Access Plan in all appropriate languages, for public comment for thirty days. After the public comment period ends, LDH will review comments and finalize the Language Access Plan within XX days and submit it to EPA for review in accordance with Paragraph IV.C. of this Agreement. Within 30 days of EPA's review, LDH will review and incorporate comments and LDH will publish the final Language Access Plan, translated in all appropriate languages, on its website and in print.

F.  <u>LDH Plans to Ensure Meaningful Access to Programs and Activities for Persons with Disabilities</u>[17]

1.  LDH will develop, publicize and implement a Disability Access Plan to ensure meaningful access to all LDH programs, services and activities for individuals with disabilities.[18] As part of the development, LDH shall also solicit and consider public input into development of the Disability Access Plan.

2.  LDH will provide, at no cost, auxiliary aids and services to individuals with disabilities, (including, but not limited to, for example, qualified interpreters to individuals who are deaf or hard of hearing, and to other individuals, as necessary), to ensure effective communication and an equal opportunity to participate fully in benefits, activities, programs, and services provided by LDH in a timely manner.

3.  LDH will ensure that its facilities and other facilities utilized by LDH (*e.g.* if LDH holds a public hearing at a school or recreational center) are physically accessible to, individuals with disabilities.

4.  Within 120 days of the effective date of this Agreement, LDH will submit to EPA for review a draft copy of its Disability Access Plan. EPA will review the draft Disability Access Plan in accordance with Paragraph IV.C. of this Agreement. Within 30 days of EPA's review, LDH will review and incorporate comments and LDH will prominently publish in print and on its website the final Disability Access Plan.

G.  <u>Training</u>

1.  Within 60 days of the EPA approval of all other deliverables noted throughout the Agreement, LDH will ensure all its staff and relevant

---

[17] *See* 40 C.F.R. §§ 7.45 - 7.75; Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794(a). Section 504, and EPA's implementing regulation prohibit discrimination on the basis of disability in any programs or activities receiving federal financial assistance.

[18] *See* Disability Nondiscrimination Plan Sample, at https://www.epa.gov/sites/production/files/2020-02/documents/disability_nondiscrimination_plan_sample_for_recipients_2020.01.pdf

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

contractors have training on federal non-discrimination obligations and all plans, policies and procedures created and implemented as part of this Agreement. LDH may request technical assistance from EPA for any of the training required in this Agreement, including having the training be provided by EPA staff. LDH should consider the inclusion of community representatives as a part of the staff training.  Following the training, LDH will provide EPA with a copy of any training materials, a list of staff who received the training and the dates the training was provided.

2. Within 30 days of the initial training implemented following sub-section 1 above, LDH will forward to EPA for review a draft plan for ensuring that such training is also a routine part of the on-boarding process for new employees and is given regularly as refresher training to all employees and relevant contractors. EPA will review the draft training in accordance with Paragraph IV.C. of this Agreement. LDH will forward a final copy of the training plan to EPA and implement the above plan.

**IV.   GENERAL CONSIDERATIONS**

A. In consideration of LDH's implementation of commitments and actions described in Sections II and III of this Agreement, EPA will end its investigation of Complaint No. 02R-22-R6 and not issue a decision containing findings on the merits of the complaint.

B. EPA will monitor compliance with the commitments in Sections II and III of this Agreement, as appropriate, to ensure they are fulfilled. Once the terms of this Agreement are satisfied, EPA will issue a letter documenting completion of the commitments, closure of its monitoring actions and closure of Complaint No. 02R-22-R6 as of the date of that letter.

C. EPA will review and provide feedback about any documentation submitted by LDH demonstrating completion of each commitment and will provide an assessment, to include verbal and/or written feedback, as to whether the documentation satisfies the commitment within 30 days of receipt of each such submission. Following that, should there be negotiations and/or edits needed to address EPA's comments, the parties will resolve those within 30 days and LDH will finalize and submit the deliverable to EPA within this 30-day period.  This 30-day period for negotiations and edits may be extended if agreed to in writing by both the Deputy Assistant Administrator for Civil Rights, Office of Environmental Justice and External Civil Rights, EPA, and the Secretary of LDH.

D. EPA will, upon request, provide technical assistance to LDH regarding any of the civil rights obligations previously referenced. This may be in written or oral form.

**V.   COMPUTATION OF TIME AND NOTICE**

22

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

A.  As used in this Agreement, "day" will mean a calendar day. In computing any period
    of time under this Agreement, where the last day would fall on a Saturday, Sunday,
    or federal holiday, the period will run until the close of business of the next working
    day.

B.  Service of any documents required by this Agreement may be made by electronic
    service as outlined below. Documents forwarded by email for review are to be sent in
    native format for draft documents and PDF format for documents intended to be final.

C.  Electronic documents submitted by LDH to the EPA via email will be sent to Lilian
    Dorka at Dorka.Lilian@epa.gov, Anhthu Hoang at Hoang.Anhthu@epa.gov and
    Zahra Khan at Khan.Zahra@epa.gov.

D.  Documents submitted by the EPA to LDH will be sent to [ TBD ].

E.  Either EPA or LDH may change the persons identified above in Paragraphs V.C. and
    V.D. by providing written notice of such change.

**VI.    EFFECT OF THE AGREEMENT**

A.  LDH understands that, if necessary, EPA may visit LDH, interview staff, and
    request such additional reports or data as are necessary for EPA to determine
    whether LDH has fulfilled the terms of this Agreement.

B.  LDH understands that the EPA will not close its monitoring of this Agreement
    until EPA determines that LDH has fully complied with this Agreement and that a
    failure to satisfy any term in this agreement may result in the EPA re-opening an
    investigation.

C.  With the exception of the provisions of Paragraphs IV.C. and V.E., if either Party
    desires to modify any portion of this Agreement because of changed conditions
    making performance impractical or impossible, or due to material change to LDH's
    program or authorities, or for other good cause, the Party seeking a modification
    will promptly notify the other in writing, setting forth the facts and circumstances
    justifying the proposed modification. Any modification(s) to this Agreement will
    take effect only upon written agreement by the Secretary of LDH or their
    designee and the Deputy Assistant Administrator for Civil Rights, Office of
    Environmental Justice and External Civil Rights, EPA.

D.  This Agreement constitutes the entire Agreement between LDH and EPA
    regarding the matters addressed herein, and no other statement, promise, or
    agreement, made by any other person will be construed to change any commitment
    or term of this Agreement, except as specifically agreed to by LDH and EPA in
    accordance with the provisions of Paragraph VI.C. above.

23

Informal Resolution Agreement
EPA Complaint No. 02R-22-R6

    E.   This Agreement does not affect LDH's continuing responsibility to comply with Title VI or other federal nondiscrimination laws and the EPA's regulations at 40 C.F.R. Parts 5 and 7, nor does it affect EPA's investigation of any other Title VI or other federal civil rights complaints or address any other matter not covered by this Agreement.

    F.   The effective date of this Agreement is the date by which both Parties have signed the Agreement. This Agreement may be signed in counterparts. The individuals signing this Agreement represent that they are authorized to execute this Agreement and legally bind the parties to the Agreement.

On Behalf of the Louisiana Department of Health:

_____    _____
Dr. Courtney N. Phillips, Secretary    (Date)
Louisiana Department of Health

On behalf of the Office of External Civil Rights Compliance, Office of Environmental Justice and External Civil Rights, U.S. Environmental Protection Agency:

_____    _____
Lilian S. Dorka    (Date)
Deputy Assistant Administrator for Civil Rights
Office of Environmental Justice and External Civil Rights

24