EXHIBIT 48

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIANS FOR RENEWABLE ENERGY, ASHURST BAR/SMITH COMMUNITY ORGANIZATION, CITIZENS FOR ALTERNATIVES TO RADIOACTIVE DUMPING, SAINT FRANCIS PRAYER CENTER, SIERRA CLUB, and MICHAEL BOYD, | Case No: C 15-3292 SBA **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; AND DENYING DEFENDANTS' RULE 12 MOTION TO DISMISS AND GRANTING ALTERNATIVE MOTION FOR SUMMARY JUDGMENT AS TO THE SIXTH CLAIM FOR RELIEF** |
| Plaintiffs, | |
| vs. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and SCOTT PRUITT, Administrator of the U.S. Environmental Protection Agency, in his official capacity, | Dkt. 93, 98, 108 |
| Defendants. | |

Plaintiffs CAlifornians for Renewable Energy ("CARE"), Ashurst/Bar Smith Community Organization ("ABSCO"), Citizens for Alternatives to Radioactive Dumping ("CARD"), Saint Francis Prayer Center ("Prayer Center") and Sierra Club are public interest organizations located throughout the country that represent the interests of their members and constituents, who reside in predominately non-white communities. Plaintiff Michael Boyd ("Boyd") is the President of CARE.

Between 1992 and 2003, the aforementioned organizations, including Boyd, separately filed a total of five administrative complaints with the Environmental Protection Agency ("EPA"), pursuant to Title VI of the Civil Rights Act of 1964 ("Title VI"). Those complaints alleged that decisions by state and local agencies to grant permits approving the operation of environmentally hazardous facilities (i.e., power plants, a refinery, a hazardous waste facility and a landfill) in minority communities violate Title VI's prohibition against

discrimination by recipients of public funds.

The EPA accepted each of the five complaints submitted by Plaintiffs for investigation, the earliest case accepted in 1995 and the most recent being accepted in 2005. Under governing regulations, the EPA had 180 days from accepting each complaint to issue preliminary findings and any recommendations, if appropriate. Yet, as of the filing of this action, the EPA had not issued preliminary findings or otherwise resolved any of Plaintiffs' complaints. As a result of the EPA's failure to act, Plaintiffs filed the instant action against the EPA and its Administrator, Scott Pruitt (collectively "the EPA"), pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, et seq. The Second Amended Complaint ("SAC"), the operative pleading before the Court, avers that the EPA violated its mandatory duty under 40 C.F.R. § 7.115 to issue preliminary findings and any recommendations for achieving compliance within 180 days of accepting a Title VI administrative complaint for investigation. Plaintiffs seek an order to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

The parties are presently before the Court on (1) the EPA's Motion to Dismiss and, in the Alternative, Rule 56 Motion for Summary Judgment on All Claims, and (2) Plaintiffs' Motion for Summary Judgment. Dkt. 93, 98. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby: DENIES the EPA's motion to dismiss; GRANTS the EPA's motion for summary judgment as to Claim Six of the SAC; GRANTS Plaintiffs' motion for summary judgment as to Claims One through Five of the SAC; and DENIES Plaintiffs' motion as to Claim Six.[1]

## I.     BACKGROUND

### A.     LEGAL OVERVIEW

Title VI prohibits a recipient of federal funds from discriminating based on race, color, or national origin. 42 U.S.C. § 2000d. To implement Title VI, Congress directed each federal agency to adopt regulations to effectuate Title VI. 42 U.S.C. § 2000d-1. In

---

[1] The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

the case of the EPA, its regulations specify that any "person who believes that he or she or a specific class of persons has been discriminated against in violation of this part may file a complaint" with the EPA's Office of Civil Rights ("OCR").[2]  40 C.F.R. § 7.120(a).  Title VI regulations may be enforced by the agency only, as they do not create a private right of action.  Alexander v. Choate, 469 U.S. 287, 293 (1985).

Section 7.120, which is entitled "Complaint Investigations," provides that "[t]he OCR shall promptly investigate all complaints filed under this section unless the complainant and the party complained against agree to a delay pending settlement negotiations."  Within twenty days of receiving the complaint, "the OCR will review the complaint for acceptance, rejection, or referral to the appropriate Federal agency."  Id. § 7.120(d)(1)(i).  If the complaint is accepted, OCR must notify the complainant and the accused party.  Id. § 7.120(d)(1)(ii).  The recipient thereafter has thirty days to respond to the complaint.  Id. § 7.120(d)(1)(iii).  "OCR shall attempt to resolve complaints informally whenever possible.  When a complaint cannot be resolved informally, OCR shall follow the procedures established by paragraphs (c) through (e) of § 7.115."  Id. § 7.120(d)(2)(i).

Section 7.115(c) specifies that within 180 days of the start of the investigation, "the OCR will notify the recipient ... of: (i) Preliminary findings; (ii) Recommendations, if any, for achieving voluntary compliance; and (iii) Recipient's right to engage in voluntary compliance negotiations where appropriate."  Id. § 7.115(c).  If the investigation reveals no violation, the OCR "will dismiss the complaint and notify the complainant and recipient."  Id. § 7.120(g).

In cases where there is a preliminary finding of non-compliance, the recipient may either (1) agree with the OCR's recommendations or (2) submit a written response disputing the correctness of the preliminary findings or that compliance may be achieved through steps other than those recommended by the OCR.  Id. § 7.115(d).  If the recipient does not pursue one of these actions within fifty days of receiving the preliminary findings,

---

[2] As of December 2016, the OCR is now known as the External Civil Rights Compliance Office.

the OCR must issue a formal written determination of noncompliance to the recipient and notify the Assistant Attorney General for the United States Department of Justice's Civil Rights Division within fourteen days thereafter. Id. §§ 7.115(d), 7.25.

"The recipient will have ten (10) calendar days from receipt of the formal determination of noncompliance in which to come into voluntary compliance. Id. § 7.115(e). If the recipient fails to meet this deadline, the OCR must start proceedings under paragraph (b) of § 7.130," id. § 7.115(e), to "deny, annul, suspend or terminate EPA assistance," id. § 7.130(b). Upon notice of a formal determination of noncompliance, the recipient has ten calendar days to achieve voluntary compliance. Id. § 7.115(e).

## B.   THE PARTIES AND THEIR RESPECTIVE ADMINISTRATIVE COMPLAINTS

### 1.   CARE and Boyd

Plaintiff CARE is a California non-profit corporation formed in 1999 which disseminates information and takes legal action to promote renewable energy sources, among other activities. SAC ¶ 8, Dkt. 90. Plaintiff Boyd is the President of CARE. Id. ¶ 9.

On or about April 17, 2000, Boyd filed an administrative complaint with the EPA to challenge the permitting process and ultimate permitting decisions by the Bay Area Air Quality Management District ("BAAQMD"), the California Air Resources Board ("CARB"), and the California Energy Commission ("CEC"), relating to two gas-fired power plants (i.e., the Los Medanos Energy Center and Delta Energy Center). Id. ¶¶ 10, 52. The complaint alleges that those decisions violate Title VI because both plants are located in the predominantly non-white and low-income community of Pittsburg, California. Id. ¶¶ 10, 53. The EPA accepted the complaint for investigation in December 2001 as to BAAQMD and CARB. Id. ¶ 55.

### 2.   Sierra Club

Plaintiff Sierra Club is a California nonprofit public benefit corporation whose mission is to promote environmental concerns. Id. ¶ 22. The Sierra Club Lone Star Chapter is the Texas Chapter of the Sierra Club and is not separately incorporated. Id. ¶ 23.

The chapter has 22,000 members and is dedicated to protecting Texas' various natural resources. Id.

On or about April 13, 2000, the Sierra Club Lone Star Chapter filed an administrative complaint with the EPA, which accepted the complaint for investigation in June 2003. Id. ¶¶ 24, 62-65 & Ex. 10. The complaint alleges discrimination on the basis of race and color in connection with a permit amendment issued by the Texas Commission on Environmental Quality ("TCEQ") to an ExxonMobil refinery operation in Beaumont, Texas. Id. ¶¶ 62-64.

### 3. Citizens for Alternatives to Radioactive Dumping

Plaintiff Citizens for Alternatives to Radioactive Dumping ("CARD") is a nonprofit organization founded in 1978 and based in Albuquerque, New Mexico. Id. ¶ 16. CARD's mission is to address environmental injustices negatively affecting low-income and underserved communities of color in New Mexico. Id.

On or about September 12, 2002, CARD filed an administrative complaint with the EPA concerning the permitting process and ultimate decision by the New Mexico Environment Department ("NMED") to permit the Triassic Park hazardous waste facility in Chaves County in southeastern New Mexico, an area with a high percentage of people living in poverty and Hispanic residents. Id. ¶ 71. EPA accepted the complaint against NMED for investigation on or about June 27, 2005. Id. ¶ 74.

### 4. Ashurst Bar/Smith Community Organization

Plaintiff Ashurst Bar/Smith Community Organization ("ABSCO") is headquartered in Tallassee, Alabama. Id. ¶ 12. ABSCO strives for positive change and a better quality of life for residents of the Ashurst Bar/Smith Community, an unincorporated area located in the southernmost tip of Tallapoosa County, Alabama. Id.

On or about December 15, 2003, an individual on behalf of ABSCO filed an administrative complaint with the EPA to challenge the Alabama Department of Environmental Management's ("ADEM") decision to permit the Stone's Throw Landfill in

Tallapoosa County, Alabama.  Id. ¶¶ 12, 82-85.  The EPA accepted the complaint for investigation in September 2005.  Id. ¶¶ 82, 87.

### 5. Prayer Center

The Prayer Center is a Michigan nonprofit organization that serves people of all backgrounds and helps to meet the needs of disadvantaged communities.  Id. ¶ 19.  On or about December 15, 1992, the Prayer Center filed an administrative complaint with the EPA.  The complaint challenges the siting decision, permitting process, and ultimate decision to permit a wood-incinerator power station in a location adjacent to a predominantly African American and low-income community in Flint, Michigan.  The EPA accepted the complaint for investigation on or about January 31, 1995.  Id. ¶¶ 20, 43, 45.

### C. PROCEDURAL HISTORY

### 1. Pleadings

On July 15, 2015, Plaintiffs filed a Complaint in this Court asserting six claims for relief against Defendants under the APA.  Dkt. 1.  The First through Fifth Claims sought relief based on the EPA's failure to comply with § 7.115(c)'s directive to issue preliminary findings in response to Plaintiffs' respective complaints within 180 days of accepting each complaint for investigation.[3]  The Sixth Claim alleged that EPA has engaged in a "pattern and practice" of withholding and unreasonably delaying agency action.  Upon stipulation of the parties, Plaintiffs filed a First Amended Complaint on January 7, 2016, which alleged the same claims.  Dkt. 34.  The parties engaged in extensive settlement discussions, which were ultimately unsuccessful.

In October 2016, Plaintiffs filed a Motion for Leave to File Second Amended Complaint.  Dkt. 78.  Plaintiffs proposed adding a Seventh Claim based on the EPA's dismissal of the CARE Complaint on June 6, 2016 (see discussion infra), which they

---

[3] Claim One is based on the Prayer Center complaint; Claim Two is based on the CARE complaint; Claim Three is based on the Sierra Club complaint; Claim Four is based on the CARD complaint; and Claim Five is based on the ABSCO complaint.  Claim Six alleges that the EPA's pattern and practice of failing to act in accordance with § 7.115 is illustrated by its failure to timely issue preliminary findings on the foregoing administrative complaints.

alleged "was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Proposed SAC ¶ 162, Dkt. 78-3. The Court denied the request on futility grounds, finding that Plaintiffs were improperly attempting to challenge both the scope of the OCR's investigation as well its disposition of CARE's complaints, which are not reviewable. Dkt. 86 at 9. The Court also sua sponte declined to allow Plaintiffs to include an additional request in the prayer for relief to "[i]ssue an injunction against the EPA to comply with the timelines set forth in 40 C.F.R. part 7 for all future Title VI complaints filed by the named Plaintiffs." Proposed SAC, Prayer, ¶ (d). The Court reasoned that Plaintiffs had failed to demonstrate standing to seek such relief. Nonetheless, the Court permitted Plaintiffs to file a SAC to add allegations clarifying the corporate form of Plaintiff Sierra Club. Dkt. 86 at 11. Plaintiffs timely filed a SAC on January 19, 2017. Dkt. 90.

### 2. Post-Lawsuit Resolution of Plaintiffs' EPA Complaints

At the commencement of this lawsuit on July 15, 2015, none of the Plaintiffs' five Title VI complaints has been resolved by the OCR. All complaints were resolved during the pendency of this lawsuit, however.

On June 6, 2016, the EPA separately notified BAAQMD as well as CARE and Boyd that it was closing the CARE/Boyd complaint, having had found "insufficient evidence of current non-compliance with Title VI or [the] EPA's Title VI regulation." Defs.' Mot. Ex. A at 1, Dkt. 93-1; id. Ex. B, Dkt. 93-2. The eight-page letter includes findings that there is no evidence of current non-compliance in light of various changes and commitments made by BAAQMD and CARB regarding their programs and activities over the course of the last several years. Id. at 1-6.

On January 19, 2017, the EPA resolved the complaint filed by CARD by entering into an Informal Resolution Agreement with NMED. Id. Ex. C.

On January 19, 2017, the EPA resolved and closed the complaint filed by Prayer Center. Id. Ex. D, Dkt. 93-4. In its thirty-five-page letter addressed to the Michigan

Department of Environmental Quality, the EPA made "findings with respect to the original issues raised in [the Prayer Center] complaint." Id. at 3.

On May 23, 2017, the EPA resolved the Sierra Club Lone Star Chapter's complaint by entering into an Informal Resolution Agreement with the TCEQ. Defs.' Not. of Resolution of Title VI Compl., Dkt. 106; Smith Decl. Ex. A at 1, Dkt. 107-1.[4]

On April 28, 2017, the EPA resolved and closed the ABSCO complaint upon finding insufficient evidence to conclude that ADEM violated Title VI and EPA's nondiscrimination regulationS in regard to the permit modification at issue. See Defs.' Not. of Resolution of Title VI Compl. at 1 & Ex. A, Dkt. 101, 101-1. The sixteen-page letter addressed to ADEM made specific findings based on the allegation in the ABSCO complaint. Id.

### 3. Pending Motions

The EPA styles its motion as a Motion to Dismiss and, in the Alternative, Rule 56 Motion for Summary Judgment on All Claims. Dkt. 93. The EPA seeks to dismiss Plaintiff claims based on mootness, lack of venue and lack of Article III standing. The EPA also seeks partial summary judgment as to Plaintiffs' sixth "pattern and practice" claim on the ground that it is not legally cognizable and is duplicative of the other claims. Plaintiffs dispute these contentions and separately moves for summary judgment on all of their claims.

## II. THE EPA'S MOTION TO DISMISS

The EPA's motion to dismiss raises issues of venue, constitutional standing and mootness. Venue and standing are threshold issues which the Court will address first. See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007). For

---

[4] Plaintiffs move to strike the EPA's Request for Judicial Notice, including the attached copy of the Informal Resolution Agreement, on the ground that the EPA failed to seek prior leave to file the request, as required by Local Rule 7-3(d). However, Plaintiffs themselves submitted the same document and information. Dkt. 107. In addition, Plaintiffs did not meet and confer with the EPA prior to filing their motion to strike. Therefore, Plaintiffs' motion to strike is denied.

organizational clarity, the question of whether Plaintiffs' claims are moot will be addressed in the section of this Order addressing the parties' summary judgment motions.

### A. VENUE

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a case for improper venue. Once venue is challenged, the plaintiff bears the burden of demonstrating that venue is proper. Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979). In assessing a Rule 12(b)(3) motion, a court may consider facts outside of the pleadings, but must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party. Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004).

The question of "whether venue is 'wrong' or 'improper'—is generally governed by 28 U.S.C. § 1391." Atlantic Marine Constr. Co., Inc. v. United States Dist. Ct. for the W. Dist. of Tex., 134 S. Ct. 568, 577 (2013). In cases brought against agencies, officers, or employees, of the United States, venue is proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). If the case falls within one of these three categories, venue is proper. See Atlantic Marine Constr., 134 S. Ct. at 577. "[I]f it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." Id.; King v. Russell, 963 F.2d 1301, 1304 (9th Cir. 1992).

The EPA concedes that venue is proper as to the claims of CARE, Boyd and the Sierra Club, as they reside in this District. As for the remaining Plaintiffs, the EPA contends that their claims should be dismissed for lack of venue. Defs.' Mot. at 6. The Court disagrees. For purposes of § 1391(e)(1)(C), the clear weight of federal authority holds that venue is proper in a multi-plaintiff case if *any* plaintiff resides in the District. In Exxon Corp. v. Fed. Trade Commission, 588 F.2d 895 (3rd Cir. 1978), the Third Circuit

concluded that the reference to "the plaintiff" in § 1391(e)(1)(C) means "any plaintiff," as opposed to "all plaintiffs." Id. at 898-99. In reaching its decision, the court explained:

> [R]equiring every plaintiff in an action against the federal government or an agent thereof to independently meet section 1391(e)'s standards would result in an unnecessary multiplicity of litigation. The language of the statute itself mandates no such narrow construction. There is no requirement that all plaintiffs reside in the forum district.

Id. Citing Exxon, the Sixth Circuit reached the same conclusion. Sidney Coal Co., Inc. v. Soc. Sec. Admin., 427 F.3d 336, 343-46 (6th Cir. 2005). The Sidney court added that requiring each plaintiff to reside in the district for venue purposes would undermine the intent underlying § 1391(e), which is to ease the burden on plaintiffs attempting to bring suit against the federal government. Id. at 344-45. Notably, the court pointed out that such an interpretation of the venue statute "is the only view adopted by the federal courts since 1971." Id. at 345.

The Ninth Circuit has not directly addressed the issue of whether venue in a multi-plaintiff case brought against the government may be predicated on the residence of any one of the plaintiffs. See F.L.B. v. Lynch, 180 F. Supp. 3d 811, 815 (W.D. Wash. 2016). This Circuit, however, has cited Exxon with approval and assumed without deciding that the venue may be established based solely on the residence of any plaintiff. Railway Labor Executives' Ass'n v. I.C.C., 958 F.2d 252, 256 (9th Cir. 1991) (referencing a previous codification of 28 U.S.C. § 1391(e)(3)). District courts within this Circuit, however, have expressly followed Exxon. F.L.B., 180 F. Supp. 3d at 815 (finding that venue was proper where the plaintiff resided within the district, and that the joinder of additional plaintiffs who resided outside the forum would not destroy venue); Matsuo v. United States, 416 F. Supp. 2d 982, 997 (D. Haw. 2006) ("With respect to the third prong, in a multi-plaintiff suit, only one plaintiff must reside in the district for venue to be proper as to all plaintiffs.").

For its part, the EPA neither addresses the foregoing authority in any meaningful manner nor cites any cases to support its erroneous assertion that all plaintiffs must reside

in the forum district in order to establish venue. Instead, the EPA emphasizes that "[l]itigants with unrelated claims should not be permitted to dispense with venue requirements simply by joining a lawsuit brought against a single, common defendant." Defs.' Reply at 16. The flaw in the EPA's argument is that it ignores the plain language of the venue statute. Section 1391(e) specifies three distinct grounds for establishing venue, one of which being the residence of any plaintiff. See Atlantic Marine, 134 S.Ct. at 577. Thus, the fact that three of the Plaintiffs reside in this District is, standing alone, sufficient to establish that venue is proper—irrespective of whether their claims and claims of the remaining Plaintiffs are related.[5] The Court therefore denies the EPA's motion to dismiss for lack of venue.

**B. STANDING**

**1. Overview**

The EPA next argues that all of Plaintiffs' claims must be dismissed for lack of Article III standing. Defs.' Mot. at 12. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016); Bova v. City of Medford, 564 F.3d 1093, 1096 (9th Cir. 2009). Because standing is a necessary component to the Court's subject matter jurisdiction, a standing challenge is "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." Id. In a facial attack, such as the one presented by the EPA, "both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting Warth v.

---

[5] To the extent that the EPA took issue with the joinder of Plaintiffs' claims, it could have moved to sever the claims pursuant to Federal Rule of Civil Procedure 20, see Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000), and sought their transfer to another district in the "interests of justice" under 28 U.S.C. § 1404, see Ctr. for Envtl. Law & Policy v. United States Bureau of Reclamation, No. C08-1730RAJ, 2009 WL 10668581, at *5 (W.D. Wash. May 12, 2009) (noting that "[i]t is not uncommon to transfer environmental cases to the district where the events giving rise to the action took place, given the localized interest in the subject matter."). The EPA did not seek such relief.

Seldin, 422 U.S. 490, 501 (1975)).  In addition, "[g]eneral allegations" of injury may suffice.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  "Standing is determined as of the commencement of litigation."  Biodiversity Legal Found. v. Badgley, 309 F.3d 1166, 1170 (9th Cir. 2002).

When presented with a jurisdictional attack, the plaintiff has the burden of establishing subject matter jurisdiction.  See In re Wilshire Courtyard, 729 F.3d 1279, 1284 (9th Cir. 2013).  Plaintiffs must satisfy three elements to show Article III standing: (1) "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) causation— "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) redressability— "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Lujan, 504 U.S. at 560-61 (internal quotation marks, alterations, and citations omitted).  "Standing is determined as of the commencement of litigation." Badgley, 309 F.3d at 1170.

### 2. Contentions

The EPA first challenges Plaintiffs' ability to demonstrate causation, arguing that "[their] alleged injuries [are caused] by state and local agencies and facility operators who are not before the Court."  Defs.' Mot. at 13.  This argument appears to be grounded on Lujan's requirement that the alleged injury must be "'fairly traceable'" to the defendant, and not the result of the "'independent action of some third party not before the court.'" 504 U.S. at 560-61 (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976)).  The EPA further argues that compelling the agency to make preliminary findings in accordance with § 7.115 would not necessarily redress the impacts of those third-party activities because the EPA may, in fact, find no violation of Title VI.  Defs.' Mot. at 14-15. Plaintiffs counter that the EPA's focus on third parties is a red herring because this lawsuit does not directly challenge any third party activities.  Pls.' Mot. at 28.  Rather, according to

Plaintiffs, "*the EPA's inaction* … has caused each of them a *procedural* injury." Id. (emphasis added).

The first prong of Lujan's test for standing—injury in fact—may be alleged as a "procedural" injury or a "substantive" injury. See City of Sausalito v. O'Neill, 386 F.3d 1186, 1197 (9th Cir. 2004). Procedural injury results from the violation of a statute or regulation that guarantees a particular *procedure*. West v. Sec'y of Dep't of Transp., 206 F.3d 920, 930 n.14 (9th Cir. 2000). In contrast, a substantive injury results from the violation of a statute or regulation that guarantees a particular *result*. Id. The type of injury alleged is significant because "[a] showing of procedural injury lessens a plaintiff's burden on the last two prongs of the Article III standing inquiry, causation and redressability." Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1226 (9th Cir. 2008). "To establish a procedural 'injury in fact, [a plaintiff] must allege ... that (1) the [agency] violated certain procedural rules; (2) these rules protect [a plaintiff's] concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests.'" San Luis & Delta-Mendota Water Auth. v. Haugrud ("Haugrud"), 848 F.3d 1216, 1232 (9th Cir. 2017) (alterations in original, citations omitted).

In its reply, the EPA attacks Plaintiffs' claim of procedural injury principally on two grounds, neither of which is compelling. First, the EPA accuses Plaintiffs of improperly attempting to amend the pleadings by recasting their injury as a procedural one. Defs.' Reply at 2-3.[6] In support of their assertion that the pleadings only allege a substantive injury, the EPA cites snippets of the SAC which allege that Plaintiffs are suffering adverse consequences "caused by the facilities at issue to their 'aesthetic, recreational, economic, health, or other interests.'" Defs.' Reply at 3 (quoting SAC ¶¶ 11, 15, 18, 21, 25, 51, 61,

---

[6] Even if Plaintiffs were seeking alter their theory of injury, which they are not, the Court may deem the pleadings to be amended accordingly. See Apache Survival Coalition v. United States, 21 F.3d 895, 910 (9th Cir. 1994) ("[W]hen issues are raised in opposition to a motion for summary judgment that are outside the scope of the complaint, the district court should … construe[] the matter raised as a request pursuant to rule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings out of time.") (internal brackets and quotation marks omitted).

70, 81, 94). This argument reflects a misapprehension of procedural injury. As the EPA should be aware, standing is not established merely by asserting that a procedural right has been abridged. See Allen v. Wright, 468 U.S. 737, 754 (1984) ("This Court has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court."), overruled on other grounds in Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S.Ct. 1377 (2014). Rather, plaintiffs must seek "to enforce a procedural requirement the disregard of which could impair a separate concrete interest of theirs…." Lujan, 504 U.S. at 572 & n.7. A concrete interest may be shown by geographical proximity to the area potentially impacted by the agency's lack of review. City of Davis v. Coleman, 521 F.2d 661, 670-71 (9th Cir. 1975) ("The procedural injury implicit in agency failure to prepare an [Environmental Impact Statement]—the creation of a risk that serious environmental impact will be overlooked—is itself a sufficient 'injury in fact' to support standing, provided this injury is alleged by a plaintiff having a sufficient geographical nexus to the site of the challenged project.").

In the instant case, the pleadings confirm that Plaintiffs are alleging a procedural injury, and are not, as the EPA claims, inappropriately attempting to "refashion" their injury to avoid dismissal. The gravamen of Plaintiffs' claims is that the EPA failed to issue mandatory preliminary findings within 180 days of accepting their respective complaints for investigation, as required by 40 C.F.R. § 7.115. E.g., SAC ¶ 2, 40, 41. The pleadings specifically allege that "Plaintiffs have a concrete interest in an efficient resolution of the discriminatory practices and policies complained of in those complaints." Id. ¶ 26. Since Plaintiffs cannot rely entirely on the EPA's violation of their procedural obligations to establish procedural injury, the pleadings further aver that Plaintiffs are among those injured by the EPA's failure to comply with its procedural obligations; to wit, Plaintiffs' members reside in areas impacted by the permitted activities. SAC ¶¶ 11, 15, 18, 21, 25. Thus, it is clear that Plaintiffs are not attempting to transmute a substantive injury into a procedural one. To the contrary, Plaintiffs have alleged facts necessary to establish a

procedural injury.  See Lujan, 504 U.S. at 572 & n.7 (noting that "one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years.").

The EPA next argues that, to the extent that Plaintiffs are relying on a procedural injury, there is no guarantee that the outcome of its investigation will result in a favorable finding for Plaintiffs or that the relief afforded will redress their injuries.  Mot. at 14; Reply at 3.  This contention likewise lacks merit.  For purposes of procedural injury, Plaintiffs are not required to demonstrate that the EPA's procedural compliance would have ultimately afforded them relief on their complaints.  Rather, "a litigant need only demonstrate that he has a procedural right that, if exercised, *could* protect his concrete interests and that those interests fall within the zone of interests protected by the statute at issue."  Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv., 789 F.3d 1075, 1082-83 (9th Cir. 2015) (quoting Natural Res. Def. Council v. Jewell, 749 F.3d 776, 783 (9th Cir. 2014) (en banc)).  To that end, Plaintiffs have alleged that an actual investigation by the EPA into their administrative complaints could result in relief from the underlying permitting decisions, which are alleged to have resulted in deleterious discriminatory and environmental impacts on minority populations.  See, e.g., SAC ¶¶ 2, 13, 17, 20, 24, 42.  These allegations are sufficient for purposes of demonstrating procedural injury.  see, e.g., Salmon Spawning & Recovery All. v. Gutierrez, 545 F.3d 1220, 1229 (9th Cir. 2008) ("[U]ncertain[ty about] whether reinitiation will ultimately benefit the groups (for example, by resulting in a 'jeopardy' determination) does not undermine [the plaintiffs'] standing."); Cottonwood, 789 F.3d at 1083 ("Cottonwood need not show that reinitiation of Section 7 consultation would lead to a different result at either the programmatic or project-specific level."); City of Sausalito v. O'Neill, 386 F.3d 1186, 1197 (9th Cir. 2004) ("[W]e do not require a plaintiff to demonstrate that a procedurally proper EIS will necessarily protect his or her concrete interest in the park."); Citizens for Better Forestry v. U.S. Dep't of Agric., 341

F.3d 961, 971-72 & n.6 (9th Cir. 2003) (holding that plaintiffs "need not assert any specific injury will occur," but only that "environmental consequences might be overlooked as a result of deficiencies in the government's analysis under environmental statutes") (internal quotation and citation omitted); see also Lujan, 504 U.S. at 572 n.7 (noting that if a federal agency issued a license to authorize construction of a dam without first preparing an environmental impact statement, individuals living adjacent to the dam would have standing to bring suit without showing that the agency would have withheld the license if had it prepared such a statement).

Citing Haugrud, the EPA argues that Plaintiffs' injury is too speculative to demonstrate procedural injury. Defs.' Reply at 4. Haugrud is distinguishable on its facts. In that case, a water authority and water district (collectively "Water Contractors") alleged that the Bureau of Reclamation ("BOR") improperly authorized flow releases of water from the Lewiston Dam without first preparing an environmental impact statement. Plaintiffs asserted that the BOR's failure to consult with them threatened their concrete economic interest "in ensuring the continued delivery of water to their members." Haugrud, 848 F.3d at 1233. In particular, the Water Contractors alleged that the flow release would reduce the volume of cold water in the Sacramento River, which, in turn, "may" adversely impact the winter salmon run or reduce spring run salmon egg incubation in 2013. Id. They also suggested that in the event the 2014 winter did not refill the reservoirs, the BOR's actions could impact salmon in 2014, as incubating salmon eggs if the water temperature exceeded 56 degrees. Id. If salmon eggs are harmed and salmon populations were to diminish, third-party agencies could impose more stringent regulations restricting the amount of delivered to the Water Contractors' members. Id. The anticipated reduction in water deliveries due to those regulations would, in turn, reduce the amount of water available to irrigate farms, employ farm workers, and generally maintain their communities. Id. The court held that the Water Contractors had failed to demonstrate "a reasonably probable threat of injury." Id. In the court's view, "[t]he Water Contractors have set forth 'an attenuated chain of conjecture,' … that relies on a series of contingencies in weather and water temperature,"

1   and assumptions about whether "third-party agencies will eventually impose more

2   regulations." Id. at 1233.

3        In contrast to Haugrud, the concrete injury alleged by Plaintiffs herein is far from

4   attenuated.  As discussed, Plaintiffs aver that the EPA failed to review and issue

5   preliminary findings on their complaints, even after accepting each of those complaints for

6   investigation.  As a result of such failure, the underlying permits have not properly been

7   evaluated for compliance with Title VI and been allowed to remain in effect, to the

8   detriment of Plaintiffs and their constituents.  Although the EPA is correct that Plaintiffs'

9   relief is dependent on the outcome of their respective administrative complaints, the law is

10  clear that, where a procedural injury is concerned, the plaintiff need not demonstrate that

11  the defendant's compliance with its procedural obligations will necessarily result in a

12  favorable outcome for the plaintiff. E.g., Cottonwood, 789 F.3d at 1083; Salmon

13  Spawning, 545 F.3d at 1229.

14       The Court finds that Plaintiffs have sufficiently alleged Article III standing.

15  Consequently, the EPA's motion to dismiss for lack of standing is denied.  The Court now

16  turns to the parties' respective motions for summary judgment and the EPA's related

17  contention that Plaintiffs' claims are moot.

18  **III.    CROSS-MOTIONS FOR SUMMARY JUDGMENT**

19       Plaintiffs move for summary judgment on all six of their APA claims.  Claims One

20  through Five are based on the EPA's failure to act on each of the Plaintiffs' respective Title

21  VI complaints, while Claim Six alleges that the EPA engages in a "pattern and practice" of

22  failing to issue preliminary findings in accordance with § 7.115.  The EPA opposes

23  Plaintiffs' motion and cross-moves for summary judgment on their pattern and practice

24  claim.  These claims will be discussed seriatim.  The EPA's mootness argument also will

25  be discussed below.

26  **A.    OVERVIEW**

27       "Section 704 of the APA provides for judicial review of '[a]gency action made

28  reviewable by statute and final agency action for which there is no other adequate remedy

in a court.'"  <u>Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.</u>, 861 F.3d 944, 952 (9th Cir. 2017) (quoting 5 U.S.C. § 704) (brackets in original).  "Agency action" includes the failure to act.  5 U.S.C. § 551(13).   Depending on the nature of the case, a reviewing judge is empowered to (1) "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), or (2) set aside agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," <u>id.</u> § 706(2)(A); <u>see</u> <u>Int'l</u> <u>Bhd. of Teamsters</u>, 861 F.3d at 952.

All six of the claims alleged in the SAC allege that the EPA failed to act on their respective administrative complaints as required by EPA regulations and seek relief under § 706(1).  SAC ¶¶ 105, 111, 117, 123, 129, 135.  A claim under this provision "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."  <u>Norton v. S. Utah Wilderness All.</u>, 542 U.S. 55, 64 (2004).  To prevail on a failure to act claim, Plaintiffs must demonstrate that: (1) the agency had a nondiscretionary duty to act; and (2) the agency either unreasonably delayed or unlawfully withheld an action on that duty.  <u>Timbisha Shoshone Tribe v. Salazar</u>, 697 F. Supp. 2d 1181, 1187 (E.D. Cal. 2010) (citing <u>Norton v. Southern Utah Wilderness Alliance</u> ("<u>SUWA</u>"), 542 U.S. 55, 63-64 (2004)).  "The prongs of section 706(1)—that is, 'unreasonably delayed' and 'unlawfully withheld'—are mutually exclusive."  <u>San Francisco Baykeeper, Inc. v. Browner</u>, 147 F. Supp. 2d 991, 1005 (N.D. Cal. 2001), <u>aff'd</u> <u>sub nom.</u> <u>San Francisco BayKeeper v. Whitman</u>, 297 F.3d 877 (9th Cir. 2002) (citing <u>Forest Guardians v. Babbitt</u>, 164 F.3d 1261, 1272 (10th Cir. 1998)).  An agency action may be deemed "unreasonably delayed" where the governing statute does not require action by a date certain, whereas an action is "unlawfully withheld" if an agency fails to meet a clear deadline prescribed by Congress.  <u>Forest Guardians</u>, 164 F.3d at 1272.  Plaintiffs' claims are based on the "unlawfully withheld" theory of liability.[7]

---

[7] "Unreasonably delayed" claims, which are not at issue here, are evaluated pursuant to the test set forth in <u>Telecomm'cn Research & Action Ctr. v. F.C.C.</u>, 750 F.2d 70, 80 (D.C. Cir. 1984).  <u>See</u> <u>In re Cal. Power Exch. Corp.</u>, 245 F.3d 1110, 1124-25 (9th Cir. 2001).

APA claims may be resolved via summary judgment, pursuant to the standard set forth in Federal Rule of Civil Procedure 56. See Nw. Motorcycle Ass'n v. United States Dept. Agric., 18 F.3d 1468, 1472 (9th Cir. 1994). "[S]ummary judgment is appropriate where there 'is no genuine issue as to any material fact" and the moving party is "entitled to a judgment as a matter of law.'" Alabama v. North Carolina, 560 U.S. 330, 344 (2010) (quoting Fed. Rule Civ. Proc. 56(c)) (citing cases). Generally, judicial review in an APA case is based on the administrative record compiled by the agency—not on independent fact-finding by the district court. Camp v. Pitts, 411 U.S. 138, 142 (1973). But when adjudicating a § 706(1) claim, "review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record." Friends of the Clearwater v. Dombeck, 222 F.3d 552, 560 (9th Cir. 2000).

## B.   CLAIMS

The parties' dispute regarding Plaintiffs' failure to act claims focuses on two main issues. First, the EPA contends that Plaintiffs are barred from judicial review under the APA on the ground that "they possess adequate alternative remedies for harms alleged in their Title VI complaints." Defs.' Mot. at 17. Second, the EPA contends that there is no mandatory duty for it to issue preliminary findings in response to a Title VI administrative complaint. Id. at 3; Pls.' Mot. at 13-14. The Court addresses these issues, in turn.

### 1.   Adequate Alternative Remedies

Section 704 "makes judicial review available for two categories of agency action: '[a]gency action made reviewable by statute' and 'final agency action for which there is no other adequate remedy in a court.'" Nebraska Pub. Power Dist. v. United States, 590 F.3d 1357, 1371 n.5 (Fed. Cir. 2010) (internal quotations and citation omitted). The EPA contends that Plaintiffs have adequate remedies under federal and state laws to redress their claims of discrimination, and therefore, are foreclosed from seeking relief under the APA. Plaintiffs respond that they are not subject to the other adequate remedy requirement for two reasons: (1) their claims are cognizable under the "action made reviewable by statute" prong of § 704, to which the "no other adequate remedy" limitation is inapplicable; and

(2) the requirement only applies to a "final agency action," and does not apply to a failure to act case such as the present one because there is no final agency action to review. In the alternative, Plaintiffs argue that there are, in fact, no adequate alternative remedies available.

In support of their first contention that their claims are based on actions "made reviewable by statute" within the meaning of § 704, Plaintiffs cite § 603 of Title VI, 42 U.S.C. § 2000d-2, which they maintain permits judicial review of any agency action "to effectuate" Title VI. Plaintiffs overstate the reach of § 603. Title VI specifies that federal funding will be terminated in the event an entity receiving assistance fails to comply with its requirements. 42 U.S.C. § 2000d-1. Funding decisions under § 2000d-1 are subject to review under § 2000d-2. Id. § 2000d-2; see Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1119 (9th Cir. 2009) ("Recipients of HHS funds are entitled to judicial review of a funding termination decision.") (citing 42 U.S.C. § 2000d-2 and 45 C.F.R. § 80.11). Since Plaintiffs are challenging the EPA's failure to act on their complaints, as opposed to a funding decision, § 2000d-2 is inapposite. Cf. Marlow v. U.S. Dep't of Educ., 820 F.2d 581, 582 (2d Cir. 1987) ("This provision [§ 2000d-2] thus enables a recipient of federal funds to obtain judicial review of an agency decision to terminate or refuse to grant funding, but it does not provide for a complainant's challenge to a determination that a recipient has not violated section 504.").

Plaintiffs' fallback argument—that the other adequate remedy requirement is inapplicable in a failure to act case—fares no better. It is true that courts have recognized an exception to the final agency action requirement with respect to claims brought under § 706(1) for governmental action "unlawfully withheld or unreasonably delayed." ONRC Action v. Bureau of Land Mgmt., 150 F.3d 1132, 1137 (9th Cir. 1998) ("A court's review of an agency's failure to act [under Section 706(1)] has been referred to as an exception to the final agency action requirement."). Nonetheless, the existence of that exception does not obviate the other adequate remedy limitation. Congress imposed this requirement to ensure that "the general grant of review in the APA" does not "duplicate existing

procedures for review of agency action" or "provide additional judicial remedies in situations where Congress has provided special and adequate review procedures." <u>Citizens for Responsibility & Ethics in Wash. v. United States Dep't of Justice</u>, 846 F.3d 1235, 1244 (D.C. Cir. 2017) (citing <u>Bowen v. Massachusetts</u>, 487 U.S. 879, 903 (1988)). Therefore, the other adequate remedy requirement applies equally to a § 706(1) failure to act claim. <u>See</u> <u>Coos Cty. Bd. of Cty. Comm'rs v. Kempthorne</u>, 531 F.3d 792, 810 (9th Cir. 2008) ("[W]e hold that Coos County's 5 U.S.C. § 706(1) cause of action is precluded because it is identical in all relevant respects to the ESA cause of action, which provides Coos County with an 'adequate remedy.'").

The above notwithstanding, the Court is unpersuaded by the EPA's argument that Plaintiffs, in fact, have other adequate remedies available to them. "When considering whether an alternative remedy is 'adequate' and therefore preclusive of APA review, [courts] look for 'clear and convincing evidence' of 'legislative intent' to create a special, alternative remedy and thereby bar APA review." <u>Citizens for Responsibility & Ethics in Wash.</u>, 846 F.3d at 1244. Such intent, or the absence thereof, may be shown through several means, such as whether "Congress has provided 'an independent cause of action or an alternative review procedure.'" <u>Id.</u> (quoting <u>El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs.</u>, 396 F.3d 1265, 1270 (D.C. Cir. 2005)). Although the relief need not be identical to the APA, <u>id.</u>, the alternative remedy will not be adequate under the APA if it offers only "doubtful and limited relief," <u>Bowen</u>, 487 U.S. at 901.

The EPA cites various federal and state statutes under which Plaintiffs purportedly could pursue discrimination claims against the funding recipients. For instance, the EPA posits that Plaintiffs can bring their discrimination claims directly under Title VI and as an equal protection challenge under 42 U.S.C. § 1983. Defs.' Mot. at 18-19. But as Plaintiffs correctly point out, both of those claims only provide relief for intentional discrimination. <u>Alexander v. Sandoval</u>, 532 U.S. 275, 285 (2001) (holding that Title VI creates no private cause of action for disparate impact claims and prohibits only intentional discrimination);

Washington v. Davis, 426 U.S. 229, 239-241 (1976) (holding that, absent discriminatory intent, the equal protection clause does not prohibit disparate impact). Unlike the aforementioned statutory claims, the Title VI regulations relied upon by Plaintiffs in their respective administrative complaints apply to actions that have a discriminatory *impact*, irrespective of discriminatory intent. See 40 C.F.R. § 7.35; Choate, 469 U.S. at 293 ("actions having an unjustifiable disparate impact on minorities [can] be redressed through agency regulations designed to implement the purposes of Title VI"). Title VI regulations may only be enforced by the agency, and not private litigants. See Sandoval, 532 U.S. at 293. Plaintiffs thus have no means other than the APA to ensure that the agency is enforcing the regulations appropriately. Accordingly, neither a Title VI nor an equal protection claim constitutes an adequate remedy to an APA claim.

The EPA's contentions regarding the availability of relief under federal environmental statutes also fail. In particular, the EPA alleges that CARE, the Sierra Club and Prayer Center can pursue claims under the Clean Air Act ("CAA") and that ABSCO can file suit under the Clean Water Act ("CWA"). Congress enacted the CAA and CWA to protect and maintain the Nation's air resources and waters, respectively. See 42 U.S.C. § 7401(b)(1) (CAA); 33 U.S.C. § 1251(a) (CWA). The administrative complaints filed by these particular Plaintiffs, however, focus on the *discriminatory impact* of the permitting decisions by various local agencies. In other words, the question of whether or not the individual facility operators are in violation of the CAA or CWA is distinct from whether the permitting agencies' decision to grant permits to the operators had a discriminatory impact on the affected communities. Moreover, these particular Plaintiffs' complaints allege discrimination by funding recipients with respect to their permitting *procedures*, which is not encompassed by either the CAA or CWA.[8]

---

[8] Without citing any supporting legal authority, the EPA argues that the unavailability of alternative causes of action is irrelevant because § 704 "focuses on remedies." Defs.' Reply at 24. However, the "adequate remedy" inquiry necessarily encompasses an analysis of whether the plaintiff would be able to maintain "a private cause of action against a third party otherwise subject to agency regulation." El Rio Santa Cruz Neighborhood Health Ctr., 396 F.3d at 1272.

1    Finally, the EPA contends CARE and CARD have adequate remedies based on

2    California and New Mexico law, respectively.  Defs.' Mot. at 20.  However, only federal

3    remedies established by Congress may qualify as an adequate alternative for purposes of

4    section 704.  See Bowen, 487 U.S. at 903 (noting that "[section] 704 'does not provide

5    additional judicial remedies in situations where the *Congress* has provided special and

6    adequate review procedures'") (emphasis added, citation omitted); Citizens for

7    Responsibility & Ethics in Wash., 846 F.3d at 1244-45 (recognizing that "'[the] legislative

8    intent' to create a special, alternative remedy and thereby bar APA review" may be

9    established "through several means," including "where *Congress* has provided 'an

10   independent cause of action or an alternative review procedure'") (emphasis added).[9]

11   The Court concludes that no clear and convincing evidence of legislative intent to

12   create a special, alternative remedies and thereby bar APA review has been presented in

13   this case.  See Citizens for Responsibility & Ethics in Wash., 846 F.3d at 1244.

### 2.    Mandatory Duty to Act

15   Having determined that Plaintiffs qualify for judicial review under § 704, the

16   question remains whether Plaintiffs prevail on their "unlawfully withheld" claims under

17   § 706(1).  The first element of a § 706(1) claim requires that the agency have a

18   nondiscretionary duty to act.  SUWA, 542 U.S. at 63-64.  Claims One through Five allege

19   that the EPA violated its "mandatory duty to issue preliminary findings and

20   recommendations for voluntary compliance, if any, within 180 days of acceptance of a Title

21   VI complaint for investigation."  SAC ¶¶ 102, 108, 114, 120, 126.  The EPA denies the

22   existence of a mandatory duty.  Pls.' Mot. at 11-12.  According to the EPA, upon receipt of

23   an administrative complaint, the applicable regulations afford it "several available

---

[9] The EPA cites Garcia v. McCarthy, an unpublished district court decision, for the proposition that "adequate remedy," as used in section 704, is not expressly limited to remedies provided by Congress.  No. 13-CV-03939-WHO, 2014 WL 187386, at *12 (N.D. Cal. Jan. 16, 2014), aff'd on other grounds, 649 F. App'x 589 (9th Cir. 2016).  That conclusion is uncompelling in light of the Supreme Court's recognition in Bowen that the alternative remedy must be one created by Congress.

pathways" to proceed – and that issuing preliminary findings is merely one option available to it.  Defs.' Mot. at 3; Defs.' Reply at 14.

The starting point for resolving whether a mandatory duty exists is the language of the regulation itself.  <u>Wards Cove Packing Corp. v. Nat'l Marine Fisheries Serv.</u>, 307 F.3d 1214, 1219 (9th Cir. 2002).  "Regulations are interpreted according to the same rules as statutes, applying traditional rules of construction.  If the meaning of the regulation is clear, the regulation is enforced according to its plain meaning."  <u>Minnick v. C.I.R.</u>, 796 F.3d 1156, 1159 (9th Cir. 2015).  Specific provisions must be construed in the context of the regulation "as a whole," and "not in isolation."  <u>Charles Schwab & Co. v. Debickero</u>, 593 F.3d 916, 921 (9th Cir. 2010).  "[D]eference to an agency's interpretation of its regulation is warranted only when the regulation's language is ambiguous."  <u>Wards Cove Packing Corp.</u>, 307 F.3d at 1219 (citing <u>Christensen v. Harris Cty.</u>, 529 U.S. 576, 588 (2000)).[10]

Applying the foregoing principles of regulatory construction, it is clear that § 7.115, in tandem with § 7.120, imposes a mandatory duty upon the EPA to issue preliminary findings within 180 days of accepting a complaint for investigation.  The regulations do not specify "available pathways," as the EPA claims.  Rather, they articulate a sequence of events that the OCR must follow once it has accepted a complaint for investigation.  The regulations state that upon accepting a complaint for investigation, the OCR affords the target of the complaint (i.e., the funding recipient) an opportunity to respond, and thereafter, must attempt to resolve the complaint informally "whenever possible."  40 C.F.R. § 7.120(d)(1), (2).  If the complaint cannot be resolved informally, the OCR "will," inter alia, issue preliminary findings within 180 days of the commencement of the investigation.  <u>Id.</u> §§ 7.120(d)(2), 7.115(c).  The Ninth Circuit has characterized the agency's obligation to issue preliminary findings as mandatory.  <u>See</u> <u>Rosemere Neighborhood Ass'n v. U.S. EPA</u>, 581 F.3d 1169, 1171 (9th Cir. 2009) ("If the OCR

---

[10] The EPA denies that there is any ambiguity in the regulations.  Defs.' Reply at 14. The Court therefore affords no deference to the EPA's interpretation of the regulations in dispute.

accepts the complaint, it *shall* issue preliminary findings within 180 days of the beginning of the complaint investigation.") (citing 40 C.F.R. § 7.115(c)(1)) (emphasis added); see also Hewitt v. Helms, 459 U.S. 460, 471 (1983) (recognizing that when governmental regulations, statutes or other directives declare "that certain procedures 'shall,' 'will,' or 'must' be employed," they use "language of an unmistakably mandatory character").

Despite the plain language of the regulations and the Ninth Circuit's decision in Rosemere, the EPA insists that preliminary findings are not required in response to every complaint, such as where no violation is found. The EPA points to § 7.120(g), which specifies that "[i]f [the] OCR's investigation reveals no violation of this part, the Director, OCR, will dismiss the complaint and notify the complainant and recipient." 40 C.F.R. § 7.120(g). According to the EPA, this provision establishes that the OCR's obligation to issue preliminary findings within 180 days of accepting a complaint for investigation is triggered *only* when makes affirmative findings of noncompliance. Not so. Section 7.115(c)(1)(i) unequivocally provides that preliminary findings are mandatory in any case in which a complaint is not resolved informally. Rosemere confirms this.

The Court further notes that no language in either § 7.115 or § 7.120 conditions the OCR's obligation to comport with § 7.115(c)(1)(i) on a finding of non-compliance. Nor would such a distinction make any logical sense. If the EPA's interpretation were correct, the OCR would be required to issue a preliminary finding of noncompliance within 180 days, but would have an unlimited amount of time under § 7.120(g) to dismiss a complaint based upon a finding of insufficient evidence or compliance.[11] Notably, the EPA fails to cite any language in the regulations or case law to support its novel construction. The EPA's contention also is contradicted by its handling of CARE, Prayer Center and ABSCO's complaints, which were dismissed by the EPA during the pendency of this

---

[11] The EPA claims that "issuing preliminary findings is to be avoided, 'whenever possible, in favor of "attempt[s] to resolve complaints informally.'" Id. (alterations in orignal, citations omitted). Nowhere in the regulations is there any language suggesting, let alone stating, that preliminary findings are to be "avoided." See Defs.' Reply at 14. To the contrary, the regulations merely provide that the OCR must first attempt to resolve the complaint informally before issuing findings. See 40 C.F.R. § 7.120(d)(2)(i).

action.  In each case, the EPA's notification that the complaint had been resolved and closed was accompanied by detailed findings in support of its decision.  In sum, the Court finds that § 7.115 imposes a mandatory duty upon the EPA to issue preliminary findings within 180 days of accepting a complaint for investigation.

Turning to the second element of a § 706(1) claim—whether the EPA failed to comply with a mandatory duty—the Court notes that evidence pertaining to this issue is not in dispute.  <u>See</u> Defs.' Mot. at 5, 10-11.  Plaintiffs' evidence establishes that the EPA failed to issue findings and recommendations within the requisite 180 days of the commencement of the investigation for each of Plaintiffs' Title VI complaints.  <u>See</u> Schmitter Decl. ¶ 16; Boyd Decl. ¶ 17; Carman Decl. ¶ 9; Reade Decl. ¶ 11; Gosa Decl. ¶ 23.  As of the commencement of this action, Plaintiffs' complaints had been pending in some instances for up to 20 years past the 180-day deadline.  The Court finds that the EPA's failure to issue preliminary findings or recommendations and any recommendations for voluntary compliance constitutes agency action unlawfully withheld.  <u>See</u> <u>Ctr. for Biological Diversity</u>, 571 F. Supp. 2d at 1131 ("'[w]hen an agency fails to meet a concrete statutory deadline, it has unlawfully withheld agency action' under the APA") (internal quotations and citation omitted).  The Court therefore finds that the EPA has a mandatory duty to issue preliminary findings within 180 days after accepting a complaint for investigation, and that the EPA failed to comply with that duty.

## C.  MOOTNESS

The EPA contends that Plaintiffs' claims, even if valid, are moot as a result of the OCR's resolution of each of the underlying administrative complaints subsequent to the commencement of this action.  Plaintiffs respond that their claims are not moot because it remains possible for the Court to grant "effective relief."  In the alternative, Plaintiffs

contend that even if their claims are moot, they can avoid dismissal of their claims under the voluntary cessation exception to the mootness doctrine.  Pls.' Opp'n at 28.[12]

### 1.    Overview

"[A] case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"  Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (citation omitted).  The "central question" in determining mootness is "whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief."  Gator.com Corp. v. L.L. Bean, Inc., 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc).  "If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed."  American Rivers v. National Marine Fisheries Serv., 126 F.3d 1118, 1123 (9th Cir. 1997).  However, even if a claim is moot, a party can avoid dismissal under one of four mootness exceptions:  "(1) collateral legal consequences; (2) wrongs capable of repetition yet evading review; (3) voluntary cessation; and (4) class actions where the named party ceases to represent the class."  In re Burrell, 415 F.3d 994, 998 (9th Cir. 2005).

### 2.    Effective Relief

The threshold question in determining whether Plaintiffs' claims are moot is whether there is any effective relief the Court can provide, notwithstanding the EPA's resolution of their Title VI complaints.

In general, when an administrative agency has performed the action sought by a plaintiff in litigation, a federal court "lacks the ability to grant effective relief."  See Pub. Util. Comm'n of State of Cal. v. FERC, 100 F.3d 1451, 1458 (9th Cir. 1996).  However, a cause of action is not moot simply because the "primary and principal relief sought" is no longer available.  Powell v. McCormack, 395 U.S. 486, 499 (1969) (internal quotation

---

[12] Because mootness pertains to a federal court's subject-matter jurisdiction under Article III, the Court reviews the EPA's arguments under the standard of review applicable to Rule 12(b)(1) motions.  See White, 227 F.3d at 1242.

marks omitted). "'The question is not whether the precise relief sought at the time the case was filed is still available,' but 'whether there can be any effective relief.'" Bayer v. Neiman Marcus Grp., Inc., 861 F.3d 853, 862 (9th Cir. 2017) (citation omitted). A case becomes moot "only when it is impossible for a court to grant *any* effectual relief whatever to the prevailing party." Decker v. Nw. Envtl. Def. Ctr., 568 U.S. 597, 609 (2013) (emphasis added). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." Chafin v. Chafin, 568 U.S. 165, 172 (2013).

"Because mootness turns on the ability of the district court to award effective relief, [the court] first consider[s] the question of what remedies were available to [Plaintiffs]." Bayer, 861 F.3d at 862. That determination is informed by the claims alleged in the pleadings. Id. Here, Plaintiffs allege five individual claims for relief under the APA seeking judicial review of agency action that allegedly has caused them injury. Courts may take into account equitable considerations in reviewing agency decisions under the APA and crafting a remedy. See Nat'l Wildlife Fed'n v. Espy, 45 F.3d 1337, 1343 (9th Cir. 1995). Such remedies include declaratory and injunctive relief, see 5 U.S.C. § 703, both of which are sought by Plaintiffs in this case. Defendants bear a "heavy burden to establish that there is no effective relief remaining for a court to provide.'" In re Palmdale Hills Property, LLC, 654 F.3d 868, 874 (9th Cir. 2011) (citation omitted).

### a) *Declaratory Relief*

The EPA contends that there no longer is any purpose in issuing a judicial declaration that the EPA has failed to timely issue preliminary findings on those complaints. Defs.' Reply at 7-8. This contention is unpersuasive. A claim for declaratory relief is not moot if "the conduct complained of in this action presently affects [the plaintiff] or can reasonably be expected to affect him in the future ...." Bayer, 861 F.3d at 868. Such a declaration is particularly appropriate in cases where the defendant has "faced numerous lawsuits" involving the same conduct and declaratory relief would be helpful in

avoiding future litigation by declaring the rights and obligations of litigants.  Badgley, 309 F.3d at 1172 (internal quotations omitted).

It is well documented that the EPA has been sued repeatedly for failing to investigate Title VI complaints in a timely manner.  Rosemere, 581 F.3d at 1175.  The EPA often takes years to act on a complaint—and even then, acts only after a lawsuit has been filed.  E.g., Padres Hacia Una Vida Mejor v. McCarthy, 614 F. App'x 895, 897 (9th Cir. 2015) (noting that the EPA routinely failed to meet the 180 day deadline to address a Title VI complaint and that in the plaintiff's case the EPA did not resolve its complaint until seventeen years after it was submitted); Rosemere, 581 F.3d at 1175.  The Ninth Circuit has strongly criticized the EPA for such delays.  Rosemere, 581 F.3d at 1175.

Despite the prior litigation involving its failures to resolve Title VI complaints in a timely manner and this Circuit's criticism of those delays, the EPA has allowed Plaintiffs' complaints to languish for decades.  It was only during the pendency of this action that the EPA resolved each of Plaintiffs' administrative complaints.  Moreover, despite Ninth Circuit authority to the contrary, the EPA continues to argue in this action that it has no mandatory duty to act on Title VI complaints.  Thus, in view of Plaintiffs' stated intention to continue filing Title VI complaints to protect their respective interests[13] – coupled with the fact that the EPA continues to dispute the nature and extent of its legal obligations with respect to handling Title VI complaints—declaratory relief remains an available, effective remedy.  See Badgley, 309 F.3d at 1172 ("The parties were immersed in a substantial controversy regarding the proper interpretation of the ESA's deadline provisions; they have litigated similar cases before; and there are analogous cases pending in other federal courts.  Accordingly, the district court acted within its jurisdictional limits when ruling on [plaintiffs' request for declaratory relief].").  The Court thus finds that effective relief may be afforded in this case in the form of a declaratory judgment.

---

[13] The EPA argues that Plaintiffs' intention to file additional complaints is speculative because such intent is contingent upon whether the pertinent permitting authorities actually issue additional permits.  As will be discussed infra, the Court finds no merit to the EPA's contention.

### b)   Injunctive Relief

"A request for injunctive relief remains live only so long as there is some present harm left to enjoin." Bayer, 861 F.3d at 862 (internal quotations and citation omitted). Here, the SAC seeks an injunction compelling the EPA to: (1) issue preliminary findings and recommendations for voluntary compliance as to each of the Plaintiffs' administrative complaints; and (2) complete the complaint investigation process specified in 40 C.F.R. part 7.  SAC at 26.

There is no dispute between the parties that, subsequent to the commencement of this action, the EPA:  (1) dismissed the CARE complaint; (2) resolved the CARD complaint by entering into an Informal Resolution Agreement with NMED; (3) resolved and closed the Prayer Center complaint; (4) resolved and closed the ABSCO complaint; and (5) resolved the Sierra Club complaint by entering into an informal resolution agreement with the TCEQ.  In light of these developments, Plaintiffs state that they are abandoning their requests for injunctive relief, except as to the CARE complaint.[14]  Pls.' Opp'n at 18 n.10; Pls.' Reply at 13 n.21.

With respect to the CARE complaint, Plaintiffs contend that they remain entitled to an injunction requiring the EPA to issue "[preliminary] findings regarding the unresolved accepted allegations of the CARE [complaint]…." Id. at 18.  Plaintiffs overlook the Court's ruling on their earlier motion for leave to amend.  In that motion, Plaintiffs sought to add a new claim that Defendants violated EPA regulations by dismissing the CARE Complaint without issuing any findings or recommendations in accordance with 40 C.F.R. § 7.115(c).  Dkt. 86 at 6.  In finding that the proposed claim was futile, the Court found that "[t]he information presented by Plaintiffs demonstrates that the EPA did, in fact, make findings in response to the CARE Complaint." Id. at 8.  Although the EPA did not make any recommendations, the Court noted that none are required in cases where there is no finding of non-compliance. Id.  Moreover, the Court found that EPA has no legal

---

[14] Although Plaintiffs do not specify whether they still seek injunctive relief as the Sierra Club complaint, it is clear that such request is now moot.

obligation to address each and every claim alleged in a Title VI administrative complaint. Id.

In sum, there is no injunctive relief available to Plaintiffs with respect to the underlying Title VI complaints, as the EPA has fully resolved each of them. The Court therefore finds that Plaintiffs' request for injunctive relief as to these complaints is moot.

### c) *Prospective Injunctive Relief*

Finally, Plaintiffs argue that their claims are not moot because the Court can provide effective relief in the form of a prospective injunction requiring the EPA "to comply with 40 C.F.R. § 7.115's 180-day deadline for all Plaintiffs' future Title VI complaints." Pls.' Opp'n at 19. A federal court has broad authority to grant injunctive relief to prevent future misconduct where the "defendant's past and present misconduct indicates a strong likelihood of future violations." Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 564 (9th Cir. 1990); Long v. U.S. I.R.S., 693 F.2d 907, 909 (9th Cir. 1982). Thus, "where the district court finds a probability that alleged illegal conduct will recur in the future, an injunction may be framed to bar future violations that are likely to occur." Id.; S.E.C. v. Koracorp Indus., Inc., 575 F.2d 692, 698 (9th Cir. 1978) ("An inference arises from illegal past conduct that future violations may occur. The fact that illegal conduct has ceased does not foreclose injunctive relief.") (citations omitted).

The EPA argues that Plaintiffs are foreclosed from pursuing a claim for future injunctive relief on the ground that the Court previously denied Plaintiffs' request to amend their prayer to expressly include such relief. It is true that the Court declined Plaintiffs' request on the ground that Plaintiffs had not alleged sufficient facts to establish an intent to file Title VI complaints in the future. See Order Granting in Part and Denying in Part Pls.' Mot. for Leave to File SAC, Dkt. 86 at 9-10 (finding that Plaintiffs' stated intention to file future complaints was "too conclusory to satisfy the requisite 'concrete and particularized' injury for Article III standing."). That ruling, however, is inapposite for purposes of the instant motion. The issue now before the Court is one of mootness—and more specifically, whether there is any effective relief that the Court can grant to Plaintiffs, notwithstanding

the resolution of the underlying Title VI complaints. The availability of effective relief is not dependent upon what Plaintiffs expressly sought in the pleadings.[15] Nw. Envtl. Def. Ctr. v. Gordon, 849 F.2d 1241, 1245 (9th Cir. 1988) ("The plaintiffs are not required, however, to have asked for the precise form of relief that the district court may ultimately grant."). Rather, a general request for a court to grant "such other equitable relief" and the court deems appropriate is sufficient. Id. The SAC expressly requests "such further and additional relief as the Court may deem just, proper, and equitable." SAC at 26.

The concerns articulated by the Court in its earlier ruling—i.e., that Plaintiffs' purported intention to file additional complaints was too conclusory—also have been rectified. Plaintiffs have presented evidence establishing their intention to file additional Title VI complaints and the likely harm they would suffer in the absence of a prospective injunction. The EPA contends that Plaintiffs' plans to file additional Title VI administrative complaint are speculative ostensibly because they are dependent on the future actions of state and/or local permitting authorities. However, as discussed in more detail below, the actions that the EPA characterizes as speculative have manifested or are likely to materialize in the near future. The Court concludes that the EPA has failed to carry its heavy burden of showing that the Court cannot provide any effective relief.

The Court concludes that effective relief may be afforded in the form of a prospective injunction requiring the EPA to timely process Plaintiffs' future Title VI complaints that are accepted for investigation by the EPA. See Rosemere, 581 F.3d at 1175 (holding that, in light of the "pattern of delay as shown by the experiences of other parties before an agency," the district court erred in dismissing a "claim for injunctive relief to

---

[15] The Court also notes that, in their opposition, Plaintiffs have expressly requested future injunctive relief. When a party raises a new claim or issue in opposition to a motion for summary judgment, district courts should construe it as a request under Federal Rule of Civil Procedure 15(a) to amend the pleadings "out of time," and grant leave to amend "with extreme liberality." Desertrain v. City of Los Angeles, 754 F.3d 1147, 1154 (9th Cir. 2014) (citations omitted). The EPA fails to acknowledge this rule or otherwise argue that the pleadings should not be so construed.

compel the EPA to process all Rosemere complaints filed in the next five years within the regulatory deadlines" as moot).[16]

### 3. Voluntary Cessation Exception

The voluntary cessation of illegal conduct does not render a challenge to that conduct moot unless "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Barnes v. Healy, 980 F.2d 572, 580 (9th Cir. 1992) (citation omitted). This doctrine is grounded on the recognition that "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant free to return to his old ways." Jacobus v. Alaska, 338 F.3d 1095, 1102 (9th Cir. 2003) (citation omitted). To obtain the dismissal of an action based on mootness, the defendant "bears the *formidable burden* of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189-90 (2000) (internal quotation marks, citations omitted, emphasis added).

In Rosemere, the Ninth Circuit addressed the voluntary cessation doctrine in circumstances closely analogous to the present action. In that case, the Rosemere Neighborhood Association ("Rosemere"), a nonprofit community organization, filed an administrative complaint with the EPA's OCR, alleging that the City of Vancouver ("City") failed properly to utilize EPA funds to address lingering environmental problems in the City's low-income and minority communities. Although the OCR accepted the complaint,

---

[16] Notably, on remand to the district court, the parties in Rosemere reached a settlement and entered into a stipulated judgment. Rosemere Neighborhood Ass'n v. U.S. EPA, Case No. C 07-3880 BHS (W.D. Wash.), Dkt. 55, 56. The settlement agreement provides that judgment and declaratory relief shall be entered in favor of Rosemere, along with a finding that "the OCR's failure to process Rosemere's complaint within the timeline set forth in 40 C.F.R. § 7.115(c)(1) constitutes agency action unlawfully withheld pursuant to [the APA]." Id. Dkt. 55-1 Ex. A ¶ J(1). In addition, the EPA stipulated it "will meet the regulatory deadlines set forth in 40 C.F.R. § 7.115 and 40 C.F.R. § 7.120 with respect to any Title VI complaint filed with the OCR by [Rosemere] within five years of … the Agreement…." Id. Ex. A ¶ J(2). Notably, that relief is essentially the same relief sought by Plaintiffs in this action—and which the EPA now asserts that Plaintiffs have no legal basis to obtain.

it did not issue preliminary findings or recommendations within the timeframes prescribed by 40 C.F.R. § 7.115. Rosemere then filed suit against the EPA, seeking a declaratory judgment that the EPA had violated the regulatory deadlines of 40 C.F.R. § 7.115, as well as an injunction compelling the EPA to complete its investigation. During the pendency of the action, the OCR concluded its investigation, found no improprieties by the City, and dismissed the complaint. As a result, Rosemere amended its complaint to add a request for injunctive relief to compel the EPA to process all Rosemere complaints filed within the following five years within the regulatory deadlines.

The EPA filed a motion to dismiss Rosemere's action as moot, which the district court granted. The Ninth Circuit reversed, citing the voluntary cessation exception. Rosemere, 581 F.3d at 1173-75. The court explained that to secure a dismissal based on mootness, the EPA "must show that it is 'absolutely clear' that the allegedly wrongful behavior will not recur if the lawsuit is dismissed"—i.e., "that Rosemere will not encounter further regulatory delays in the processing of its complaints." Id. at 1173. The EPA could satisfy its "heavy burden" by either (1) "showing that it is extremely unlikely that Rosemere will file another complaint (and thus come before the agency again)" or (2) "by showing that, even if Rosemere does file such a complaint, the EPA will meet its regulatory deadlines in resolving it." Id. The EPA relied on the first option and argued that "because Rosemere has no pending complaints before the agency, the prospect of further delay is merely 'speculative.'" Id. The EPA further argued that Rosemere "must show to a 'certainty' that it will file another complaint." Id.

The Rosemere court rejected the EPA's arguments for dismissal. Id. The court explained: "[T]he burden is not on Rosemere to show it *will* file another complaint. The burden is on the EPA to show that Rosemere *will not* do so. The EPA's attempt to reverse this burden is insufficient to show mootness." Id. at 1174. Rather, the plaintiff need only have "a stated intention to resume the actions that led to the litigation." Id. Additionally, the court found significant evidence suggesting that the EPA has a demonstrable pattern of failing to process administrative complaints within regulatory guidelines, noting that

"Rosemere's experience before the EPA appears, sadly and unfortunately, typical of those who appeal to OCR to remedy civil rights violations." Id. at 1175. The court concluded that "[t]his pattern of delay as shown by the experiences of other parties before an agency can be relevant to the mootness analysis, … and helps convince us that this action should go forward." Id. (citations omitted).

In the instant case, the EPA attempts to distinguish Rosemere on the ground that Plaintiffs have failed to provide an evidentiary record to establish with sufficient certainty their intention to file future Title VI complaints. Defs.' Reply at 11. More specifically, the EPA claims that since Plaintiffs' intention to file additional complaints is dependent on "upcoming permitting actions" by third parties (i.e., state and/or local agencies), their plan to file additional complaints is, at best, "hypothetical." Id. The flaw in this argument is that it overlooks one of the core holdings in Rosemere. As the Ninth Circuit's opinion makes clear, the burden is not on Plaintiffs to show that they will file another complaint. Rosemere, 581 F.3d at 1174. Rather, the burden is on the EPA to demonstrate that it is "extremely unlikely" that Plaintiffs will file another Title VI complaint or that it will resolve any such complaint in a timely manner. Id.; see Friends of the Earth, 528 U.S. at 170 ("The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness."). The EPA has made no such showing.

The EPA contends that the district court in Padres Hacia Una Vida Mejor v. Jackson ("Padres"), 922 F. Supp. 2d 1057, 1065 (E.D. Cal. 2013), aff'd sub nom. Padres Hacia Una Vida Mejor v. McCarthy, 614 F. App'x 895 (9th Cir. 2015) rejected application of the voluntary cessation doctrine in circumstances analogous to this case. Defs.' Reply at 11. The EPA misreads Padres. In that case, the district court found that the plaintiffs lacked *standing* to seek prospective injunctive relief because it was uncertain whether they would, in fact, file another Title VI complaint. The court noted that the declaration submitted by Plaintiffs failed to establish that they "actually intend to file another Title VI complaint or that another Title VI complaint is likely to be filed following judicial action by this Court."

Id. at 1067.  Despite the EPA's assertions to the contrary, the court's decision did not address the voluntary cessation doctrine.  Id. at 1065 n.3 ("The Court expresses no opinion on the issue of the voluntary cessation exception to mootness or how DeLeon's declaration may effect voluntary cessation.").  This distinction is critical because the burdens are different, depending on whether the issue is one of standing or mootness.  Rosemere teaches that the plaintiffs' intention to file additional complaints is germane to the issue of mootness, as opposed to standing.  Rosemere, 581 F.3d at 1173-75.

The above notwithstanding, Plaintiffs herein, unlike in Padres, have established their intention to file further Title VI complaints with the EPA.  In response, the EPA argues that Plaintiffs' intentions are too speculative and uncertain because it is questionable whether grounds to file future complaints will arise.  But the EPA also glosses over record evidence establishing that the purportedly speculative future permitting actions have, in fact, already occurred or are likely to occur.  E.g., Lado Decl. ¶ 3 & Ex 2. (confirming that ABSCO filed a new Title VI complaint on April 28, 2017, concerning the same landfill facility that was the subject of its 2003 complaint); Smith Decl. ¶ 34 (stating ABSCO's intention to file additional Title VI complaints based on the Alabama Department of Environmental Management's February 2017 decision to approve the Stone's Throw Landfill permit application); Schmitter Decl. ¶ 23 (stating that the Prayer Center plans to file new complaint "regarding new developments at the Genesee Power Station"); Fields Decl. ¶ 18 (stating the Sierra Club's intention to file a complaint based on the upcoming permit renewal and modification for the ExxonMobil refinery in Beaumont, Texas); Reade Decl. ¶ 19 (noting that NMED announced in January 2017 its intention to renew the permit for the Triassic Park hazardous waste facility, and CARD's plan to file a complaint with the EPA once the permit is granted); Boyd Decl. ¶ 29 (stating CARE's intention to file

additional complaints based on upcoming permitting actions, including the mandatory permit renewal process).[17]

The Court concludes that the EPA has failed to carry "its formidable burden of showing that it is absolutely clear" that Plaintiffs' will not encounter future delays in the processing of their Title VI complaints in a manner that violates applicable regulations. Friends of the Earth, 528 U.S. at 189-90 (2000). As such, even if Plaintiffs claims are deemed moot, dismissal is not warranted under the voluntary cessation exception.

### 4. Pattern and Practice

In their Sixth Claim for Relief, Plaintiffs allege that the EPA has engaged in a "pattern and practice" of failing to issue preliminary findings and recommendations for voluntary compliance, if any, within 180 days of accepting a Title VI complaint for investigation. SAC ¶¶ 131-135. This claim is based on the EPA's failure to act on each of the Title VI complaints that form the basis of Plaintiffs' individual claims, as set forth in Claims One through Five. In its motion, the EPA argues that: (1) Plaintiffs' pattern and practice claim is impermissible under the APA and is tantamount to an improper request for programmatic review; and (2) said claim is otherwise duplicative of Plaintiffs' individual claims. Defs.' Mot. at 15-17; Defs.' Reply at 21-22.

As an initial matter, Plaintiffs have failed to persuasively establish that a pattern and practice claim is cognizable under the APA. As stated above, a § 706(1) claim must be based on "discrete agency action that it is required to take." Norton, 542 U.S. at 64. The "discrete" agency action requirement thus precludes a "broad programmatic attack" regarding general deficiencies in an agency's compliance. Lujan, 497 U.S. at 891 ("Under the terms of the APA, [a plaintiff] must direct its attack against some particular 'agency action' that causes it harm."). The rationale underlying the discrete agency action

---

[17] It bears noting that a bare "stated intention" to file another complaint is, standing alone, sufficient. Rosemere, 581 F.3d at 1174-75. In Rosemere, the court noted that the plaintiffs in that case did "more" than what is required by supplementing the record with a declaration from a Rosemere officer who stated that his organization "will likely file another complaint once it is assured of timely processing by the EPA—lest it direct its limited resources at fruitless efforts." Id.

requirement and corresponding proscription against programmatic attacks "is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." Norton, 542 U.S. at 66-67 (holding that a challenge to the Bureau of Land Management's failure to manage wilderness study areas and manage public lands in accordance with the land use plans constituted an improper programmatic attack under the APA).

In the instant case, Claims One through Five challenge and seek relief based on the EPA's failure to act on each of the Plaintiffs' respective Title VI complaints. Those claims clearly satisfy the discrete agency action requirement. In contrast, Claim Six does not challenge a discrete or specific act or failure to act, but is instead premised on the EPA's alleged ongoing practice of failing to timely act on Plaintiffs' Title VI complaints. SAC ¶¶ 133-135. By challenging the EPA's general practice in handling those complaints, as opposed to seeking relief on a specific complaint, Plaintiffs are, in effect, making a programmatic attack, which is impermissible under Norton and Lujan. See Del Monte Fresh Produce N.A., Inc. v. United States, 706 F. Supp. 2d 116, 119 (D.D.C. 2010) (finding that a claim challenging the Food and Drug Administration's "pattern and practice" of unreasonable delay in handling plaintiff's shipments of perishable produce is not justiciable under the APA).[18]

Plaintiffs deny that they are seeking a "wholesale" improvement of the EPA, pointing out that they only seek relief for themselves. Pls.' Reply at 8. That is a distinction without a difference. As the pleadings make clear, Claim Six is based entirely on EPA's general practice in handling Plaintiffs' Title VI complaints as opposed to a specific, discrete

---

[18] Although Plaintiffs insist that a pattern and practice claim may be brought under the APA, they fail to cite a single case where a court has held as such or allowed such a claim to proceed. Plaintiffs attempt to make much of decisions permitting pattern and practice claims involve claims under the Freedom of Information Act, constitutional violations brought under 42 U.S.C § 1983 and for discrimination under Title VII. See Pls.' Reply at 6. However, those cases are not germane because the claims therein were not subject to the APA's "discrete agency action" limitation.

act or failure to act.  In any event, to the extent that Plaintiffs only seek relief for themselves, and not a general improvement in the EPA's complaint handling practices, their pattern and practice claim is virtually indistinguishable from their individual claims.  As such, Plaintiffs' Six Claim also is subject to dismissal on the ground that it is redundant of their individual claims.  E.g., Mangindin v. Wash. Mut. Bank, 637 F.Supp.2d 700, 707 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action").

The Court concludes that Plaintiffs' pattern and practice claim is not legally cognizable, and grants summary judgment on said claim in favor of the EPA.

## IV.  **CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.      Plaintiffs' Motion to Strike Defendants' Unauthorized Notice is DENIED.

2.      The EPA's motion to dismiss is DENIED.

3.      Plaintiffs' Motion for Summary Judgment is GRANTED as to Plaintiffs' First through Fifth Claims for Relief and DENIED as to the Sixth Claim for Relief.

4.      The EPA's motion for summary judgment as to Plaintiffs' Sixth Claim for Relief is GRANTED.

5.      Within fourteen (14) days of this Order, Plaintiffs shall submit a proposed form of judgment that is consistent with the Court's rulings above.  Plaintiffs shall meet and confer with Defendants prior to submitting the proposed judgment.  If the parties disagree as to the form of the judgment, they shall submit their respective positions in a joint letter brief not to exceed two (2) pages in length at the same time Plaintiffs submit their proposed judgment.  However, in the event the parties desire an opportunity to attempt to reach a global resolution of the action before the entry of judgment, the parties shall notify the Court of such request in lieu of submitting a proposed form of judgment within the aforementioned time-frame.  The parties' request shall indicate that they desire an opportunity to discuss a global settlement and identify one or more magistrate judges, if

1   any, the parties jointly agree should preside over a settlement conference.  The Court will

2   then refer this matter for a settlement conference and defer entering judgment in this action

3   until such time as the parties conclude their settlement discussions.

4          IT IS SO ORDERED.

5   Dated:  March 30, 2018                          _Saundra B Armstrong____

6                                                   SAUNDRA BROWN ARMSTRONG
                                                    Senior United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28