# Exhibit B



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**WASHINGTON, D.C. 20460**

**Office of Environmental Justice and External Civil Rights**

June 27, 2023

**In Reply Refer to:**
EPA Complaint No. 02R-22-R6

Stephen Russo, Secretary
Louisiana Department of Health
P.O. Box 629
Baton Rouge, LA 70821-0629
stephen.russo@la.gov

**Re: Administrative Closure of EPA Complaint No. 02R-22-R6**

Dear Secretary Russo:

This letter is to advise you that the U.S. Environmental Protection Agency, (EPA) Office of Environmental Justice and External Civil Rights, Office of External Civil Rights Compliance (OECRC) has closed its investigation of a complaint ("Complaint") filed by Earthjustice and the Lawyers' Committee for Civil Rights Under Law on behalf of Concerned Citizens of St. John and Sierra Club ("Complainants") (No. 02R-22-R6). The Complaint alleges civil rights violations by the Louisiana Department of Health (LDH) involving its public health program. As explained below, based on information now available including multiple significant developments, OECRC is closing this Complaint administratively as of the date of this letter.[1] As a result of its administrative closure, EPA will not initiate under Title VI or other civil rights laws any further action, enforcement or otherwise, in response to this Complaint.

On April 6, 2022, OECRC initiated an investigation of the Complaint under the authority of federal civil rights laws, including Title VI of the Civil Rights Act of 1964 (Title VI), and EPA's implementing regulation at 40 C.F.R. Parts 5 and 7. OECRC accepted for investigation the following issues:

1. Whether LDH subjects Black residents of St. John the Baptist Parish, including students at the Fifth Ward Elementary School, to discrimination on the basis of race in violation of Title VI of the Civil Rights Act of 1964 and EPA's implementing regulation at 40 C.F.R. Part 7, §§ 7.30 and 7.35, including by allegedly failing in its

---

[1] U.S. EPA, Office of External Civil Rights Compliance (formerly, External Civil Rights Compliance Office) *Case Resolution Manual*, available at https://www.epa.gov/sites/default/files/2021-01/documents/2021.1.5_final_case_resolution_manual_.pdf. See Section 2.5 (prudential administrative closure).

Secretary Russo P a g e | 2

> duty to provide Parish residents with necessary information about health threats, and to make necessary recommendations to all relevant government agencies and affected communities regarding measures to reduce and prevent exposure to hazardous air pollutant emissions from the Denka[2] facility and other nearby sources of pollution.
>
> 2. Whether LDH has and is implementing the procedural safeguards required under 40 C.F.R. Parts 5 and 7 that all recipients of federal assistance must have in place to comply with their general nondiscrimination obligations, including specific policies and procedures to ensure meaningful access to LDH services, programs, and activities, for individuals with limited English proficiency (LEP) and individuals with disabilities, and whether the LDH has a public participation policy and process that is consistent with Title VI and the other federal civil rights laws, and EPA's implementing regulation at 40 C.F.R. Parts 5 and 7.

On October 12, 2022, OECRC issued a Letter of Concern to LDH and the Louisiana Department of Environmental Quality (LDEQ) to convey the results of its initial fact finding and analysis of civil rights issues raised in the Complaint concerning LDH and two complaints concerning LDEQ.[3] The Letter of Concern helped inform and facilitate the subsequent Informal Resolution Agreement (IRA) process for EPA, LDH and LDEQ to seek an informal resolution of each complaint.[4] It did not specifically address whether LDH has been implementing the procedural safeguards required under 40 C.F.R. Parts 5 and 7,[5] but indicated that OECRC found several deficiencies in LDH's nondiscrimination programs. The Letter of Concern stated OECRC would discuss those with LDH as part of the IRA process.

EPA, LDH, and LDEQ[6] actively engaged in regular IRA negotiations for several months to discuss draft provisions for Informal Resolution Agreements, including to address recommendations OECRC made in its Letter of Concern and deficiencies regarding LDH's

---

[2] Denka Performance Elastomer, LLC. in LaPlace, Louisiana.
[3] OECRC's investigation of these complaints was conducted under the authority of the federal civil rights laws, including Title VI, and EPA's implementing regulation at 40 C.F.R. Parts 5 and 7, and consistent with the January 2021 *Case Resolution Manual* available at https://www.epa.gov/sites/default/files/2021-01/documents/2021.1.5_final_case_resolution_manual_.pdf.
[4] *See* 40 CFR § 7.120(d)(2) (informal resolution).
[5] *See* Title VI, 42 U.S.C. 2000(d) *et seq*.; Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; *Lau v. Nichols*, 414 U.S. 563, 568-69 (1974) (finding that the government properly required language services to be provided under a recipient's Title VI obligations not to discriminate based on national origin); 40 C.F.R. § 7.35(a). *See also* U.S. EPA, *Guidance to Environmental Protection Agency Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons*. 69 Fed. Reg. 35602 (June 25, 2004) (available at https://www.epa.gov/sites/production/files/2020-02/documents/title_vi_lep_guidance_for_epa_recipients_2004.06.25.pdf); U.S. EPA, *Title VI Public Involvement Guidance for EPA Assistance Recipients Administering Environmental Permitting Programs*, 71 Fed. Reg. 14207 (Mar. 21, 2006) (available at https://www.epa.gov/sites/production/files/2020-02/documents/title_vi_public_involvement_guidance_for_epa_recipients_2006.03.21.pdf); U.S. EPA, *Procedural Safeguards Checklist for Recipients* (rev. Jan. 2020) (available at https://www.epa.gov/sites/production/files/2020-02/documents/procedural_safeguards_checklist_for_recipients_2020.01.pdf (which provides a more detailed explanation of nondiscrimination obligations and best practices); U.S. EPA, *Disability Nondiscrimination Plan Sample* (2017) (available at https://www.epa.gov/sites/production/files/2020-02/documents/disability_nondiscrimination_plan_sample_for_recipients_2020.01.pdf).
[6] Per its request, the Louisiana Department of Justice also participated in the IRA negotiations.

Secretary Russo P a g e | 3

procedural safeguards. EPA also met with Complainants to provide status updates on the IRA negotiations, and Complainants provided comments on two draft versions of an Informal Resolution Agreement.

For this Complaint,[7] EPA must issue preliminary findings or otherwise resolve the allegations accepted for investigation within 180 days of acceptance, unless EPA, the Complainants, LDH, and LDEQ agree to an extension of time. EPA, the Complainants, LDH, and LDEQ have agreed to a series of three extensions to allow EPA, LDH, and LDEQ to pursue negotiated IRAs by July 11, 2023. The IRA negotiations proceeded as described above. EPA appreciates LDH's engagement and the progress that was made. As of the date of this letter, however, the negotiations have not resulted in an IRA and OECRC assesses that it is not feasible to reach agreement for an IRA by July 11, 2023.

**EPA Complaint No. 02R-22-R6, Issue 1**

The Complaint alleged that LDH failed to provide residents and children who attended St. John the Baptist Parish's Fifth Ward Elementary School near the Denka facility with necessary information about health threats. The Complaint also alleged that LDH failed to make necessary recommendations to all relevant government agencies and affected communities regarding measures to reduce and prevent exposure to hazardous air pollutant emissions from the Denka facility and other nearby sources of pollution.

OECRC's Letter of Concern, representing its initial fact finding and analysis, reflected that LDH did not appear to have provided residents or relevant government agencies with accurate and reliable information about chloroprene emissions and resulting adverse human health impacts.

Separate and apart from its Title VI authorities, EPA has taken a series of significant actions directed at or otherwise resulting in reducing the impacts of chloroprene emissions from the Denka facility while also informing the public of health risks.

First, on December 20, 2022, EPA issued a consent agreement and final order (CAFO) under the Resource Conservation and Recovery Act (RCRA) ordering Denka to improve waste management practices to lower chloroprene emissions.

Second, on February 28, 2023, EPA filed in federal court a Clean Air Act (CAA) § 303 civil complaint against Denka to compel immediate measures to eliminate the imminent and substantial endangerment posed by its chloroprene emissions and address and mitigate the harm to public health. EPA's CAA § 303 civil complaint and OECRC's Letter of Concern relied on

---

[7] 40 C.F.R. §§ 7.115(c), 7.120. In *Californians for Renewable Energy (CARE), et al. v. EPA,* Case No. 4:15-cv-03292-SBA, as relevant here, the U.S. District Court for the Northern District of California ordered that, for any Title VI complaint submitted by a CARE Plaintiff and accepted for investigation, EPA must issue preliminary findings or otherwise resolve the complaint within 180 days of the date of acceptance, "subject to any extension agreement between the complainant and the party complained against under 40 C.F.R. § 7.120." *Amended Judgment (October 2, 2020.* CARE Plaintiff Sierra Club is a complainant as to a portion of the Complaints.

Secretary Russo P a g e | **4**

data from the same chloroprene monitors and reached similar conclusions about cancer risk to residents living near Denka due to chloroprene emissions.[8]

Third, and more broadly, on April 25, 2023, EPA published a proposed rule under Section 112 of the CAA[9] to significantly reduce emissions of toxic and other harmful air pollutants, including chloroprene and ethylene oxide (EtO), from Denka and other chemical plants nationwide. EPA's proposed rule would reduce by 96% the number of people with elevated excess lifetime cancer risk due to breathing air toxics near these chemical plants. EPA is required by court order, issued by the District Court of the District of Columbia in Texas Environmental Justice Advocacy Services, et. al. v. Regan, No. 1:20-cv-07733, to issue a final rule by March 29, 2024.

Fourth, for the community near the Denka Facility in particular, based on EPA's fact finding regarding the significant pollution exposure for this community, EPA plans to conduct a cumulative impact assessment (CIA) in this area.[10] This analysis, which is not under Title VI and would not impose any obligations on the State agencies, will include the totality of exposures to combinations of chemicals and non-chemical stressors and their effects on health, well-being, and quality of life outcomes. A CIA is a process of evaluating various types of data, including health and environmental data, at the same time to inform a decision. It helps characterize the current baseline cumulative health risks and burdens, and the potential state of vulnerability or resilience of a community.

The first step of the CIA process will be to convene a multi-stakeholder workgroup of locally affected parties that will create a charter. The charter will describe roles, responsibilities, goals of the CIA, deliverables, and timeline for those deliverables. Community participation is critical to identifying problems and potential intervention and decision points to improve community health and well-being. Participation by LDEQ and LDH, while not required, would be valuable in identifying problems and potential intervention and decision points to improve community health and well-being. EPA has invited LDEQ and LDH to participate. EPA is in the process of organizing the EPA resources that will be devoted to the CIA.

The main work of the CIA will be to review and analyze available data to assess priority baseline exposures to both chemical and non-chemical stressors and effects of concern in the community. The CIA will identify and recommend, but not require, decision alternatives for mitigation that address stakeholder goals and assess projected effectiveness of different decision alternatives for meeting those goals. The CIA report will be a plain language report that includes the purpose of the CIA and the analytical methods used; a prioritization of exposures and effects to mitigate; a description of the development and assessment of decision alternatives; a summary of the main findings; voluntary recommendations for prioritized mitigation actions; potential implementation steps and estimated timelines; and voluntary recommendations for monitoring to ensure that the goals are being met.

---

[8] *U.S. v. Denka Performance Elastomer, LLC, et. al,* Civil Action No. 2:23-CV-735, p.3 (E.D.L.A Feb. 28, 2023).
[9] *New Source Performance Standards for the Synthetic Organic Chemical Manufacturing Industry and National Emission Standards for Hazardous Air Pollutants for the Synthetic Organic Chemical Manufacturing Industry and Group I & II Polymers and Resins Industry*, 88 F.R. 25080 (April 25, 2023).
[10] This CIA is consistent with EPA's purpose and functions as reflected in 40 CFR §1.3. See also, e.g., Clean Air Act § 103; Clean Water Act § 104; and Resource Conservation and Recovery Act § 8001.

Secretary Russo P a g e | 5

Finally, to promote greater transparency regarding inspections of the Denka facility and actions taken because of the inspections, EPA Region 6 provides a variety of information about the Denka facility on its public website *LaPlace, St. John the Baptist Parish, Louisiana* (https://www.epa.gov/la/laplace-st-john-baptist-parish-louisiana), including final RCRA inspection reports; the RCRA CAFO; air monitoring data; and EPA's CAA §303 imminent and substantial endangerment civil complaint.

As discussed above, EPA is taking significant actions to reduce emissions of toxic and other harmful air pollutants, including chloroprene and EtO, nationwide. For the Denka facility area, the significant actions include the enforcement and rulemaking actions and webpage information described above. These actions have provided and will continue to provide residents, including children attending St. John the Baptist Parish's Fifth Ward Elementary School near the Denka facility, health care professionals, and local and state agencies, e.g., the School Board, with accurate and reliable information about the health threats of chloroprene exposure and measures to reduce and prevent chloroprene exposure. Therefore, OECRC is administratively closing its investigation of this issue and no further action will be taken regarding Issue 1 under Title VI.[11]

**Procedural Safeguards, Issue 2**

LDH expressed interest in addressing its procedural safeguards identified, including through the recommendations identified by OECRC during Informal Resolution Agreement discussions. OECRC is available to work with and provide voluntary technical assistance to LDH to address its procedural safeguards. OECRC is administratively closing its investigation of Issue 2.[12]

**Conclusion**

Based on the information discussed above, OECRC is administratively closing EPA Complaint No. 02R-22-R6 as of the date of this letter. This letter sets forth EPA's final disposition of EPA Complaint No. 02R-22-R6. This letter is not a formal statement of EPA policy and should not be relied upon, cited, or construed as such.

If you have any questions, please feel free to contact me at dorka.lilian@epa.gov, or (202) 564-9649.

Sincerely,

Lilian S. Dorka
Deputy Assistant Administrator
  for External Civil Rights

Cc:   Ariadne Goerke
      Deputy Associate General Counsel
      Civil Rights & Finance Law Office

---

[11] *See Case Resolution Manual*, at Section 2.5.
[12] *Id.*

Secretary Russo P a g e | 6

Stacey Dwyer
Deputy Regional Administrator
Deputy Civil Rights Official
US EPA Region 6

James McGuire
Regional Counsel
US EPA Region 6

Kimberly Sullivan
Executive Counsel, LDH
Director of Legal, Audit and Regulatory Compliance
Kimberly.Sullivan@LA.GOV

Roger Gingles, Secretary
Louisiana Department of Environmental Quality
officesec@la.gov
roger.gingles@la.gov

Ryan Seidemann
Assistant Attorney General
Louisiana Department of Justice
SeidemannR@ag.louisiana.gov