# Exhibit 54



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

**WASHINGTON, D.C. 20460**

EXTERNAL CIVIL RIGHTS COMPLIANCE OFFICE
OFFICE OF GENERAL COUNSEL

June 22, 2022

**<u>In Reply Refer to:</u>**
EPA Complaint No. 01RNO-20-R7

Dru Buntin, Director
Missouri Department of Natural Resources
P.O. Box 176
Jefferson City, MO 65102
Dru.Buntin@dnr.mo.gov

**<u>Re: Voluntary Compliance Agreement to Resolve Partial Preliminary Findings of Non-Compliance</u>**

Dear Director Buntin:

Enclosed, please find a Voluntary Compliance Agreement (VCA) entered into by the U.S. Environmental Protection Agency (EPA), External Civil Rights Compliance Office (ECRCO) and the Missouri Department of Natural Resources (MoDNR). This VCA resolves the Partial Preliminary Findings of Non-Compliance issued on March 30, 2021, for EPA Complaint No. 01RNO-20-R7.

On September 29, 2020, EPA accepted for investigation a complaint filed on September 4, 2020, by the Great Rivers Environmental Law Center on behalf of the National Association for the Advancement of Colored People (NAACP), Missouri State Conference, the NAACP St. Louis City Branch, and the Dutchtown South Community Corporation, against MoDNR alleging discrimination on the basis of race and national origin in violation of Title VI of the Civil Rights Act of 1964 and EPA's nondiscrimination regulations, at 40 C.F.R. Part 7.  Specifically, EPA accepted for investigation:

1.  Whether MoDNR discriminated against a community of color, collectively hereinafter referred to as "Dutchtown" located in St. Louis, MO, on the basis of race, color and/or national origin in violation of Title VI of the Civil Rights Act of 1964, and EPA's implementing regulation, 40 C.F.R. Part 7, by issuing Part 70 Intermediate Operating Permit Number OP2020-008 to the Kinder Morgan Transmix Company, LLC operations; and

Director Dru Buntin                                                                    Page 2

2.  Whether MoDNR has and is implementing the procedural safeguards required under 40
    C.F.R. Parts 5 and 7 that all recipients of federal assistance must have in place to comply
    with their general nondiscrimination obligations, including specific policies and
    procedures to ensure meaningful access to the MoDNR's services, programs, and
    activities, for individuals with limited English proficiency (LEP) and individuals with
    disabilities, and whether the MoDNR has a public participation policy and process that is
    consistent with Title VI and other federal civil rights laws, and EPA's implementing
    regulation at 40 C.F.R. Parts 5 and 7.

The enclosed VCA is entered into, pursuant to the authority granted to EPA under the federal
nondiscrimination laws, including 40 C.F.R. Parts 5 and 7, and resolves the second issue
identified above.[1] On November 22, 2021, ECRCO and MoDNR agreed to engage in the
Informal Resolution Agreement (IRA) process to resolve the first issue identified above. That
process is currently pending and ECRCO looks forward to reaching an IRA with MoDNR as
soon as possible.

The enclosed VCA does not affect MoDNR's continuing responsibility under Title VI, 40
C.F.R. Parts 5 and 7, and other federal nondiscrimination laws, nor does it affect EPA's
investigation of any Title VI or other federal civil rights complaints, nor does it address any
other matter not covered by this VCA. This letter/VCA is not a formal statement of EPA policy
and should not be relied upon, cited, or construed as such.  EPA is committed to working with
MoDNR as it implements the provisions of the VCA. If you have any questions regarding this
letter and enclosed VCA, please contact me at (202)564-9649 or by e-mail at
dorka.lilian@epa.gov.

Sincerely,

Lilian S. Dorka, Director
External Civil Rights Compliance Office
Office of General Counsel

cc:    Jacob Westen
       General Counsel
       Missouri Department of Natural Resources

       Angelia Talbert-Duarte
       Associate General Counsel
       Civil Rights & Finance Law Office

---

[1] ECRCO did not make a preliminary finding related to whether MoDNR has in place a public participation policy
and process that is consistent with Title VI and other federal civil rights laws, based on the limited information
provided by MoDNR, except as to the failure to provide language access to individuals with LEP.

Director Dru Buntin                                                                  Page 3

        Edward H. Chu
        Deputy Regional Administrator
        Deputy Civil Rights Official
        EPA Region 7

        Leslie Humphrey
        Regional Counsel
        EPA Region 7

**VOLUNTARY COMPLIANCE AGREEMENT**
between the
**MISSOURI DEPARTMENT OF NATURAL RESOURCES**
and the
**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**EPA Complaint No. 01RNO-20-R7**

## I.   PURPOSE AND JURISDICTION

A.   Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d to 2000d-7 (Title VI), and other federal nondiscrimination laws, and United States Environmental Protection Agency's (EPA) implementing regulations at 40 C.F.R. Parts 5 and 7, prohibit discrimination on the basis of race, color, national origin, disability, sex and age in the programs or activities of applicants for or recipients of federal financial assistance.[1]

B.   The External Civil Rights Compliance Office (ECRCO) is responsible for enforcing several federal civil rights laws that prohibit discrimination on the bases of race, color, national origin [including limited-English proficiency (LEP)], disability, sex, and age in programs or activities that receive federal financial assistance from the EPA.

C.   The EPA published *Guidance to Environmental Protection Agency Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons* (Guidance).[2] This Guidance provides a general framework that recipients of EPA financial assistance may use to provide meaningful access to limited English proficient persons.

D.   The Missouri Department of Natural Resources (MoDNR) receives financial assistance from EPA and, therefore, must ensure nondiscrimination in programs and activities pursuant to the provisions of Title VI, and other federal nondiscrimination laws, and EPA's implementing regulations.

E.   This Voluntary Compliance Agreement (VCA or Agreement) is entered into by MoDNR and EPA.

F.   This Agreement is entered into pursuant to the authority granted to EPA under the federal nondiscrimination laws, including 40 C.F.R. Parts 5 and 7, and resolves Issue #2 of EPA Complaint No. 01RNO-20-R7.

---

[1] Title VI of the Civil Rights Act of 1964, 42 United U.S.C. §§ 2000d to 2000d-7 (Title VI); Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. § 1681 et seq.; Age Discrimination Act of 1975, 42 U.S.C. § 6101 et seq.; Federal Water Pollution Control Act Amendments of 1972, Pub. L. 92-500 § 13, 86 Stat. 903 (codified as amended at 33 U.S.C. § 1251 (1972)); 40 C.F.R. Parts 5.

[2] 69 FR 35602 (June 25, 2004). *See* https://www.epa.gov/sites/default/files/2020-02/documents/title_vi_lep_guidance_for_epa_recipients_2004.06.25.pdf.

Voluntary Compliance Agreement - 01RNO-20-R7                                                    2

G. This Agreement sets forth the specific steps that MoDNR has agreed to take to come into voluntary compliance in response to EPA's March 30, 2021, preliminary findings, herein incorporated by reference.

## II.    Background

A. On September 4, 2020, the Great Rivers Environmental Law Center on behalf of the National Association for the Advancement of Colored People, Missouri State Conference ("Missouri NAACP"), the NAACP St. Louis City Branch ("St. Louis City NAACP"), and the Dutchtown South Community Corporation (DSCC)[3] filed a complaint with EPA alleging that the MoDNR discriminated against minority communities on the basis of race and national origin in violation of Title VI of the Civil Rights Act of 1964, and EPA's nondiscrimination regulation, at 40 C.F.R. Part 7.

B. On September 29, 2020, ECRCO determined that the Complaint met the jurisdictional requirements and identified the following issues for investigation:

1. Whether MoDNR discriminated against a community of color, collectively hereinafter referred to as "Dutchtown," located in St. Louis, MO, on the basis of race, color and/or national origin in violation of Title VI of the Civil Rights Act of 1964, and EPA's implementing regulation, 40 C.F.R. Part 7, by issuing Part 70 Intermediate Operating Permit Number OP2020-008 to the Kinder Morgan Transmix Company, LLC operations;[4] and

2. Whether MoDNR has and is implementing the procedural safeguards required under 40 C.F.R. Parts 5 and 7 that all recipients of federal assistance must have in place to comply with their general nondiscrimination obligations, including specific policies and procedures to ensure meaningful access to MoDNR's services, programs, and activities for individuals with LEP and individuals with disabilities, and whether the MoDNR has a public participation policy and process that is consistent with Title VI and the other federal civil rights laws, and EPA's implementing regulation at 40 C.F.R. Parts 5 and 7.[5]

---

[3] The complaint identifies that the DSCC representing the communities of Dutchtown, Mt. Pleasant, Marine Villa and Gravois Park located in South St. Louis City, MO and is collectively hereinafter referred to as Dutchtown.

[4] Title VI of the Civil Rights Act, 42 U.S.C. 2000(d) et seq. (prohibiting discrimination on the basis of race, color or national origin); 40 C.F.R. Parts 5 and 7. See also U.S. EPA, Chapter 1 of the U.S. EPA's External Civil Rights Compliance Office Compliance Toolkit: Chapter 1, transmittal letter, and FAQs (https://www.epa.gov/sites/production/files/2020-02/documents/toolkit_ecrco_chapter_1-letter-faqs_2017.01.18.pdf). (2017).

[5] See Title VI, 42 U.S.C. 2000(d) et seq.; Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; Lau v. Nichols, 414 U.S. 563, 568-69 (1974) (finding that the government properly required language services to be provided under a recipient's Title VI obligations not to discriminate based on national origin); 40 C.F.R. § 7.35(a). See also U.S. EPA, Guidance to Environmental Protection Agency Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons. 69 FR 35602 (June 25, 2004) (https://www.epa.gov/sites/production/files/2020-02/documents/title_vi_lep_guidance_for_epa_recipients_2004.06.25.pdf); U.S. EPA, Title VI Public Involvement Guidance for EPA Assistance Recipients Administering Environmental Permitting Programs, 71 FR 14207 (March

Voluntary Compliance Agreement - 01RNO-20-R7                                         3

C.  On March 30, 2021, ECRCO issued "Partial Preliminary Findings for EPA Complaint No. 01RNO-20-R7: Non-Compliance" that addressed the second issue identified above (implementation of the procedural safeguards as required under 40 C.F.R. Parts 5 and 7).[6] With respect to the first issue, on November 22, 2021, ECRCO and MoDNR agreed to engage into an informal resolution process to resolve the first issue.

D.  Since the issuance of ECRCO's March 30, 2021, letter, ECRCO and MoDNR have continued to engage in conversation regarding voluntary compliance. MoDNR has agreed to enter into this VCA and the commitments in Section III to demonstrate voluntary compliance.

III.   **Voluntary Compliance Commitments** MoDNR commits to take the following specific actions to come into voluntary compliance:

A.  MoDNR will ensure that the link on its Homepage titled "ADA and Non-Discrimination," which is a link to its Notice of Nondiscrimination, is "prominently" posted and that the Notice of Non-Discrimination is meaningfully accessible to persons with limited English proficiency. Specifically, within 45 days of the effective date of this Agreement, MoDNR will translate and post this link on its main Homepage in Spanish, Chinese, Croatian, and Vietnamese -- the appropriate languages other than English, as identified by MoDNR. Additionally, MoDNR will include the hyperlink to the nondiscrimination statement when disseminating news releases, proposed rules or rulemaking activities, solicitations, public meeting announcements, and other public advisory announcements.

B.  MoDNR will ensure that the non-discrimination grievance policies and procedures and complaint form are meaningfully accessible to persons with limited-English proficiency. Within 45 days of the effective date of this agreement, MoDNR will translate and post on its website the documents associated with links below in Spanish, Chinese, Croatian, and Vietnamese -- the appropriate languages other than English, as identified by MoDNR:

- External Complaint Response Policy;
- External Complaint of Discrimination Form MO 780-2926;
- Notice Regarding the Americans with Disabilities Act; and Grievance Procedure Under the Americans with Disabilities Act.

---

21, 2006) (https://www.epa.gov/sites/production/files/2020-02/documents/title_vi_public_involvement_guidance_for_epa_recipients_2006.03.21.pdf); U.S. EPA, Procedural Safeguards Checklist for Recipients,(https://www.epa.gov/sites/production/files/2020-02/documents/procedural_safeguards_checklist_for_recipients_2020.01.pdf); U.S. EPA, Disability Nondiscrimination Plan Sample (https://www.epa.gov/sites/production/files/2020-02/documents/disability_nondiscrimination_plan_sample_for_recipients_2020.01.pdf). (2017).

[6] ECRCO did not make a preliminary finding related to whether MoDNR has in place a public participation policy and process that is consistent with Title VI and the other federal civil rights laws, based on the limited information provided by MoDNR, except as to the failure to provide language access to individuals with LEP.

Voluntary Compliance Agreement - 01RNO-20-R7                                            4

C. MoDNR will develop and post on its Website a Plan/Procedures to Ensure Meaningful
   Access to its Programs and Activities for Persons with Limited English Proficiency
   (LEP). At a minimum, the Plan/Procedures will address the following.

   1. MoDNR will conduct an appropriate "Four-Factor" analysis as described in EPA's
      LEP Guidance[7] to identify the appropriate language groups in the State of Missouri
      that may need language services and determine what language services or mix of
      language services the MoDNR needs to provide (e.g., qualified interpreters and
      translators), to ensure that individuals with limited-English proficiency can
      meaningfully participate in the MoDNR's programs and activities.
      a. Factor 1: Number and Proportion of persons with LEP encountered by MoDNR
         programs and activities. Within 15 days of the effective date of this Agreement,
         MoDNR will confirm that it has conducted this analysis (currently, MoDNR
         states that the appropriate "prominent" languages in the State of Missouri are:
         Spanish, Chinese, Croatian, and Vietnamese.)
      b. Factor 2: Frequency with which individuals with LEP come into contact with
         MoDNR programs and activities.
      c. Factor 3: Nature and Importance of the MoDNR program or activity.
      d. Factor 4: Resources and costs.

   2. Within 45 days of the effective date of this Agreement, MoDNR will complete its
      analysis of Factors 2-4 above and this analysis will be reflected in its draft LEP
      Plan/Procedures. In light of MoDNR's analysis of all four factors, MoDNR will in its
      draft Plan/Procedures specifically address how it will address the following to ensure
      meaningful access:

      a. Advertisement of language access services. MoDNR will inform the public that
         language access is available, at no cost, to all of its programs, activities, and
         services.

      b. Evaluation of distinct communities. MoDNR will identify a process for consulting
         additional resources and information in addition to census data to refine the
         identification of distinct communities with existing language barriers. These
         resources may include local school data, and Missouri Association of Counties
         and Missouri Municipal League information.

---

[7] 69 FR 35602 (June 25, 2004). (*See* https://www.epa.gov/sites/default/files/2020-
02/documents/title_vi_lep_guidance_for_epa_recipients_2004.06.25.pdf **or**
https://www.federalregister.gov/documents/2004/06/25/04-14464/guidance-to-environmental-protection-agency-
financial-assistance-recipients-regarding-title-vi https://www.federalregister.gov/documents/2004/06/25/04-
14464/guidance-to-environmental-protection-agency-financial-assistance-recipients-regarding-title-vi).

Voluntary Compliance Agreement - 01RNO-20-R7                                              5

    c.  Vital document translation criteria of general interest. MoDNR will develop criteria for classifying and/or defining "vital documents" to be translated into the prominent languages for individuals with LEP who are served by or likely to be encountered by the MoDNR's programs and activities, including documents such as, but not limited to: public notices regarding environmental concerns; public health and/or environmental notices and violations; forms/processes/documents used for reporting environmental concerns; forms /process/documents for reporting civil rights (discrimination) concerns, and documents of importance to specific individuals, such as specific notices, findings and processes of individual importance;[8]

    d.  Translation of vital documents. MoDNR will identify all "vital documents" to be translated that could be of individual interest to a particular individual with LEP or group individuals with LEP (e.g., an individual with LEP wishing to file a grievance or complaint), and explain how it will provide meaningful access to such documents to any persons with limited English proficiency, regardless of the language other than English spoken);

    e.  Translation of documents not affirmatively translated. MoDNR will develop and provide a process to request the translation of additional documents into other languages.

    f.  Provision for simultaneous oral interpretation by qualified interpreters of live proceedings in person or through the use of virtual platforms. MoDNR will explain how it will provide oral interpretation services to provide meaningful access to its programs and activities (e.g., town hall meetings and public hearings, etc.) in prominent and other requested languages, and the ability for individuals with LEP to participate in those proceedings to the same extent as persons with English proficiency can participate (e.g. accommodate LEP individuals wishing to provide comments during meetings, hearings, proceedings, programs, and activities hosted by MoDNR);

    g.  Utilization of MoDNR's social media platforms to provide translated vital information and increase messaging to LEP populations;

    h.  MoDNR will develop a "notice" that it will place prominently on its website homepage as well as on all vital documents, that language assistance services for persons with limited English proficiency will be provided by MoDNR free of charge;

---

[8] 69 FR 35602 (June 25, 2004). "Whether or not a document (or the information it disseminates or solicits) is "vital" may depend upon the importance of the program, information, encounter, or service involved, and the consequence to the LEP person if the information in question is not provided accurately or in a timely manner."

Voluntary Compliance Agreement - 01RNO-20-R7                                    6

    i.    MoDNR will consider hiring and appointing staff with bilingual capabilities to better serve the public; and,

    j.    MoDNR will identify how it intends to provide qualified translation and interpretation services (that is, through what method, such as, by hiring qualified bilingual employees, contracting, etc.) to ensure meaningful access to its programs and activities for persons with limited English proficiency.

3. Within 90 days of the effective date of this Agreement, MoDNR will post a draft of the Language Access Plan/Procedures (LAPP) for a 30-day public comment period, for the public and stakeholders to provide comments and suggestions. MoDNR will ensure that the draft Plan/Procedures is accessible to Persons with limited English proficiency and that the notice requesting public comment is also translated into the appropriate non-English languages and provides a contact person(s) the public may reach if they have questions.

4. Within 30 days following the end of the LAPP 30-day public comment period, MoDNR will submit a final draft the LAPP, incorporating, as appropriate, any changes in response to public comment and a summary of the public comments received, to ECRCO.  ECRCO will review the final draft LAPP and provide comments to MoDNR within 30 days of its receipt of the final draft LAPP.  Within 120 days of receiving ECRCO's comments and plan approval, MoDNR will incorporate changes based upon ECRCO's comments and prominently publish in print and on its website the final LAPP in English and translated in the prominent LEP languages identified within the LAPP.

5. If at any time during the course of this Agreement MoDNR reasonably and in good faith believes it may be unable to meet a deadline established in this Agreement, MoDNR may request and ECRCO in its discretion may authorize a reasonable deadline extension. All such deadline extensions may be requested and approved or denied via electronic mail correspondence separate from a modification process contemplated by Section IV.C, below.

IV.    **EFFECT OF THE AGREEMENT**

A. The MoDNR understands that, if necessary, ECRCO may visit the MoDNR, interview staff, and request such additional reports or data as are necessary for ECRCO to determine whether the MoDNR has fulfilled the terms of this Agreement.

B. The MoDNR understands that the EPA will not close its monitoring of this Agreement until ECRCO determines that the MoDNR has fully implemented this Agreement and that a failure to satisfy any term in this agreement may result in the EPA issuance of a final finding of a violation and initiation of enforcement action. Once MoDNR fulfills all

Voluntary Compliance Agreement - 01RNO-20-R7                                                    7

of the commitments in Section III, ECRCO will issue MoDNR a Monitoring Closure Letter resolving in full the issues addressed in this Agreement.

C. If either Party desires to modify any portion of this Agreement because of changed conditions making performance impractical or impossible, or due to material change to the MoDNR's program or authorities, or for other good cause, the Party seeking a modification will promptly notify the other in writing, setting forth the facts and circumstances justifying the proposed modification. Any modification(s) to this Agreement will take effect only upon written agreement by the Director of the MoDNR and the Director of ECRCO.

D. This Agreement constitutes the entire Agreement between the MoDNR and the EPA regarding the matters addressed herein, and no other statement, promise, or agreement, made by any other person will be construed to change any commitment or term of this Agreement, except as specifically agreed to by the MoDNR and the EPA in accordance with the provisions of Section III.C. above.

E. The Agreement does not resolve the additional issues raised in EPA Complaint No. 01RNO-20-R7.

F. This Agreement does not affect the MoDNR's continuing responsibility to comply with Title VI or other federal nondiscrimination laws and the EPA's regulations at 40 C.F.R. Parts 5 and 7, nor does it affect the EPA's investigation of any other Title VI or other federal civil rights complaints or address any other matter not covered by this Agreement.

G. The effective date of this Agreement is the date by which both Parties have signed the Agreement. This Agreement may be signed in counterparts. The Director, in their capacity as an official of the MoDNR, has the authority to enter into this Agreement for purposes of carrying out the activities listed in these paragraphs. The Director of ECRCO has the authority to enter into this Agreement.

On behalf of the Missouri Department of Natural Resources:

_____          6/8/2022
Dru Buntin, Director                                (Date)


On behalf of the External Civil Rights Compliance Office, Office of General Counsel, U.S. Environmental Protection Agency:

_____          6-3-2022
Lilian S. Dorka, Director                           (Date)