Exhibit 55



## UNITED STATES
## ENVIRONMENTAL PROTECTION AGENCY

WASHINGTON, D.C. 20460

Office of Environmental Justice and External Civil Rights
Office of External Civil Rights Compliance

August 10, 2023

**In Reply Refer to:**
EPA Complaint No: 01RNO-22-R5

Phil Roos, Director
Michigan Department of Environment, Great Lakes, and Energy
525 West Allegan Street
Post Office Box 30471
Lansing, MI 48909-7973
RoosP@michigan.gov

### Re: Resolution of EPA Complaint No. 01RNO-22-R5

Dear Director Roos:

This letter is to notify you that the U.S. Environmental Protection Agency (EPA), Office of Environmental Justice and External Civil Rights (OEJECR), Office of External Civil Rights Compliance (OECRC), has resolved EPA Complaint No. 01RNO-22-R5 based on the enclosed Informal Resolution Agreement (Agreement), which is entered into between EPA and the Michigan Department of Environment, Great Lakes, and Energy (EGLE).

On March 11, 2022, EPA accepted for investigation a complaint against EGLE alleging discrimination on the basis of race, national origin, disability, and age in violation of Title VI of the Civil Rights Act of 1964 (Title VI), Section 504 of the Rehabilitation Act of 1973, and the Age Discrimination Act of 1975, and EPA's nondiscrimination regulation, at 40 C.F.R. Part 7. Specifically, EPA accepted the following issues for investigation:

1. Whether EGLE discriminated on the basis of race, color, and national origin in violation of Title VI and the EPA's implementing regulation at 40 C.F.R. Part 7, when it approved Permit to Install (PTI) Application No. 2021-0019 for the Ajax Asphalt Plant;

2. Whether EGLE discriminated on the basis of race, color, or national origin, disability, and age in violation of Title VI, Section 504 of the Rehabilitation Act of 1973, and the Age Discrimination Act of 1975 and the EPA's implementing regulation at 40 C.F.R. Part 7, by failing to provide meaningful public participation in connection with the approval of the application for PTI Application No. 2021-0019 for the Ajax Asphalt Plant; and

3. Whether EGLE's criteria and methods of administering its air permit program, including its exercise of authority under Rule 228, has the intent and/or effect of

subjecting persons to discrimination on the basis of race, color, and national origin in violation of Title VI and the EPA's implementing regulation at 40 C.F.R. Part 7.

During the course of EPA's investigation, EGLE agreed to enter into the IRA process in order to resolve EPA Complaint No. 01RNO-22-R5. The enclosed Agreement, signed on August 10, 2023, is entered into by EPA pursuant to the authority granted to EPA under the federal nondiscrimination laws, including Title VI and 40 C.F.R. Part 7. It is understood that the Agreement does not constitute an admission by EGLE of any violation or a finding by EPA of compliance or noncompliance with applicable federal non-discrimination laws and regulation.

EPA Region 5's work with Michigan EGLE to protect communities, human health, and the environment continues outside of the Agreement. The agencies jointly continue to expand our understanding of new science and tools and to minimize or avoid the adverse impacts of pollution.  EPA Region 5 will continue its cross-program work to advance environmental justice and equity in Flint, Michigan.

EPA continues to take seriously its oversight role when, for example, reviewing draft environmental permits. Recent Region 5 Air and Radiation Division (ARD) work to address air quality concerns in Flint includes mobile monitoring, working with educators to build and install indoor air filters in schools; and hosting an all-day Clean Air Act workshop to help interested community members learn more about available tools for addressing air pollution. ARD will conduct additional air monitoring in Flint in the fall of 2023 and commits to discussing the results with stakeholders as soon as they are available.

Region 5's Enforcement and Compliance Assurance Division (ECAD) continues to inspect facilities to ensure compliance and takes enforcement actions as appropriate. Region 5 encourages the community to raise concerns to the Region and to use the Agency's Report-A-Violation system (Report Environmental Violations | ECHO | US EPA) when a suspected violation has occurred. Relatedly, we appreciate the recent request from Complainants' Representatives to meet with Region 5 to share initial findings from their facility review activities, and look forward to scheduling a meeting with them soon.

Region 5 will continue working with Michigan EGLE on the implementation of the Resource Conservation and Recovery Act (RCRA) Subtitle C Hazardous Waste Permitting and Corrective Action requirements and RCRA Subtitle D Coal Combustion Residuals requirements, and to facilitate Brownfield redevelopment in the state of Michigan. Region 5 will also continue to work with Flint community leaders, the City of Flint, EGLE, and Michigan Department of Health and Human Services to address questions and concerns about drinking water.

Finally, EPA Region 5 and OEJECR also welcome the opportunity to participate with EGLE in community-driven assessment and action to address cumulative impacts in Flint, whether through the PACE EH or another approach with similar goals. As stated in EPA's April 2022 Equity Action Plan, "developing a clear and consistent ability to apply cumulative impacts [analysis] throughout the environmental and public health regulatory endeavor is a necessary precondition for fully achieving EPA's mission to protect the human health and the environment,

Phil Roos, Director                                                                    Page 3

including all communities and individuals at all life stages."[1] Our ongoing work in Flint can demonstrate what this looks like in practice.

The enclosed Agreement does not affect EGLE's continuing responsibility under Title VI, 40 C.F.R. Parts 5 and 7, and other federal nondiscrimination laws, nor does it affect OECRC's investigation of any Title VI or other federal civil rights complaints or address any other matter not covered by this Agreement. This letter sets forth EPA's disposition of the complaint. This letter is not a formal statement of EPA policy and should not be relied upon, cited, or construed as such.

EPA is committed to working with EGLE as it implements the provisions of the Agreement. If you have any questions regarding this letter and the Agreement between EPA and EGLE, please contact me at (202) 809-3297 or by e-mail at hoang.anhthu@epa.gov.

Sincerely,

ANHTHU HOANG
Digitally signed by
ANHTHU HOANG
Date: 2023.08.09
18:31:57 -04'00'

Anhthu Hoang, Acting Director
Office of External Civil Rights Compliance
Office of Environmental Justice and
External Civil Rights

cc:    Ariadne Goerke
       Deputy Associate General Counsel
       Civil Rights & Finance Law Office

       Cheryl Newton
       Deputy Regional Administrator
       Deputy Civil Rights Official
       U.S. EPA Region 5

       Robert Kaplan
       Regional Counsel
       U.S. EPA Region 5

       James Clift
       Deputy Director
       Michigan Department of Environment, Great Lakes, and Energy

---

[1] *See* EPA's EO 13985 Equity Action Plan at: https://www.epa.gov/system/files/documents/2022-04/epa_equityactionplan_april2022_508.pdf.



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

WASHINGTON, D.C. 20460

Office of Environmental Justice and External Civil Rights

Office of External Civil Rights Compliance

**INFORMAL RESOLUTION AGREEMENT**
between
**MICHIGAN DEPARTMENT OF ENVIRONMENT, GREAT LAKES,
AND ENERGY (EGLE)**
and
**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY (EPA)**
**EPA COMPLAINT NO. 01RNO-22-R5**

## I.    PURPOSE AND JURISDICTION

A.  Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d to 2000d-7 ("Title VI") and other federal nondiscrimination laws, and the United States Environmental Protection Agency's ("EPA") implementing regulation at 40 C.F.R. Parts 5 and 7 prohibit discrimination on the basis of race, color, national origin, disability, sex, age, and retaliation in the programs, services, and activities of applicants for or recipients of federal financial assistance.[1]

B.  The Michigan Department of Environment, Great Lakes, and Energy ("EGLE") receives federal financial assistance from the EPA. As a term of receiving that assistance, EGLE agreed to comply with federal nondiscrimination laws, including Title VI, and all applicable civil rights regulations.[2] EGLE also provided assurance that it would "fully comply with all applicable civil rights statutes and EPA regulations."[3] Therefore, EGLE must ensure nondiscrimination in programs and activities pursuant to the provisions of Title VI, the other federal non-discrimination laws, and the EPA's implementing regulation.

C.  On November 8, 2021, the EPA's Office of External Civil Rights Compliance ("OECRC") received Complaint No. 01RNO-22-R5 ("Complaint"), which alleged discrimination by EGLE on the basis of race and national origin[4] in violation of Title

---

[1] Title VI of the Civil Rights Act of 1964, 42 United States Code §§ 2000d to 2000d-7 (Title VI); Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. §§ 1681 *et seq.*; Age Discrimination Act of 1975, 42 U.S.C. §§ 6101 *et seq.*; Federal Water Pollution Control Act Amendments of 1972, Pub. L. 92-500 § 13, 86 Stat. 903 (codified as amended at 33 U.S.C. § 1251 (1972)); 40 C.F.R. Parts 5 and 7.

[2] *See* Term and Condition 36, Civil Rights Obligations at https://www.epa.gov/sites/production/files/2019-09/documents/fy_2020_epa_general_terms_and_conditions_effective_october_1_2019.pdf.

[3] *See* Preaward Compliance Review Report for All Applicants and Recipients Requesting EPA Financial Assistance.

[4] While EPA Complaint No. 01RNO-22-R5 alleged discrimination on the basis of race and national origin, OECRC included discrimination on the basis of disability and age in violation of Section 504 of the Rehabilitation Act of 1973, and the Age Discrimination Act of 1975 to Issue #2, based on the nature of the allegations.

VI of the Civil Rights Act.

D.  On March 11, 2022, the EPA accepted for investigation the following issues.

    1.  **ISSUE 1:** Whether EGLE discriminated on the basis of race, color, and national origin in violation of Title VI and the EPA's implementing regulation at 40 C.F.R. Part 7, when it approved Permit to Install ("PTI") Application No. 2021-0019 for the Ajax Asphalt Plant;

    2.  **ISSUE 2:** Whether EGLE discriminated on the basis of race, color, or national origin, disability, and age in violation of Title VI, Section 504 of the Rehabilitation Act of 1973, and the Age Discrimination Act of 1975 and the EPA's implementing regulation at 40 C.F.R. Part 7, by failing to provide meaningful public participation in connection with the approval of the application for PTI Application No. 2021-0019 for the Ajax Asphalt Plant; and

    3.  **ISSUE 3:** Whether EGLE's criteria and methods of administering its air permit program, including its exercise of authority under Rule 228, has the intent and/or effect of subjecting persons to discrimination on the basis of race, color, and national origin in violation of Title VI and the EPA's implementing regulation at 40 C.F.R. Part 7.

E.  During the course of the EPA's investigation of the Complaint, on April 8, 2022, EGLE agreed to engage in the voluntary Informal Resolution Agreement ("Agreement") process in order to resolve the Complaint.

F.  This Agreement does not constitute an admission by EGLE of a violation of, or a finding of compliance or noncompliance by the EPA with, Title VI or 40 C.F.R. Parts 5 and 7. The acceptance of a complaint for investigation is not a decision on the merits.

G.  EGLE is in no way compelled to enter this Agreement but does so voluntarily.

H.  This Agreement is entered into by EGLE and the EPA. This Agreement serves to resolve the issues accepted for investigation in this Complaint. As such, subject to EGLE's good faith implementation of this Agreement, the EPA is closing its investigation of this Complaint and will not issue preliminary findings.

I.  This Agreement is entered into pursuant to the authority granted to the EPA under the federal non-discrimination laws, including Title VI, and the EPA's implementing regulation found at 40 C.F.R. Part 7, and resolves the Complaint.

J.  EGLE is committed to continue to carry out its responsibilities in a nondiscriminatory manner, in accordance with the requirements of Title VI and other federal non-

discrimination laws and the EPA regulations at 40 C.F.R. Parts 5 and 7. The activities detailed in Section III of this Agreement, which EGLE has voluntarily agreed to undertake and implement, are in furtherance of this ongoing commitment.

## II.   BACKGROUND

A.  On July 1, 2021, EGLE published for public comment the draft Permit to Install ("PTI" or "air permit") for Ajax Materials Corporation's proposed asphalt plant ("Ajax") to be located at 5088 Energy Drive in Genesee Township, Michigan.

B.  During the public comment period, EGLE received comments raising civil rights concerns related to the issuance of a permit for Ajax.

C.  By letter dated September 16, 2021, EPA Region 5 notified EGLE, in part, of concerns raised by members of the public regarding the siting of Ajax.

D.  On November 15, 2021, EGLE responded to the EPA letter of September 16, 2021, requesting: 1) that "[i]f the EPA believes that the permit does not fully comply with all requirements established in federal law, … that the EPA meet with the permittee and with EGLE to identify any specific change that should be made to the permit…;" 2) for EPA to "provide technical expertise to design," create, and operate a comprehensive air toxics monitoring network within overburdened communities; and 3) for EPA to provide further "guidance … addressing environmental justice considerations in permitting and enforcement procedures."

E.  On November 15, 2021, EGLE issued a minor source air permit under the Clean Air Act, 42 U.S.C. §7401 *et seq.*, to Ajax for the construction of a new hot-mix asphalt plant to be located in Genesee Township, Michigan, on the border of the City of Flint.

F.  On March 23, 2022, the EPA responded to EGLE's letter of November 15, 2021. The EPA noted that, as co-regulators, the EPA and EGLE would together begin the critically important work of addressing the disproportionate burden of environmental pollution and negative health impacts experienced by communities of color and low-income communities. Additionally, the EPA identified funding opportunities recently provided under the American Rescue Plan to help states, tribes, and local communities better understand local air quality issues.

G.  Ajax's location is near residential housing and community gathering centers located within Genesee Township. According to EPA's EJScreen screening and mapping tool ("EJScreen"), as of December 2022, nearly 3,000 people live within a one-mile radius of the location of Ajax. According to EJScreen, among that population, 77% identify as Black or African American and 10% of the population identify as Hispanic.

H.  For the purposes of this Agreement, "Complainants" is defined as the groups that filed the Complaint with OECRC on November 8, 2021. "Complainants" include the Environmental Transformation Movement of Flint ("ETM"), Flint Rising, and the St.

3

Francis Prayer Center. These groups have been involved in environmental justice advocacy on behalf of residents of Flint.

I.  Multiple parties, including Ajax, a coalition of Flint-area environmental groups, and the City of Flint appealed the issuance and terms of the permit to the State of Michigan's Genesee County Circuit Court, Consolidated Case Nos. 2022-116871-AA, 2022-116880-AA, and 2022-117201-AA. On June 20, 2023, the Circuit Court upheld the issuance and terms of the permit, finding that EGLE's actions were authorized by law, including its analysis of the application for the permit and imposition of site-specific conditions in the permit. Specifically, the Court held, in part, that EGLE "did not exceed its statutory authority when it utilized ideas generated from public comments to improve the final permit over the draft permit by banning RUO [recycled used oil] and setting lower emissions limits. In doing so, it was acting pursuant to its authority under Rules 224 and 205."

## III.   SPECIFIC COMMITMENTS TO RESOLVE EPA COMPLAINT NO. 01RNO-22-R5

A. *Commitments Pertaining to Future Public Engagement in Genesee Township*

1.  EGLE has a core value of engagement with the public and meeting communities where they are so all citizens have an opportunity to engage with their government and have their voices heard. EGLE will be continuing this effort, especially in EJ communities or when addressing a complicated or controversial decision. As needed, EGLE has and plans to continue to participate in meetings with community groups formed in Genesee Township. If a new community group is formed in the area surrounding the Ajax facility (such as the Community Action Board in Genesee Township), EGLE will attend meetings to which it has been invited on at least a quarterly basis for a period of not less than one year. EGLE will provide information regarding activities conducted by EGLE in the community and share available information regarding facilities regulated by EGLE within the community. To the extent agenda items are raised outside the jurisdiction of EGLE, but within the jurisdiction of other state agencies, EGLE will attempt to facilitate the attendance of appropriate staff from other state agencies.

    a.  EGLE, by October 31, 2024, will send the EPA a detailed description of any public engagement activities regarding air permitting that EGLE participated in or facilitated in Genesee Township from the time this Agreement is executed through September 30, 2024 (such as meetings with community groups, both current and any to be formed, as well as any other outreach activities).

2.  EGLE continues to be willing to provide one Purple Air Sensor for the community surrounding the Ajax facility for a period of two years and assist with installation of the sensor if the needed power connection and WiFi access can be secured. EGLE will provide public education support for explaining the monitoring data

from the Purple Air Sensor. The parties acknowledge the purpose of the monitor will be to provide information to the community regarding air quality and is not for the purpose of determining a facility's compliance with any permit issued by EGLE. Information from the monitor may be used with other available information to assess potential conditions in the area to determine if any further investigation of area facilities is warranted. EGLE will be available to assist the host organization to troubleshoot problems with the air monitor's operation, such as equipment malfunctions. EGLE will provide general information regarding the Purple Air Sensor program on its website. Within 30 days of the installation of the Purple Air Sensor in the Genesee Township community, EGLE will announce it via social media and other appropriate communication methods. EGLE will send the EPA the link to the announcement within one week of its posting.

3. EGLE is currently pursuing funding for a community driven Protocol for Assessing Community Excellence in Environmental Health ("PACE-EH")[5] for the community surrounding the Ajax facility. If funding is secured, EGLE will participate in the process and provide information it has available regarding the community. EGLE understands the process could take up to 24 months and will be working with other organizations to achieve project goals. EGLE worked closely with the ETM to develop the funding proposal and identify project partners. If the funding is secured, the ETM will be receiving a portion of the funding and playing a lead role in the project. The PACE-EH model brings together multiple stakeholders including impacted community members, environmental justice and community organizations, local health, government agencies, academia, local business organizations and others to form a Community-based Environmental Health Assessment Team ("CEHAT"), to conduct a community environmental health assessment, and to develop action plans for priority issues identified by the community. EGLE and Michigan Department of Health and Human Services (which is another named project partner) will work with other state agencies through Michigan's Interagency Environmental Justice Response Team to help address prioritized issues in the community. This project will use the CDC-developed PACE-EH, which is a process similar to a health impact assessment to assess and analyze the cumulative environmental health of communities and create plans to address threats and create improvements. If current funding opportunities are unsuccessful, EGLE will continue to pursue funding through other state and federal opportunities.

   a. If funding for PACE-EH is secured, within 30 days of the starting date of the project, EGLE will develop a PACE-EH Project webpage that includes information on the project and updates on progress and send the link to the EPA.

---

[5] For more information on this approach, please see https://www.cdc.gov/nceh/ehs/docs/pace-eh-guidebook.pdf.

      b. Should current funding efforts be unsuccessful, within 180 days of being notified of such, EGLE will submit to the EPA a list of alternate potential funding opportunities that EGLE has identified and is, or will be, pursuing to undertake the same effort or one designed with similar goals. EGLE will continue to collaborate with the EPA to identify potential funding mechanisms.

B. *Commitments Regarding EGLE's Education and Outreach on Its Air Permitting Program*

    1. EGLE will revise technical assistance and information materials for prospective air permit applicants and communities and conduct education and outreach activities (such as providing technical assistance, regularly scheduled webinars, information available on EGLE's website, etc.) to also address consideration of environmental justice, equity, and civil rights principles in EGLE's air permitting program. The education and outreach materials will include the following information, written in plain language, regarding how EGLE conducts its air permit review process:

      a. An explanation of how EGLE uses the MiEJScreen tool to review areas surrounding the location of a new Permit to Install or modification of an existing air permit, in order to better understand and protect communities and design steps to ensure community engagement and public participation efforts are conducted properly and are designed to address issues such as limited English proficiency and the need for translation services.

      b. An explanation of the criteria EGLE uses when determining whether to hold public meetings and hearings to ensure the community understands the permit application, the applicable legal requirements, and has opportunities to provide public comments prior to a final decision by the department.

      c. An explanation of the different regulations which may apply on a case-by-case basis to a permit application, when and how modeling is used to predict potential emissions, how health screening levels are used to protect residents in the community, and the department's discretion to impose reasonable permit conditions to mitigate potential impacts from the proposed facility. These materials will cover statutory requirements and requirements set forth in generally applicable rules (Mich. Admin. Code, Rules 336.1201- 336.2908) including Michigan's Air Toxic Program (Mich. Admin. Code, Rules 336.1224 – 336.1233).

      d. How EGLE will collaborate with local units of government to host an event regarding the role zoning decisions may have on subsequent EGLE decision making, especially in those cases where industrial zoned property abuts residential areas.

    2. EGLE will share with the EPA, Complainants, and other environmental justice advocates, including the Michigan Advisory Council on Environmental Justice, its education and outreach materials (*e.g.,* technical assistance, regularly scheduled

webinars, information available on EGLE's website) and its plan for engaging potential air applicants, communities, and local units of government within 180 days of the effective date of this Agreement.

   a. The EPA will provide comments to EGLE regarding the materials and the engagement plan within 30 days of receipt.
   b. EGLE will consider those comments and share the final materials with the EPA prior to publishing the final materials on its website.

C. *Commitments Regarding EGLE's Public Participation Policy*

  1. EGLE-wide Protocols – During the COVID-19 pandemic EGLE augmented public input opportunities in ways designed to allow for a broader menu of options for providing public input into department decision making. As the need for restrictions on public, in-person gatherings has diminished, EGLE plans to review EGLE's Policy and Procedure No. 09-007, Policy on Public Involvement in Department Decisions, and make any needed revisions regarding the continued use of some of the options on a more permanent basis and avoiding conflicts with religious holidays or elections.

    a. EGLE will share any revisions to Policy and Procedure No. 09-007 with the EPA within 90 days of the effective date of this Agreement and will take public comments on the proposed revisions prior to finalizing the document.
    b. EGLE will consider all comments received during its public comment period, including the EPA's comments, and EGLE will share final material with the EPA. EGLE will publish the final materials on its website.

  2. Online Information Portal – Investments currently being made by EGLE in information management technology for the Air Quality Division which will allow EGLE to provide for greater transparency into decision making through immediate online access to a wider variety of documents, such as permit applications, inspection reports, and proposed permits subject to public comment. It is EGLE's intent to create electronic tools that allow residents to use the system to directly download the documents, reducing the need to go through the Freedom of Information Act process to obtain documents from EGLE. At a minimum, the system is expected to be searchable by the facility name, location of the proposed facility, type of facility, and permit application number. EGLE will describe how this portal would intersect with EGLE's listserv. EGLE will share information on how community members can be added to EGLE's listserv and request updates on particular permit applications. Information regarding how to use the new system, including how the portal will interact with EGLE's listserv and how community members can be added to the listserv, will be developed and be available on EGLE's website.

7

      a. EGLE will submit the information on how to use the new system to the EPA
prior to publishing on its website and provide the EPA with a link to the final
materials on its website.

D. *Commitments Regarding New Environmental Justice Grant Program*

1. EGLE will develop and issue information and guidance for how the public may
submit grant applications under the new EGLE's Environmental Justice Public
Health Protection program[6] and other relevant grant opportunities within EGLE, as
appropriate, to address environmental justice concerns such as air monitoring, air
filtration, removal of blighted buildings, and related public health concerns
identified by a community or community group. EGLE anticipates that this will
occur prior to January 1, 2024. Through the Office of the Environmental Justice
Public Advocate, EGLE will establish final program design and scoring criteria in
consultation with environmental justice communities and representatives. EGLE
will produce guidance materials that educate community members on how they
can apply for the EJ grants and provide grant application assistance as needed.

2. EGLE will submit the following to the EPA for review:

      a. Draft guidance materials (*e.g.,* FAQs, brochures, grant application guidance
documents) described under Section D.1. above for EGLE's new
Environmental Justice Public Health Protection program and other relevant
grant opportunities within EGLE;

      b. Draft public outreach materials that EGLE plans to publish on its website and
transmit through other channels that include the guidance materials above;

      c. The EPA will provide comments within 30 days of receipt of the materials
above; and

      d. EGLE will consider the EPA's feedback and provide the EPA copies of the
final materials prior to publishing on its website.

E. By signing this Agreement, EGLE and the EPA commit to perform the obligations
recited in Sections III A-D.

## IV.   GENERAL CONSIDERATIONS

A. The EPA will monitor the implementation of the commitments in Section III of this
Agreement, Specific Commitments to Resolve EPA Complaint No. 01RNO-22-R5, as
appropriate, to ensure they are fully implemented by both parties. Once the
commitments of this Agreement are satisfied, the EPA will issue a letter documenting
closure of its monitoring actions in EPA File No. 01RNO-22-R5 and closure of the
Complaint as of the date of that letter.

---

[6] The legislature has authorized $20 million in funding for this purpose, which may only be used consistent with the
provisions included within the appropriation authorization.

B.  The EPA will share with Complainants the information specified above in sections A.2 and B.2 provided by EGLE to the EPA during the monitoring period of this Agreement.

C.  Complainants will have an opportunity to provide feedback to the OECRC regarding the shared information as identified above, during an identified period of time during the monitoring period.

D.  The EPA will review and provide feedback about any documentation submitted by EGLE demonstrating completion of each commitment and will provide an assessment as to whether the documentation satisfies the commitment.

E.  The EPA will, upon request, provide technical assistance to EGLE regarding any of the civil rights obligations and actions that need to be taken to ensure compliance with the requirements of Title VI and other federal non-discrimination laws and the EPA regulations at 40 C.F.R. Parts 5 and 7.

## V.    COMPUTATION OF TIME AND NOTICE

A.  As used in this Agreement, "day" will mean a calendar day. In computing any period of time under this Agreement, where the last day would fall on a Saturday, Sunday, or federal holiday, the period will run until the close of business of the next working day.

B.  Service of any documents required by this Agreement will be made personally via electronic mail as outlined below.

C.  Electronic documents submitted by EGLE to the EPA via email will be sent to the following email address: anhthu.hoang@epa.gov, with a copy to the Case Managers: pantziris.jack@epa.gov and liesner.katelyn@epa.gov.

D.  Documents submitted by the EPA to EGLE will be sent to the following email address: CliftJ@Michigan.gov, with a copy to AG-ENRA-eFIles@Michigan.gov. Documents mailed by the EPA will be mailed to the following addresses: Deputy Director, Department of Environment, Great Lakes, and Energy, 525 West Allegan Street, P.O. Box 30473, Lansing, MI 48909-7973 and Division Chief, Environment, Natural Resources, and Agriculture Division of the Michigan Department of Attorney General, P.O. Box 30755, Lansing, MI 48909.

## VI.    EFFECT OF THE AGREEMENT

A.  This Agreement serves to resolve the issues accepted for investigation in this Complaint. As such, subject to EGLE's good faith implementation of this Agreement, EPA is closing its investigation of this Complaint and will not issue preliminary findings.

B.  EGLE understands that, if necessary, the EPA may interview staff and request such additional reports or data as are necessary for the EPA to determine whether EGLE has fulfilled the terms of this Agreement.

C.  EGLE understands that the EPA will not close its monitoring of this Agreement until the EPA determines that EGLE has fully implemented this Agreement and that a failure to satisfy any term in this Agreement may result in the EPA re-opening an investigation.

D.  If either Party desires to modify any portion of this Agreement because of changed conditions making performance impractical or impossible, or due to material change to EGLE's program or authorities, or for other good cause, the Party seeking a modification will promptly notify the other in writing, setting forth the facts and circumstances justifying the proposed modification. Any modification(s) to this Agreement will take effect only upon written agreement by the Director of EGLE and the Director of the OECRC.

E.  This Agreement constitutes the entire agreement between EGLE and the EPA regarding the matters addressed herein, and no other statement, promise, or agreement, made by any other person will be construed to change any commitment or term of this Agreement, except as specifically agreed to by EGLE and the EPA in accordance with the provisions Section VI(C) above.

F.  This Agreement does not affect EGLE's continuing responsibility to comply with Title VI or other federal nondiscrimination laws and the EPA's regulations at 40 C.F.R. Parts 5 and 7, nor does it affect the EPA's investigation of any other Title VI or other federal civil rights complaints or address any other matter not covered by this Agreement.

G.  The effective date of this Agreement is the date by which both Parties have signed the Agreement. This Agreement may be signed in counterparts. The Deputy Director of EGLE has the authority to enter into this Agreement for purposes of carrying out the activities listed in these paragraphs. The Director of the OECRC has the authority to enter into this Agreement.

On behalf of the U.S. Environmental Protection Agency,

ANHTHU HOANG   Digitally signed by ANHTHU
               HOANG
               Date: 2023.08.08 17:36:30 -04'00'

August 8, 2023

Anhthu Hoang, Acting Director
Office of External Civil Rights Compliance

(Date)

11

On behalf of the Michigan Department of Environment, Great Lakes, and Energy,

James Clift   Digitally signed by James Clift
              Date: 2023.08.09 09:15:37
              -04'00'

8/9/2023

James Clift, Deputy Director                              (Date)

12