# Exhibit 64

# INSIDEEPA.COM
an online news service from the publishers of Inside EPA

# Former Top Official Fears EPA Will Implement New EJ Order Via Enforcement

April 27, 2023                                                                                                                               Tweet

Susan Bodine, who led EPA's Office of Enforcement & Compliance Assurance (OECA) during the Trump administration, is raising concerns that EPA will implement President Joe Biden's new executive order (EO) on environmental justice (EJ) through enforcement, rather than through a formal rulemaking.

Bodine, who is now a lawyer at Washington, DC-based Earth & Water Law Group, told an April 25 Federalist Society event that she is also concerned that the new order "assumes" EJ areas "experience disparate and adverse health or environmental burdens," rather than continue the Clinton-era EO of requiring an analysis to determine if those impacts are occurring.

"And so, if you start with that assumption, you're always going to have an environmental justice problem that you need to solve," Bodine says.

Bodine's comments come in response to **the new EO** Biden signed in a Rose Garden ceremony April 21.

The order seeks to strengthen EPA and other agencies' reporting, analytical and other mandates aimed at limiting communities' adverse impacts while also creating a new White House Office of Environmental Justice to oversee the administration's "whole-of-government" approach to EJ.

While EJ advocates have welcomed the order for strengthening key provisions in then-President Bill Clinton's 1994 EJ EO, other lawyers have noted it lowers the bar for when agencies must address "disproportionate impacts" on communities.

Stacey Halliday, an EJ-focused lawyer at Beveridge & Diamond, told *Inside EPA* last week that while the Clinton order, EO 12898, had urged agencies to avoid "disproportionately high and adverse" effects, the new EO drops the qualifier, and instead "directs agencies to consider measures to address and prevent disproportionate and adverse environmental health and impacts on communities, including the cumulative impacts of pollution and other burdens like climate change."

While it seems like a small modification, it will have "big impacts," Halliday said, encouraging agencies to consider any impacts -- particularly in the permitting context -- that could be disproportionate, as opposed to only those of a certain scale and magnitude.

Such concerns appear likely to be amplified as EPA and other agencies are expected to implement the order using enforcement authorities.

Bodine notes that while presidents have the prerogative to issue directives, the proper way to implement EOs is through formal notice-and-comment rulemaking. However, if an EO is implemented through enforcement discretion, as she believes the new EJ order will be, then that creates the "problem" of an "unlevel playing field."

She notes that the Obama administration had taken such approach, with then-EPA enforcement chief Cynthia Giles issuing a "next generation" enforcement memo that the Justice Department had read to mandate EJ measures be included in every settlement.

While she rescinded the memo, the Biden administration later partially reinstated some of the Obama-era

requirements.

**Regulating Through Enforcement**

But with the new EO, Bodine says, "My question there is, OK, are we going to go back to regulating through enforcement? Is the thumb on the scale? We will have to see."

Bodine cites EPA data to show that cases have long been brought in EJ communities, including 33 percent of all cases in 2017. The last year OECA reported its EJ actions was 2020, "the COVID year," and there were 531, she added.

She also suggested that the oil and gas industry "has a big X on its back" and is a ripe target for enforcement.

Finally, Bodine flagged EPA's external civil rights office's newly amplified warning that compliance with environmental law does not equate to compliance with civil rights law.

That means "someone can ask the agency to withhold money under Title VI [of the Civil Rights Act] even though you are in compliance with" environmental laws. "And the test is discriminatory effect not intent, and a discriminatory effect can be based on any increase in your cumulative burdens," meaning a single molecule increase of a pollutant may be enough to result in an adverse outcome.

"If that gets fully implemented, that is an enormously powerful tool," Bodine warned.

Other lawyers are also raising concerns that the new EO will drive stepped up enforcement under Title VI.

For example, attorneys at Hunton Andrews Kurth write in **an April 25 Nickel report** that the new EO seeks to encompass Title VI because it "directs agencies to ensure that all federally funded programs or activities do not use criteria, policies, practices or methods of administration that discriminate" and requires the attorney general to report annually to the White House Council on Environmental Quality (CEQ) on relevant Title VI litigation.

The Hunton attorneys also echo concerns raised by Bodine and Halliday that the new EO broadens the definition of EJ beyond EPA's longstanding definition, because it eliminates the "high" threshold for disproportionate and adverse effects, "effectively lowering the bar for what EJ impacts must be addressed or prevented."

And they note the EO does not define an EJ community "but signals that a wide range of communities across the country may face EJ concerns," including low-income areas, high minority and tribal and migrant populations.

These attorneys also flag the significance of housing a new White House Office of Environmental Justice within CEQ, noting that means EJ will weigh heavily in National Environmental Policy Act (NEPA) reviews overseen by CEQ, and they say EJ will likely be prominent in a forthcoming high-profile CEQ NEPA proposal undergoing interagency review.

Further, the order requires EPA to consider EJ when it reviews other agencies' NEPA reviews.

"Project proponents anticipating NEPA reviews associated with environmental permits should keep apprised of these developments to anticipate how federal agencies will evaluate EJ impacts for their projects."

**'Equal Protection'**

John Cruden, who led the Justice Department's environment division during the Obama administration and is now a lawyer at Beveridge & Diamond, told the Federalist Society event that some portions of the new EO are important, such as a plan to establish a White House technology office focused on data collection and good science, which he called "a plus."

And he noted the launch of agency scorecards -- with the first iteration limited to baseline data -- is important because "you'll get evaluated and that evaluation will be public," a powerful incentive.

Brian Israel of Arnold & Porter, who said he was asked to defend the Biden administration at the event, argued that

environmental justice is not about "equal pollution" but "equal protection" and "it really shouldn't be controversial."

He urged attendees "to recognize this EPA is very serious and very quantitative about" EJ, and that the issue is not "aspirational or qualitative. It is very clear, to get a permit from this EPA or a state that is being guided or monitored by EPA, you have to consider cumulative impacts."

Israel noted he represents companies seeking to clean up Superfund sites and win Energy Department grants, and "you cannot operate as a business today without having a serious EJ perspective, in some cases a policy, and a sophisticated approach to interacting with communities." -- *Dawn Reeves* (**dreeves@iwpnews.com**)

240372

---

## RELATED NEWS

- **EPA Taps Climate, PFAS, Coal Ash As First-Time Enforcement Priorities**
- **Uhlmann Wins Long-Awaited Senate Confirmation As EPA Enforcement Chief**
- **Senate Clears Path For Long-Delayed Floor Vote On EPA Enforcement Chief**
- **High Court Agrees To Review Agencies' ALJ Systems As EPA Faces Suit**
- **Sparking Criticism, OECA Memo Seen Limiting State Enforcement Discretion**

---

### SITE LICENSE AVAILABLE

Economical site license packages are available to fit any size organization, from a few people at one location to company-wide access. For more information on how you can get greater access to InsideEPA.com for your office, contact Online Customer Service at 703-416-8505 or **iepa@iwpnews.com**.

### STAY CONNECTED



© 2023. Inside Washington Publishers | **Contact Us**