# Exhibit 65

# INSIDEEPA.COM
### an online news service from the publishers of Inside EPA

*Weekly Focus*

# Louisiana Suit Over EPA Civil Rights Authority Seen On High Court Track

July 13, 2023                                                                                                       Tweet

Industry attorneys say Louisiana's lawsuit claiming EPA lacks authority under Title VI of the Civil Rights Act to take action over "disparate impacts" and must instead show "intentional discrimination" to justify enforcement could be headed to the Supreme Court, even after the agency abruptly closed the investigations at issue in the case.

EPA's "aggressive" enforcement of Title VI in a hostile state such as Louisiana has put the agency in the untenable position of being potentially swept up in litigation that, if successful, could broadly undercut Title VI enforcement across the Biden administration, the attorneys tell *Inside EPA*.

One industry attorney following the dispute says Louisiana's effort to continue its case even after EPA abandoned Title VI investigations into alleged disparate impacts from the state's permitting practices shows there is "blood in the water, and I don't think there is any doubt that those who wish to limit EPA's authority under Title VI see a clear opportunity here to push this case" to what is considered a "very friendly high court."

Additionally, Julius Redd, an attorney at Beveridge & Diamond who focuses on environmental justice issues, adds that Louisiana is "reading the political tea leaves" and has "an understanding of what their chances are."

Despite EPA's retreat on the investigations, Louisiana is continuing to pursue its lawsuit countering them in U.S. District Court for the Western District of Louisiana, telling the court July 6 that "all of its claims continue to present justiciable controversies within this Court's jurisdiction.

"As the record makes clear, EPA is broadly seeking to enforce disparate impact and cumulative impact permitting requirements that are not authorized by any statute, and EPA is seeking to do so statewide," that filing says.

The arguments the state is making would not just apply to EPA, which has a decades-long track record of unsuccessful attempts at enforcing Title VI, but also elsewhere in the federal government such as the education, transportation and housing departments that for many years have used their administrative authority under the rights law to force funding recipients to address disparate impacts.

Louisiana is explicitly seeking to expand the Supreme Court's precedent requiring private suits under Title VI to demonstrate that any discrimination was intentional, set in a 2001 case known as *Alexander v. Sandoval,* to government action as well. The "intentional" standard is considered impossibly high for plaintiffs to overcome in court.

The Pelican State is taking that step even as newly uncovered documents show that earlier in the dispute it negotiated with EPA on a draft information resolution agreement to resolve the Title VI complaints.

The draft agreement sought to commit the Louisiana Department of Environmental Quality (LDEQ) to establish a process to identify and address potential adverse disparate effects from air permitting as well as to conduct

cumulative impact assessments. However, the bulk of the now-defunct agreement focused on process, rather than substance.

Jo Banner, of the Descendants Project -- one of the groups that had brought a Title VI petition against LDEQ -- tells *Inside EPA* that the groups thought they were "pretty close to an agreement" when Louisiana **filed suit** in May. And while EPA's action means its **prior findings of disparity** identified in **the now-closed investigations** go away, "the discrimination does not."

However, some Title VI advocates say that even if the Supreme Court ultimately extends the precedent that Title VI only applies to "intentional" discrimination to administrative actions, there is another, lesser-known Supreme Court decision that can help agencies show actions by funding recipients result in intentional discrimination even if there is no "smoking gun."

One Title VI advocate says if EPA were to lose authority to enforce Title VI based on disparate impacts, it could invoke a different high court decision --*Village of Arlington Heights v. Metropolitan Housing Development Corp*. -- which the advocate describes as allowing "circumstantial evidence to make an intentional case."

**'Unfinished Business'**

Louisiana Attorney General Jeff Landry (R) and his allies "see unfinished business from *Alexander v. Sandoval*," with this case presenting the "right alchemy of circumstances to get this done. . . . EPA is in a challenging spot," the first industry attorney explains.

EPA is expected to next file a motion to dismiss the case, which Louisiana would oppose, and there is likely to be briefing over the state's preliminary injunction request to halt the agency from enforcing disparate impacts under Title VI.

Both the industry attorney and Lisa Jordan, the director of the Tulane Environmental Law Clinic who filed one of the Title VI petitions EPA dropped, say it is stunning that the agency moved so quickly to abandon the investigations, doing so just about a month after the suit was filed and directly notifying the court of its action.

Jordan says, "I don't know that I've ever seen somebody instantly give up . . . and I've been litigating for 30 years. . . . It just seemed like they could have acted on so many other options that at least should have been tried." She adds that Landry inserted himself into the negotiations between EPA and LDEQ and had likely been drafting the lawsuit for months. Jordan adds, "So, to me, this is a [Department of Justice (DOJ)] call" that EPA drop the investigations.

The industry attorney agrees, citing "different stakeholders on the government's side placing pressure on EPA," including likely warnings from the White House that "maybe this isn't the time" to press on civil rights "when we have a lot of other avenues and when civil rights is under a lot of scrutiny," such as in the Supreme Court's recently decided affirmative action case. There, a 6-3 majority held that even private colleges may no longer consider race in admissions, potentially **providing ammunition** to EPA Title VI opponents.

A Louisiana victory over EPA "can do really lasting damage, not just in the environmental space" because if the court gets rid of discriminatory impacts under Title VI, that holds vast implications for other agencies that have more active Title VI dockets, she adds. "EPA is in a really nasty spot."

Should courts embrace Louisiana's argument, that "doesn't neutralize Title VI, but it makes it as hard as it is in case law to show intentional" discrimination, the source adds.

**Lesser-Known Precedent**

However, Title VI advocates point to the high court's 1977 *Arlington Heights* decision as potentially mitigating the impact of extending intentional discrimination to administrative actions.

There, the justices upheld a zoning ordinance as constitutional after finding no proof that a "discriminatory purpose was a motivating factor" in the village's decision not to rezone an area for multi-family housing to build a racially integrated low-income housing project.

However, the court applied a balancing test to determine whether the ordinance was based on a discriminatory intent, and the advocates say the criteria for that test allow agencies to show intentional discrimination based on history, legacy and patterns, in lieu of an impossible-to-prove "smoking gun" standard.

DOJ incorporated the balancing factors into its Title VI Legal Manual on **proving intentional discrimination** that cites the "Arlington Heights Framework" to note that many cases "are not proven by a single type of evidence. Rather, many different kinds of evidence -- direct and circumstantial, statistical and anecdotal -- are relevant to the showing of intent and should be assessed on a cumulative basis."

The factors -- also adopted by **EPA in its Title VI case resolution manual** -- include: statistics demonstrating a clear pattern of discriminatory effect; the historical background of the decision and other decisions on comparable matters; the sequence of events leading up to the decision; departures from normal procedures; recent legislative or administrative history; and consistent patten of actions of decisionmakers that impose much greater harm on minorities than non-minorities.

The Title VI advocate says the final criterion in that list "fits Louisiana to a T" and that EPA can show there is a history of discrimination even though the state has never said it intended to locate many highly polluting facilities in the same neighborhoods. "It is the practice that gives grounds to make a case for intentional discrimination."

Meanwhile, long-time former EPA employee Richard Grow **is offering suggestions** for the agency to bolster its work on intentional discrimination, including that it should "do whatever is needed to ensure that [the external civil rights office] has sufficient resources and capacity to evaluate incoming Title VI complaints against evidentiary requirements for making an 'intent' case."

He also says in recommendations for EPA's 2023-24 Equity Action Plan that the agency could "triage" complaints in areas with long histories of civil rights concerns, such as Louisiana's "Cancer Alley" or oil and gas operations in the Gulf of Mexico.

Also, Marc Brennan, a former senior civil rights advisor to the Department of Transportation, tells *Inside EPA* that the balancing test from *Arlington Heights* will help EPA and other agencies going forward, if they are required to show -- or decide to show -- intentional discrimination.

There is a "common thought it is hard to prove civil rights cases by using an intent theory of proof, and it is difficult but it is certainly not impossible," he says.

Agencies can meet that bar by looking to at the recipient's history, whether they considered alternatives to the discriminatory action, and most crucially, whether they have been warned in the past that the "logical consequences of what they're doing will inevitably lead to discrimination," a key factor to proving intent, he says. -- *Dawn Reeves* (**dreeves@iwpnews.com**)

241458

---

## RELATED NEWS

- **EPA Faulted For Ignoring Attorneys' Conflicts When Negotiating Rights Pact**
- **Michigan Rights Pact Is Latest EPA Let-Down For Flint, Advocates Charge**
- **EPA Plans To Address OIG Concern Over 'Siloed' Cumulative Impact Efforts**

- **EPA Asks Court To Dismiss Louisiana Civil Rights Suit, Deny Injunction**
- **PRHE Urges EPA To Bolster TSCA Risk Evaluations In 'Framework' Rule**

**SITE LICENSE AVAILABLE**

Economical site license packages are available to fit any size organization, from a few people at one location to company-wide access. For more information on how you can get greater access to InsideEPA.com for your office, contact Online Customer Service at 703-416-8505 or **iepa@iwpnews.com**.

**STAY CONNECTED**



© 2023. Inside Washington Publishers | **Contact Us**