UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

**STATE OF LOUISIANA,**   \* CIVIL ACTION NO. 2:23-cv-00692

**VERSUS**   \*  JUDGE JAMES D. CAIN, JR.

**U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL**   \* MAGISTRATE JUDGE KATHLEEN KAY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>STATE OF LOUISIANA's RESPONSE TO PLAINTIFFS'
RULE 56.1 STATEMENT OF UNDISPUTED FACTS</u>

## **GENERAL OBJECTION**

Plaintiffs tender 19 paragraphs in their Rule 56.1 statement. Louisiana objects that many of the "facts" that statement are not material to resolution of the State's claims. *See* Fed. R. Civ. P. 56(c); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970). Except to the extent expressly admitted herein, Louisiana disputes each and every statement.

## **RESPONSES AND OBJECTIONS TO SPECIFIC STATEMENTS**

1. Shortly after Title VI was enacted in 1964, a Presidential task force and the Department of Justice (DOJ) drafted model Title VI regulations. See 45 CFR § 80.3 (1964). These model regulations included a provision that recipients of federal funds may not use "criteria or methods of administration which have the *effect* of subjecting individuals to discrimination" on the basis of race, color, or national origin. See id. § 80.3(b)(2) (1964) (emphasis added).

   **Response #1**: Undisputed.

2. In 1966, DOJ promulgated its own Title VI regulations with presidential approval. *See* Nondiscrimination in Federally Assisted Programs—Implementation of Title VI of the Civil Rights Act of 1964, 31 Fed. Reg. 10265 (July 29, 1966) (Administrative Record ("AR") 1-5).

   **Response #2**: Undisputed.

3. In 1973, the Environmental Protection Agency (EPA) promulgated its own Title VI regulations with presidential approval. *See* Nondiscrimination Programs Receiving Federal Assistance from the Environmental Protection Agency, 38 Fed. Reg. 17,968 (July 5, 1973) (AR286-90).

   **Response #3**: Undisputed.

4. Both agencies' regulations prohibited recipients of federal financial assistance from administering programs in a manner that has the effect of subjecting individuals to discrimination based on race, color, or national origin. *See* Nondiscrimination in Federally Assisted Programs— Implementation of Title VI of the Civil Rights Act of 1964, 31 Fed. Reg. 10265 (July 29, 1966) (DOJ)

2

(AR-15); Nondiscrimination Programs Receiving Federal Assistance from the Environmental Protection Agency, 38 Fed. Reg. 17,968 (July 5, 1973) (EPA) (AR286-90).

**Response #4**: Undisputed.

5. While both EPA and DOJ have amended their regulations periodically, the discriminatory-effect provisions have remained unchanged in substance for decades. *Compare* 28 C.F.R. § 42.104(b)(2) *with* 31 Fed. Reg. 10,266 (AR2), *and* 40 C.F.R. § 7.35(b) *with* 38 Fed. Reg. 17,968 (AR286).

**Response #5**: Disputed. As Defendants admit, EPA and DOJ have amended these provisions over time in ways that have potential substantive effects. These amendments presumptively have substantive effect, and Defendants make no attempt to explain why that would not be the case. *See, e.g., Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."); *Pub. Lands Council v. Babbitt*, 529 U.S. 728, 746 (2000) ("Why would Congress add the words . . . if . . . they add nothing?").

The State also notes that this statement lacks context. While the regulations may have changed, the Administration's actual implementation and enforcement of Title VI has been subject to enormous changes recently. For example, EPA did not even check its inbox for Title VI complaints from June 2014 to July 2015, Exh. 72[1]—let alone attempt to take action upon those ignored complaints. More recently, however, EPA's enforcement has been substantially more aggressive. *See* Exh. 4-9, 41; Exh. 52 at 393-94; Exh. 53 at 241. For example, it initiated the enforcement proceedings at issue here even though the permits at issue *reduced* allowable air emissions, producing environmental benefits, and those benefits disproportionately accrued to racial minorities in the State. *See* Exh. 11 at 15 (By letter dated May 20, 2020, LDEQ informed Denka that an 85% (84.63% rounded) reduction in chloroprene emissions compared to 2014 reported emissions had in fact been achieved."); Exh. 35. EPA and DOJ

---

[1] Unless otherwise noted, all references to "Exh." are to exhibits of the Seidemann Declaration, Seidemann Supplemental Declaration, or Burdette Declaration, which have sequentially numbered exhibits in a single sequence.

3

have also secured Title VI settlement agreements from Alabama, Michigan, and Missouri in the last twelve months. Exh. 54-57.

6.   In 2020, DOJ considered a draft rulemaking that would have sought to eliminate disparate-impact requirements from its Title VI regulations. AR277. Although DOJ submitted a draft Title VI rulemaking for review to the Office of Management and Budget (OMB) on December 21, 2020, *id.*, shortly thereafter, on January 14, 2021, DOJ notified OMB that the Department had decided not to proceed with publication of that rule and requested an end to OMB's review, AR279. The draft rule was never filed for public inspection with the Office of the Federal Register and was never published in the Federal Register. *See* AR279-80.

**Response #6**: Undisputed.

7.   Since 1988, EPA has provided more than one billion dollars in federal financial assistance through annual funding grants to the Louisiana Department of Environmental Quality (LDEQ) and the Louisiana Department of Health (LDH). Declaration of Christopher Watkins ("Watkins Decl.") ¶ 4. Current grants total $120,238,571 and at least 16 grant applications are pending. *Id.* ¶ 5.

**Response #7**: Undisputed.

8.   LDEQ and LDH are required to certify, and have certified, their compliance with Title VI and EPA's regulations implementing Title VI when they apply for and receive federal financial assistance from EPA. *Id.* ¶¶ 5-11.

**Response #8**: Undisputed. The State notes that this fact necessarily means that the State is an "object" of those regulations for purposes of Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

9.   In 1984, EPA began requiring that applicants for federal funding assistance submit a signed EPA Form 4700-4. *Id.* ¶ 11. All applications for federal financial assistance by LDEQ, LDH, or the State of Louisiana since 1984 were required to contain a completed and signed Form 4700-4, which

4

contains certifications that the funding recipient will fully comply with all applicable civil rights statutes and EPA regulations. *Id.*

**Response #9**: Undisputed. The State notes that this fact again makes plain that the State is the object of the challenged regulations.

10. As the discriminatory-effect provisions of EPA's Title VI regulations have remained unchanged in substance for decades, since 1984 LDEQ, LDH, and the State of Louisiana have certified with every application for federal financial assistance, including those made by LDEQ in June 2023 and by LDH in July 2023, that they will comply with the discriminatory-effect provisions of EPA's Title VI regulations. *Id.* ¶¶ 8-11.

**Response #10**: Undisputed. The State notes that these recent permit grants in June and July 2023 necessarily extend the term in which the State's agencies are bound to the requirements of Title VI, since the binding effect is only for the duration of the grants. *See* 28 C.F.R. § 42.105 (DOJ); 40 C.F.R. § 7.80 (EPA).

11. On January 20, 2022, EPA's Office of External Civil Rights Compliance (OECRC) received: (1) the complaint subsequently docketed as EPA Complaint No. 01R-22-R6, titled "Complaint Under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, Regarding Civil Rights Violations by Louisiana State Agency Grantees and Environmental Injustice in St. John the Baptist Parish"; and (2) the complaint subsequently docketed as EPA Complaint No. 02R-22-R6, titled "Complaint Under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, Regarding Civil Rights Violations by Louisiana State Agency Grantees and Environmental Injustice in St. John the Baptist Parish." Declaration of Anhthu Hoang ("Hoang Decl.") ¶¶ 6-7.

**Response #11**: Undisputed.

12. On February 1, 2022, EPA's OECRC received the complaint subsequently docketed as EPA Complaint No. 04R-22-R6, titled "Complaint Under Title VI of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000d, and 40 C.F.R. Part 7 against the Louisiana Department of Environmental Quality for Lack of Environmental Justice Procedures in its Air Permitting Program and Resulting Discriminatory Decision on Formosa Air Permits." Hoang Decl. ¶ 8.

**Response #12**: Undisputed.

13. On April 6, 2022, EPA's OECRC initiated: (1) an investigation of Complaint Nos. 01R-22-R6 and 04R-22-R6, which were filed against LDEQ; and (2) an investigation of Complaint No. 02R-22-R6, which was filed against LDH. Hoang Decl. ¶¶ 9-10.

**Response #13**: Undisputed.

14. On June 27, 2023, EPA's OECRC issued a letter to LDEQ administratively closing EPA Complaint Nos. 01R-22-R6 and 04R-22-R6, and stating that no further action will be taken with respect to Complaint Nos. 01R-22-R6 and 04R-22-R6. ECF No. 18-1; *see also* Hoang Decl. ¶ 18. This letter constituted EPA's final disposition of EPA Complaint Nos. 01R-22-R6, and 04R-22-R6. ECF No. 18-1; *see also* Hoang Decl. ¶ 18.

**Response #14**: Disputed. The State admits that Doc. 18-1 is a true and accurate copy and that it states: "As a result of its administrative closure, EPA will not initiate under Title VI or other civil rights laws any further action, enforcement or otherwise, in response to these Complaints." The State objects to number 14 on the basis that the letter speaks for itself. In addition, as explained in the State's response/reply brief, this action does not moot the State's challenges.

15. On June 27, 2023, OECRC issued a letter to LDH administratively closing EPA Complaint No. 02R-22-R6, and stating that no further action will be taken with respect to Complaint No. 02R-22-R6. ECF No. 18-2; Hoang Decl. ¶ 19. This letter constituted EPA's final disposition of EPA Complaint No. 02R-22-R6. ECF No. 18-2; Hoang Decl. ¶ 19.

**Response #15**: Disputed. The State admits that Doc. 18-2 is a true and accurate copy and that it states: "As a result of its administrative closure, EPA will not initiate under Title VI or other civil rights laws any further action, enforcement or otherwise, in response to this Complaint." The State objects to number 15 on the basis that the letter speaks for itself. In addition, as explained in the State's response/reply brief, this action does not moot the State's challenges.

16. On July 17, 2023, EPA rejected a Title VI Complaint (EPA Complaint No. 02R-23-R6) against LDEQ (Town of Mansura) that EPA received on December 16, 2022. Hoang Decl. ¶ 20.

**Response #16**: Undisputed. *See* Response 14.

17. On July 28, 2023, EPA rejected a Title VI Complaint (EPA Complaint No. 07RNO-23- R6) against LDEQ that EPA received on May 31, 2023. Hoang Decl. ¶ 21.

**Response #17**: Undisputed. *See* Response 14.

18. As of August 15, 2022, there are no Title VI complaints related to LDEQ, LDH, the State of Louisiana, or any of the State's subcomponents pending at or otherwise under consideration by EPA. Hoang Decl. ¶ 22.

**Response #18**: Undisputed. The State notes that while there are currently not any pending Title VI complaints by private groups, EPA itself has objected to LDEQ's issuance of a permit under the Clean Air Act on June 16, 2023. *See* Exh. 84. That objection, which carried the force of law under 42 U.S.C. § 7661d, specifically objected on Title VI disparate-impact grounds, including cumulative-impact grounds, to LDEQ's proposed granting of the permit at issue. *See id.* Specifically, EPA demanded that to grant the permit that LDEQ must undertake analysis under "civil rights regulations" to avoid "unjustified discriminatory effect" (*i.e.*, Title VI disparate-impact mandates), and that the State consider "whether the community is already disproportionately impacted either by public health or environmental burdens," (*i.e.*, analyze cumulative disparate impacts). *Id.*

19. EPA has never taken or attempted to take any enforcement steps outlined in 40 C.F.R. § 7.130 ("Actions available to EPA to obtain compliance") to terminate assistance, refuse to award assistance, or refuse to continue assistance, against any state to obtain compliance with EPA's disparate-impact regulations. Hoang Decl. ¶ 23.

**Response #19**: Undisputed. The State notes, however, that EPA has successfully extracted settlements from Alabama, Michigan, and Missouri in the last twelve months alone by threatening enforcement under Title VI. *See* Exh. 54-57.

## ADDITIONAL UNDISPUTED MATERIAL FACTS

1. The State does incur or would incur costs to comply with the challenged Title VI disparate-impact regulations. *See* Burdette Declaration ¶¶17-25; Exh. 61 at 18 (explaining that ""statistical evidence is often necessary" to comply with disparate-impact mandates); *Prop. Cas. Insurers Ass'n of Am. v. Donovan*, 66 F. Supp. 3d 1018, 1043-44 (N.D. Ill. 2014) (finding standing based on compliance costs resulting from challenged disparate-impact rule because such mandates "require the [regulated entities] to begin collecting and reviewing information regarding applicants' race, color, [etc.] to monitor their compliance with the Rule" and thereby "*causes [the regulated parties] to incur costs.*" (emphasis added)).

2. On October 12, 2022, EPA issued a "Letter of Concern" to LDEQ and LDH. *See* Exh. 11.

3. EPA explained that it "issue[d] th[e] Letter [of Concern] to present significant evidence suggesting that the Departments' actions or inactions have resulted and continue to result in disparate adverse impacts on Black residents of St. John the Baptist Parish, St. James Parish, and the Industrial Corridor." Exh. 11 at 2.

8

4. The Letter of Concern requested that LDEQ and LDH "[c]onduct cumulative impact analysis" and set forth detailed requirements that EPA demanded, at a "minimum," that "[t]hese cumulative impact analyses should" contain. Exh. 11 at 5-6.

5. The Letter of Concern did not allege that LDEQ or LDH had taken any actions on the basis of intentional discrimination. *See generally* Exh. 11.

6. EPA submitted document demands to LDEQ and LDH on April 26, 2023, as part of its Title VI investigations. *See* Exh. 18.

7. In March 2023, EPA admitted that it could not continue informal negotiations with the State without securing Sierra Club's consent to an extension. *See* Seidemann Decl. ¶¶ 65-70; *see also* Exh. 42.

8. To secure Sierra Club's consent, EPA traded non-public information and told attorneys for LDEQ and LDH that EPA "did not think it was a very high price … in order to get a 120-day extension for the purpose of continuing what we think is a very productive discussion [and] negotiation." *See* Seidemann Decl. ¶¶ 65-70.

9. EPA and LDEQ/LDH exchanged proposed settlement agreements with each other, including through redlines of EPA's proposals. *See* Exh. 81-83.

10. In the course of the informal negotiations, EPA never alleged that LDEQ and LDH had taken any actions that were the product of intentional discrimination. *See* Seidemann Decl. ¶109.

9

Dated:   September 29, 2023

Respectfully submitted,

By: */s/ J. Scott St. John*

DREW C. ENSIGN *
   Special Assistant Solicitor General
202 E. Earll Drive
Suite 490
Phoenix, AZ 85004
drewensignlaw@gmail.com

ELIZABETH B. MURRILL (La #20685)
   Solicitor General
J. SCOTT ST. JOHN (La #36682)
   Deputy Solicitor General
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

* admitted *pro hac vice*