# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

THE STATE OF LOUISIANA,
By and through its Attorney General,
Liz Murrill,

PLAINTIFF,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; et al.,

DEFENDANTS.

CIVIL ACTION NO. 2:23-cv-00692

**MEMORANDUM IN SUPPORT OF PERMANENT RELIEF**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

INTRODUCTION ........................................................................................................1

LEGAL STANDARD ....................................................................................................2

ARGUMENT ...............................................................................................................2

    I.   THIS COURT SHOULD VACATE THE CHALLENGED DISPARATE-IMPACT REGULATIONS ......2

        A.   Vacatur Is The Default Remedy Here ...............................................................2

        B.   Vacatur of the Challenged Disparate-Impact Regulations Is Warranted ........................4

    II.   THIS COURT SHOULD ISSUE A PERMANENT INJUNCTION COVERING ALL OF LOUISIANA ....6

        A.   A Permanent Injunction Is Warranted ..............................................................6

        B.   A Statewide Injunction Is Warranted Here .........................................................6

CONCLUSION ............................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*Amoco Prod. Co. v. Vill. of Gambell,*
  480 U.S. 531 (1987) ............................................................................................ 6

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) ......................................................................................... 6, 7

*Cargill v. Garland,*
  57 F.4th 447 (5th Cir. 2023) (en banc) .......................................................... 3

*Data Marketing Partnership, LP v. DOL,*
  45 F.4th 846 (5th Cir. 2022) ...................................................................... 1, 2, 3

*Feds for Med. Freedom v. Biden,*
  63 F.4th 366 (5th Cir.) ........................................................................................ 7

*Hippocratic Med. v. FDA,*
  78 F.4th 210 (5th Cir.) ..................................................................................... 3, 4

*Louisiana v. Becerra,*
  20 F.4th 260 (5th Cir. 2021) ........................................................................... 1, 8

*Monsanto Co. v. Geertson Seed Farms,*
  561 U.S. 139 (2010) ............................................................................................ 2

*National Parks Conservation Ass'n v. Semonite,*
  925 F.3d 500 (D.C. Cir. 2019) .......................................................................... 3

*Ricci v. DeStefano,*
  557 U.S. 557 (2009) ............................................................................................ 7

*San Francisco v. USCIS,*
  981 F.3d 742 (9th Cir. 2020) ............................................................................ 8

*Tex. Med. Ass'n v. HHS, No. 6:23-cv-59-JDK,*
  2023 U.S. Dist. LEXIS 135310 (E.D. Tex. Aug. 3, 2023) ............................. 3

*Texas v. Biden,*
  20 F.4th 928 (5th Cir. 2021) ........................................................................... 3, 4

**Statutes**

5 U.S.C. § 706 ......................................................................................................... 2

La. R.S. 23:332 ....................................................................................................... 7

La. R.S. 17:111 ....................................................................................................... 7

**Other**

Louisiana Const. art. 1 § 3 ................................................................................................................ 7

## INTRODUCTION

The parties agree that this Court's January 23 Order ("Order") (Doc. 48) resolves the merits of each of the State's claims. The parties further agree that entry of an injunction is warranted on the claims on which the State prevailed (Counts III, IV, V, and VI). Only two remedial issues remain for this Court to resolve: (1) whether this Court should follow the default APA rule and vacate the disparate-impact regulations it held to be unlawful and unconstitutional, and (2) whether the injunction should apply to all entities within the State's sovereign borders or should instead be limited purely to the State and State agencies. This Court should answer both questions in the affirmative and therefore enter the State's proposed judgment.

The Fifth Circuit has explicitly and repeatedly held that for APA cases, "[t]he *default rule* is that vacatur is the appropriate remedy." *Data Marketing Partnership, LP v. DOL*, 45 F.4th 846, 859 (5th Cir. 2022) (emphasis added) (citations omitted). This Court should follow that default rule here, particularly as (1) the legal defects in the challenged disparate-impact regulations are irremediable on remand and (2) the disruption to Defendants' operations will be minimal and confined to closing down a modest number of investigations that are unlawful under this Court's Order.

This Court should also issue an injunction that is limited to the State's borders but not limited purely to State agencies. Even where the Fifth Circuit has judged a nationwide injunction unwarranted, it has only narrowed the injunction to the sovereign territory of the plaintiff states—not merely the states as legal entities. *See Louisiana v. Becerra*, 20 F.4th 260, 263-64 (5th Cir. 2021). Because enforcement of Defendants' unlawful disparate-impact regulations effectively invites violation of Louisiana's laws prohibiting discrimination on the basis of race, a statewide injunction will remedy the sovereign injury that enforcement of Defendants' unlawful regulations in Louisiana would otherwise occasion. And a statewide injunction is particularly warranted here given EPA's demonstrated proclivity to exploit its coercive power under Title VI to make unlawful demands as part of informal negotiations. Given this

Court's unequivocal holding that these actions are unlawful, such tactics should not be permitted anywhere in Louisiana's territory.

This Court should accordingly enter the State's proposed judgment vacating the challenged disparate-impact regulations and issuing an injunction that applies statewide.[1]

## LEGAL STANDARD

In APA cases, "[t]he default rule is that vacatur is the appropriate remedy." *Data Marketing Partnership*, 45 F.4th at 859. Vacatur is a "less drastic remedy" than injunctive relief. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).

"'A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Id.* at 156-57 (alteration omitted) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

## ARGUMENT

**I.    THIS COURT SHOULD VACATE THE CHALLENGED DISPARATE-IMPACT REGULATIONS**

**A.    Vacatur Is The Default Remedy Here**

Section 706 provides that a "reviewing court shall … hold unlawful and set aside agency action" found to be unlawful. 5 U.S.C. § 706. "Under prevailing [Fifth Circuit] precedent, § 706 'extends beyond the mere non-enforcement remedies available to courts that review the constitutionality of legislation, as it empowers courts to "set aside"— *i.e.*, formally nullify and revoke— an unlawful agency action.'" *Data Marketing Partnership*, 45 F.4th at 859 (quoting Jonathan F.

---

[1]  The State and Defendants have conferred regarding proposed judgments. The parties have agreed upon most terms of the proposed judgment and its form save for the two issues briefed here: (1) vacatur and (2) the scope of injunctive relief.

Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 950 (2018)).[2] For that reason, vacatur is not only a permissible remedy under the APA, but in fact in the Fifth Circuit "[t]he *default rule* is that vacatur is the appropriate remedy." *Id.* (emphasis added); *accord Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc) (same); *National Parks Conservation Ass'n v. Semonite*, 925 F.3d 500, 501 (D.C. Cir. 2019) ("[V]acatur is the default remedy to correct defective agency action.").

"Given that presumption [that vacatur should issue], remand without vacatur is appropriate only if 'there is at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so.'" *Alliance for Hippocratic Med. v. FDA*, 78 F.4th 210, 255 (5th Cir.) *cert. granted* 144 S. Ct. 537 (2023) (quoting *Texas v. United States*, 50 F.4th 498, 529 (5th Cir. 2022)); *see also id.* (favorably citing to D.C. Circuit's remand without vacatur standard in *Radio-Television News Dirs. Ass'n v. FCC*, 184 F.3d 872, 888 (D.C. Cir. 1999)); *accord Texas v. Biden*, 20 F.4th 928, 1000 (5th Cir. 2021) *abrogated on other grounds* 142 S. Ct. 2528 (2022) ("Our court applies the same test [as the D.C. Circuit], though perhaps phrased differently." (citing *Cent. & S. W. Servs., Inc. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000)). The "test for whether vacatur is appropriate considers two factors: '(1) the seriousness of the deficiencies of the action, that is, how likely it is the agency will be able to justify its decision on remand; and (2) the disruptive consequences of vacatur.'" *Texas*, 20 F.4th at 1000 (quoting *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019)).

Finally, "because vacatur is the default remedy ... defendants bear the burden to prove that vacatur is unnecessary." *Tex. Med. Ass'n v. HHS*, No. 6:23-cv-59-JDK, 2023 U.S. Dist. LEXIS 135310, at \*34 (E.D. Tex. Aug. 3, 2023) (cleaned up).

---

[2]   The federal government has argued in the U.S. Supreme Court that the APA does not even authorize vacatur as a remedy. *See, e.g.*, Brief for Petitioners at 40-44, *United States v. Texas*, 599 U.S. 670 (2023) *available at* https://www.supremecourt.gov/DocketPDF/22/22-58/237711/20220912201922622_22-58tsUnitedStates.pdf.   The Supreme Court has not adopted that argument. Any such argument in this Court, moreover, is squarely precluded by multiple binding Fifth Circuit precedents holding that vacatur is not only an allowable remedy under the APA but in fact the *default* remedy.

**B.      Vacatur of the Challenged Disparate-Impact Regulations Is Warranted**

This Court should follow the "default rule" and vacate the challenged disparate-impact regulations. Here, the "'the seriousness of the deficiencies'" factor weighs strongly in favor of vacatur since there is no possibility "'the agency w[ould] be able to justify its decision on remand.'" *Texas*, 20 F.4th at 1000 (citation omitted). This Court held Defendants' disparate-impact regulations outright violate the text of Section 601. *See, e.g.*, Order at 69 ("Reliance upon 602 to effectuate § 601 does not morph § 601 to include discrimination by disparate impact mandates that remove the element of intent."). It further held that imposing disparate-impact liability on States under those regulations violates the Spending Clause. *Id.* at 70. And it finally held that "the major questions doctrine is applicable here" and accordingly that any "imposition of disparate impact mandates under Title VI … demands clear congressional authorization." *Id.*

Given these holdings, there is no chance whatsoever that EPA and DOJ would "be able to justify [their] decision on remand." *Texas*, 20 F.4th at 1000. The defects in Defendants' disparate-impact regulations are irredeemable since *any* disparate-impact mandate violates Section 601. That is particularly true because this Court held that the major questions doctrine applies, Order at 70—since not even Defendants appear to argue that Title VI supplies the requisite "clear congressional authorization" that could support disparate-impact liability. Nor would Defendants ever be able to avoid or evade on remand the constitutional violations that any imposition of disparate-impact liability on the States under Title VI necessarily occasions. *See id.*

Notably, the Fifth Circuit has held that "[r]emand without vacatur [wa]s likely not appropriate [where] 'it is far from certain' that [the agency] could cure its mistakes with further consideration." *Alliance for Hippocratic Medicine*, 78 F.4th at 255 (citation omitted). Here, however, it is *certain* that Defendants could *not* cure their regulations' deficiencies on remand. A remand without vacatur is thus plainly unwarranted here.

Nor are there any obvious "disruptive consequences" that would justify withholding vacatur. EPA only appears to have about ten Title VI complaints under investigation and a similar number in informal negotiations. *See* Henderson Decl. Ex. 86. To the extent that EPA is investigating the intentional discrimination that Section 601 actually prohibits, such investigations could go forward without any disruption. And to the extent that EPA is investigating alleged disparate impacts, such enforcement actions are now plainly unlawful and EPA will not suffer any cognizable prejudice from its inability to conduct them.

Indeed, even if legally cognizable, any disruptions caused by a vacatur would be less than that which EPA has inexplicably inflicted upon itself. EPA has admitted previously (and did not contest in this case[3]) that the agency "didn't check [a] complaint inbox for civil-rights concerns from June 2014 to July 2015," during which there were "149 messages," including "29 e-mails [that] raised discrimination-related concerns"—all of which went completely ignored, with EPA still "crafting its responses in April 2016." Seidemann Decl. Exh. 72 at 2-3. In effect, EPA imposed on itself a moratorium on all new Title VI complaints, whether they asserted intentional-discrimination or disparate-impact-based allegations. That *de facto* moratorium was apparently unconcerning to EPA itself and only became an issue when *journalists* started inquiring about it. *See id.* Nor is there any apparent evidence that the cause of "environmental justice" suffered any material setbacks from the prolonged period of complete inaction of EPA on new complaints.

Vacatur is further warranted because the State could otherwise suffer a competitive disadvantage in obtaining grants from DOJ and EPA. Absent a vacatur, grants to agencies in the other 49 States will continue to bind those agencies to Defendants' disparate-impact mandates for the term of the grants. Not so for Louisiana's agencies under the terms of the preliminary injunction (and likely

---

[3] *See* Doc. 34 at 36-37 (raising issue); *see generally* Doc. 42 (EPA's brief not contesting fact).

permanent injunction). Defendants will thus get far more coercive bang for their bucks if they steer grants to agencies in the other 49 states. And EPA's desire to exploit its leverage under Title VI is readily revealed by its extraction of settlement agreements from Michigan and Illinois during the pendency of this suit. Seidemann Decl. Ex. 66; Henderson Decl. Exs. 86-87.

A vacatur would thus avoid putting Louisiana agencies at a competitive disadvantage in seeking EPA and DOJ grants, which is a further reason to follow the default rule and issue a vacatur here.

## II.   THIS COURT SHOULD ISSUE A PERMANENT INJUNCTION COVERING ALL OF LOUISIANA

### A.   A Permanent Injunction Is Warranted

This Court has already concluded that all of the requirements for issuance of a preliminary injunction were satisfied here. *See* Order at 73-77. "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987). Given that the State has now achieved "actual success" on its disparate-impact and Extra-Regulatory Requirements claims, and all other requirements for injunctive relief continue to be met, the State is entitled to permanent injunctive relief on those claims.

Indeed, the parties' respective judgment proposals both provide for permanent injunctive relief. The only remaining question is scope, with the State proposing that the injunction apply everywhere within its borders and Defendants seeking to limit it solely to the State and State agencies.[4]

### B.   A Statewide Injunction Is Warranted Here

The Supreme Court has instructed that "[t]he scope of injunctive relief is dictated *by the extent of the violation established*, not by the geographical extent of the plaintiff class." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (emphasis added). Here, the legal violations found by the Court apply not only to every square inch of Louisiana's territory, but everywhere in the United States without exception—

---

[4]  Given the United States' position that vacatur is not an allowable remedy, an injunction is also warranted to provide appropriate relief. In any event, Defendants do not appear to oppose entry of an injunction, only a statewide one.

*i.e.*, disparate-impact regulations and Extra-Regulatory Requirements are illegal *anywhere* in the United States that Defendants attempt to impose them. A nationwide injunction could thus be warranted here if the State were seeking one. *See also Feds for Med. Freedom v. Biden*, 63 F.4th 366, 387 (5th Cir.) *vacated as moot* 144 S. Ct. 480 (2023) (explaining that the "the [Supreme] Court has yet to tell us they're [nationwide injunction] verboten") (affirming nationwide injunction). But here the State seeks only a substantially more-limited injunction that applies only within Louisiana's borders.

A statewide injunction is particularly warranted because Defendants' unlawful regulations inflict sovereign injury upon the State by displacing its sovereign authority within its own territory. The Louisiana Constitution bans discrimination "because of race" and guarantees all within Louisiana's borders "the equal protection of the laws." Louisiana Const. art. 1 § 3. Louisiana statutory law similarly bans discrimination by virtually all businesses and other federal grant recipients in the State. *See, e.g.*, La. R.S. 23:332; 17:111. And as Justice Scalia recognized in *Ricci*, disparate-impact mandates effectively *compel* regulated entities to discriminate on the basis of race. *See Ricci v. DeStefano*, 557 U.S. 557, 594 (2009) (Scalia, J., concurring) (Disparate-impact requirements "not only permit[] but affirmatively *require*[] [race-based discrimination] when a disparate-impact violation *would* otherwise result.") (emphasis in original).

Defendants' disparate-impact mandates thus greatly increase the chance that federal grant recipients within the State will violate State law by compelling the sort of race-based discrimination that Louisiana law prohibits. Indeed, grant recipients doing so will likely even claim that Louisiana law is preempted by Defendants' Title VI regulations as a defense. Tellingly, to the State's knowledge, Defendants have never disclaimed preemptive effect of their regulations. And there is every reason to believe if a non-State federal grant recipient faced a choice between complying with Defendants' Title VI disparate-impact regulations and Louisiana law, Defendants would take the position that the

recipient is compelled to follow the former. A statewide injunction is thus "necessary to provide complete relief" to the State, and an injunction with that scope is warranted. *Califano*, 442 U.S. at 702.

*Louisiana v. Becerra* is particularly instructive here. There the Fifth Circuit concluded that a nationwide injunction against a vaccine mandate for nearly all Medicare and Medicaid providers was overbroad. 20 F.4th at 263-64. But instead of narrowing the injunction purely to hospitals and other medical providers that were owned or operated by the 14 plaintiff states—as Defendants would do here—the Fifth Circuit only stayed the injunction's "application to any other jurisdiction" beyond "the 14 Plaintiff States." *Id.* at 264; *see also San Francisco v. USCIS*, 981 F.3d 742, 763 (9th Cir. 2020) (affirming injunction limited to plaintiff states but vacating parallel nationwide injunction as overbroad). And just as the Fifth Circuit did not abuse its discretion in limiting injunctive relief to the boundaries of the plaintiff states rather than the plaintiff states as entities, this Court would be amply within its discretion to issue an injunction limited to Louisiana's borders rather than just State entities.

A statewide injunction also would not raise any concerns about preclusion and "'the airing of competing views' in [other] circuits" as a nationwide injunction would. *Louisiana*, 20 F.4th 264. Indeed, an injunction tailored to Louisiana alone would not even prevent district courts within the Fifth Circuit in Texas and Mississippi from reaching their own views as to the legality of Defendants' disparate-impact regulations.

A statewide injunction is particularly appropriate given EPA's proclivity for making demands (such as the Extra-Regulatory Requirements) in informal negotiations. *See* Order at 9, 23, 25-29, 30-33, 70-72. Given the Sword of Damocles that cutting off federal funds would represent, EPA's unlawful demands under Title VI disparate-impact regulations have all the subtlety of Vito Corleone's "offers they can't refuse." *See generally The Godfather* (Paramount Pictures 1972). But despite their flagrant illegality, EPA has shamelessly and repeatedly made unlawful demands only to turn around and argue they are mere negotiating positions that are completely beyond the authority of federal

8

courts to review. Order at 30, 52-57. A statewide injunction will stop any such strongarm tactics in Louisiana, however, and is amply warranted here.

## CONCLUSION

For the foregoing reasons, this Court should enter the State's proposed judgment that vacates the challenged disparate-impact regulations and issues a statewide injunction.

Dated:  April 23, 2024

DREW C. ENSIGN *
 Special Assistant Solicitor General
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
2575 East Camelback Rd, Ste 860
Phoenix, AZ 85016
602-388-1262
Email:  densign@holtzmanvogel.com

Respectfully submitted,

By: */s/ Tracy Short*

TRACY SHORT (La #23940)
 Assistant Chief Deputy Attorney General
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
shortt@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

*\* pro hac vice application granted*

9