# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| THE STATE OF LOUISIANA,<br><br>   Plaintiff,<br><br> v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>   Defendants. | No. 2:23-cv-00692-JDC-TPL |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF LIMITED FINAL RELIEF**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................................1

ARGUMENT.........................................................................................................................................2

    I.     A permanent injunction should not extend beyond the parties to this action. .............................2

    II.    This Court need not and should not vacate Defendants' disparate-impact regulations, and certainly should not do so universally....................................................................................7

CONCLUSION....................................................................................................................................12

i

## TABLE OF AUTHORITIES

**Cases**

*Arizona v. Biden*,
  40 F.4th 375 (6th Cir. 2022) .................................................................................. 7

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ............................................................................... 2, 7, 8, 9

*California v. Texas*
  141 S. Ct. 2104 (2021) .......................................................................................... 8

*Cargill v. Garland*,
  57 F.4th 447 (5th Cir. 2023) ................................................................................. 8

*Cent. & S.W. Servs., Inc. v. EPA*,
  220 F.3d 683 (5th Cir. 2000) .......................................................................... 9, 12

*Charter Sch. of Pine Grove, Inc. v. St. Helena Par. Sch. Bd.*,
  9 So. 3d 209 (La. App. 1 Cir. 2009) .................................................................... 3

*City & Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.*,
  981 F.3d 742 (9th Cir. 2020) ................................................................................ 5

*Clapper v. Amnesty Int'l, USA*,
  568 U.S. 398 (2013) ............................................................................................. 5

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ............................................................................................. 9

*Data Marketing Partnership, LP v. U.S. Department of Labor*,
  45 F.4th 846 (5th Cir. 2022) ................................................................................ 8

*Doran v. Salem Inn, Inc.*,
  422 U.S. 922 (1975) ......................................................................................... 2, 3

*Franciscan All., Inc. v. Becerra*,
  47 F.4th 368 (5th Cir. 2022) ............................................................................ 8, 9

*Garrido v. Dudek*,
  731 F.3d 1152 (11th Cir. 2013) ........................................................................... 2

*Gill v. Whitford*,
  585 U.S. 48 (2018) ...................................................................................... 2, 5, 6

*Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999) ............................................................................................. 2

*Haaland v. Brackeen*,
  599 U.S. 255 (2023) ......................................................................................... 4, 5

*Harrison v. Jefferson Par. Sch. Bd.*,
    78 F.4th 765 (5th Cir. 2023) .................................................................................................. 5

*In re Abbott*,
    954 F.3d 772 (5th Cir. 2020) .................................................................................................. 3

*Kentucky v. Yellen*,
    54 F.4th 325 (6th Cir. 2022) ................................................................................................... 9

*Labrador v. Poe*,
    144 S. Ct. 921 (2024) ............................................................................................................. 2

*Lewis v. Casey*,
    518 U.S. 343 (1996) ............................................................................................................... 2

*Louisiana v. Becerra*,
    20 F.4th 260 (5th Cir. 2021) ................................................................................................... 5

*Louisiana v. Becerra*,
    571 F. Supp. 3d 516 (W.D. La. 2021) .................................................................................... 5

*McKenzie v. City of Chicago*,
    118 F.3d 552 (7th Cir. 1997) .................................................................................................. 3

*Mississippi v. Becerra*,
    --- F. Supp. 3d ---, No. 1:22-cv-113-HSO-RPM, 2024 WL 1335084 (S.D. Miss. Mar. 28, 2024) .. 5

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ............................................................................................................... 7

*N. New Mexico Stockman's Ass'n v. U.S. Fish & Wildlife Serv.*,
    494 F. Supp. 3d 850 (D.N.M. 2020) .................................................................................... 12

*Nuziard v. Minority Bus. Dev. Agency*,
    --- F.Supp.3d ----, No. 4:23-cv-00278, 2024 WL 965299 (N.D. Tex. Mar. 5, 2024) ........................ 8

*Phillips v. Louisiana Stadium & Exposition Dist.*,
    332 So. 3d 779 (La. App. 4 Cir. 2021) .................................................................................. 3

*Planned Parenthood Ctr. for Choice v. Abbott*,
    141 S. Ct. 1261 (2021) ........................................................................................................... 3

*Ricci v. DeStefano*,
    557 U.S. 557 (2009) ............................................................................................................... 4

*Shands Jacksonville Med. Ctr. v. Burwell*,
    139 F. Supp. 3d 240 (D.D.C. 2015) ..................................................................................... 12

*Stringer v. Whitley*,
    942 F.3d 715 (5th Cir. 2019) .................................................................................................. 9

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023) ................................................................................................. 4

*Town of Chester v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017) ................................................................................................. 4

*Trinity Indus., Inc. v. Martin*,
    963 F.2d 795 (5th Cir. 1992) .................................................................................. 5

*Trump v. Hawaii*
    138 S. Ct. 2392 (2018) ............................................................................................ 7

*United States v. Texas*,
    599 U.S. 670 (2023) ...................................................................................... 5, 6, 7, 9

*WildEarth Guardians v. U.S. Bureau of Land Mgmt.*,
    870 F.3d 1222 (10th Cir. 2017) .............................................................................. 7

*Womens Servs., P.C. v. Douglas*,
    653 F.2d 355 (8th Cir. 1981) .................................................................................. 3

**Statutes and Constitutional Provisions**

5 U.S.C. § 702 ..................................................................................................................... 9

5 U.S.C. § 706 ..................................................................................................................... 7

La. Const. of 1972, Art. 6, § 44(2) ..................................................................................... 3

La. Stat § 13:5102 ............................................................................................................... 3

La. Stat. § 49:662 ................................................................................................................ 3

**Regulations**

2 C.F.R. § 200.205 .............................................................................................................. 9

**Other Authorities**

2023 Office of Community Oriented Policing Services Program Community Policing Development Program Award Owner's Manual,
    https://cops.usdoj.gov/pdf/2023AwardDocs/cpd/AOM.pdf ....................................... 11

Civil Rights Requirements Associated with Office of Justice Programs Awards,
    https://www.ojp.gov/funding/explore/legaloverview2023/mandatorytermsconditions#21 .... 11

EPA External Civil Rights Docket,
    https://www.epa.gov/external-civil-rights/external-civil-rights-docket-2014-present ................ 10

EPA Guidance Documents,
    https://www.epa.gov/laws-regulations/epa-guidance-documents ............................................... 10

Federal Coordination and Compliance Section,
    https://www.justice.gov/crt/federal-coordination-and-compliance-section ................................. 12

Office of Community Oriented Policing Services Grants,
    https://cops.usdoj.gov/grants ........................................................................................... 11

Office of Justice Programs Civil Rights Requirements,
    https://www.ojp.gov/funding/explore/legaloverview2021/civilrightsrequirements .................. 11

Office of Justice Programs, Office for Civil Rights—Training for Grantees,
    https://www.ojp.gov/program/civil-rights/video-training-grantees/overview ........................... 12

Office of Violence Against Women Award Conditions,
    https://www.justice.gov/ovw/award-conditions ................................................................... 11

Office of Violence Against Women Grant Awards by State,
    https://www.justice.gov/ovw/awards/fy-2023-ovw-grant-awards-by-state ............................. 11

*Reply Brief for Petitioner, Haaland v. Brackeen, 21-376,*
    (Oct. 3, 2022), 2022 WL 5305089 ........................................................................................ 4

Searchable Map of Office of Justice Programs Awards Since FY2021,
    https://charts.ojp.usdoj.gov/t/public/views/OJPAwardsDashboardallFiscalYears/AwardsBySta
    te?%3Aembed=y&%3Aiid=2&%3AisGuestRedirectFromVizportal=y) ...................................... 11

Specific EPA Grant Programs,
    https://www.epa.gov/grants/specific-epa-grant-programs ..................................................... 10

## INTRODUCTION

Five months ago, this Court entered a preliminary injunction that granted the State of Louisiana comprehensive relief for all claims the Court did not dismiss. During the five months that injunction has been in place, the State has not once suggested that the injunction is insufficient to protect its interests. Nor has the State mustered any evidence of some new, emergent harm that would justify expanding the existing injunction. Accordingly, to conclude this case, the Court should enter a final judgment that makes permanent the preliminary relief it granted. That is a remedy with which, for purposes of this briefing, the parties agree. Nonetheless, the State now seeks to gratuitously expand the scope of the relief that this Court afforded at the preliminary injunction stage, and to vacate across the country the challenged regulations that have existed for over fifty years. And it asks the Court to take these drastic remedial measures to protect not its own interests, but rather the speculative interests of non-parties. Specifically, the State now asks the Court to: (1) expand the scope of its injunction to include not only the State and its agencies, but *all* entities—public and private alike—anywhere in Louisiana, and (2) universally vacate EPA's and DOJ's disparate-impact regulations.

These requests go far beyond remedying the State's asserted harms. Indeed, this Court's preliminary injunction was appropriately limited in scope to the lone Plaintiff—the State—and its own agencies. *See* Memorandum Ruling at 77, ECF No. 48 (finding cause for an injunction prohibiting imposition of enforcement of the complained-of regulations and requirements "against the State or any State agency" alone). And the State does not dispute that its proposed relief would be substantially broader than the preliminary injunction. Because a permanent injunction protecting the State and its

agencies from the complained-of regulations and requirements would fully remedy the State's asserted injuries, the Court should enter Defendants' proposed judgment.[1]

## ARGUMENT

**I.    A permanent injunction should not extend beyond the parties to this action.**

Under Article III, "a plaintiff's remedy must be 'limited to the inadequacy that produced [his] injury in fact.'" *Gill v. Whitford*, 585 U.S. 48, 66 (2018) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). Accordingly, to award complete relief to the State, this Court need do no more than enter Defendants' proposed injunction, which is attached to this brief.  That injunction would fully remedy the State's asserted injuries by permanently barring Defendants from applying their Title VI disparate-impact regulations or cumulative-impact-analysis requirements against the State of Louisiana and its agencies. On the other hand, the State's proposal for expansive equitable relief to benefit non-parties violates Article III limits on this Court's jurisdiction.  *Id.*; *see also Garrido v. Dudek*, 731 F.3d 1152, 1159 (11th Cir. 2013) ("It is axiomatic that '[i]njunctive relief should be limited in scope to the extent necessary to protect the interests of the parties.'").   Principles of equity reinforce that constitutional limitation. A federal court's authority is generally confined to the relief "traditionally accorded by courts of equity" in 1789.  *Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999); *see id.* at 318–19.  Such relief must "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).  For this reason, "neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs" that brought the action.  *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975).  And the Supreme Court recently underscored that "foundational rule" by staying a district court's injunction to the extent it applied to nonparties.

---

[1] For purposes of this briefing, and without waiving any arguments or rights on appeal, the parties agree that a permanent injunction prohibiting enforcement of Defendants' disparate-impact regulations should issue.

*Labrador v. Poe*, 144 S. Ct. 921, 927 (2024) (Gorsuch, J., concurring in the grant of stay); *see id.* at 931, 933 n.4 (Kavanaugh, J., concurring in the grant of stay).

The State of Louisiana is the only plaintiff in this action, and it therefore cannot obtain relief intended to benefit non-parties. Private entities are not proper beneficiaries of any judicial relief here. Similarly, Louisiana's political subdivisions, such as parishes and municipalities, are not part of the State and should not benefit from permanent injunctive relief in this case, just as they did not benefit from the preliminary injunction. La. Stat § 13:5102 (defining "political subdivisions" as distinct from "state agencies"); La. Stat. § 49:662 (similar); *see also Charter Sch. of Pine Grove, Inc. v. St. Helena Par. Sch. Bd.*, 9 So. 3d 209, 220 (La. App. 1 Cir. 2009) ("Many provisions of the constitution and revised statutes contain definitions that differentiate between state agencies and political subdivisions, such as local school boards."); *Phillips v. Louisiana Stadium & Exposition Dist.*, 332 So. 3d 779, 782 (La. App. 4 Cir. 2021) ("A political subdivision is distinct from a state agency and is defined as 'a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions.'") (citing La. Const. of 1972, Art. 6, § 44(2)); ECF No. 51, Defs.' Notice of Compliance ¶ 5.

Accordingly, this Court should not enjoin Defendants from applying the challenged regulatory requirements to non-State recipients of federal funding, including private entities and political subdivisions. *Doran*, 422 U.S. at 931; *see also McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) ("The fundamental problem with this injunction is that plaintiffs lack standing to seek—and the district court therefore lacks authority to grant—relief that benefits third parties."); *Womens Servs., P.C. v. Douglas*, 653 F.2d 355, 359 (8th Cir. 1981) ("If the federal plaintiffs . . . obtain preliminary injunctive relief from the district court on remand, the protection afforded will apply only to the federal plaintiffs."). As the Fifth Circuit explained when granting a writ of mandamus in *In re Abbott*, 954 F.3d 772 (5th Cir. 2020), *cert. granted, judgment vacated on unrelated grounds sub nom. Planned Parenthood Ctr.*

3

*for Choice v. Abbott*, 141 S. Ct. 1261, (2021), district courts "lack[] authority to enjoin enforcement of [challenged statutes] as to anyone other than the named plaintiffs." *Id.* at 786 n.19.

The State argues that a broader injunction is necessary to avert "the chance" that Defendants' disparate-impact regulations would compel non-State funding recipients to engage in intentional discrimination. ECF No. 58, Plaintiff's Memorandum in Support of Permanent Relief ("Br.") at 7. But the disparate-impact regulations do not require race-based actions. Indeed, a funding recipient may address racial disparities by taking race-*neutral* actions. *See, e.g., Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 284 (2023) (Thomas, J., concurring); *id.* at 300 (Gorsuch, J., concurring). And while the State cites the concurring opinion in *Ricci v. DeStefano*, 557 U.S. 557, 594 (2009) (Scalia, J., concurring), the *majority* opinion in *Ricci* did not question, in the context of Title VII, "an employer's affirmative efforts to ensure that all groups have a fair opportunity" to participate in the relevant employment practice. 557 U.S. at 585. The Court there set forth a specific standard governing the rare circumstance in which "the purpose to avoid disparate-impact liability excuses what otherwise would be prohibited disparate-treatment discrimination." *See id.* at 580, 585 (articulating the strong-basis-in-evidence standard for Title VII).

The State's arguments cannot justify relief in favor of non-parties. For one, the Supreme Court has soundly rejected similar attempts to establish an injury based on an alleged conflict between federal statutory requirements and a state's commitment to antidiscrimination. *See Haaland v. Brackeen*, 599 U.S. 255, 294–95 (2023). Like Louisiana here, the State of Texas in *Brackeen* asserted a conflict between a federal statutory requirement and a state constitutional provision prohibiting discrimination. Reply Brief for Petitioner, *Haaland v. Brackeen*, 21-376, at 15 (Oct. 3, 2022), 2022 WL 5305089. The Supreme Court concluded that these alleged conflicts are "not the kind of 'concrete' and 'particularized' 'invasion of a legally protected interest' necessary to demonstrate an 'injury in fact.'" 599 U.S. at 295. *Brackeen* controls. Just as Texas lacked a cognizable injury flowing from an

4

alleged conflict with its own state laws, Louisiana's alleged interest in the application of its antidiscrimination laws is insufficient to justify statewide relief ranging beyond the parties before the Court because a party must demonstrate "standing . . . for each form of relief sought," *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017).

But even if such a conflict were a cognizable injury for which the State could seek relief, the State has failed to establish the existence of an actual conflict here. "As the Fifth Circuit has stated, a violation of state law does not become an injury" sufficient to warrant relief "until a state brings an enforcement action against the violator to bring the violator into compliance, and the violator or another entity hinders the State from doing so." *Mississippi v. Becerra*, --- F. Supp. 3d ----, No. 1:22-cv-113-HSO-RPM, 2024 WL 1335084, at *16 (S.D. Miss. Mar. 28, 2024) (citing *Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765, 770 (5th Cir. 2023)). Here, the State offers no evidence that any non-State funding recipient has even violated state law by implementing or complying with Defendants' disparate-impact regulations, much less that the State has brought an enforcement action to bring that non-State funding recipient into compliance and that the violator has asserted the challenged regulations as a bar to doing so.

Instead, the State hypothesizes that an unspecified non-State federal grant recipient may in the future, when "faced [with] a choice between complying with Defendants' Title VI disparate-impact regulations and Louisiana law," be compelled to follow the former under preemption principles. Br. 7-8. But that type of "speculative chain of possibilities," *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 414 (2013), is no basis to award statewide relief to entities not before this Court, *see Gill*, 585 U.S. at 66; *see also Trinity Indus., Inc. v. Martin*, 963 F.2d 795, 799 (5th Cir. 1992) ("The possibility, that maybe, in the future, if a series of events occur, [plaintiff] might suffer some injury is clearly too impalpable").[2]

---

[2] *Louisiana v. Becerra*, 20 F.4th 260 (5th Cir. 2021) is not to the contrary. In that case, the plaintiff States asserted a *parens patriae* injury in the form of harm to all their citizens "being required to submit to

Finally, the State argues that a "statewide injunction is particularly appropriate given EPA's proclivity for making demands (such as the Extra-Regulatory Requirements) in informal negotiations." Br. 8. But an injunction that prevents the issuance of such demands against the State is sufficient to prevent the only injuries remediable in this action—those suffered by the State itself. And where "party-specific relief can adequately protect the plaintiff's interests," entering "broader relief is an abuse of discretion." *United States v. Texas*, 599 U.S. 670, 693–94 (2023) (Gorsuch, J., concurring); *id.* ("[W]hen a federal court finds a remedy merited, it provides party-specific relief, directing the defendant to take or not take some action relative to the plaintiff. If the court's remedial order affects nonparties, it does so only incidentally."). In any event, even if the State could vindicate the rights of non-State entities, it has not adduced any evidence of unlawful demands made against non-State entities, and therefore has not shown that those entities have suffered any injury necessary to obtain relief, *see Gill*, 585 U.S. at 66.

Accordingly, relief in this case should be limited to a permanent injunction protecting Plaintiff, the State of Louisiana, and its state agencies as defined under state law.

---

vaccinations" that required statewide relief. *Louisiana v. Becerra*, 571 F. Supp. 3d 516, 530 (W.D. La. 2021), *vacated and remanded*, No. 21-30734, 2022 WL 2116002 (5th Cir. June 13, 2022). Louisiana asserts no such injury here, and could not do so in light the Supreme Court's intervening decision in *Brackeen*, which emphasized the "settled rule" that states cannot assert antidiscrimination interests "on behalf of [their] citizens because 'a State does not have standing as parens patriae to bring an action against the Federal Government.'" 599 U.S. at 294–95. *City & Cnty. of San Francisco v. U.S. Citizenship & Immigration Services* is inapposite because the state plaintiffs in that case "had shown that they would likely suffer economic harm and other costs" if the challenged rule were enforced against anyone in their states. 981 F.3d 742, 754 (9th Cir. 2020). Louisiana has not shown here that it would incur any costs if the challenged disparate-impact requirements were imposed on non-State entities, and in any event the Supreme Court recently warned against allowing States to challenge federal actions based on such indirect effects on the States' own expenditures. *See Texas*, 599 U.S. at 680 n.3 (emphasizing that "federal courts must remain mindful of bedrock Article III constraints in cases brought by States against an executive agency or officer," and noting that a "State's claim for standing can become more attenuated" when it rests on the "indirect effects" of a federal program or policy "on state revenues or state spending").

6

**II. This Court need not and should not vacate Defendants' disparate-impact regulations, and certainly should not do so universally.**

Having already determined to enjoin EPA and DOJ from enforcing their Title VI disparate-impact regulations against the State of Louisiana, this Court should not take the further step of vacating those regulations for all purposes throughout the entire United States. Defendants' proposed permanent injunction will suffice "to provide complete relief" to the State, *Califano*, 442 U.S. at 702, and "adequately protect[s]" its interests, *Texas*, 599 U.S. at 703 (2023) (Gorsuch, J., concurring). There is thus no need to go further, and, indeed, in such circumstances, entering "broader relief is an abuse of discretion." *Id.*[3]

As the basis for its requested universal vacatur remedy, Plaintiff points to Fifth Circuit precedent relying on the language in 5 U.S.C. § 706(2), which obligates a court reviewing an APA challenge to "hold unlawful and set aside" agency action that is, among other things, found to be not in accordance with law. Defendants here preserve the argument that § 706(2) does not authorize *any* particular form of relief; it merely directs a reviewing court to disregard any "agency action, findings, and conclusions" that it finds unlawful when resolving an individual APA challenge. *See United States v. Texas*, No. 22-58, Br. for Petitioners at 39–44. Moreover, traditional principles of equity are counter to awarding the sweeping relief of universal vacatur. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2427 (2018) (Thomas, J., concurring) (explaining that English and early American "courts of equity" typically "did not provide relief beyond the parties to the case"). When Congress adopted the "unremarkable" "set

---

[3] The State argues that "[v]acatur is a 'less drastic remedy' than injunctive relief." Br. 2 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)). Not so here because universal vacatur would preclude Defendants from imposing or enforcing disparate-impact requirements under Title VI against *any* entity *anywhere* in the United States, while the far more limited injunctive relief that the State seeks would prevent imposition or enforcement of the challenged regulations only within the state of Louisiana. *See WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 870 F.3d 1222, 1240 (10th Cir. 2017) (declining to vacate entire challenged agency actions where "narrower form of injunctive relief" could be adequate to remedy harm). *Monsanto* is not to the contrary because the injunction and vacatur overlapped entirely in that case. 561 U.S. at 165 ("the District Court's injunction against planting does not have any meaningful practical effect independent of its vacatur…").

7

aside" language in § 706(2), there is no reason to think it "meant to upset the bedrock practice of case-by-case judgments with respect to the parties in each case." *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring); *see also California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (explaining that remedies "ordinarily 'operate with respect to specific parties,'" rather than "'on legal rules in the abstract'" (citation omitted)).

Defendants recognize that the Fifth Circuit has characterized vacatur as the "default" remedy under the APA. *Data Marketing Partnership, LP v. U.S. Department of Labor*, 45 F.4th 846, 859-60 (5th Cir. 2022). But that default remedy is neither always required nor appropriate here. Just this March, for example, a district court in the Fifth Circuit refused to vacate agency regulations implementing a statutory provision that the court found unconstitutional, and instead enjoined the agency from enforcing that provision. *Nuziard v. Minority Bus. Dev. Agency*, --- F.Supp.3d ---, No. 4:23-cv-00278, 2024 WL 965299, at *42 (N.D. Tex. Mar. 5, 2024). In doing so, that court chose to "exercis[e] its equitable discretion to decline a remedy with nebulous authority in favor of remedies with clear authority." *Id.* The same relief should issue here: because a permanent injunction against enforcement of the challenged regulations would fully remedy the State's injuries, this Court should not unnecessarily vacate those regulations. *Id.* ("If the Court enjoins enforcement of the MBDA's implementing regulations, what more than a moral victory is vacatur? If the Court vacates them, how can it then enjoin enforcement of legally void regulations? The Court declines to invite such chaotic implementation of its orders here."); *Califano*, 442 U.S. at 702.

In any event, the Fifth Circuit has made clear that even in those cases where vacatur is an appropriate remedy, a court need not *universally* vacate the challenged agency action as the State requests here. Indeed, the Fifth Circuit has on multiple occasions after deciding *Data Marketing Partnership* rejected universal vacatur under the APA. *See, e.g.*, *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc) (plurality opinion) (concluding without contradiction from any other member of

8

the court that the district court could consider on remand "a more limited remedy" than universal vacatur, and instructing the district court to "determine what remedy . . . is appropriate to effectuate" the judgment), *cert. granted*, 144 S. Ct. 374 (2023); *id.* (recognizing that "'[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury'"); *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374–75, 375 n.29 (5th Cir. 2022) (stating that "[v]acatur is the only statutorily prescribed remedy for a successful APA challenge," but not suggesting that universal vacatur is mandatory, and acknowledging circumstances where courts do not vacate successfully challenged actions); *see also Cent. & S.W. Servs., Inc. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000) (declining to enter vacatur in favor of remand).

Following these precedents and declining to vacate on a universal basis Defendants' disparate-impact regulations under the guise of a "default rule" also accords with Congress's explicit reservation in the APA of "the power or duty of the court to . . . deny relief on any . . . equitable ground." 5 U.S.C. § 702(1). It is a basic jurisprudential maxim that a judicial "'remedy must . . . be limited to the inadequacy that produced the injury in fact that the plaintiff has established.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (citation omitted). Because this case involves only one plaintiff—the State of Louisiana—the Court must "limit relief only to [that] part[y]"—which Defendants in this posture agree it may do by way of permanent injunction. *Kentucky v. Yellen*, 54 F.4th 325, 341 n.12 (6th Cir. 2022); *see Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) ("The redressability requirement [of Article III standing] limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries."). Principles of equity reinforce that jurisdictional limitation: Equitable relief may "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano*, 442 U.S. at 702. Accordingly, courts should "think twice—and perhaps twice again—before granting such sweeping relief" as universal vacatur. *Texas*, 599 U.S. at 702 (Gorsuch, J., concurring in the judgment) (citation and internal quotation marks omitted). Plaintiff has not shown how the permanent injunction set forth in the proposed judgment fails to provide complete

9

relief.[4]

On the other side of the ledger, both EPA and DOJ would be needlessly prejudiced by universal vacatur of their disparate-impact regulations. As to EPA, contrary to Plaintiff's claim of minimal impact, universal vacatur would create substantial uncertainty for EPA and external stakeholders, and have serious resource implications for EPA work agency-wide. For example, universal vacatur would potentially impact over seventy cases in various stages of the complaint-handling process, none of which involve the State of Louisiana. In addition, EPA's nineteen program offices collectively administer 126 grant programs, providing billions of dollars to state and non-state recipients. Universal vacatur would require EPA to review hundreds of guidance documents for their continued applicability to all recipients, and to ensure recipients are receiving clear and current information. Along with the impact on guidance documents, universal vacatur would require EPA to examine the terms and conditions for thousands of existing grants and thousands more that are in process or will be processed this fiscal year. Furthermore, EPA would have to immediately review guidance documents from multiple offices across EPA, some of which are under court deadlines for completion, to determine which, if any, would be affected by universal vacatur. *See generally* EPA External Civil Rights Docket, https://www.epa.gov/external-civil-rights/external-civil-rights-docket-2014-present; Specific EPA Grant Programs, https://www.epa.gov/grants/specific-epa-grant-

---

[4] Plaintiff's suggestion (Br. 5–6) that Defendants will "steer grants" to states other than Louisiana such that Louisiana will incur funding losses is pure speculation. Defendants are aware of no discretionary criterion to approve or deny a funding grant based on whether a regulation applies to one prospective entity but not another, and Plaintiff identifies no such criterion. Rather, applicable regulations require "an objective process of evaluating Federal award applications in accordance with written standards set forth by the Federal awarding agency," and the selection of "recipients most likely to be successful in delivering results based on the program objectives." 2 C.F.R. § 200.205. And it is irrelevant that Defendant EPA settled Title VI matters with two other States while this case was pending. *See* Br. 6. If anything, Plaintiff's reference to these out-of-state cases betrays that it is seeking relief on behalf of parties not before the Court and whose alleged injuries are entirely hypothetical.

10

programs; EPA Guidance Documents, https://www.epa.gov/laws-regulations/epa-guidance-documents.

Notably, insofar as Plaintiff asserts a lack of disruption from universal vacatur, it addresses only an alleged lack of disruption to EPA, and does not address any potential harms to DOJ. But each year DOJ distributes billions of dollars in federal financial assistance, mostly in the form of grants, to thousands of recipients, in every state. Components across DOJ, including the Office of Justice Programs, the Office of Community Oriented Policing Services, the Office of Violence Against Women, and the Civil Rights Division, engage in Title VI compliance activities based on DOJ's existing Title VI regulatory scheme. These activities include entering into contractual grant terms and conditions, pre- and post-award compliance reviews, technical assistance to recipients, training and public education, maintenance of a robust library of Title VI education materials, voluntary resolution agreements, investigations, and litigation. It would be incredibly onerous to rewrite decades of guidance and technical assistance documents that discuss both the disparate impact and discriminatory intent standards. In addition to the impact on guidance documents, universal vacatur would require DOJ to examine the terms and conditions for thousands of existing grants and thousands more that are in process or will be processed this fiscal year. It strains credulity that universal vacatur of a fifty-year-old regulation would not cause substantial disruption to DOJ's Title VI activities.[5]

---

[5] *See generally* Searchable Map of Office of Justice Programs Awards Since FY2021, https://charts.ojp.usdoj.gov/t/public/views/OJPAwardsDashboardallFiscalYears/AwardsByState?%3Aembed=y&%3Aiid=2&%3AisGuestRedirectFromVizportal=y); Office of Violence Against Women Grant Awards by State, https://www.justice.gov/ovw/awards/fy-2023-ovw-grant-awards-by-state (since fiscal year 2005); Office of Community Oriented Policing Services Grants, https://cops.usdoj.gov/grants (2023 awards); https://www.ojp.gov/funding/explore/legaloverview2021/civilrightsrequirements (Office of Justice Programs Civil Rights Requirements); Civil Rights Requirements Associated with Office of Justice Programs Awards, https://www.ojp.gov/funding/explore/legaloverview2023/mandatorytermsconditions#21; Office of Violence Against Women Award Conditions, https://www.justice.gov/ovw/award-conditions (*see* "General Terms and Conditions"); 2023 Office of Community Oriented Policing Services Program Community Policing Development Program Award Owner's Manual,

Given the permanent injunction that the parties for present purposes agree can issue here, there is no need for this Court to vacate Defendants' regulations and disrupt EPA's and DOJ's Title VI efforts on a nationwide scale.

If the Court awards relief beyond an injunction, it should do no more than remand the regulations to the agencies for further consideration in light of the Court's opinion. *Cent. & S. W. Servs., Inc.*, 220 F.3d at 692 (remanding without vacatur in light of "disruptive" consequences of vacatur); *N. New Mexico Stockman's Ass'n v. U.S. Fish & Wildlife Serv.*, 494 F. Supp. 3d 850, 1032 (D.N.M. 2020), *aff'd*, 30 F.4th 1210 (10th Cir. 2022) (vacatur an inappropriate remedy where it would pose "disruptive consequences" to the agency and regulated entities). Plaintiff's speculation that Defendants on remand would be unable to craft regulatory provisions that survive judicial scrutiny misunderstands the purposes of a remand. On remand, EPA and DOJ—which possess relative expertise on their own regulations—may consider ways to craft the regulations so as to conform to the Court's ruling, otherwise limit the reach of those regulations, or even withdraw those regulations altogether. Any of those outcomes are preferable to the judicially imposed remedy of universal vacatur. In any event, the significant disruption that vacatur would cause is on its own sufficient basis to remand. *Shands Jacksonville Med. Ctr. v. Burwell*, 139 F. Supp. 3d 240, 270 (D.D.C. 2015) ("There is no rule requiring either the proponent or opponent of vacatur to prevail on both factors.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter a permanent injunction limited to the State of Louisiana and its agencies, decline to vacate Defendants' disparate-impact regulations, and enter the attached proposed judgment.

---

https://cops.usdoj.gov/pdf/2023AwardDocs/cpd/AOM.pdf ("Federal Civil Rights" condition at p. 23); Office of Justice Programs, Office for Civil Rights—Training for Grantees, https://www.ojp.gov/program/civil-rights/video-training-grantees/overview; Civil Rights Division, Federal Coordination and Compliance Section, https://www.justice.gov/crt/federal-coordination-and-compliance-section (DOJ Title VI guidance, resource, and training materials).

Dated: May 14, 2024

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

CHRISTINE STONEMAN
Chief, Federal Coordination and
Compliance Section

DARIA NEAL
Deputy Chief, Federal Coordination and
Compliance Section

/s/ *Katharine F. Towt*
KATHARINE F. TOWT (MA Bar No. 690461)
Attorney
U.S. Department of Justice
Civil Rights Division, Federal Coordination and
Compliance Section
950 Pennsylvania Avenue NW – 4CON
Washington, DC 20530
Phone: (202) 353-5054
Email: katie.towt@usdoj.gov

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

BRANDON B. BROWN
United States Attorney

KAREN J. KING
Assistant United States Attorney

JOSHUA E. GARDNER
Special Counsel, Federal Programs Branch

/s/ *M. Andrew Zee*
M. ANDREW ZEE (CA Bar No. 272510)
ALEXANDER W. RESAR
ANDREW J. RISING
Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Phone: (415) 436-6646
Email:   m.andrew.zee@usdoj.gov


*Attorneys for Defendants*

13