IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| THE STATE OF LOUISIANA, By and through its Attorney General, Liz Murrill, <br><br> PLAINTIFF, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; et al., <br><br> DEFENDANTS. | CIVIL ACTION NO. 2:23-cv-00692 |

**STATE'S REPLY BRIEF IN SUPPORT OF VACATUR AND PERMANENT INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................................ii

INTRODUCTION ..................................................................................................................................1

ARGUMENT............................................................................................................................................2

    I.    THIS COURT SHOULD VACATE THE ILLEGAL REGULATIONS
         CHALLENGED HERE...................................................................................................2

        A.    Vacatur Is Not Only A Permissible Remedy—It Is The "Default Rule"
            For APA Cases. .............................................................................................................2

        B.    Defendants' Forfeitures Alone Require Vacatur Of The
            Challenged Disparate-Impact Regulations. ........................................................3

        C.    A Vacatur Is Warranted Here. ................................................................................4

        D.    The State Consents To A 60-Day Delay Of Vacatur To
            Minimize Disruptions. ..............................................................................................7

    II.    ARTICLE III STANDING PRINCIPLES DO NOT PRECLUDE THE
         STATE'S REQUESTED INJUNCTIVE RELIEF .......................................................8

CONCLUSION......................................................................................................................................10

i

## TABLE OF AUTHORITIES

**CASES**

*Adray v. Adry-Mart, Inc.*,
   76 F.3d 984 (9th Cir. 1995)..........................................................................................7

*Alliance for Hippocratic Med. v. FDA*,
   78 F.4th 210 (5th Cir. 2023) *cert. granted* 144 S. Ct. 537 (2023) ...............................4

*Biden v. Nebraska*,
   600 U.S. 477 (2023).....................................................................................................8

*BST Holdings, L.L.C. v. OSHA*,
   17 F.4th 604 (5th Cir. 2021).........................................................................................8

*Data Marketing Partnership, LP v. DOL*,
   45 F.4th 846 (5th Cir. 2022)................................................................................. 1, 2, 3

*Dayton Bd. of Ed. v. Brinkman*,
   433 U.S. 406 (1977).....................................................................................................9

*El Paso Cty. v. Trump*,
   982 F.3d 332 (5th Cir. 2020).......................................................................................9

*In re Core Communs., Inc.*,
   531 F.3d 849 (D. Cir. 2008).........................................................................................7

*Lewis v. Casey*,
   518 U.S. 343 (1996).....................................................................................................9

*Louisiana v. Becerra*,
   20 F.4th 260 (5th Cir. 2021).......................................................................................10

*Milk Train, Inc. v. Veneman*,
   310 F.3d 747 (D.C. Cir. 2002).....................................................................................5

*Mock v. Garland*,
   75 F.4th 563 (5th Cir. 2023).........................................................................................9

*Nebraska HHS v. HHS*,
   435 F.3d 326 (D.C. Cir. 2006).....................................................................................8

*NFIB v. DOL, OSHA*,
   595 U.S. 109 (2022).....................................................................................................8

*NRDC v. EPA*,
   489 F.3d 1250 (D.C. Cir. 2007)............................................................................. 4, 5

*Sugar Cane Growers Coop. of Fla. v. Veneman*,
   289 F.3d 89 (2002) .......................................................................................................5

*Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*,
   673 F.3d 399 (5th Cir. 2012).....................................................................................10

*Texas v. Biden*,
   20 F.4th 928 (5th Cir. 2021) *abrogated on other grounds* 142 S. Ct. 2528 (2022) ......4

*Texas v. United States*,
   50 F.4th 498 (5th Cir. 2022)................................................................................... 4, 9

*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2015) *aff'd by equally divided court* 136 S.Ct. 2271 (2016) ................................ 8, 9

*Winter v. NRDC*,
   555 U.S. 7 (2008) ............................................................................................................................. 4

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. III, § 1 .......................................................................................................................... 9

**INTRODUCTION**

The remedial issues presented here can largely be resolved by Defendants' forfeitures and concessions alone. Defendants' opposition ignores *fully half* of the governing standard for withholding or limiting vacatur. They thus offer this Court no genuine argument as to why vacatur of the challenged disparate-impact rules is unwarranted here when *both parts* of the two-part standard are considered. Specifically, Defendants ignore *completely* the "the seriousness of the deficiencies of the action" factor and *never* contest the State's contention that "[t]he defects in Defendants' disparate-impact regulations are irredeemable" under Title VI. *See* Mot. (Doc. 58) at 4. Defendants' forfeitures are thus effectively dispositive here and fully sufficient to resolve the vacatur issues presented.

Waivers aside, this case presents no reason to depart from "the *default rule*"—"that vacatur is the appropriate remedy." *Data Marketing Partnership, LP v. DOL*, 45 F.4th 846, 859 (5th Cir. 2022) (emphasis added) (citations omitted). Here the "disruptive consequences" that Defendants posit—*i.e.*, the only half of the two-part test they deign to address—appear largely to consist of their inability to continue to enforce *indefinitely* disparate-impact regulations that this Court has held violate both Title VI and the Constitution. The same cries of "disruption" could be (and often are) raised any time a court considers vacating unlawful regulations—yet "the default rule" continues to be that "vacatur is the appropriate remedy." *Id.* Contrary to Defendants' contention (at 10) that they would "be needlessly prejudiced" by a vacatur, their general inability to inflict unlawful and unconstitutional mandates on others is not cognizable "prejudice" at all. That is merely the rule of law at play, reflected in the *default rule* of the APA that an unlawful regulation is simply vacated. Nonetheless, to permit Defendants time to unwind their unlawful regulations or appeal/seek a stay in an orderly manner, the State consents to a 60-day delay of any vacatur to ameliorate any potential concerns about near-term disruptions.

Because the State *agrees* that a statewide injunction is unnecessary if this Court vacates the challenged regulations, this Court can avoid the injunctive-relief issues entirely simply by enforcing

1

the APA's/Fifth Circuit's "default rule" here. But if this Court reaches the injunctive-relief questions, it should grant the State's requested statewide injunction. Defendants' opposition is largely premised on their contention (at 2) that "equitable relief to benefit non-parties violates Article III limits on this Court's jurisdiction." But both the Supreme Court and Fifth Circuit have held otherwise.

This Court should thus follow the "default rule" and simply vacate Defendants' unlawful regulations, with a 60-day delay of the effective date. In doing so, this Court can avoid the need to engage with any of the injunctive relief issues presented. But if this Court does not grant a vacatur, it should enter the State's requested statewide injunction.

## ARGUMENT

### I. THIS COURT SHOULD VACATE THE ILLEGAL REGULATIONS CHALLENGED HERE

#### A. Vacatur Is Not Only A Permissible Remedy—It Is The "Default Rule" For APA Cases

Defendants' opposition to vacatur is overwhelmingly based not on the law as it exists today in the Fifth Circuit, but rather their wish-casted version of what it might be in the future. Defendants are welcome to ask the Supreme Court and Fifth Circuit to change the governing law to match their preferred vision of it. But under the precedent that binds this Court *today*, their arguments are not only unavailing but also likely not within the bounds of Rule 11.

Defendants repeatedly insinuate that there is something untoward and impermissible about "universal" vacaturs—a puzzling attempt at a pejorative that they deploy nearly twenty times. But despite their table-pounding repetition of "universal" as suggesting something improper, it is nothing more than redundant verbiage. By their very nature, *all* vacaturs are universal absent some unique limitation. "Universal" in "universal vacatur" thus adds as much meaning as "binding" in "binding injunction"—*i.e.*, none. "Universal" is simply a foundational feature of every ordinary vacatur.

Despite Defendants' clear antipathy for "universal vacaturs," the "default rule" nonetheless continues to be that "vacatur is the appropriate remedy" in APA cases. *Data Marketing*, 45 F.4th at

2

859. And while Defendants at times pay lip service to that premise (at 8-9), they repeatedly slip into arguments that flout that binding precedent. In particular, Defendants advance the astonishing claim that vacatur is *prohibited* here because "this case involves only one plaintiff … [and thus] the Court must limit relief only to that party." Opp. at 9 (cleaned up) (vacatur argument).[1] In Defendants' view, vacatur is apparently an illegal remedy without a nationwide class. But Fifth Circuit precedent is *directly* to the contrary: vacatur—in its everyday "universal" form—is not only a *permissible* remedy under the APA, but in fact the *default rule*. *Data Marketing*, 45 F.4th at 859. Defendants' vacatur arguments thus depart from binding precedent so severely that the *default rule* has somehow been transmuted into being *categorically unlawful*.[2] Defendants are wrong, and vacatur is the proper remedy here.

### B. Defendants' Forfeitures Alone Require Vacatur Of The Challenged Disparate-Impact Regulations

When Defendants actually confront the vacatur standard on its own terms, their forfeitures alone confirm that vacatur is proper. Defendants do not ultimately deny that vacatur is the "default" remedy and that it is *their burden* to demonstrate that a limited vacatur or remand without vacatur is warranted. *See* Mot. at 3. Defendants further do not dispute that the Fifth Circuit follows the D.C.

---

[1] Defendants tellingly do not cite a single instance in which any court *anywhere* has ever entered a single-party-only vacatur.

[2] Eschewing meaningful engagement with the Fifth Circuit precedent as it actually exists today, Defendants project (at 7, 9) views from concurrences from Justices Thomas and Gorsuch onto the full Court as if they were the governing law—rather than the *legion* of contrary Fifth (and D.C.) Circuit precedent that recognizes not only the *permissibility* of general vacaturs but the *presumptive appropriateness* of granting them. And even if the views of individual Justices were relevant here, Defendants omit Chief Justice Robert's reaction to these same "fairly radical" arguments: "you know, with those of us who were on the D.C. Circuit, you know, five times before breakfast, that's what you do [*i.e.*, grant 'universal' vacatur] in an APA case." *See* Oral Arg. Tr. at 35, *United States v. Texas*, No. 22-58 (Nov. 29, 2022) *available at* https://shorturl.at/yab43. Or Justice Kavanaugh's observation: that this is "a pretty extreme argument," "a pretty radical rewrite, as the Chief Justice says, of what's been standard administrative law practice" and that "*no case has ever said what you're saying anywhere.*" *Id.* at 54-55 (emphasis added). Or Justice Jackson, who "just d[id]n't even understand" the United States' vacatur argument (now regurgitated here) that would "allow the agency to apply its void, defective rule to anyone else who's not the plaintiff." *Id.* at 67-68.

3

Circuit's standard for evaluating whether a remand without vacatur is appropriate: The "test for whether vacatur is appropriate considers two factors: '(1) the seriousness of the deficiencies of the action, that is, how likely it is the agency will be able to justify its decision on remand; and (2) the disruptive consequences of vacatur.'" *Texas v. Biden*, 20 F.4th 928, 1000 (5th Cir. 2021) *abrogated on other grounds* 142 S. Ct. 2528 (2022) (citation omitted).

But although EPA concedes that the two-part test governs this Court's vacatur inquiry, they remarkably *ignore fully one half of the test*. And establishing that first factor is *an essential requirement* if federal defendants wish to avoid vacatur: "Given that presumption [that vacatur should issue], remand without vacatur is appropriate *only if 'there is at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so.'" Alliance for Hippocratic Med. v. FDA*, 78 F.4th 210, 255 (5th Cir. 2023) *cert. granted* 144 S. Ct. 537 (2023) (quoting *Texas v. United States*, 50 F.4th 498, 529 (5th Cir. 2022)) (emphasis added). "[O]nly if" means just that: without satisfying that requirement, vacatur is *mandatory*. *Id.* Yet Defendants ignore this factor entirely—*never* contesting the State's (indisputable) point that the defects in their disparate-impact regulations are irremediable, *see* Mot. at 4.

Consider also the mirror-image scenario if the shoe were on the other foot. To obtain injunctive relief, plaintiffs must satisfy *all four factors* of the four-factor test. *See, e.g., Winter v. NRDC*, 555 U.S. 7, 20 (2008). If, for example, the State had not even attempted to argue that it was likely to suffer irreparable harm, federal defendants would not hesitate for a second to argue—correctly—that injunctive relief was absolutely barred. *Id.* But here the burden was on Defendants under a two-part test if they wished to obtain a limited-or-no vacatur. And yet they did not even *attempt* to satisfy their burden on *fully half* of the governing *two-part* test. That forfeiture is fatal here.

### C.  A Vacatur Is Warranted Here

Even assuming the Defendants' one-part "disruptive consequences" test were the entirety of Defendants' burden to avoid the "default rule" of vacatur (*but see supra* § I.B.), Defendants still fail to

4

establish that a remand without vacatur is warranted here.

Defendants do not identify any uniquely "disruptive consequences" here. Instead, they point (at 10-11) to tasks like the need to update guidance—which is true of virtually *every* instance in which vacatur is sought. It is important to remember that withholding vacatur "is, in effect, an indefinite stay of the effectiveness of the court's decision and agencies naturally treat it as such." *NRDC v. EPA*, 489 F.3d 1250, 1262-64 (D.C. Cir. 2007) (Randolph, J., concurring). Such an indefinite stay is precisely what Defendants are seeking here. In claiming "disruptive consequences," therefore, Defendants are effectively admitting that they intend to *ignore completely* this Court's decision in the 49 other States, where (in Defendants' view) this Court's decision is a complete nullity.

In addition, Defendants' generalized inability to enforce *unlawful* regulations is not the sort of "disruptive consequences" that justify withholding or limiting vacatur. Instead, the "disruptive consequences" factor ordinarily is satisfied only where there are particularized short-term consequences beyond a general inability to enforce illegal rules, such as where USDA "had improperly disbursed large quantities of sugar to farmers across the country, who in turn had already plowed under their crops" in reliance. *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 756 (D.C. Cir. 2002). And even those significant reliance interests justified withholding vacatur only because—unlike here— "there [wa]s at least 'a serious possibility' that the Secretary on remand could explain her use of the 1999 funds [was] … consistent with the statute." *Id.* (citation omitted); *accord Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 97 (2002) (withholding vacatur where "crops were [already] plowed under. The egg has been scrambled and there is no apparent way to restore the status quo ante.").

Unlike those cases, here Defendants' claimed "disruptive consequences" largely consist of Defendants' inability to enforce *forever* their regulations that this Court held were manifestly unlawful. Vacating such illegal regulations are not the sort of "disruptive consequences" or cognizable injury that justify withholding vacatur. They are instead the ordinary consequences of the rule of law at work.

5

Defendants' "disruptive consequences" arguments also simply ignore entirely that EPA stopped enforcing its disparate-impact regulations for more than a year and, like the proverbial tree falling in the woods, no one took apparent notice. *See* Mot. at 5. Defendants' sky-is-falling contentions are thus refuted by the fact that EPA effectively self-vacated its disparate-impact regulations for 13 months without any apparent disruptive consequences to speak of.

Vacatur is further warranted because Defendants may otherwise steer grants preferentially to other States where grants still bring recipients under Defendants' disparate-impact mandate. While Defendants suggest (at 10 n.4) that these concerns are speculative, they tellingly *do not disavow* their intent to engage in such conduct going forward—let alone provide any binding assurance that they would not do so. And while Defendants point (at 10 n.4) to regulations that provide that grants should be based on "delivering results based on the program objectives," they never bother to deny that they could deem compliance with Defendants' disparate-impact regulations as precisely one of those "program objectives"—and thereby discriminate in favor of other States based on the very regulation that Defendants now claim would protect Louisiana.

Moreover, Defendants' warped priorities demonstrate that the State's concerns are well-founded. As explained previously, Defendants' "environmental justice" agenda has such bizarre objectives that (1) EPA went after the State for granting permits that *reduced* air emissions and produced *disparate environmental benefits* and (2) DOJ prevented Alabama from enforcing state laws against *illegal sewer discharges* in a majority-Black county, thereby subjecting those residents to disparate environmental burdens. *See* Doc. 34 at 16 & n.8.

More inexplicable decisions have followed since this Court issued a preliminary injunction. Notably, EPA awarded *$50 million* in "Environmental Justice" grants to Climate Justice Alliance, a group that (1) declares (somehow) that "Palestine is a Climate Justice Issue," and (2) through its member Grassroots Global Justice Alliance, "has helped organize illegal anti-Israel protests in the

6

Capitol rotunda and other Capitol complex buildings" that were at least tinged with anti-Semitism that could, ironically, violate Title VI. *See* 2d Henderson Decl. Exs. 88-94. EPA's "environmental justice" agenda thus bizarrely put federal funds on both sides of illegal protests about *Gaza and Israel*: with federal moneys both indirectly funding the illegal protests themselves and directly funding the security and law enforcement deployed against them—all in the putative name of "environmental justice." *Id.* Given such demonstrably bizarre priorities for "environmental justice," the State has ample reason to fear that Defendants would steer grants away from the State absent a vacatur—since it alone would not be subject to Defendants' disparate-impact-based environmental justice objectives under Title VI.

Finally, vacatur is further warranted by Defendants' highly irregular conduct here. Correctly sensing that their regulations were indefensible, Defendants engaged in highly inequitable conduct by attempting to moot this case through manipulative actions. This Court correctly saw through those machinations. *See* Doc. 48 at 36-40. Defendants' unclean hands further warrant issuing vacatur. *See, e.g.*, *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 991 (9th Cir. 1995) ("[U]nclean hands weighs in the equitable balance that underlies the design of a remedy.")

### D.   The State Consents To A 60-Day Delay Of Vacatur To Minimize Disruptions

Although Defendants have manifestly failed to meet their burden for withholding vacatur—indeed ignoring fully half of that burden entirely—the State will consent to a 60-day delay in the effective date of vacatur either (1) to mitigate any potential disruptions and permit an orderly winding down of Defendants' illegal and unconstitutional regulations or (2) to permit the orderly seeking of a stay pending appeal from the Fifth Circuit. Such a delay comports with Judge Griffith's exhortation that federal judges should "consider the alternatives to the open-ended remand without vacatur." *In re Core Communs., Inc.*, 531 F.3d 849, 862 (D. Cir. 2008) (Griffith, J., concurring) (collecting cases delaying vacatur rather than withholding it).

## II. ARTICLE III STANDING PRINCIPLES DO NOT PRECLUDE THE STATE'S REQUESTED INJUNCTIVE RELIEF

If this Court does not vacate Defendants' regulations, it should enter the State's requested statewide injunction. Defendants' central objection to a statewide injunction is grounded in putative Article III limitations: in their telling (at 2), "equitable relief [that] benefit[s] non-parties violates Article III limits on this Court's jurisdiction." That argument fails out of the gate since they do not challenge the State's standing to seek vacatur—which is the *default* form of APA equitable relief and necessarily "benefits non-parties." *See, e.g.*, *Nebraska HHS v. HHS*, 435 F.3d 326, 330 (D.C. Cir. 2006).

This contention fails as to other forms of equitable relief too. Fifth Circuit law is perfectly clear—and repeatedly reiterated—that even *nationwide* injunctions and stays are consistent with Article III, even though they necessarily involve providing relief to non-parties. As a recent example, when the Fifth Circuit concluded that the OSHA vaccine mandate was unlawful nationwide, it did not hesitate to order a nationwide stay—even though tens of millions of Americans who were non-parties that would thereby benefit. *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 619 (5th Cir. 2021). And the Supreme Court subsequently granted *its own nationwide* stay even though no nationwide class was before it. *See generally NFIB v. DOL, OSHA*, 595 U.S. 109 (2022). Similarly, *all* of Defendants' instant scope arguments were also made to the Supreme Court in seeking to limit the Eighth Circuit's nationwide injunction against the first round of student debt cancellation—and all failed. *See generally Biden v. Nebraska*, 600 U.S. 477 (2023). The same result should obtain here.

Notably, even a *nationwide* injunction would be within this Court's Article III authority, rather than the limited *statewide* injunction the State requests. *Nothing* that Defendants argue here about Article III or equitable principles prohibiting injunctive relief that benefits non-parties was not also advanced by federal defendants in *Texas v. United States ("Texas DAPA")*, 809 F.3d 134, 188 (5th Cir. 2015) *aff'd by equally divided court* 136 S.Ct. 2271 (2016). There too federal defendants argued that Article III barred a nationwide injunction. To no avail: "It is not beyond the power of a court, in appropriate

8

circumstances, to issue a nationwide injunction." *Texas DAPA*, 809 F.3d at 188. That is because "the Constitution vests the District Court[s] with 'the judicial Power of the United States.' That power is not limited to the district wherein the court sits *but extends across the country*." *Id.* (quoting U.S. Const. art. III, § 1) (emphasis added). *Texas DAPA* thus squarely rejected the proposition that Article III precludes relief beyond the named parties. And it remains the binding law of the Fifth Circuit, as demonstrated by a multitude of subsequent binding decisions.[3]

Defendants' reliance (at 2) on cases like *Lewis v. Casey*, 518 U.S. 343 (1996), is also unavailing. There, Article III precluded injunctive relief as to non-English-speaking prisoners because *no such violations* had been found, since the only injury actually established related to a single illiterate prisoner. *Id.* at 358. In contrast, the Supreme Court made clear that Article III does not bar systemwide relief: the "inappropriateness of systemwide relief for illiterate inmates *does not rest upon the application of standing rules*, but rather … upon [plaintiffs'] failure to prove that denials of access to illiterate prisoners pervaded the State's prison system.'" *Id.* at 360 n.7 (emphasis added) (cleaned up).

In contrast, "'[o]nly if there has been a systemwide impact may there be a systemwide remedy.'" *Id.* (quoting *Dayton Bd. of Ed. v. Brinkman*, 433 U.S. 406, 417 (1977)). And that is manifestly the case here: under this Court's holdings, Defendants' disparate-impact regulations are unlawful and unconstitutional *everywhere* in the U.S.—and legal *nowhere*. Because the illegality here pervades "systemwide," Defendants' own case law supports *systemwide relief*.

*A fortiori*, Defendants' contention that a *statewide* injunction for a *state plaintiff* exceeds federal courts' authority under Article III is even more indefensible. Indeed, the Fifth Circuit itself explicitly

---

[3] *See, e.g.*, *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) ("[In certain circumstances, nationwide relief is appropriate."); *Texas v. United States*, 50 F.4th 498, 531 (5th Cir. 2022) ("Our decision to uphold the nationwide injunction, rather than more narrowly tailored relief, is based on our reading of circuit precedent."); *El Paso Cty. v. Trump*, 982 F.3d 332, 373 (5th Cir. 2020) ("'[I]t is not beyond the power of a court, in appropriate circumstances, to issue a nationwide injunction.'" (quoting *Texas DAPA*, 809 F.3d at 188)).

9

ordered such relief in *Louisiana v. Becerra*, 20 F.4th 260, 263-64 (5th Cir. 2021). And while EPA handwaves that binding precedent off in a mere footnote (at 5-6 n.2), suggesting it has been silently overruled, the Fifth Circuit does not regard its own precedents as so readily disposable: "for a Supreme Court decision to change [the Fifth] Circuit's law, it must be more than merely illuminating with respect to the case before the court and must unequivocally overrule prior precedent." *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) (cleaned up). But Defendants footnote does not even try to argue that *Brackeen* "unequivocally overrules" *Louisiana v. Becerra*, and thus Defendants cannot overcome *Louisiana v. Becerra*.

A statewide injunction as in *Louisiana v. Becerra* is warranted here. Given Defendants' twisted priorities, *supra* at 6-7, Defendants' potential exploitation of a narrower injunction poses far too great a risk. Indeed, even now Defendants bizarrely argue (at 4) that "disparate-impact regulations do not require race-based actions," even though this Court has squarely held otherwise. *See* Doc. 48 at 30 ("Where an action would have a disparate impact, a decision-maker is often compelled to act intentionally on the basis of racial considerations to avoid the disparate impact."). Thus, although the ink is not even dry on this Court's preliminary injunction, Defendants have already demonstrated their intent to flout its foundational principles. Such lawless defiance of this Court's holdings cannot be reconciled with indulging Defendants' "trust us" premise. And while Defendants suggest (at 5) that it is a "speculative chain of possibilities" that Defendants would exploit Title VI to displace State law within the State's borders, Defendant DOJ recently did just that to Alabama: displacing its sovereign laws against illegal sewer discharges in one of its counties. *See* Ex. 58.

## CONCLUSION

For the foregoing reasons, this Court should enter the State's proposed judgment.

10

Dated:  May 28, 2024            Respectfully submitted,

By: */s/ Tracy Short*

DREW C. ENSIGN *  
  Special Assistant Solicitor General  
HOLTZMAN VOGEL BARAN  
TORCHINSKY & JOSEFIAK, PLLC  
2575 East Camelback Rd, Ste 860  
Phoenix, AZ 85016  
602-388-1262  
Email:  densign@ holtzmanvogel.com

TRACY SHORT (La #23940)  
  Assistant Chief Deputy Attorney General  
LOUISIANA DEPARTMENT OF JUSTICE  
1885 N. Third Street  
Baton Rouge, Louisiana 70802  
Tel: (225) 326-6705  
shortt@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

\* *pro hac vice application granted*

11