UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| THE STATE OF LOUISIANA, <br><br> Plaintiff, <br><br> v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br> Defendants. | No. 2:23-cv-00692-JDC-TPL |

**DEFENDANTS' REPLY IN SUPPORT OF LIMITED FINAL RELIEF**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................................ 1

ARGUMENT ....................................................................................................................................... 1

I. The Court's permanent injunction should apply only to the State and its agencies, rather than non-parties to this action. ............................................................................. 1

II. Universal vacatur of EPA's and DOJ's regulations is improper. ................................... 4

CONCLUSION ................................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
  166 F.3d 772 (5th Cir. 1999) ............................................................................................. 10

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
  934 F.3d 649 (D.C. Cir. 2019) ............................................................................................ 8

*Am. Great Lakes Ports Ass'n v. Schultz*,
  962 F.3d 510 (D.C. Cir. 2020) ............................................................................................ 8

*Brackeen v. Haaland*,
  599 U.S. 255 (2023) ............................................................................................................ 4

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ................................................................................................... 2, 4, 5

*Cargill v. Garland*,
  57 F.4th 447 (5th Cir. 2023) ............................................................................................... 6

*Data Marketing Partnership, LP v. Dep't of Labor*,
  45 F.4th 846 (5th Cir. 2022) ............................................................................................... 5

*Driftless Area Land Conservancy v. Valcq*,
  16 F.4th 508 (7th Cir. 2021) ............................................................................................... 5

*El Paso County v. Trump*,
  982 F.3d 332 (5th Cir. 2020) .............................................................................................. 3

*Feds for Med. Freedom v. Biden*,
  63 F.4th 366 (5th Cir. 2023) (en banc) .............................................................................. 3

*Gill v. Whitford*,
  585 U.S. 48 (2018) .............................................................................................................. 4

*Hecht Co. v. Bowles*,
  321 U.S. 321 (1944) ............................................................................................................ 6

*Hippocratic Medicine*,
  78 F.4th 210 (5th Cir. 2023) ........................................................................................... 7, 9

*Humane Soc'y of the United States v. U.S. Dep't of Agric.*,
  No. 19-CV-2458 (BAH), 2023 WL 3433970 (D.D.C. May 12, 2023) ............................. 8

*In re Abbott*,
  954 F.3d 772 (5th Cir. 2020) .............................................................................................. 2

*Kentucky v. Fed. Highway Admin.*,
  --- F. Supp. 3d ----, No. 5:23-CV-162-BJB, 2024 WL 1402443 (W.D. Ky. Apr. 1, 2024) .......... 5, 7

*Louisiana v. Becerra*,
  20 F.4th 260 (5th Cir. 2021) ............................................................................... 1, 3, 4

*Milk Train, Inc. v. Veneman*,
  310 F.3d 747 (D.C. Cir. 2002) .................................................................................. 7-8

*Mitchell Bros. Film Grp. v. Cinema Adult Theater*,
  604 F.2d 852 (5th Cir. 1979) ...................................................................................... 10

*Mock v. Garland*,
  75 F.4th 563 (5th Cir. 2023) ..................................................................................... 3, 4

*N. New Mexico Stockman's Ass'n v. U.S. Fish & Wildlife Serv.*,
  494 F. Supp. 3d 850 (D.N.M. 2020) ........................................................................ 5, 8

*Nat'l Parks Conservation Ass'n v. Semonite*,
  422 F. Supp. 3d 92 (D.D.C. 2019) ................................................................................ 8

*North Carolina v. EPA*,
  550 F.3d 1176 (D.C. Cir. 2008) ................................................................................. 8, 9

*Nuziard v. Minority Bus. Dev. Agency*,
  --- F. Supp. 3d ----, No. 4:23-CV-00278-P, 2024 WL 965299 (N.D. Tex. Mar. 5, 2024) ........... 5, 7

*Shands Jacksonville Med. Ctr. v. Burwell*,
  139 F. Supp. 3d 240 (D.D.C. 2015) ............................................................................... 8

*Sugar Cane Growers Coop. of Fla. v. Veneman*,
  289 F.3d 89 (2002) ......................................................................................................... 8

*Texas v. Biden*,
  20 F.4th 928 (5th Cir. 2021) ........................................................................................... 6

*Texas v. U.S. Dep't of Transportation*,
  No. 5:23-CV-304-H, 2024 WL 1337375 (N.D. Tex. Mar. 27, 2024) ............................... 5

*Texas v. United States*,
  50 F.4th 498 (5th Cir. 2022) ....................................................................................... 3, 7

*Texas v. United States*,
  809 F.3d 134 (5th Cir. 2015) ....................................................................................... 2, 3

*W. Watersheds Project v. Haaland*,
  69 F.4th 689 (10th Cir. 2023) ........................................................................................ 8

*WildEarth Guardians v. U.S. Bureau of Land Mgmt.*,
  870 F.3d 1222 (10th Cir. 2017) ...................................................................................... 5

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................................................ 8

**Statutes**

5 U.S.C. § 702 ................................................................................................................................. 6

42 U.S.C. § 7438 ............................................................................................................................ 9

La. Stat § 13:5102 .......................................................................................................................... 2

La. Stat. § 49:662 ........................................................................................................................... 2

**Regulations**

2 C.F.R. § 200.205 ......................................................................................................................... 9

# INTRODUCTION

In its reply brief, Louisiana again presses the Court to expand the scope of relief beyond what can be supported by this Court's memorandum ruling, and far beyond what is necessary to provide complete relief for the State's proven injuries. Louisiana does not even attempt to argue otherwise—nor could it: it is undisputed that during the five months that this Court's preliminary injunction has been in place, the State has not once suggested that the injunction was insufficient to protect its cognizable interests. Louisiana's attempt to expand the scope of final judgment nonetheless—to include an injunction benefiting non-parties or universal vacatur of EPA's and DOJ's decades-old regulations—rests almost entirely on the interests of non-parties, who "have not brought suit [and] may well have accepted and even endorsed [the regulations]." *Louisiana v. Becerra*, 20 F. 4th 260, 263 (5th Cir. 2021). Absent any showing that statewide relief or universal vacatur are necessary to remedy the State's own injuries, entering relief broader than the preliminary injunction is improper. Plaintiff has no rebuttal for that well-established principle of equity. Instead, it relies on irrelevant and unproven allegations far outside the record of this case—from sewer discharges in Alabama, to the Israeli-Palestinian conflict—to muddy the waters and disguise its own lack of entitlement to broader relief. The State also overreaches when seeking vacatur by attempting to transform that remedy from a discretionary default into mandatory relief, contrary to both appellate court instruction and district court practice. The Court should not "make a binding judgment for the entire country" where Defendants' proposed judgment would fully remedy the injuries of the only parties before it. *Id.*

# ARGUMENT

**I. The Court's permanent injunction should apply only to the State and its agencies, rather than non-parties to this action.**

Defendants have proposed that the Court enter a permanent injunction barring them from applying their Title VI disparate-impact regulations or cumulative-impact-analysis requirements against the State of Louisiana and any of its agencies, subject of course to Defendants' right to appeal

the merits.  Defs.' Memo. in Supp. of Limited Final Relief ("Defs.' Br."), ECF No. 59 at 6; Proposed Judgment, ECF No. 59-1 at 2 ¶ A.  As Defendants have explained, doing so would fully remedy the injuries that the Court ruled Plaintiff has evinced in this case.  And such an injunction would abide foundational principles of equity, ensuring that an equitable remedy is "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."  *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

In response, the State makes no claim that a broader injunction must issue to remedy any of its own injuries.  State's Reply Br. in Supp. of Vacatur and Permanent Inj. ("Reply"), ECF No. 60 at 8-10.  Nor does the State contest the proposition under state law that private parties and political subdivisions, such as parishes and municipalities, are not part of the State and therefore should not receive permanent injunctive relief.  *See* Defs.' Br. 3 (citing La. Stat § 13:5102; La. Stat. § 49:662). Rather, Plaintiff asks the Court for broader equitable relief solely so that non-parties who have not sued to invalidate EPA's disparate-impact regulations might avoid obligations under those regulations. And as to DOJ's disparate-impact regulation, Plaintiff has nothing to say at all, underscoring the fact that relief for *all* entities in the State is unnecessary and therefore unwarranted.  At bottom, there is no evidence that any non-party within Louisiana (let alone outside of it) has suffered some cognizable injury as a result of Defendants' application of their disparate-impact regulations.  Thus, even if this Court were inclined to act to remedy third-party injuries, *but see In re Abbott*, 954 F.3d 772 (5th Cir. 2020) (stating that district courts "lack[] authority to enjoin enforcement of [challenged statutes] as to anyone other than the named plaintiffs"), there is no basis to do so here.  The Court should accordingly reject Plaintiff's request for a permanent injunction applicable to all entities throughout the State of Louisiana.

The State cannot justify expanding relief to non-parties by relying on *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015).  There, the Fifth Circuit's affirmance of a preliminary nationwide injunction

preventing implementation of an immigration program relied on immigration-specific circumstances. To justify nationwide relief, the Court of Appeals cited the constitutional requirement of a "uniform Rule of Naturalization," Congress's express instruction that immigration laws "be enforced . . . uniformly," and the Supreme Court's description of immigration policy as a "unified system." *Id.* at 187-88; *see also Texas v. United States*, 50 F.4th 498, 530-31 (5th Cir. 2022) ("*In the context of immigration law*, broad relief is appropriate to ensure uniformity and consistency in enforcement.") (emphasis added and citation omitted) (cited in Reply 9 n.3). Indeed, the Fifth Circuit has since explained that the broad injunction issued in *Texas v. United States* was justified by the "constitutional uniformity principle" rooted in the "constitutional command for 'uniform' immigration laws." *Louisiana v. Becerra*, 20 F.4th at 264. No such external uniformity requirement is present in this case, and the State rightly does not argue as much.

Nor do Plaintiff's cited decisions compel expanding injunctive relief to every entity and individual within the State. Indeed, in one of those decisions, the Fifth Circuit emphasized that, while nationwide injunctions are "in certain circumstances" permissible, traditionally "'American courts of equity did not provide relief beyond the parties to the case.'" *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (quoting *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 387 (5th Cir. 2023) (*en banc*)). The Court should follow that same traditional limitation here and confine its injunctive remedy to the parties before it. And while Plaintiff relies (*see* Reply 9 n.3) upon the dissent in *El Paso County v. Trump*, the Fifth Circuit majority in that case *vacated* the lower court's broad, nationwide injunction, 982 F.3d 332, 337, 347 (5th Cir. 2020). Because Plaintiff has not shown any need or basis to extend the preliminary injunction beyond the State and its agencies, the Court should decline to order such expansive relief and instead enter Defendants' proposed judgment.

Finally, the mere fact that the Fifth Circuit has affirmed broad injunctions in other cases does not compel the Court to issue such an injunction here. It demonstrates only that based on the facts

3

in those cases, courts determined that such relief was appropriate. And while Plaintiff again resorts to *Louisiana v. Becerra*, *see* Reply 9-10, it fails to grapple with the fact that it has not asserted a *parens patriae* injury to its citizens in this case—a point the State does not dispute.[1] Contrary to Plaintiff's suggestion, nothing in *Louisiana* mandates imposition of a statewide injunction solely because the plaintiff is a State. Indeed, the Fifth Circuit there emphasized that, "[a]s is true for all injunctive relief, the scope of the injunction must be justified based on the circumstances." 20 F.4th at 263. The circumstances here do not justify expanding the injunctive remedy beyond the parties to the case.

This Court should follow the Fifth Circuit's guidance in *Mock v. Garland* that "injunctions should be crafted to 'provide complete relief *to the plaintiffs*,'" and enter Defendants' proposed judgment. 75 F.4th at 587 (quoting *Califano*, 442 U.S. at 702) (emphasis added).

## II. Universal vacatur of EPA's and DOJ's regulations is improper.

The State does not dispute that a permanent injunction that enjoins Defendants from applying or enforcing their Title VI disparate-impact regulations against Louisiana would resolve every injury that the State has established in this action. *See* Defs.' Br 2-6. Nor could it: during the five months that this Court's preliminary injunction has been in place, the State did not once even suggest that the injunction was insufficient to protect its cognizable interests. *See* Defs.' Br. 1. The State likewise does not (and cannot) dispute the foundational principle that, under Article III, "a plaintiff's remedy must be 'limited to the inadequacy that produced [his] injury in fact.'" *Gill v. Whitford*, 585 U.S. 48, 66 (2018); *see also* Defs.' Br. 2.

Those concessions should end this Court's analysis because the relief a court awards must "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."

---

[1] The fact that the Supreme Court's intervening decision in *Brackeen v. Haaland* precludes a state from doing so would be a basis to deny relief had Plaintiff advanced such a theory of injury, but embracing the "settled rule" restated in *Brackeen* is not necessary to enter Defendants' proposed judgment here. 599 U.S. 255, 294-95 (2023).

4

*Califano*, 442 U.S. at 702. A permanent injunction that mirrors the preliminary injunction would remedy completely the State's proven injuries in fact, and it would therefore be improper to issue the more burdensome and "*more* drastic remedy" of vacatur. *Kentucky v. Fed. Highway Admin.*, --- F. Supp. 3d ---, No. 5:23-CV-162-BJB, 2024 WL 1402443, at *17 (W.D. Ky. Apr. 1, 2024) ("[V]acatur is in practice often the *more* drastic remedy: 'Unlike an injunction, which merely blocks enforcement, vacatur unwinds the challenged agency action.'") (quoting *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021)).

The State nonetheless repeats the claim that the Court should vacate the challenged regulations because universal vacatur is "the 'default rule'" in the Fifth Circuit. Reply 2 (quoting *Data Marketing Partnership, LP v. Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022)). But "vacatur's status as the default rule does not mean the Court is without discretion to choose 'a more limited remedy' if appropriate." *Texas v. U.S. Dep't of Transportation*, No. 5:23-CV-304-H, 2024 WL 1337375, at *21 (N.D. Tex. Mar. 27, 2024); *see also Nuziard v. Minority Bus. Dev. Agency*, --- F. Supp. 3d ----, No. 4:23-CV-00278-P, 2024 WL 965299, at *43 (N.D. Tex. Mar. 5, 2024) ("While true" that vacatur under "the APA is a 'separate but additional tool for addressing the unconstitutional [] implementing regulations,'" "the Court has discretion to decide if it wants to use that tool . . . . Indeed, discretion is the hallmark of federal equity jurisprudence—especially in administrative law."). Accordingly, even where vacatur is the default remedy, "vacatur remains discretionary, meaning that the district court has several options in its evaluation of an agency's final rule: 'The district court may vacate the entire [rule], or it may fashion some narrower form of injunctive relief based on equitable arguments.'" *N. New Mexico Stockman's Ass'n v. U.S. Fish & Wildlife Serv.*, 494 F. Supp. 3d 850, 1041 (D.N.M. 2020) *aff'd*, 30 F.4th 1210 (10th Cir. 2022) (quoting *WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 870 F.3d 1222, 1240 (10th Cir. 2017)). Accordingly, while the Fifth Circuit recognizes that universal vacatur is a permissible remedy under the APA and traditional equitable principles when necessary to remedy a plaintiff's established

5

injury-in-fact, those same equitable principles render vacatur improper where that relief is not necessary to remedy a plaintiff's injury as in this case.

Indeed, if universal vacatur were the mandatory remedy for every unlawful agency action, the Fifth Circuit plurality in *Cargill v. Garland* could not have remanded with the instruction to the district court that "it may be the case that a more limited remedy" than "vacatur of an agency action" "is appropriate in these circumstances." 57 F.4th 447, 472 (5th Cir. 2023) (*en banc*) (plurality opinion), *cert. granted*, 144 S. Ct. 374 (2023). And the *Cargill* plurality's remand instruction reflects the Supreme Court's teaching that a congressional authorization for courts to issue a remedy—such as vacatur under the APA (assuming the APA does authorize such a remedy)—"hardly suggests an absolute duty" to grant such relief "under any and all circumstances." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944). Rather, a statutory provision authorizing remedies, especially equitable remedies, should be construed consistent with "the traditions of equity practice." *Id.* ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."). The APA adopted that principle, explicitly stating that its authorization of judicial review does not affect "the power or duty of the court to . . . deny relief on any . . . equitable ground." 5 U.S.C. § 702(1). Here, the relevant circumstances and principles of equity compel the more limited remedy of a targeted permanent injunction. *Supra* at 1-4.

The State also argues that vacatur is legally required because Louisiana prevails under the two-factor test for whether a court should remand without vacatur assessing "how likely it is the agency will be able to justify its decision on remand" and "the disruptive consequences of vacatur." *See* Reply 4 (quoting *Texas v. Biden*, 20 F.4th 928, 1000 (5th Cir. 2021), *abrogated on other grounds*, 142 S. Ct. 2528 (2022)). But that test has no relevance to the question of whether vacatur is appropriate when the more limited remedy of a targeted permanent injunction can grant a plaintiff complete relief. In *Nuziard*, for example, the court granted a permanent injunction instead of vacating the challenged

6

regulations without reference to the remand-without-vacatur test that the State invokes here because "[v]acatur is unnecessary to remedy Plaintiffs' injury." 2024 WL 965299, at *43. Other district courts, both inside and outside the Fifth Circuit, have taken the same approach. *See Kentucky*, 2024 WL 1402443, at *18 (granting declaratory relief and inviting "additional briefing on the propriety of injunctive relief," but declining to vacate the challenged rule without reference to the remand-without-vacatur test because to do so would "'sweep up nonparties who may not wish to receive the benefit of the court's decision'") (citations omitted); *The General Land Office of the State of Texas v. Biden*, No. 7:21-cv-272, ECF No. 208 (Order) at 2 n.2 (S.D. Tex. May 29, 2024) (entering a permanent injunction rather than vacating challenged agency action without reference to the remand-without-vacatur test).[2]

In any event, even if the remand-without-vacatur test were relevant to this Court's decision to enter a permanent injunction rather than vacate the challenged regulations, that test also counsels against vacatur. As Defendants explained, *see* Defs.' Br. 10, EPA has distributed billions of dollars to state and non-state recipients conditioned on those funding recipients' compliance with the challenged regulations. The State has argued that compliance with those requirements requires expenditures by funding recipients, *see, e.g.*, ECF No. 48 at 35, and even recognized that such "significant reliance interests" are sufficient to withhold vacatur, *see, e.g.*, Reply 5. In the fifty-plus years that Defendants' disparate-impact regulations have existed, numerous federal funding recipients—who have not objected to those regulations—have devoted substantial resources to ensure their operations comply. Those reliance interests would be undone by a universal vacatur. *See* Reply 5; *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 756 (D.C. Cir. 2002) (remand without vacatur appropriate where USDA "improperly disbursed large quantities of sugar to farmers across the country, who in turn had already

---

[2] The State's authorities are distinguishable on this basis. *Alliance for Hippocratic Medicine v. FDA* addressed whether "remand without vacatur is appropriate," 78 F.4th 210, 255 (5th Cir. 2023*) cert. granted*, 144 S. Ct. 537 (2023), not whether a targeted permanent injunction could remedy a plaintiff's injury. *See also Texas*, 50 F.4th at 529 (same).

7

plowed under their crops" in reliance on challenged agency action); *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 97 (2002) (declining to vacate based on similar reliance interests).

Nor does the State deny that vacatur would cause significant administrative disruption to both EPA and DOJ, *see* Defs.' Br. 10-11, instead claiming that these are "the ordinary consequences of the rule of law," Reply 5. But the State cites no authority for the proposition that disruption to the agency cannot be considered, and district courts routinely "take[] note of the disruptive consequences posed to [the agency] itself in the case of vacatur." *N. New Mexico Stockman's Ass'n*, 494 F. Supp. 3d at 1033 (granting remand without vacatur); *see also Humane Soc'y of the United States v. U.S. Dep't of Agric.*, No. 19-CV-2458 (BAH), 2023 WL 3433970, at *12 (D.D.C. May 12, 2023) (remanding without vacatur where "[v]acatur . . . would be severely disruptive across the board," including for "the agency").

The State argues that the first prong of the remand-without-vacatur test—concerning the seriousness of the legal deficiency—requires vacatur notwithstanding these disruptive consequences. But "[t]here is no rule requiring either the proponent or opponent of vacatur to prevail on both factors." *Shands Jacksonville Med. Ctr. v. Burwell*, 139 F. Supp. 3d 240, 270 (D.D.C. 2015); *see also Nat'l Parks Conservation Ass'n v. Semonite*, 422 F. Supp. 3d 92, 99 (D.D.C. 2019) (citation omitted) (same).[3] Accordingly, serious disruptive consequences are sufficient to compel remand even where the agencies "do not dispute the seriousness of the errors." *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020) (affirming remand without vacatur notwithstanding conceded "serious" errors because of significant disruptive consequences); *see also North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008) (remanding without vacatur, despite serious flaws in rule, where vacatur would be

---

[3] The State's analogy (Reply at 4) to the four preliminary injunction factors is therefore inapposite. In that context, the Supreme Court has held that "[a] plaintiff seeking a preliminary injunction must establish" all four factors to obtain relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the context of the remand-without-vacatur test, however, "a strong showing of one factor may obviate the need to find a similar showing of the other." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 934 F.3d 649, 674 (D.C. Cir. 2019); *see also W. Watersheds Project v. Haaland*, 69 F.4th 689, 722 (10th Cir. 2023) (same).

8

disruptive). Nor do Defendants need to detail in advance precisely how they will revise their regulations to ensure compliance with this Court's ruling. *See All. for Hippocratic Medicine*, 78 F.4th at 255 (remand appropriate when an agency "could cure its mistakes with further consideration"). In any event, as Defendants indicated, Defs.' Br. 12, they could comply on remand by limiting the disparate-impact regulations' reach or even withdrawing them altogether. For these same reasons, if the Court decides to award universal relief regarding the challenged regulations (and it should not, *supra* 4-7), it should remand the regulations to DOJ and EPA without vacatur.

The State also argues that vacatur is necessary because "the State has ample reason to fear that Defendants would steer grants away from the State absent" that remedy. Reply 7. The State's speculation is unfounded for the reasons Defendants explained: the relevant regulations require "an objective process of evaluating Federal award applications in accordance with written standards," 2 C.F.R. § 200.205. *See also* Defs.' Br. 10 n.4. The State does not establish the existence of any applicable standards that could justify steering funds away from Louisiana absent vacatur,[4] and instead devotes a declaration and six new exhibits to discussing the unrelated activities of a non-state recipient of EPA funds—the Climate Justice Alliance. *See* Reply 6; ECF No. 60-1. But the fact that EPA selected a nongovernmental organization to receive a grant—for which the State did not apply and, as a state, was not even eligible, *see* 42 U.S.C. § 7438—does not show that EPA would deny funds to Louisiana. And if Louisiana is concerned that EPA funds awarded to the Climate Justice Alliance could be used for "illegal anti-Israel" purposes "that could . . . violate Title VI" (Reply 6-7), that is a reason to *maintain* rather than vacate EPA's regulations intended to combat illegal discrimination. The other

---

[4] The State speculates that EPA "could deem compliance with Defendants' disparate-impact regulations as precisely one of those 'program objectives'—and thereby discriminate in favor of other States." Reply 6. But the State provides no basis to conclude that compliance is such a program objective, and speculation alone is insufficient to establish an injury to warrant such broad relief. Defs.' Br. 5-6. In any event, a permanent injunction that enjoined Defendants' from applying disparate-impact regulations against Louisiana would necessarily preclude consideration of compliance with those regulations as a "program objective" when evaluating Louisiana's fund applications.

9

examples of "bizarre objectives," Reply 6, that the State identifies are similarly unrelated to the distribution of EPA funds to Louisiana.

Finally, the State claims "vacatur is further warranted by . . . Defendants' unclean hands" in "attempting to moot this case" through the closure of EPA's investigations into Louisiana. Reply 7. But, as Defendants explained, EPA was obligated to resolve the investigations by July 11, 2023, and EPA had achieved goals for reducing harmful emissions at the facilities through other measures. *See* ECF No. 42 at 9; ECF No. 18-1 at 5-6. In any event, the State benefitted from the closure of EPA's investigations because it never became subject to any obligations through the settlement process. Accordingly, the doctrine of unclean hands has no relevance because Defendants' "alleged wrongful conduct . . . has not injured the [party invoking the doctrine] in any way." *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979) (holding district court's invocation of unclean hands doctrine in such circumstances was legal error); *see also Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 796 (5th Cir. 1999) ("To invoke the doctrine [of unclean hands], a [party] must show that he was injured by the . . . improper acts.").

## CONCLUSION

For the foregoing reasons and those stated in Defendants' opening brief, this Court should enter Defendants' proposed judgment, which permanently enjoins Defendants' implementation of their disparate-impact regulations against Plaintiff, but does not vacate those regulations.[5]

---

[5] If this Court vacates the DOJ and EPA regulations, Defendants request the 60-day delay in the effective date of vacatur to which the State consents, *see* Reply 7.

| | |
|---|---|
| Dated: June 11, 2024 | Respectfully submitted, |
| KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General<br>Civil Division |
| CHRISTINE STONEMAN<br>Chief, Federal Coordination and<br>Compliance Section | BRANDON B. BROWN<br>United States Attorney |
| | KAREN J. KING<br>Assistant United States Attorney |
| DARIA NEAL<br>Deputy Chief, Federal Coordination and<br>Compliance Section | JOSHUA E. GARDNER<br>Special Counsel, Federal Programs Branch |
| /s/ *Katharine F. Towt*<br>KATHARINE F. TOWT (MA Bar No. 690461)<br>Attorney<br>U.S. Department of Justice<br>Civil Rights Division, Federal Coordination and<br>Compliance Section<br>950 Pennsylvania Avenue NW – 4CON<br>Washington, DC 20530<br>Phone: (202) 353-5054<br>Email: katie.towt@usdoj.gov | /s/ *M. Andrew Zee*<br>M. ANDREW ZEE (CA Bar No. 272510)<br>ALEXANDER W. RESAR<br>ANDREW J. RISING<br>Attorneys<br>U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>450 Golden Gate Ave.<br>San Francisco, CA 94102<br>Phone: (415) 436-6646<br>Email:   m.andrew.zee@usdoj.gov |
| | *Attorneys for Defendants* |