## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| THE STATE OF LOUISIANA, By and through its Attorney General, Liz Murrill, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; et al., <br><br> Defendants. | Civil Action No. 2:23-cv-00692 |

**Memorandum in Support of Rule 59(E) Motion To Amend the Judgment**

Pursuant to Rule 59(e), the State of Louisiana (the "State") respectfully requests that this Court amend its August 22, 2024 judgment to vacate the disparate-impact mandates of 40 C.F.R. § 7.35(b), (c) and 28 C.F.R. § 42.104(b)(2) (the "Disparate-Impact Mandates"). An amendment is warranted here based on (1) intervening authority, (2) new evidence that did not exist at the time of this Court's judgment, and (3) the Court's potential misapprehension of the relief sought by the State.

"Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). This Court "has considerable discretion in deciding whether to reopen a case under Rule 59(e)." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). This Court should exercise that discretion to vacate the Disparate-Impact Mandates because each of the three alternative bases for Rule 59(e) relief is present here, although any one of them would suffice.

***

*First*, there has been an intervening change in law. The day after this Court's August 22 judgment, the Fifth Circuit decided *Restaurant Law Center v. U.S. Department of Labor*, __ F.4th __, 2024 U.S. App. LEXIS 21449 (5th Cir. Aug. 23, 2024) (attached hereto). *Restaurant Law Center* eliminates any discretion for this Court to withhold vacatur of the Disparate-Impact Mandates. There, the Fifth Circuit explained that "the APA directs the reviewing court" to set aside an unlawful agency action through either vacatur or remand without vacatur. *Id.* at *28. The Fifth Circuit further explained that "[w]hile remand without vacatur might be appropriate in 'rare cases,'" it is not available where the challenged rule "*suffers from a fundamental substantive defect* that the [agency] *could not rectify on remand*." *Id.* at *29 (citation omitted) (emphasis added). Indeed, that vacatur was *mandated* in that context is underscored by the Fifth Circuit declining to remand the case to the district court to consider the issue

1

of remedies in the first instance; instead it directed vacatur itself because the remand-without-vacatur inquiry had only one possible answer: vacatur was required. *Id.*

Notably, this Court has already held that the Challenged Mandates contain the same "fundamental defect" as in *Restaurant Law Center*, where the challenged rule was "inconsistent with the [governing statute's] text." *Id.* at *22. Here, this Court has held expressly that "the disparate-impact regulations not only violate § 601 [*i.e.*, the statute that they purport to implement], but also violate the Spending Clause." Doc. 64 at 4. This Court further "agree[d] with the State that Defendants cannot cure their regulations' deficiencies on remand." *Id.* at 4-5.

This Court thus necessarily concluded that, just like the rule in *Restaurant Law Center*, the Disparate-Impact Mandates suffer from the "fundamental substantive defect" that the regulations violated the statute they purport to implement and that defect "could not [be] rectif[ied] on remand." U.S. App. LEXIS 21449, at *29. In fact, this Court has gone even further and held that the challenged mandates violate the Constitution as well. Doc. 64 at 4. And this Court held that "Defendants have not pointed to any disruptive consequences of a vacatur," *id.* at 5, further militating in favor of vacatur.

Given this Court's holdings, vacatur is required under binding Fifth Circuit precedent that was not available at the time of this Court's August 22 judgment. And to the extent that the applicable question is whether injunctive relief or vacatur is required, *Restaurant Law Center* resolves that question in favor of vacatur. U.S. App. LEXIS 21449, at *28-29 (considering plaintiffs' "request [for] both vacatur of the Final Rule and a nationwide injunction against its enforcement" and "conclud[ing] that vacatur is the proper remedy," without remanding for the district court to consider the issue in the first instance).

*Second*, new evidence has subsequently emerged that supports the State's request for vacatur of the Disparate-Impact Mandates. Specifically, on August 29, Defendant Michigan's Department of Environment, Great Lakes, and Energy reached an agreement with Title VI complainants to resolve

2

a Title VI complaint. *See* Skipper Decl. Exs. 95-96. That agreement contains explicit cumulative impact mandates for Title VI compliance, *see id.*—the very same mandates that this Court's final judgment held were unlawful just *seven days* prior. *See* Doc. 65 at 2.

All else being equal, the State would not object to Michigan's acquiescence to unlawful demands to conduct cumulative-impacts analysis under Title VI, which tellingly mirror those that EPA illegally attempted to strongarm Louisiana into accepting in this case. If Michigan wants to surrender away its sovereignty to lawless mandates rather than challenge them, as Louisiana has, that is its sovereign prerogative.

But all is not equal, and the collateral damage is not limited to Michigan. As the State has explained previously, the State will "suffer a competitive disadvantage in obtaining grants from DOJ and EPA" because "[a]bsent a vacatur, grants to agencies in the other 49 States will continue to bind those agencies to Defendants' disparate-impact mandates for the term of the grants." Doc. 58 at 5. EPA has made plain that consideration of cumulative impacts under Title VI is one of its top priorities of its environmental justice agenda—bulldozing through legal niceties such as APA compliance to implement them. And now grants to Michigan effectively bind that State to cumulative-impact mandates for the duration of the grant.

EPA thus does *not* get the same coercive bang for its buck when it makes grants to Louisiana, thereby placing Louisiana at a "competitive disadvantage." *Id.* Louisiana is accordingly harmed by the lack of a vacatur, which necessarily makes it less attractive for EPA to make grants to the State as compared to its 49 sister States (and, in particular, Michigan). That danger is particularly acute here where EPA did not offer any binding commitment not to disfavor the State in making grants.[1]

---

[1] *See* Docs. 59, 61 (Defendants' briefs offering no such commitments); *see also* Doc. 60 at 6 (noting that Defendants "tellingly *do not disavow* their intent to engage in such conduct [favoring other states] going forward—let alone provide any binding assurance that they would not do so.").

3

The State thus should not be placed in the position of relying upon EPA's respect for the law and authority of the federal courts to be given equal treatment in obtaining grants from EPA. Instead, vacatur is warranted to eliminate the competitive disadvantage that this Court's judgment, though unquestionably favorable to the State, would otherwise place upon the State.

*Third*, this Court may have misunderstood the State's position as not seeking a nationwide vacatur. This Court's August 22 order stated that "the State proposes that a vacatur be granted only within the borders of the State of Louisiana, as opposed to nationwide." Doc. 64 at 4. Based on that premise, this Court reasoned that "it appears that a permanent injunction, statewide, would effectively be the equivalent of a vacatur." *Id.* at 5.

That understanding of the State's request was incorrect. The State's proposed judgment explicitly sought vacatur without any geographic limitations. *See* Doc. 58-2 at 2. Its briefs further made clear that the State was seeking vacatur "in its everyday 'universal' form," Doc. 60 at 2-7. A statewide injunction is thus not equivalent to the ordinary (*i.e.*, "universal" in Defendants' pejorative) vacatur that the State sought. That is why Defendants' remedial brief distinguished "limited injunctive relief" from vacatur and protested that "universal vacatur would preclude Defendants from imposing or enforcing disparate-impact requirements under Title VI against *any* entity *anywhere* in the United States." Doc. 59 at 7 n.3. Therefore, to the extent that this Court's rejection of vacatur was premised on an understanding that the State was not seeking vacatur beyond the borders of the State, this Court should reconsider that rejection.

\*\*\*

For the foregoing reasons, this Court should grant the State's Rule 59(e) motion and amend its August 22 judgment to vacate the Disparate-Impact Mandates.

4

|  |  |
|---|---|
| Dated: September 19, 2024 | Respectfully submitted, |
|  | By: */s/ Tracy Short* |
| DREW C. ENSIGN * <br>   Special Assistant Solicitor General <br> HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK, PLLC <br> 2575 East Camelback Rd, Ste 860 <br> Phoenix, AZ 85016 <br> 602-388-1262 <br> Email: densign@ holtzmanvogel.com | TRACY SHORT (La #23940) <br>   Assistant Chief Deputy Attorney General <br> LOUISIANA DEPARTMENT OF JUSTICE <br> 1885 N. Third Street <br> Baton Rouge, Louisiana 70802 <br> Tel: (225) 326-6705 <br> shortt@ag.louisiana.gov |

*Counsel for Plaintiff State of Louisiana*

\* *pro hac vice application granted*