**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| THE STATE OF LOUISIANA,<br><br>        Plaintiff,<br><br>  v.<br><br>U.S. ENVIRONMENTAL PROTECTION<br>AGENCY, et al.,<br><br>        Defendants. | No. 2:23-cv-00692-JDC-TPL |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**RULE 59(e) MOTION TO AMEND THE JUDGMENT**

## INTRODUCTION

The State of Louisiana moves this Court to amend its final judgment to universally vacate regulations that, through the existing final judgment, already cannot be applied against any entity in the State. But this Court has rejected the State's arguments for gratuitous vacatur once, explaining that "a permanent injunction, statewide, would effectively be the equivalent of a vacatur" in terms of remedying the State's injuries. Mem. Ruling at 5, ECF No. 64. It should do so again. Because the State has not proven any injury outside the State of Louisiana from the application of the challenged regulations, the Court's permanent injunction prohibiting application and enforcement of those regulations in the State is sufficient to remedy those injuries. Broader relief is therefore both unnecessary and improper under foundational principles of equity and Article III, and none of the State's bases for amendment alters that analysis. The State accordingly fails to clear the high threshold necessary for the extraordinary relief of amending the judgment.

The State first invokes a Fifth Circuit decision holding that vacatur is the default, but still discretionary, remedy for violations of the Administrative Procedure Act. This holding does not amount to a change in law—rather, it is a recitation of the same legal principle that the State already raised with this Court. And for the same reasons Defendants previously provided, that authority is beside the point: that vacatur may sometimes be necessary to remedy a plaintiff's injury does not mean it always is. Here, it is not necessary because the Court's more limited permanent injunction provides the State full relief by preventing application of the challenged regulations to and within the State of Louisiana. Any further relief would be unnecessary to remedy the State's injuries and is therefore improper.

Second, the State repeats its claim that it will suffer a disadvantage in obtaining funding because other states will continue to comply with disparate-impact regulations. That is not correct, as Defendants explained previously. There is no discretionary criterion that allows EPA or DOJ to

approve or deny a funding grant based on whether a regulation applies to one prospective funding recipient but not another. And the State adduces no evidence to the contrary. Instead, it cites a recent, wholly voluntary settlement between the State of Michigan and private parties that contains cumulative-impact analysis agreements. But Michigan is not a political subdivision of the State of Louisiana, and Michigan can seek relief on its own behalf if it believes it has been injured by that voluntary settlement, to which neither EPA nor DOJ was even a party. This Court may not—and already correctly declined to—issue relief for the purpose of benefitting non-parties.

Finally, the State suggests that the Court did not understand that the State sought universal vacatur. But there can be no doubt that universal vacatur is what the State sought—indeed, the State devoted an entire paragraph of its reply brief to explaining that "*all* vacaturs are universal absent some unique limitation," State's Reply Br. in Supp. of Vacatur & Permanent Inj. at 2, ECF No. 60. This Court not only understood the State's request, but also correctly rejected it because a more limited permanent injunction would fully remedy the State's injuries.

It is black letter law in the Fifth Circuit that a Rule 59(e) motion to amend judgment must either clearly establish a manifest error of law or present newly discovered evidence sufficient to change the outcome of the case. Because the State's motion does neither, it must be denied.

## LEGAL STANDARD

"Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004); *see also S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993) (the Rule 59(e) standard "favor[s] the denial of motions to alter or amend a judgment"). Critically, a Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 478-79. Rather, "Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'"

2

*Id.* at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir.1989)); *see also Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) ("Motions . . . to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence.  These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued.") (citation omitted).  Accordingly, a party may not "us[e] the Rule 59(e) motion as a 'back up plan for curing briefing deficiencies,' which does not fall within Rule 59(e)'s narrow purpose." *Davila v. Walmart Stores, Inc.*, No. 3:15-CV-2874-D, 2017 WL 1509303, at *4 (N.D. Tex. Apr. 27, 2017) (quoting *Dottin v. Tex. Dep't of Crim. Just.*, 2014 WL 11511696, at *1 (E.D. Tex. Dec. 29, 2014)).

## ARGUMENT

None of the State's justifications for amendment clears the high bar necessary to amend this Court's final judgment:

1. The State is mistaken that the Fifth Circuit's opinion in *Restaurant Law Center v. U.S. Department of Labor*, 115 F.4th 396 (5th Cir. 2024), amounts to an intervening change in law.  State's Rule 59(e) Mot. to Amend the J. at 1, ECF No. 66 ("Mot."). To qualify under Rule 59(e), an intervening decision must "alter the substantive" rule at issue, and not "merely confirm[]" the existing rule. *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 568 n.3 (5th Cir. 2003).  A true substantive change is necessary to ensure that "legal theories . . . that could have been offered or raised before the entry of judgment" are not entertained in Rule 59(e) motions. *Templet*, 367 F.3d at 478-79.

But the Fifth Circuit in *Restaurant Law Center* did not overrule any of the decisions relied upon by this Court in its memorandum ruling, nor did it purport to break new ground on the question of available remedies.  Rather, it merely confirmed the existing principle that the Fifth Circuit's "default rule is that vacatur is the appropriate remedy" for violations of the APA.  115 F.4th at 410 (citation omitted).  The State had already made this very argument, emphasizing "[t]he Fifth Circuit has explicitly and repeatedly held that for APA cases, '[t]he default rule is that vacatur is the appropriate

3

remedy.'"  *E.g.,* Mem. in Supp. of Permanent Relief at 1, ECF No. 58 (citation omitted); *see also id.* at 4 ("This Court should follow the 'default rule' and vacate the challenged disparate-impact regulations."); ECF No. 60 at 2 ("This Court should thus follow the 'default rule' and simply vacate Defendants' unlawful regulations.").  Indeed, the authority that the Fifth Circuit cited in *Restaurant Law Center* for that proposition is the very authority the State cited to this Court.  *Compare Rest. L. Ctr.*, 115 F.4th at 410 (citing *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022)) *with* ECF No. 58 at 1 (same).

This Court properly rejected the State's argument the first time around, recognizing that "despite vacatur being the 'default rule,' the Court has discretion to choose a more limited remedy, if appropriate."  ECF No. 64 at 3.  The Court's statement of the law is correct, and far from a manifest error of law required to amend the judgment.  *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) (explaining "[t]he essence of equity jurisdiction has been the power . . . to do equity and to mould each decree to the necessities of the particular case"); *see Trump v. Hawaii*, 585 U.S. 667, 716 (2018) (Thomas, J., concurring) ("Although courts of equity exercised remedial 'discretion,' that discretion allowed them to deny or tailor a remedy despite a demonstrated violation of a right, not to expand a remedy beyond its traditional scope."); *Nuziard v. Minority Bus. Dev. Agency*, No. 4:23-CV-00278-P, 2024 WL 965299, at *43 (N.D. Tex. Mar. 5, 2024).  Indeed, the APA by its plain terms adopted those equitable limitations on this Court's remedial powers.  5 U.S.C. § 702 ("Nothing herein . . . affects other limitations on . . . the power or duty of the court to . . . deny relief on any other appropriate legal or equitable ground.").

Nothing the State cites changes that legal analysis:  it continues to be true that the existing permanent injunction remedies fully any injuries that the State has proven, and broader relief is therefore improper under Article III and principles of equity, as Defendants have already explained.  *See* Defs.' Reply in Supp. of Limited Final Relief at 4-5, ECF No. 61.  While universal or nationwide relief may have been appropriate to remedy the injuries suffered in *Restaurant Law Center* because the

4

plaintiff in that case represented restaurants around the country, that is not the case here—Louisiana is a single state and the Court's permanent injunction prevents any future harm to Louisiana from the challenged regulations because those regulations cannot be applied to or in the State of Louisiana. Moreover, that the Fifth Circuit in *Restaurant Law Center* opted for vacatur rather than a nationwide injunction against enforcement merely reflects law recognizing that when the choice is between universal vacatur and a universal injunction—which is not the choice before this Court—vacatur may be appropriate as "the less drastic" remedy in those circumstances. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 166 (2010). Here, as Defendants explained, the limited permanent injunction that this Court awarded is a far less drastic remedy than universal vacatur, yet still remedies fully the State's injuries. *See* Defs.' Mem. in Supp. of Limited Final Relief at 7 n.3, ECF No. 59 (citing *WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 870 F.3d 1222, 1240 (10th Cir. 2017), as declining to vacate entire challenged agency action where "narrower form of injunctive relief" could be adequate to remedy harm).

The State also notes that the Fifth Circuit in *Restaurant Law Center*, 115 F.4th at 410, "further explained" that "remand without vacatur might be appropriate in 'rare cases,'" but is not available "where the challenged rule 'suffers from a fundamental substantive defect that the [agency] could not rectify on remand.'" Mot. 1-2 (emphasis omitted). But this holding is neither relevant nor a change in the law. As an initial matter, this Court did not order remand without vacatur—it permanently enjoined Defendants from applying the challenged regulations in the State of Louisiana. Accordingly, the Fifth Circuit's recitation of the familiar standard for remand without vacatur is beside the point. Moreover, the State made the exact same argument when briefing the remedies question before this Court, again in reliance on one of the same authorities cited in *Restaurant Law Center*. *Compare* ECF No. 58 at 3 (citing *All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 255 (5th Cir. 2023) for the proposition that "remand without vacatur is thus plainly unwarranted here" because "Defendants could *not* cure

5

their regulations' deficiencies on remand") *with Rest. L. Ctr.*, 115 F.4th at 410. Thus, because *Restaurant Law Center* "merely confirmed" the existing law that the State already presented to the Court regarding relief that the Court did not enter, it does not amount to a "change" sufficient to satisfy the requirements of Rule 59(e) to amend a judgment. *Schiller*, 342 F.3d at 568 n.3.

2. The State also argues (Mot. 2-4) that vacatur is necessary to prevent it from "'suffer[ing] a competitive disadvantage in obtaining grants from DOJ and EPA,'" on the theory that without vacatur, the agencies would be more likely to award future grants to States that would be bound by the disparate-impact condition. This argument fails both because the State already made this argument, and it is therefore an improper basis for an amended judgment, and because it is factually incorrect.

As an initial matter, the State concedes that it made this argument already, stating "[a]s the State has explained previously," and quoting repeatedly from its prior briefing. *See* Mot. 3 & n.1. Indeed, the State cited previous settlement agreements that the EPA entered into with Michigan and Illinois during the pendency of this suit. *See* ECF No. 58 at 6 ("EPA's desire to exploit its leverage under Title VI is readily revealed by its extraction of settlement agreements from Michigan and Illinois during the pendency of this suit."). The State's admission that it is repeating already-rejected arguments is fatal to its request for amendment on this basis: a Rule 59(e) motion "is not the proper vehicle for rehashing . . . legal theories." *Templet*, 367 F.3d at 478-79. *See also Rosenszweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003) (Rule 59(e) "cannot be used to raise arguments which could, and should, have been made before the judgment issued.").

The State frames its recycled competitive disadvantage argument as based on "new evidence" of a recent settlement agreement between Michigan's Department of Environment, Great Lakes, and Energy and private parties. Mot. 2. But the State does not even argue that this settlement provides any basis to amend the judgment for purposes of vacating DOJ's regulations, and the settlement in

6

question did not involve DOJ at all.

Nor does the settlement meet the strict requirements of Rule 59 necessary to amend the judgment as to EPA. As this Court recently recognized, a Rule 59(e) motion based on purportedly new evidence "should be denied . . . if the movant fails to show all of the following: (1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching." *Little v. Aegis Sec. Ins. Co.*, No. 2:21-CV-00997, 2021 WL 11723139, at *1-2 (W.D. La. Sept. 7, 2021) (Cain, J.) (quoting *Ferraro v. Liberty Mut. Fire Ins. Co.*, 796 F.3d 529, 534 (5th Cir. 2015)). The settlement between Michigan and private parties meets none of those requirements. A voluntary agreement between Michigan and private parties has no impact on the obligations of Louisiana, and the State does not argue otherwise. Further, the existence of settlement agreements containing disparate-impact requirements was previously known to Louisiana (and even cited in their prior briefing, *see* Mot. 3 n.1). Accordingly, the mere fact of Michigan's August 29, 2024 agreement is purely cumulative to Louisiana's already-rejected competitive disadvantage arguments. The State does not even attempt to argue otherwise, so its motion "should be denied." *Little*, 2021 WL 11723139, at *1-2 (denying Rule 59(e) motion where plaintiffs satisfied two of the three requirements because "[t]he court's interest in the finality of judgments outweighs allowing plaintiffs a second bite at the apple when they fail to gather available evidence and resources within the timeframes applicable to both sides").

In any event, and for the same reasons that Defendants have already provided (ECF No. 59 at 10 n.4), the State is wrong (Mot. 3) that EPA distributes funds to maximize the "coercive bang for its buck." Contrary to the State's contention, there exists no discretionary Federal award criterion to approve or deny a funding grant based on whether a regulation applies to one prospective entity but not another. Plaintiffs failed to identify any such criterion during the prior round of briefing, and that

7

failure persists in this Motion. And the record establishes that EPA is not discriminating against Louisiana after this Court's decision: there were 28 awards by EPA to entities in the State of Louisiana between August 23 and September 19, 2024—including a total of $68,103,300 to the Louisiana Department of Health (LDH) and $9,548,383 to the Louisiana Department of Environmental Quality (LDEQ). *See* Declaration of Christopher Watkins ¶ 4.

Indeed, applicable regulations require "an objective process of evaluating Federal award applications in accordance with the written standards of the Federal awarding agency." 2 C.F.R. § 200.205. In short, the State's speculation (Mot. 4) about being placed at a "competitive disadvantage" is just that—speculation. And that type of "speculative chain of possibilities," *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 414 (2013), is no basis for awarding broader relief to Louisiana. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (prospective relief unavailable based on mere speculation of future injury). Nor can Louisiana pursue broader relief on behalf of other states, such as Michigan, that are not before this Court and have not requested any such relief. *See* ECF No. 59 at 2-3. Moreover, Louisiana still has no answer to the fact that the permanent injunction imposed by the Court solves its speculative harm by "necessarily preclud[ing] consideration of compliance with those regulations as a 'program objective' when evaluating Louisiana's fund applications." ECF No. 61 at 9 n.4. Even if EPA were not required by applicable regulations to evaluate each application objectively, the Court's permanent injunction already prohibits EPA from considering Louisiana's compliance with the disparate impact regulations when evaluating grant applications.

3. Finally, the State claims (Mot. 4) that "this Court may have misunderstood the State's position as not seeking a nationwide vacatur." But there can be no doubt that the State sought universal vacatur. The State devoted an entire paragraph of its reply brief to explaining that "*all* vacaturs are universal absent some unique limitation," ECF No. 60 at 2. This Court nonetheless correctly held that the permanent injunction—which was still broader than the relief Defendants

8

argued this Court should issue—was appropriate because that more limited injunctive relief would fully remedy the State's injuries. That holding remains correct.

The State nonetheless faults the Court for concluding that "a permanent injunction, statewide, would effectively be the equivalent of a vacatur," ECF No. 64 at 5, and speculates that the Court must have been referring to a limited, statewide vacatur because a line earlier in the Court's opinion stated that "the State proposes that a vacatur be granted only within the borders of the State of Louisiana," *id.* at 4. But the preceding clause establishes that this Court understood universal vacatur was at issue because it shows that the district court was only suggesting that narrower vacatur was an alternative *if* it rejected Louisiana's request for universal vacatur. The Court specified that the narrower vacatur available was only presented as a response "[t]o address Defendant's argument that universal vacatur is unwarranted." *Id.*

In any event, even if this Court thought that the State was not arguing for universal vacatur (which is implausible in light of both this Court's opinion and the State's submissions), that belief would have played no role in the Court's ultimate decision. Indeed, this Court's conclusion that a permanent injunction is the equivalent of vacatur *in terms of remedying the State's injury* is necessarily also true of a universal vacatur. Because the State's only injuries flow from application of the challenged regulations *to the State*, the Court's permanent injunction against applying those regulations to any entity in the State remedies the State's injuries just as completely as would universal vacatur of the challenged regulations. Put simply, the State failed to establish that it suffers any harm when some other state receives funding subject to the challenged regulations. Accordingly, this Court's decision to "fashion a remedy that is limited to the inadequacy that produced the State's injury," ECF No. 64 at 5, did not misconstrue the State's argument—it merely adhered to constitutional limitations on the scope of the Court's power. *See Gill v. Whitford*, 585 U.S. 48, 66 (2018) ("[A] plaintiff's remedy must be 'limited to the inadequacy that produced [his] injury in fact.'") (citation omitted).

9

## CONCLUSION

For the foregoing reasons, Plaintiff's Rule 59(e) motion to amend this Court's August 22, 2024 judgment should be denied.

Dated: October 3, 2024

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

CHRISTINE STONEMAN
Chief, Federal Coordination and
Compliance Section

COTY MONTAG
Deputy Chief, Federal Coordination and
Compliance Section

/s/ Katharine F. Towt
KATHARINE F. TOWT (MA Bar No. 690461)
Attorney
U.S. Department of Justice
Civil Rights Division, Federal Coordination and
Compliance Section
950 Pennsylvania Avenue NW – 4CON
Washington, DC 20530
Phone: (202) 353-5054
Email: katie.towt@usdoj.gov

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

BRANDON B. BROWN
United States Attorney

KAREN J. KING
Assistant United States Attorney

JOSHUA E. GARDNER
Special Counsel, Federal Programs Branch

/s/ M. Andrew Zee
M. ANDREW ZEE (CA Bar No. 272510)
ALEXANDER W. RESAR
ANDREW J. RISING
Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Phone: (415) 436-6646
Email:   m.andrew.zee@usdoj.gov

*Attorneys for Defendants*